# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| *In re*<br><br>**WESCO AIRCRAFT HOLDINGS, INC.,** *et al.*,[1]<br><br>Debtors. | Case No. 23-90611 (MI)<br><br>Chapter 11<br><br>(Jointly Administered) |

# DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) APPROVING SOLICITATION AND VOTING PROCEDURES, (III) APPROVING FORMS OF BALLOTS, (IV) SCHEDULING A CONFIRMATION HEARING, AND (V) ESTABLISHING NOTICE AND OBJECTION PROCEDURES

> **If you object to the relief requested, you must respond in writing. Unless otherwise directed by the Court, you must file your response electronically at http://ecf.txsb. uscourts.gov/ within 28 days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within 28 days from the date this motion is filed. Otherwise, the Court may treat this pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on January 4, 2024, at 1:30 p.m. (CST) in Courtroom 404, 4th Floor, 515 Rusk St., Houston, TX. You may participate in the hearing either in person or by an audio and video connection.**

---

[1] The Debtors operate under the trade name Incora and have previously used the trade names Wesco, Pattonair, Haas, and Adams Aviation. A complete list of the Debtors in these chapter 11 cases, with each one's federal tax identification number and the address of its principal office, is available on the website of the Debtors' noticing agent at https://www.kccllc.net/incora. The service address for each of the Debtors in these cases is 2601 Meacham Blvd., Ste. 400, Fort Worth, TX 76137.

> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at 1 (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954554. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Isgur's home page at https://www.txs.uscourts. gov/content/united-states-bankruptcy-judge-marvin-isgur. The meeting code is "JudgeIsgur" (one word). Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of either an electronic or an in-person appearance. To make your appearance, click the "Electronic Appearance" link on Judge Isgur's home page at https://www.txs.uscourts.gov/ content/united-states-bankruptcy-judge-marvin-isgur. Select the case name, complete the required fields and click "Submit" to complete your appearance.**
>
> **This motion refers to a plan of reorganization (the "*Plan*") and a disclosure statement (the "*Disclosure Statement*") that have been proposed by the Debtors in these Chapter 11 Cases. The proposed Plan and Disclosure Statement, as well as other pleadings, may be obtained free of charge by visiting the website of the Debtors' information agent (KCC) at https://www.kccllc.net/incora or by contacting KCC at 1 (888) 251-2937 (U.S./Canada) or +1 (310) 751-2613 (international).**

The above-captioned debtors and debtors in possession (the "***Debtors***")[2] respectfully state as follows.

## Relief Requested

1.      By this motion (the "***Motion***"), the Debtors seek entry of an order attached hereto (the "***Proposed Order***") approving the following:

   a.   *Adequacy of Information in the Disclosure Statement*.   The proposed Disclosure Statement, as containing "adequate information" for the purposes of section 1125 of the Bankruptcy Code.

   b.   *Notice*.   Notice of the hearing regarding the adequacy of the proposed Disclosure Statement[3] (the "***Disclosure Statement Hearing***").

   c.   *Solicitation and Voting Procedures*.   Procedures substantially in the form attached to the Disclosure Statement Order as **Exhibit 1** for: (i) soliciting, receiving, and tabulating votes to accept or reject the

---

[2]      A detailed description of the Debtors and their businesses is set forth in the *Declaration of Raymond Carney in Support of Chapter 11 Petitions and First Day Motions* [Dkt. No. 13] (the "***First Day Declaration***"), filed with the Debtors' voluntary petitions for relief filed under title 11 of the United States Code (the "***Bankruptcy Code***"), on June 1, 2023 (the "***Petition Date***"). The Debtors are operating their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. An official committee of unsecured creditors was appointed on June 16, 2023; no trustee, examiner or other official committee has been appointed.

[3]      Capitalized terms used but not defined in this Motion shall have the meanings ascribed to them in the Plan.

Plan; (ii) voting to accept or reject the Plan; (iii) opting out of the Third-Party Release, and (iv) filing objections to the Plan (the "***Solicitation and Voting Procedures***");

d. *Ballots*.   The forms of ballots (the "***Ballots***") attached to the Disclosure Statement Order as **Exhibit 2A** (form of Master Ballot for Notes Claims) **Exhibit 2B** (form of Beneficial Holder Ballot for Notes Claims), **Exhibit 2C** (form of Ballot for General Unsecured Claims), and **Exhibit 2D** (form of Record Holder Ballot for Notes Claims).

e. *Non-Voting Status Notices*.   The forms of the following notices: (i) notice to holders of Unimpaired Claims and Interests; (ii) notices to holders of Impaired Claims and Interests that receive no distribution nor retain any property under the Plan, including master and beneficial holder election forms for holders of PIK Notes Claims; and (iii) notice to holders of Claims subject to a pending objection (each, a "***Non-Voting Status Notice***"), substantially in the forms attached to the Disclosure Statement Order as **Exhibit 3A**, **Exhibit 3B**, **Exhibit 3C**, **Exhibit 3D**, and **Exhibit 3E**.

f. *Solicitation Packages*.   The forms of documents to be sent to holders of Claims (the "***Solicitation Packages***") in compliance with Bankruptcy Rules 3017(d) and 2002(b).

g. *Cover Letter*.   The form of letter (the "***Cover Letter***") that the Debtors intend to send to holders of Claims entitled to vote to accept or reject the Plan, urging them to vote in favor of the Plan, substantially in the form attached to the Disclosure Statement Order as **Exhibit 4**.

h. *Confirmation Hearing Notice*.   The form and manner of notice (the "***Confirmation Hearing Notice***") of the hearing to consider Confirmation of the Plan (the "***Confirmation Hearing***"), substantially in the form attached to the Disclosure Statement Order as **Exhibit 5**.

i. *Plan Supplement Notice*.   The form of notice relating to the filing of the Plan Supplement, substantially in the form attached to the Disclosure Statement Order as **Exhibit 6**.

j. *Assumption and Rejection Notices*.   The forms of notices to be sent to counterparties to Executory Contracts and Unexpired Leases that will be assumed or rejected pursuant to the Plan (the "***Assumption Notice***" and the "***Rejection Notice***", respectively), substantially in the forms attached to the Disclosure Statement Order as **Exhibit 7** and **Exhibit 8**, respectively; and

k. *Confirmation Timeline.*   Establishing the following dates and deadlines, subject to modification as necessary:

| Event | Date and Time |
|---|---|
| Deadline for Filing of Objection to Disclosure Statement | December 15, 2023 |
| Voting Record Date | January 2, 2024 |
| Disclosure Statement Hearing | January 4, 2024 1:30 p.m. (CST) |
| Deadline for Commencement of Solicitation | No later than January 11, 2024 |
| Deadline for Publication of Notice of Confirmation Hearing | Within 10 business days after entry of the Disclosure Statement Order, or as soon as reasonably practicable thereafter |
| Voting Deadline | 28 days after commencement of solicitation, at 5:00 p.m. (CST) |
| Confirmation Objection Deadline | 28 days after commencement of solicitation, at 5:00 p.m. (CST) |
| Deadline to File Voting Report | Within 2 business days after Voting Deadline |
| Confirmation Hearing | To be determined |

2.     The principal statutory bases for the relief sought in this Motion are sections 105, 365, 1125, 1126, and 1128 of title 11 of the Bankruptcy Code, Bankruptcy Rules 2002, 3016, 3017, 3018, and 3020, and Rules 2002-1, 3016-1, and 3016-2 of the Bankruptcy Local Rules of the U.S. Bankruptcy Court for the Southern District of Texas (the "***Local Rules***").

## JURISDICTION AND VENUE

3.     The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This Motion is a core proceeding under 28 U.S.C. § 157(b). Venue in the Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

# PLAN SUMMARY[4]

4.     The Plan classifies Claims and Interest into the following Classes, pursuant to section 1126 of the Bankruptcy Code:

| Class | Claims or Interests | Impairment | Voting Rights |
|---|---|---|---|
| 1 | *Priority Non-Tax Claims:* Claims entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than Administrative Expenses (including DIP Financing Claims), and Priority Tax Claims. | Unimpaired | Presumed to accept |
| 2 | *Other Secured Claims:* Secured Claims, other than a Priority Tax Claim (except as set forth in Article II.F of the Plan), a DIP Financing Claim, or a 1L Notes Claim. For the avoidance of doubt, no 1.25L Notes Claim, 2026 Unsecured Notes Claim, 2024 Unsecured Notes Claim, 2027 Unsecured Notes Claim, or PIK Notes Claim is an "Other Secured Claim." | Unimpaired | Presumed to accept |
| 3 | *ABL Facility Claims:* Claims arising on account of the "Obligations," as defined in the ABL Credit Agreement. | Unimpaired | Presumed to accept |
| 4 | *1L Notes Claims:* Claims (other than 1L Notes Deficiency Claims) arising on account of the "Obligations" under the "Note Documents," each as defined in the 1L Indenture. | Impaired | **Entitled to vote** |
| 5 | *1.25L Notes Claims:* Claims arising on account of the "Obligations" under the "Note Documents," each as defined in the 1.25L Indenture. | Impaired | **Entitled to vote** |
| 6a | *2026 Unsecured Notes Claims:* Claims arising on account of, derived from, based upon or arising under the 2026 Unsecured Indenture or related documents. | Impaired | **Entitled to vote** |
| 6b | *2024 Unsecured Notes Claims:* Claims arising on account of, derived from, based upon or arising under the 2024 Unsecured Indenture or related documents. | Impaired | **Entitled to vote** |

---

[4]   This summary is qualified in its entirety by reference to the Plan.

| Class | Claims or Interests | Impairment | Voting Rights |
|-------|---------------------|------------|---------------|
| 7a | *General Unsecured Claims:* Claims, other than Administrative Expenses, Other Secured Claims, Priority Tax Claims, Priority Non-Tax Claims, ABL Facility Claims, 1L Notes Claims (other than 1L Notes Deficiency Claims), 1.25L Notes Claims, 2026 Unsecured Notes Claims, 2024 Unsecured Notes Claims, General Unsecured Convenience Claims, PIK Notes Claims, Intercompany Claims, or General Unsecured Canada/Mexico Claims. For the avoidance of doubt, all 1L Notes Deficiency Claims and 2027 Unsecured Notes Claims are General Unsecured Claims.[5] | Impaired | **Entitled to vote** |
| 7b | *General Unsecured Convenience Claims:* Claims that are Allowed in an amount of $[•] or less, that are not: Administrative Expenses, Other Secured Claims, Priority Tax Claims, Priority Non-Tax Claims, ABL Facility Claims, 1L Notes Claims, 1L Notes Deficiency Claims, 1.25L Notes Claims, 2026 Unsecured Notes Claims, 2024 Unsecured Notes Claims, 2027 Unsecured Notes Claims, PIK Notes Claims, Intercompany Claims or General Unsecured Canada/Mexico Claims. | Impaired | **Entitled to vote** |
| 7c | *General Unsecured Canada/Mexico Claims:* Claims against Canada/Mexico Debtors that are not Secured Claims, Intercompany Claims, the unsecured portions of Secured Claims, or Claims entitled to priority under the Bankruptcy Code. | [•] | [•] |
| 8 | *PIK Notes Claims:* Claims against Wolverine Intermediate Holding Corporation arising on account of the PIK Notes or the PIK Notes Indenture or other related documents. | Impaired | Deemed to reject |
| 9 | *Intercompany Claims:* Claims against a Debtor held by any other Debtor. | Impaired/ Unimpaired | Deemed to reject/ presumed to accept |
| 10 | *Existing Equity Interests:* Interests other than Intercompany Interests. | Impaired | Deemed to reject |
| 11 | *Intercompany Interests:* Interests in any Debtor held by another Debtor. | Unimpaired | Presumed to accept |

5.     The Plan includes consensual releases by the Debtors (the "***Debtor Release***") and by certain third parties (the "***Third-Party Release***"), as well as an exculpation provision, all of which release or limit the liabilities of the Debtors, the Reorganized Debtors and certain other

---

[5]     Notwithstanding anything to the contrary in the Plan or this Disclosure Statement, the Debtors reserve the right to amend the Plan, including to reclassify 1.25L Note Claims, 2026 Unsecured Notes Claims and 2024 Unsecured Notes Claims as General Unsecured Claims.

parties who played an integral role in the Debtors' reorganization from liability (or limit their liability) on certain claims and causes of action. Consistent with the procedures described in this Motion, holders of claims and interests will be given an opportunity to opt out of the Third-Party Release on a Ballot or a Non-Voting Status Notice. As described below, and as will be further developed on the record at the Confirmation Hearing, these provisions are an integral part and essential elements of the Plan and the global settlement underlying the Debtors' restructuring.

6.      The Debtors propose to solicit votes to accept or reject the Plan from the holders of Claims in Class 4 (1L Notes Claims), Class 5 (1.25L Notes Claims), Class 6a (2026 Unsecured Notes Claims), Class 6b (2024 Unsecured Notes Claims), Class 7a (General Unsecured Claims), Class 7b (General Unsecured Convenience Claims), and (if impaired under the solicited Plan) Class 7c (General Unsecured Canada/Mexico Claims) (the "***Voting Classes***"). The Debtors will not solicit votes to accept or reject the Plan from the holders of Claims and Interests in Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 3 (ABL Facility Claims), Class 8 (PIK Notes Claims), Class 9 (Intercompany Claims), Class 10 (Existing Equity Interests), or Class 11 (Intercompany Interests) (the "***Non-Voting Classes***").

## BASIS FOR RELIEF

**I.      THE DISCLOSURE STATEMENT CONTAINS ADEQUATE INFORMATION AND SHOULD BE APPROVED**

### A.      The Adequate Information Standard Under Section 1125 of the Bankruptcy Code.

7.      Section 1125(b) of the Bankruptcy Code requires the plan proponent to provide holders of impaired claims and interests entitled to vote with "adequate information" regarding the proposed plan. Section 1125(a)(1) of the Bankruptcy Code provides that:

> "[A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable . . . a hypothetical investor of the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125(a)(1). The primary purpose of a disclosure statement is to provide all material information that creditors and interest holders affected by a proposed plan need to make an informed decision regarding whether or not to vote for the plan. *See, e.g.*, *Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 100 (3d Cir. 1988) ("[Section] 1125 seeks to guarantee a minimum amount of information to the creditor asked for its vote."); *In re Monnier Bros.*, 755 F.2d 1336, 1342 (8th Cir. 1985) ("The primary purpose of a disclosure statement is to give the creditors the information they need to decide whether to accept the plan."); *In re Phoenix Petrol. Co.*, 278 B.R. 385, 392 (Bankr. E.D. Pa. 2001) ("[T]he general purpose of the disclosure statement is to provide 'adequate information' to enable 'impaired' classes of creditors and interest holders to make an informed judgment about the proposed plan and determine whether to vote in favor of or against that plan."); *In re Unichem Corp.*, 72 B.R. 95, 97 (Bankr. N.D. Ill. 1987) ("The primary purpose of a disclosure statement is to provide all material information which creditors and equity security holders affected by the plan need in order to make an intelligent decision whether to vote for or against the plan."). Congress intended that such informed judgments would be needed to both negotiate the terms of, and vote on, a plan of reorganization. *Century Glove, Inc.*, 860 F.2d at 100.

8.      "Adequate information" is a flexible standard, based on the facts and circumstances of each case. *See Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case."); *see also First Am. Bank of N.Y. v. Century Glove, Inc.*, 81 B.R. 274, 279 (D. Del. 1988) (noting that adequacy of disclosure for a particular debtor will be determined based on how much information is available from outside sources); S. Rep. No. 95-989, at 121 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5907 ("the information required will necessarily be governed by the circumstances of the case").

9.      Courts in the Fifth Circuit acknowledge that a determination of "adequate information" under section 1125 resides within the broad discretion of the bankruptcy court. *See, e.g.*, *Mabey v. Sw. Elec. Power Co.* (*In re Cajun Elec. Power Coop., Inc.*), 150 F.3d 503, 518 (5th Cir.

1998) ("The legislative history of § 1125 indicates that, in determining what constitutes 'adequate information' with respect to a particular disclosure statement, 'both the kind and form of information are left essentially to the judicial discretion of the court' and that 'the information required will necessarily be governed by the circumstances of the case.'") (internal citations omitted); *In re Tex. Extrusion Corp.*, 844 F.2d at 1157 ("The determination of what is adequate information is subjective and made on a case by case basis. This determination is largely within the discretion of the bankruptcy court."). Accordingly, this determination must be made on a case-by-case basis, focusing on the unique facts and circumstances of each case. *See Phoenix Petrol. Co.*, 278 B.R. at 393.

10.     In making the determination of what constitutes adequate information for the purposes of section 1125, courts typically examine whether a disclosure statement contains the following information:

    a.   the circumstances that gave rise to the filing of the bankruptcy petition;

    b.   the available assets and their value;

    c.   the anticipated future of the debtor;

    d.   the sources of the information provided in the disclosure statement;

    e.   the condition and performance of the debtor while in chapter 11;

    f.   the claims against the estate;

    g.   a liquidation analysis setting forth the estimated return that creditors would receive under chapter 7;

    h.   the accounting and valuation methods used to produce the financial information in the disclosure statement;

    i.   the future management of the debtor, including the amount of compensation to be paid to any insiders, directors, and/or officers of the debtor;

    j.   a summary of the plan of reorganization;

    k.   financial information that would be relevant to creditors' determinations of whether to accept or reject the plan;

    l.   the risks being taken by the creditors and interest holders;

    m.   the tax consequences of the plan; and

    n.   the relationship of the debtor with its affiliates.

*See In re U.S. Brass Corp.*, 194 B.R. 420, 424–25 (Bankr. E.D. Tex. 1996); *see also In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170–171 (Bankr. S.D. Ohio 1988) (listing factors courts have considered in reviewing adequacy of information); *In re Metrocraft Pub. Serv., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984) (same). This list is not meant to be exhaustive, nor must every disclosure statement include all of the foregoing information. *See In re U.S. Brass Corp.*, 194 B.R. at 424; *see also Phoenix Petroleum*, 278 B.R. at 393 (cautioning that "no one list of categories will apply in every case"); *In re Dakota Rail, Inc.*, 104 B.R. 138, 142 (Bankr. D. Minn. 1989) (describing a similar list as "nonexclusive and nonexhaustive"). Thus, a bankruptcy court may decide what information is appropriate in each case.

**B.      Disclosure Statement Contains Adequate Information.**

11.      The Debtors respectfully submit that the Disclosure Statement addresses each of the salient types of information identified above and will provide the Voting Classes with sufficient information to allow each such holder to make an informed voting decision. Specifically, the Disclosure Statement contains the following:

   a.   a description of the Debtors' prepetition business, organizational structure, equity and capital structures (*see* Disc. Stmt., § II);

   b.   the history of the Debtors' businesses, including the events leading to the commencement of the Chapter 11 Cases (*see* Disc. Stmt., § II);

   c.   material developments and anticipated events in the Chapter 11 Cases (*see* Disc. Stmt., § III);

   d.   a summary of the Plan, including plain English descriptions of the proposed treatment of claims in the Voting Classes (*see* Disc. Stmt., § IV);

   e.   a description of the procedures for soliciting votes to accept or reject the Plan and voting on the Plan (*see* Disc. Stmt., § V);

   f.   an overview of confirmation procedures and statutory requirements for confirmation and consummation of the Plan (*see* Disc. Stmt., § VI);

   g.   a discussion of the material federal tax consequences of the Plan to the Reorganized Debtors and to investors typical of the holders of various claims (*see* Disc. Stmt., § VII); and

h. certain securities law considerations and risk factors to be considered in determining whether to vote to accept the Plan (*see* Disc. Stmt., §§ VIII, IX);

i. an analysis of alternatives to the Plan, including a liquidation analysis (*see* Disc. Stmt., § X; an updated analysis to be filed prior to the Disclosure Statement Hearing).

12.     Accordingly, the Debtors submit that the Disclosure Statement contains adequate information within the meaning of section 1125 of the Bankruptcy Code and applicable case law and should be approved.

     **C.**     **The Disclosure Statement Provides Sufficient Notice of Injunction, Release, and Exculpation Provisions in the Plan.**

13.     Bankruptcy Rule 3017(a) requires parties to receive not less than 28 days' notice of the Disclosure Statement Hearing. Fed. R. Bankr. P. 3017(a); *see also* Fed. R. Bankr. P. 2002(b) (requiring not less than 28 days' notice of the hearing to consider the approval of a disclosure statement and of the deadline to object to the adequacy of a disclosure statement).

14.     Along with this Motion, the Debtors are filing with the Court, and serving on all known holders of Claims or Interests, notice of the Disclosure Statement Hearing (the "***Disclosure Statement Hearing Notice***") which identifies (a) the date, time, and place of the Disclosure Statement Hearing, (b) how to obtain a copy of this Motion and related pleadings, including the proposed Plan and Disclosure Statement, and (c) the deadline and procedures for filing objections to the Disclosure Statement.

15.     Thus, all parties in interest will have had at least 28 days' notice of the Disclosure Statement Hearing and of the deadline to object to the approval of the Disclosure Statement in compliance with Bankruptcy Rules 2002(b) and 3017(a) and Local Rules 2002-1, 3016-1, and 3016-2. Accordingly, the Debtors request that the Court approve this notice as appropriate and in compliance with the requirements of the Bankruptcy Rules and Local Rules.

16.     Bankruptcy Rule 3016(c) requires that, if a plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code, the plan and disclosure statement must describe, in specific and conspicuous language, the acts to be enjoined and the entities subject to

the injunction. Fed. R. Bankr. P. 3016(c). Similarly, Bankruptcy Rule 2002(c) requires that notice must be provided of the time fixed for filing objections and the hearing to consider confirmation of the chapter 11 plan. Fed. R. Bankr. P. 2002(c).

17.     Article VIII of the Plan and Section IV.H of the Disclosure Statement describe in detail (a) the entities subject to or providing a release under the Plan, (b) the Causes of Action released, (c) the entities entitled to exculpation under the Plan, and (d) the entities subject to and covered by a permanent injunction. The relevant language in these articles is in bold typeface, making it conspicuous to anyone who sees it. The Confirmation Hearing Notice also states in clear and bolded text that the Plan contains release, exculpation, and injunction provisions, including the Third-Party Releases. Likewise, the Ballots, the Non-Voting Status Notices and the introductory pages of the Disclosure Statement itself each conspicuously alert the relevant holders of Claims and Interests to the Third-Party Releases and the opportunity to opt out.

18.     Accordingly, the Debtors respectfully submit that the Disclosure Statement complies with Bankruptcy Rule 3016(c) by conspicuously describing the conduct and parties enjoined, released, or exculpated by the Plan, and the Confirmation Hearing Notice complies with Bankruptcy Rule 2002(c) by conspicuously describing the nature and entities subject to the injunction under the Plan.

## II.   THE COURT SHOULD APPROVE THE SOLICITATION AND VOTING PROCEDURES, THE BALLOTS, THE TIMELINE, AND THE FORMS OF NOTICES RELATED TO SOLICITATION AND CONFIRMATION OF THE PLAN

### A.   The Court Should Approve the Solicitation and Voting Procedures.

19.     Section 1126(c) of the Bankruptcy Code provides that:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under section (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designed under subsection (e) of this section, that have accepted or rejected the plan.

11 U.S.C. § 1126(c).

20.     The proposed Solicitation and Voting Procedures set forth specific criteria for the voting and tabulation of Ballots. The Debtors believe that the proposed Solicitation and Voting Procedures will facilitate the Plan confirmation process. Specifically, the procedures will clarify any obligations of holders of Claims entitled to vote to accept or reject the Plan and will create a straightforward process by which the Debtors can determine whether they have satisfied the numerosity requirements of section 1126(c) of the Bankruptcy Code. Accordingly, the Debtors submit that the Solicitation and Voting Procedures are in the best interests of their estates, holders of Claims, and other parties in interest, and that good cause supports the relief requested herein.

21.     The Debtors respectfully request that Kurtzman Carson Consultants LLC, in its capacity as solicitation agent for the Debtors (the "*Solicitation Agent*"), be authorized (to the extent not authorized by another order of the Court) to assist the Debtors in: (a) distributing the Solicitation Packages; (b) receiving, tabulating, and reporting on the Ballots cast to accept or reject the Plan; (c) responding to inquiries from holders of Claims and Interests and other parties in interest relating to the Disclosure Statement, the Plan, the Ballots, the Solicitation Packages, and all other documents and matters related thereto, including the procedures and requirements for voting to accept or reject the Plan and for objecting to the Plan; (d) soliciting votes on the Plan; and (e) if necessary, contacting creditors regarding the Plan.

22.     Bankruptcy Rule 3018(c) provides, in part, that "[a]n acceptance or rejection [of a plan] shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent and conform to the appropriate Official Form." Fed. R. Bankr. P. 3018(c).

23.     Consistent with these requirements, the Debtors propose to use the Solicitation and Voting Procedures to facilitate the process of tabulating all votes received. To ease and clarify the process of tabulating votes, the Debtors propose that a Ballot be counted in determining the acceptance or rejection of the Plan only if it satisfies certain criteria. Specifically, the Solicitation Agent will not count a Ballot if, among other things, it is illegible or not clearly marked, it is submitted by a holder of a Claim that is not entitled to vote on the Plan, or it is unsigned. The

Debtors may, subject to a contrary order of the Court, waive any defects or irregularities as to any particular Ballot at any time, either before or after the close of voting, and will disclosure any such waivers in the Voting Report.

24.     The Debtors further propose that, with respect to any General Unsecured Claim in Class 7a (other than a Notes Claim) or a General Unsecured Convenience Claim in Class 7b that is subject to a pending objection on the Voting Deadline, the holder of such claim will not be entitled to vote to accept or reject the Plan on account of such claim unless one or more of the following events (each a "***Resolution Event***") occurs at least three business days prior to the Voting Deadline: (a) an order of the Court is entered allowing such claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing; (b) an order of the Court is entered temporarily allowing such claim (or the disputed portion thereof) for voting purposes only pursuant to Bankruptcy Rule 3018(a), after notice and a hearing; (c) a stipulation or other agreement is executed between the holder of such claim and the Debtors (subject to the Claim Objection and Settlement Procedures Order, or otherwise with the consent of the Committee and the First Lien Noteholder Group) temporarily allowing such claim for voting purposes in an agreed amount; or (d) the pending dispute or objection to such claim is voluntarily withdrawn by each objecting party. No later than two business days following the occurrence of a Resolution Event, the Debtors will cause the Solicitation Agent to distribute via email, hand delivery, or overnight courier service a Solicitation Package and a pre-addressed, postage pre-paid envelope to the holder of the Disputed Claim that has been resolved.

**B.     The Court Should Approve the Forms of the Ballots.**

25.     In accordance with Bankruptcy Rule 3018(c), the Debtors have prepared customized Ballots. Although based on Official Form No. 314, the Ballots have been modified to address the particular circumstances of the Chapter 11 Cases and include certain additional information that is relevant and appropriate.

26.     The Debtors propose to distribute Ballots, substantially in the forms attached to the Disclosure Statement Order as **Exhibits 2A–2D,** as part of the Solicitation Package to the holders of Claims in the Voting Classes.

**C.      The Court Should Approve the Form and Distribution of the Solicitation Packages to Parties Entitled to Vote on the Plan.**

27.     Bankruptcy Rule 3017(d) specifies the materials to be distributed to holders of claims and interests upon approval of a disclosure statement, including the court-approved plan and disclosure statement and notice of the time within which acceptances and rejections of the plan may be filed. Fed. R. Bankr. P. 3017(d). In accordance with this requirement, on or before the Solicitation Deadline, the Debtors will cause the Solicitation Agent to distribute the Solicitation Packages by first-class U.S. mail to the holders of Claims in the Voting Classes (or their Nominees, as applicable).

28.     Each Solicitation Package will include the following materials:

      a.      the Cover Letter;

      b.      a copy of the Solicitation and Voting Procedures;

      c.      the Confirmation Hearing Notice;

      d.      the approved Disclosure Statement (and its exhibits, including the Plan);

      e.      the Disclosure Statement Order (excluding exhibits);

      f.      a Ballot, instructions on how to complete the Ballot, and a pre-paid, pre-addressed return envelope;[6] and

      g.      such other materials as the Court may direct to include in the Solicitation Package.

29.     The Debtors request authorization to distribute the Plan, the Disclosure Statement (including its exhibits), and the Disclosure Statement Order to holders of Claims entitled to vote on the Plan in electronic medium (for instance on a flash drive), while providing the Cover Letter, the Ballot and the Confirmation Hearing Notice on paper. Electronic distribution of the more

---

[6]   Service of the Solicitation Package to the Beneficial Holders of the Notes Claims may be performed electronically, or otherwise in their Nominees' customary practice, in which case they may not contain pre-addressed stamped return envelopes.

voluminous documents will save money for the Debtors' estates, while still providing all parties with the relevant information. The Debtors will provide paper copies of all documents upon request to the Solicitation Agent, at the Debtors' expense.

30.      In addition to accepting hard copy Ballots via first class mail, overnight courier, and personal delivery to Incora Ballot Processing Center, c/o KCC, 222 N. Pacific Coast Hwy., Ste. 300, El Segundo, CA 90245, the Debtors request authorization for the Solicitation Agent to accept Ballots (except for Beneficial Holder Ballots and Master Ballots) via electronic, online transmissions, solely through a customized online balloting portal on the Debtors' case website to be maintained by the Solicitation Agent located at https://www.kccllc.net/incora (the "***Online Portal***"). This convenient mechanism will ensure that all creditors, including non-U.S. creditors are able to cast their votes by the Voting Deadline. Instructions for electronic, online transmission of Ballots are set forth on the Ballots. The encrypted ballot data and audit trail created by an electronic submission shall become part of the record of any Ballot submitted in this manner, and the creditor's electronic signature will be deemed to be a legally valid and effective original signature. The Debtors also request authorization for the Solicitation Agent to accept Master Ballots from Nominees via email to IncoraBallots@kccllc.com. The Debtors request that Ballots will be deemed delivered only when the Solicitation Agent actually receives a properly executed Ballot, whether through the online portal, email, or on paper, as applicable.

31.      In many instances, certain brokerage firms and banks or their agents (collectively, the "***Nominees***") hold Notes Claims against Debtors in "street name" on behalf of their beneficial owners (the "***Beneficial Holders***"). To ensure proper tabulation of votes for such Claims, the Solicitation Agent will deliver Solicitation Packages to the holders of record as of the Voting Record Date, including Nominees, with instructions to forward same to their respective Beneficial Holder clients.  Additionally, the Nominees will also receive Master Ballots. The Beneficial Holder Ballots will instruct each Beneficial Holder voting on the Plan through a Nominee to return its Beneficial Holder Ballot to such Nominee in sufficient time for the Nominee to timely cast votes

to accept or reject the Plan on behalf of its Beneficial Holders. A Nominee shall obtain votes and other elections from the Beneficial Holders in one of the following two ways:

    a. *Pre-Validated Ballots.*  The Nominee may "pre-validate" a Beneficial Holder Ballot by (a) signing the Beneficial Holder Ballot; (b) indicating on the Beneficial Holder Ballot the amount and the account number of the Claims held by the Nominee for the particular Beneficial Holder; and (c) forwarding the Beneficial Ballot, together with the Disclosure Statement, a postage-paid return envelope pre-addressed to the Solicitation Agent, and other materials requested to be forwarded, to the Beneficial Holder for voting. The Beneficial Holder must then complete the information requested in the Beneficial Ballot and return the Beneficial Ballot directly to the Solicitation Agent in the pre-addressed, postage-paid return envelope so that it is received by the Solicitation Agent on or before the Voting Deadline. A list of the Beneficial Holders to whom "pre-validated" Beneficial Ballots were delivered should be maintained by Nominees for inspection for at least one year from the Voting Deadline.

    b. *Master Ballots.*  The Nominee may obtain the votes of Beneficial Holders by forwarding to each Beneficial Holder an unsigned Beneficial Holder Ballot through mail, VIF, email, or any other reliable and customary method of collecting votes from a Beneficial Holder, together with the Disclosure Statement, a postage-paid return envelope addressed to the Nominee (in the case of a physical mailing), and other materials requested to be forwarded. Each such Beneficial Holder must then indicate its vote and other elections on the Beneficial Holder Ballot, complete the information requested on the Beneficial Holder Ballot, review the certifications contained on the Beneficial Holder Ballot, execute the Beneficial Holder Ballot, and return the Beneficial Holder Ballot to the Nominee. If it is accepted practice for a Nominee to collect votes through a VIF, email, or other method, the Beneficial Holder shall follow the Nominee's instruction for completing and submitting its votes to the Nominee. After collecting the Beneficial Holders' votes, the Nominee should, in turn, complete a Master Ballot compiling the votes and other information from the Beneficial Holders, execute the Master Ballot, and deliver the Master Ballot to the Solicitation Agent so that it is received by the Solicitation Agent at or before the Voting Deadline. All Beneficial Ballots returned by Beneficial Holders should either be forwarded to the Solicitation Agent along with the Master Ballot or retained by the Nominee for inspection for at least one year from the Voting Deadline. Each Nominee should advise its Beneficial Holders to return their Beneficial Ballots to the Nominee by a date and time calculated by the Nominee to allow it to prepare and return the Master Ballot to the Solicitation Agent so that the Master Ballot is received by the Solicitation Agent on or before the Voting Deadline.

32.     The Debtors and the Solicitation Agent propose to adopt similar procedures as described above for distributing Notices of Non-Voting Status and recording the resulting opt-out elections.

33.     The Debtors will also send complete Solicitation Packages (excluding the Ballots and the Cover Letter) to the U.S. Trustee and all parties required to be notified under Rule 2002 of the Bankruptcy Rules and Rule 2002-1 of the Local Rules (the "***2002 List***") as of the Voting Record Date. The Debtors respectfully submit that the foregoing procedures comply with Bankruptcy Rule 3017(d) and, therefore, should be approved.

**D.     The Court Should Approve the Voting Record Date and Voting Deadline.**

34.     Bankruptcy Rule 3017(d) provides that, for purposes of soliciting votes on a chapter 11 plan, "creditors and equity security holders shall include holders of stock, bonds, debentures, notes and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." Fed. R. Bankr. P. 3017(d). Bankruptcy Rule 3018(a) contains a similar provision regarding determination of the record date for voting purposes. Fed. R. Bankr. P. 3018(a). Additionally, Bankruptcy Rule 3017(c) provides that before approving the disclosure statement, the Court must fix a time within which the holders of claims and interests may accept or reject a plan and may fix a date for the hearing on confirmation of a plan. *See* Fed. R. Bankr. P. 3017(c).

35.     Accordingly, the Debtors request that the Court exercise its authority under Bankruptcy Rules 3017(d) and 3018(a) to establish: (i) January 2, 2024, as the voting record date (the "***Voting Record Date***"); (ii) January 11, 2024, as the solicitation mailing deadline by which the Debtors must distribute Solicitation Packages, including Ballots, to holders of Claims in the Voting Classes (the "***Solicitation Deadline***"); and (iii) 5:00 p.m. (CST) on the date that is 28 days after commencement of solicitation, as the voting deadline (the "***Voting Deadline***"), which date may be extended by the Debtors, and by oral or written notice to the Solicitation Agent. The Debtors may extend the Voting Deadline an unlimited number of times, by any increment, and retroactively. The Debtors will have no obligation to publish, advertise, or otherwise communicate

any such extension, other than by notifying each of the Prepetition Indenture Trustees, posting a notice on the Solicitation Agent's website for the case, and filing a notice of the extension with the Court.

36.     The Debtors further propose that, with respect to any transferred Claim, the transferee will be entitled to receive a Solicitation Package and, if the Claim is in one of the Voting Classes, cast a Ballot on account of such Claim *only if*: (a) all actions necessary to effectuate the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) have been completed by the Voting Record Date or (b) the transferee files, by the Voting Record Date, (i) the documentation required by Bankruptcy Rule 3001(e) to evidence the transfer and (ii) a sworn statement of the transferor supporting the validity of the transfer. In the event a Claim is transferred after the Voting Record Date, the transferee of such Claim shall be bound by any vote on the Plan cast by the holder of such Claim as of the Voting Record Date.

37.     After the Solicitation Packages have been distributed to the holders of Claims in the Voting Classes, all such holders should complete, execute, and return their Ballots in accordance with the instructions contained in such Ballots so that they are actually received by the Solicitation Agent on or before the Voting Deadline.

38.     The foregoing will afford holders of Claims in the Voting Classes at least 28 days within which to review, and analyze the materials in the Solicitation Packages and make an informed decision as to whether to vote to accept or reject the Plan before the Voting Deadline, consistent with the requirements of the applicable law and Bankruptcy Rules. Accordingly, the Debtors request that the Court approve the form of, and the proposed procedures for distributing, the Solicitation Packages to the holders of Claims in the Voting Classes.

**E.     The Court Should Approve the Form and Distribution of the Non-Voting Status Notices to the Non-Voting Classes.**

39.     After approval of a disclosure statement, the debtor must transmit the plan, the approved disclosure statement, a notice of the time within which acceptances and rejections of

such plan may be filed, and any other information that the court may direct to certain holders of claims. *See* Fed. R. Bankr. P. 3017(d).

40. The holders of Claims and Interests in the Non-Voting Classes are not entitled to vote on the Plan and, as a result, the Debtors propose not to serve them with Solicitation Packages. Instead, on or before the Solicitation Deadline, in lieu of a Solicitation Package, the Solicitation Agent will mail (first-class postage prepaid) a Confirmation Hearing Notice and a Non-Voting Status Notice to each of the following:

> a. *Unimpaired Claims or Interests*.   Claims and Interests in Classes 1, 2, and 3 are not impaired under the Plan and, therefore, their holders are conclusively presumed to have accepted the Plan. As such, holders of such Claims will receive a notice substantially in the form attached to the Disclosure Statement Order as **Exhibit 3A**.[7]
>
> b. *Impaired Claims and Interests*.   Holders of Interests in Class 10 will neither receive nor retain any property under the Plan and, therefore, are deemed to reject the Plan and will receive a notice substantially in the form attached to the Disclosure Statement Order as **Exhibit 3B**. Likewise, holders of Claims in Class 8 will receive notices through their DTC Nominees through the forms attached to the Disclosure Statement Order as **Exhibit 3C** and **Exhibit 3D**.
>
> c. *Disputed Claims*.   Holders of Claims that are subject to a pending objection are not entitled to vote the disputed portion of their claims. As such, they will receive a notice substantially in the form attached to the Disclosure Statement Order as **Exhibit 3E**.

41. Each of the Non-Voting Status Notices will include, among other things: (a) instructions for obtaining copies of the Disclosure Statement (including the Plan and the other exhibits), the Disclosure Statement Order, and all other materials in the Solicitation Package (other than Ballots) from the Solicitation Agent; (b) disclosure regarding the settlement, release, exculpation, and injunction language set forth in Article VIII of the Plan and instructions for opting out of the Third-Party Releases; (c) notice of the Plan Objection Deadline; and (d) notice of the Confirmation Hearing.

---

[7]   If the solicited Plan treats Class 7c as impaired, those holders will also receive Non-Voting Status Notices instead of Ballots.

42.     The Debtors believe that the mailing of the Non-Voting Status Notices in lieu of the Solicitation Packages satisfies the requirements of Bankruptcy Rule 3017(d). Therefore, unless the Court orders otherwise, the Debtors do not intend to distribute Solicitation Packages to the holders of Claims and Interests in the Non-Voting Classes.

43.     The Debtors further request that they not be required to mail Solicitation Packages or other solicitation materials to: (a) holders of Claims that have already been paid in full during the Chapter 11 Cases; (b) holders of Claims that the Debtors are authorized to pay in full in the ordinary course of business pursuant to an order previously entered by this Court and that the Debtors expect in good faith to pay in full in the ordinary course; (c) holders of Claims in Class 9 (Intercompany Claims) and Class 11 (Intercompany Interests); or (d) any party to which the Disclosure Statement Hearing Notice was sent but was subsequently returned as undeliverable.

**F.      The Court Should Approve the Confirmation Hearing Notice and Procedures for Objecting to Confirmation of the Plan Distributing Other Materials.**

44.     Section 1128 of the Bankruptcy Code provides that a court shall hold a hearing on confirmation of a plan and provides that parties in interest can object to confirmation. 11 U.S.C. § 1128. Additionally, Bankruptcy Rule 3017(c) provides that, on or before approval of a disclosure statement, a court shall fix a time for the hearing on confirmation of a plan. Fed. R. Bankr. P. 3017(c). In accordance with section 1128 of the Bankruptcy Code and Bankruptcy Rule 3017(c), the Debtors request that the Court establish an initial Confirmation Hearing Date and establish 5:00 p.m. (CST) on the date that is 28 days after commencement of solicitation as the Confirmation Objection Deadline.

45.     Bankruptcy Rule 2002(b) requires that parties be given at least 28 days' notice of the time fixed for filing objections and for the hearing to consider confirmation of a chapter 11 plan. The proposed schedule provides parties in interest at least 28 days' notice for filing objections to the Plan in accordance with Bankruptcy Rule 2002(b).

46.     The Debtors also request that the Court approve the manner in which parties in interest may object to confirmation of the Plan. Pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court." Fed. R. Bankr. P. 3020(b)(1). The Confirmation Hearing Notice, which will be served upon all entities in the creditor matrix, will require that objections to confirmation of the Plan or requests for modifications to the Plan, if any, must:

a.     be in writing;

b.     conform to the Bankruptcy Rules, Local Rules, and any orders of the Court;

c.     set forth the name and address of the objecting party and the nature and amount of Claims or Interests held or asserted by the objecting party;

d.     state, with particularity, the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; and

e.     be filed with the Court (contemporaneously with a proof of service) on or before 5:00 p.m. (CST) on the date that is 28 days after commencement of solicitation (the "***Confirmation Objection Deadline***").

47.     Bankruptcy Rule 2002(l) also permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice." Fed. R. Bankr. P. 2002(l). In addition to mailing the Confirmation Hearing Notice, the Debtors propose to publish the Confirmation Hearing Notice (or a notice substantially similar to it) in the national edition of the *New York Times* (national edition) and the *Financial Times* (global edition), and any local publications that the Debtors deem appropriate (and will disclose in the Claims Agent's affidavit of service), within ten (10) business days after entry of the Disclosure Statement Order or as soon as reasonably practicable thereafter. The Debtors will also publish the Confirmation Hearing Notice on the Debtors' case information website and on the Court's docket.

48.     The Debtors believe that the foregoing procedures will provide parties in interest adequate notice of the approval of the Disclosure Statement, the Voting Record Date, the Voting Deadline, the Confirmation Objections Deadline, and the time, date and place of the Confirmation Hearing.

### G.     The Court Should Approve the Plan Supplement Notice.

49.     The Plan Supplement is a compilation of documents (or forms of documents), schedules, and exhibits to the Plan to be filed with the Court, which may include: (a) the New Organizational Documents; (b) the Description of Restructuring Transactions; (c) the New Exit Notes Indenture; (d) the New Takeback Notes Indenture; (e) the New Revolver Facility Credit Agreement; (f) a list of the members of the New Boards (to the extent known); (g) the Schedule of Rejected Executory Contracts and Unexpired Leases; (h) the Schedule of Assumed Executory Contracts and Unexpired Leases; (i) the Schedule of Retained Causes of Action; and (j) certain other documents as are necessary or advisable to implement the Restructuring.

50.     To ensure that all holders of Claims receive notice of the Debtors' filing of the Plan Supplement, the Debtors propose to send a Plan Supplement Notice, substantially in the form attached to the Disclosure Statement Order as **Exhibit 6**, on the date the Debtors file the Plan Supplement, or as soon as practicable thereafter.

### III.     THE ASSUMPTION AND REJECTION NOTICES ARE REASONABLE AND APPROPRIATE

51.     Article V of the Plan provides that:

> Except as otherwise provided in this Plan, each Executory Contract and/or Unexpired Lease shall be deemed assumed, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date, pursuant to section 365 of the Bankruptcy Code, unless such Executory Contract and/or Unexpired Lease (a) was previously assumed or rejected; (b) previously expired or was terminated pursuant to its own terms; (c) is the subject of a motion to reject, assume, or assume and assign filed on or before the Effective Date; or (d) is designated specifically as an Executory Contract or Unexpired Lease on the Schedule of Rejected Executory Contracts and Unexpired Leases; *provided* the Debtors or the Reorganized Debtors, as applicable, retain the right to alter, amend, modify or supplement the Schedule of Rejected Executory Contracts and Unexpired Leases, including by way of adding or removing a particular Executory Contract or Unexpired Lease from the Schedule of Rejected Executory Contracts and

Unexpired Leases at any time through and including (60) Business
Days after the Effective Date.

*See* Plan at Article V.A.

52.    To ensure that the counterparties to Executory Contracts and Unexpired Leases receive notice of assumption or rejection of their Executory Contract or Unexpired Lease (and of the proposed cure claim, if any, or the deadline to file a rejection damages claim, if applicable), the Debtors will mail an Assumption Notice, substantially in the form attached to the Disclosure Statement Order as **Exhibit 7**, or a Rejection Notice, substantially in the form attached to the Disclosure Statement Order as **Exhibit 8**, as appropriate, at least 24 days prior to the Confirmation Hearing or such other date set by the Court.

## IV.    NON-SUBSTANTIVE MODIFICATIONS

53.    The Debtors request authorization to make non-substantive changes to the Disclosure Statement, Plan, Confirmation Hearing Notice, Solicitation Packages, Non-Voting Status Notices, Ballots, Cover Letter, Solicitation and Voting Procedures, Plan Supplement Notice, Assumption and Rejection Notices, and related documents without further orders of the Court, including changes to correct typographical and grammatical errors, if any, and to make conforming changes to the Disclosure Statement, the Plan, and any other materials in the Solicitation Packages before distribution. Fed. R. Bankr. P. 3019.

## NOTICE

54.    Pursuant to Bankruptcy Rule 2002 and paragraph 11 of the Procedures for Complex Cases in the Southern District of Texas, notice of this Motion will be provided to all creditors and indenture trustees, all equity security holders, the official committee of unsecured creditors, the Securities and Exchange Commission, the United States Trustee for Region 7, and all other parties in interest listed on the master service list maintained by the Debtors. The Debtors respectfully submit that no further notice is required under the circumstances.

Upon the foregoing Motion, the Debtors respectfully request that the Court (a) enter an order granting this Motion in substantially the form proposed and (b) grant such other relief as is just and proper.

Dated: November 17, 2023
Houston, Texas

Respectfully submitted,

*/s/ Charles A. Beckham, Jr.*

Charles A. Beckham, Jr. (TX Bar No. 02016600)
Patrick L. Hughes (TX Bar No. 10227300)
Kelli S. Norfleet (TX Bar No. 24070678)
Martha Wyrick (TX Bar No. 24101606)
Re'Necia Sherald (TX Bar No. 24121543)
HAYNES AND BOONE, LLP
1221 McKinney Street, Suite 400
Houston, TX 77010
Telephone: 1 (713) 547-2000
Email:      Charles.Beckham@HaynesBoone.com
            Patrick.Hughes@HaynesBoone.com
            Kelli.Norfleet@HaynesBoone.com
            Martha.Wyrick@HaynesBoone.com
            ReNecia.Sherald@HaynesBoone.com

- and -

Dennis F. Dunne (admitted *pro hac vice*)
Samuel A. Khalil (admitted *pro hac vice*)
Benjamin M. Schak (admitted *pro hac vice*)
MILBANK LLP
55 Hudson Yards
New York, NY 10001
Telephone: 1 (212) 530-5000
Email:      DDunne@Milbank.com
            SKhalil@Milbank.com
            BSchak@Milbank.com

*Counsel to the Debtors and*
*Debtors in Possession*

## CERTIFICATE OF SERVICE

I certify that, on November 17, 2023, a true and correct copy of the foregoing document was served through the Electronic Case Filing system of the United States Bankruptcy Court for the Southern District of Texas, and will be served as set forth in the Affidavit of Service to be filed by the Debtors' noticing agent.

/s/ Charles A. Beckham, Jr.
Charles A. Beckham, Jr.