# EXHIBIT A

# REDLINE OF JOINT CHAPTER 11 PLAN OF WESCO AIRCRAFT HOLDINGS, INC. *ET AL.* AGAINST FIRST AMENDED JOINT CHAPTER 11 PLAN OF WESCO AIRCRAFT HOLDINGS, INC. *ET AL.*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| *In re* | Case No. 23-90611 (MI) |
| **WESCO AIRCRAFT HOLDINGS, INC.**, *et al.*,[1] | Chapter 11 |
| Debtors. | (Jointly Administered) |

## FIRST AMENDED JOINT CHAPTER 11 PLAN OF
## WESCO AIRCRAFT HOLDINGS, INC. *ET AL.*

Charles A. Beckham, Jr. (02016600)
Patrick L. Hughes (10227300)
Kelli S. Norfleet (24070678)
HAYNES AND BOONE, LLP
1221 McKinney Street, Suite 4000
Houston, TX 77010
Telephone: 1 (713) 745-2000
~~Charles.Beckham@HaynesBoone.com~~Charles.Beckham@HaynesBoone.com
Patrick.Hughes@HaynesBoone.com
~~Patrick.Hughes@HaynesBoone.com~~
~~Kelli.Norfleet@HaynesBoone.com~~Kelli.Norfleet@HaynesBoone.com

Dennis F. Dunne (admitted *pro hac vice*)
Samuel A. Khalil (admitted *pro hac vice*)
Benjamin M. Schak (admitted *pro hac vice*)
MILBANK LLP
55 Hudson Yards
New York, NY 10001
Telephone: 1 (212) 530-5000
~~DDunne@Milbank.com~~DDunne@Milbank.com
SKhalil@Milbank.com
~~SKhalil@Milbank.com~~
~~BSchak@Milbank.com~~BSchak@Milbank.com

*Counsel to the Debtors and Debtors in Possession*

---

[1] The Debtors operate under the trade name Incora and have previously used the trade names Wesco, Pattonair, Haas, and Adams Aviation. A complete list of the Debtors in these chapter 11 cases, with each one's federal tax identification number and the address of its principal office, is available on the website of the Debtors' noticing agent at ~~http://www.kccllc.net/incora/~~http://www.kccllc.net/incora/. The service address for each of the Debtors in these cases is 2601 Meacham Blvd., Ste. 400, Fort Worth, TX 76137.

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................................................... i

INTRODUCTION ................................................................................................................. 1

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW ....................................................................................... 1

A.     Definitions ........................................................................................................... 1
B.     Rules of Interpretation .................................................................................. ~~19~~20
C.     Computation of Time ....................................................................................... 20
D.     Governing Law .......................................................................................... ~~20~~21
E.     Consent Rights ........................................................................................... ~~20~~21

ARTICLE II. ADMINISTRATIVE EXPENSES AND OTHER UNCLASSIFIED CLAIMS .................. 21

A.     General Administrative Expenses ..................................................................... 21
B.     Restructuring Expenses ................................................................................... 22
C.     Retained Professional Fees ........................................................................ ~~22~~23
       1.     Final Fee Applications ................................................................... ~~22~~23
       2.     Professional Fee Escrow Account ............................................... ~~23~~24
       3.     Fees and Expenses After Confirmation ........................................ ~~23~~24
D.     Statutory Fees .......................................................................................... ~~24~~25
E.     DIP Financing Claims ................................................................................ ~~24~~25
F.     Priority Tax Claims ................................................................................... ~~25~~26

ARTICLE III. CLAIMS AND INTERESTS ......................................................................... ~~25~~26

A.     Classification of Claims and Interests ........................................................ ~~25~~26
       1.     General Terms ........................................................................... ~~25~~26
       2.     Standards for Acceptance of a Plan ............................................ ~~25~~26
       3.     The Classes Under the Plan and Their Voting Rights .................. ~~26~~27
B.     Treatment of Claims and Interests .............................................................. ~~27~~28
       1.     Class 1 – Priority Non-Tax Claims ............................................. ~~27~~28
       2.     Class 2 – Other Secured Claims ................................................ ~~27~~28
       3.     Class 3 – ABL Facility Claims ................................................... ~~28~~29
       4.     Class 4 – 1L Notes Claims ........................................................ ~~28~~29
       5.     Class 5 – 1.25L Notes Claims ................................................... ~~29~~30
       6.     ~~Class 6a – 2026 Unsecured Notes Claims~~ .................... ~~29~~[Reserved] 30
       7.     ~~Class 6b – 2024 Unsecured Notes Claims~~[Reserved] ............ 30
       8.     Class 7a – General Unsecured Claims ........................................ 30
       9.     Class 7b – General Unsecured Convenience Claims .................... 31
       10.~~.~~  ~~Class 7c – General Unsecured Canada/Mexico Claims~~ ............ ~~31~~
       ~~11~~.    Class 8 – PIK Notes Claims ...................................................... 32

|  |  | ~~12~~11. | Class 9 – Intercompany Claims | 32 |
|  |  | ~~13~~12. | Class 10 – Existing Equity Interests | 32 |
|  |  | ~~14~~13. | Class 11 – Intercompany Interests | ~~32~~33 |
|  | C. | Reservations of Rights ~~Governing~~Regarding Unimpaired Claims | | 33 |
|  | D. | Subordination of Claims | | 33 |
|  | E. | Voting Classes | | 33 |

**ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN** — **34**

|  | A. | Global Settlement of Claims and Interests | | 34 |
|  | B. | Sources of Consideration for Distributions | | 34 |
|  |  | 1. | Cash | 34 |
|  |  | 2. | New Financing | 34 |
|  |  | 3. | New Common Equity | ~~35~~36 |
|  | C. | Effects of the Plan | | 36 |
|  |  | 1. | Organizational Existence | 36 |
|  |  | 2. | Vesting of Assets in the Reorganized Debtors | 36 |
|  |  | 3. | Cancellation of Loans, Securities, and Agreements | 37 |
|  |  | 4. | Binding Effect of New Organizational Documents | 38 |
|  | D. | Authorization to Implement the Plan | | ~~38~~39 |
|  |  | 1. | Restructuring Transactions | ~~38~~39 |
|  |  | 2. | Actions to Effectuate the Plan | ~~39~~40 |
|  |  | 3. | Authorization and Issuance of the New Common Equity | 40 |
|  | E. | Directors and Officers | | 40 |
|  |  | 1. | Resignation of Incumbent Directors | 40 |
|  |  | 2. | New Boards of Directors | ~~40~~41 |
|  |  | 3. | Officers | ~~40~~41 |
|  | F. | Tax and Regulatory Matters | | 41 |
|  |  | 1. | Filing of New Organizational Documents | 41 |
|  |  | 2. | Section 1146 Exemption | 41 |
|  | G. | Preservation of Causes of Action | | 42 |

**ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND/OR UNEXPIRED LEASES** — **43**

|  | A. | Assumption and Rejection | | 43 |
|  | B. | Assumed Contracts and Leases | | 44 |
|  |  | 1. | Cure of Defaults and Objections to Cure and Assumption | 44 |
|  |  | 2. | Dispute Resolution | 45 |
|  |  | 3. | Modifications, Amendments, Supplements, Restatements, and Other Agreements | 45 |
|  | C. | Rejected Contracts and Leases: Claims for Damages | | ~~45~~46 |
|  | D. | Particular Contracts and Leases | | 46 |
|  |  | 1. | Insurance Policies | 46 |
|  |  | 2. | Indemnification ~~of Directors, Officers, and Others          46~~Obligations 47 |  |
|  |  | 3. | Compensation and Benefit Plans | ~~47~~48 |
|  | E. | Postpetition Contracts and Leases | | 48 |

**ARTICLE VI. CLAIMS RESOLUTION** ................................................................ ~~48~~49

    A.    Allowance of Claims and Interests, Generally .......................... ~~48~~49
    B.    Contingent and Unliquidated Claims ......................................... 49
    C.    Amendments ............................................................................. ~~49~~50
    D.    Claims Subject to Avoidance Actions ...................................... ~~49~~50
    E.    Claims Paid or Payable by Third Parties .................................. 50
        1.    Claims Paid by Third Parties ......................................... 50
        2.    Claims Payable by Third Parties .................................... ~~50~~51
        3.    Applicability of Insurance Contracts ............................. 51

    F.    [Reserved] ................................................................................ 51
    G.    Claim Resolution Procedures Cumulative ............................... ~~51~~52

**ARTICLE VII. DISTRIBUTIONS** ...................................................................... ~~51~~52

    A.    The Disbursing Agent and Servicers ....................................... ~~51~~52
        1.    Powers and Roles ........................................................... ~~51~~52
        2.    Expenses ........................................................................ 52
    B.    Delivery Procedures ................................................................. ~~52~~53
        1.    Record Date .................................................................... ~~52~~53
        2.    Interim Distribution Date ............................................... ~~52~~53
        3.    Publicly Held Securities ................................................ ~~52~~53
        4.    Undeliverable Distributions and Unclaimed Property ... 53
    C.    Calculation ............................................................................... 54
        1.    Full Amount Payable ...................................................... 54
        2.    Distributions on Account of Obligations of Multiple Debtors ......... ~~54~~55
        3.    Minimum Distributions .................................................. ~~54~~55
        4.    Setoff and Recoupment .................................................. 55
        5.    No Postpetition Interest ................................................. 55
        6.    Allocation Between Principal and Accrued Interest ...... ~~55~~56
        7.    Single Satisfaction of Claims ........................................ ~~55~~56
    D.    Distributions to Holders of Disputed Claims ........................... ~~55~~56
    E.    Exemption from Securities Laws .............................................. 56
        1.    Exemption for Distributions Under Plan ....................... 56
        2.    Exemption for Issuances to Underwriters ..................... ~~56~~57
    F.    DTC ......................................................................................... 57
    G.    Compliance with Tax Requirements ......................................... ~~57~~58

**ARTICLE VIII. PROVISIONS RELATING TO RELEASES, EXCULPATIONS, AND INJUNCTIONS** .......................................................... 58

    A.    Compromise and Settlement .................................................... 58
    B.    Discharge of Claims and Termination of Interests ................... ~~58~~59
    C.    Release of Liens ....................................................................... 59
    D.    Releases by the Debtors ............................................................ 60

E.     Releases by Holders of Claims (Third-Party Release) ............ ~~61~~62
F.     Exculpation ............ 63
G.     Injunctions ............ 64
H.     Subordination Rights ............ ~~65~~66

**ARTICLE IX. CONDITIONS TO EFFECTIVE DATE** ............ ~~65~~**66**

A.     The Conditions ............ ~~65~~66
B.     Waiver of Conditions ............ ~~67~~68

**ARTICLE X. MODIFICATION, REVOCATION OR WITHDRAWAL OF PLAN** ............ ~~67~~**68**

A.     Modification and Amendments ............ ~~67~~68
B.     Effect of Confirmation on Modifications ............ ~~68~~69
C.     Revocation or Withdrawal ............ ~~68~~69

**ARTICLE XI. RETENTION OF JURISDICTION** ............ ~~68~~**69**

**ARTICLE XII. MISCELLANEOUS PROVISIONS** ............ ~~71~~**72**

A.     Effect of Plan ............ ~~71~~72
   1.     Reservation of Rights ............ ~~71~~72
   2.     Immediate Binding Effect ............ ~~71~~72
   3.     Entire Agreement ............ ~~71~~72
   4.     Successors and Assigns ............ ~~71~~72
   5.     Termination of Injunctions and Stays ............ ~~71~~72
   6.     Votes Solicited in Good Faith ............ ~~72~~73
   7.     Dissolution of the Committee ............ ~~72~~73
   8.     Closing of Chapter 11 Cases ............ ~~72~~73
B.     Contents of Plan ............ ~~72~~74
   1.     Exhibits ............ ~~72~~74
   2.     Non-Severability ............ ~~73~~74
   3.     Conflicts ............ ~~73~~74
C.     Notices ............ ~~73~~74

> **The Debtors encourage all holders of Claims and Interests to read this Plan and the accompanying Disclosure Statement in their entirety before voting to accept or reject the Plan and before determining whether to opt out of the Third-Party Release set forth at Article VIII.E.**

## INTRODUCTION

Wesco Aircraft Holdings, Inc. ("*Wesco Holdings*") and its affiliated debtors (each a "*Debtor*" and, collectively, the "*Debtors*") jointly propose this chapter 11 plan of reorganization, pursuant to section 1121(a) of title 11 of the U.S. Code (the "*Bankruptcy Code*"). Each Debtor is the proponent of its Plan within the meaning of section 1129 of the Bankruptcy Code. Holders of Claims or Interests may refer to the Disclosure Statement for a discussion of the Debtors' history, business, assets, results of operations, historical financial information, and projections of future operations, as well as a summary of the Plan.

# ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

### A.   DEFINITIONS

As used in the Plan, capitalized terms have the meanings set forth below.

1.     "*1.25L Indenture*" means the Indenture, dated as of March 28, 2022, by and among Wesco Holdings, the guarantors party thereto, and the 1.25L Indenture Trustee, governing the 1.25L Notes.

2.     "*1.25L Indenture Trustee*" means Wilmington Savings Fund Society, FSB, as indenture trustee and collateral agent under the 1.25L Indenture, and its predecessors, successors, assigns, or any replacement indenture trustee appointed pursuant to the terms of the 1.25L Indenture.

3.     "*1.25L Noteholder Consent Rights*" has the meaning set forth in the Restructuring Support Agreement.

4.     ~~3.~~ "*1.25L Notes*" means the 13.125% Senior Secured 1.25 Lien PIK Notes due November 2027 under the 1.25L Indenture.

5.     ~~4.~~ "*1.25L Notes Claim*" means any Claim arising on account of the "Obligations" under the "Note Documents," each as defined in the 1.25L Indenture.

1

~~5.      "*1.25L Notes Settlement Consideration*" means [•].~~

6.      "*1L Indenture*" means the Indenture, dated as of March 28, 2022, by and among Wesco Holdings, the guarantors party thereto, and the 1L Indenture Trustee, governing the 1L Notes.

7.      "*1L Indenture Trustee*" means Wilmington Savings Fund Society, FSB, as indenture trustee and collateral agent under the 1L Indenture, and its predecessors, successors, assigns, or any replacement indenture trustee appointed pursuant to the terms of the 1L Indenture.

8.      "*1L Notes*" means the 10.50% Senior Secured First Lien PIK Notes due November 2026 under the 1L Indenture.

9.      "*1L Notes Claim*" means any Claim arising on account of the "Obligations" under the "Note Documents," each as defined in the 1L Indenture.

~~10.      "*1L Notes Deficiency Claim*" means, with respect to any 1L Notes Claim, the portion thereof in excess of the value distributed on account of such 1L Notes Claim under Article III.B.4.~~

10.      ~~11.~~ "*2022 Financing Adversary Proceeding*" means the adversary proceeding captioned *Wesco Aircraft Holdings, Inc. et al. v. SSD Investments Ltd. et al.*, Adv. Pro. No. 23-03091 (MI) (Bankr. S.D. Tex. June 1, 2023).

11.      ~~12.~~ "*2022 Financing State Court Litigation*" means ~~any Cause of Action arising out of or related to (a) the facts and circumstances alleged in the complaint filed in~~ the proceedings in New York Supreme Court (New York County) captioned (a) *SSD Investments Ltd. et al. v. Wilmington Savings Fund Society, FSB et al.*, Index No. 654068/2022 ~~(N.Y. Sup. Ct., N.Y. Cty. Oct. 31, 2022), including all Causes of Action alleged therein; (b) the facts and circumstances alleged in the complaint filed in~~, and (b) *Langur Maize, L.L.C. v. Platinum Equity Advisors, LLC, et al.*, Index No. 651548/2023 ~~(N.Y. Sup. Ct., N.Y. Cty. Mar. 27, 2023), including all Causes of Action alleged therein; (c) the facts and circumstances alleged in any complaint, counterclaim, or crossclaim filed in the 2022 Financing Adversary Proceeding, including all Causes of Action alleged therein; (d) the Standing Motions, including all Causes of Action alleged therein; (e) the 2022 Financing Transactions, including: (i) the facts and circumstances related to the negotiation of and entry into the 1L Indenture or the 1.25L Indenture and any related transactions or agreements, including any related amendments to the Unsecured Notes Indentures or the security or collateral documents related thereto; (ii) any consents provided in connection with any amendments, supplements or waivers with respect to the 2024 Notes, the 2026 Notes, the 2027 Notes, the Unsecured Notes Indentures or related documents; (iii) the issuance of additional notes under the 2026 Unsecured Indenture; or (iv) the purchase or exchange of any "Obligations" under, and as defined in, the Unsecured Notes Indentures through the 2022 Financing Transactions; and/or (f) any associated documentation or transactions related to the foregoing.~~

12.      ~~13.~~ "*2022 Financing Transactions*" means, collectively, the transactions executed on March 28, 2022 in connection with the 2024 Unsecured Indenture, the 2026 Unsecured

Indenture, the 2027 Unsecured Indenture, the 1L Indenture and the 1.25L Indenture and any related or subsequent transactions, purchases or exchanges contemplated by such transactions.

13. ~~14.~~ "*2024 Unsecured Indenture*" means the Indenture, dated as of November 27, 2019 (as amended by that certain First Supplemental Indenture, dated as of January 9, 2020, as further amended by that certain Second Supplemental Indenture, dated as of January 28, 2020, as further amended by that certain Third Supplemental Indenture, dated as of March 28, 2022, and as further amended by that certain Fourth Supplemental Indenture, dated as of March 28, 2022), by and among Wesco Holdings, the guarantors party thereto, and the 2024 Unsecured Indenture Trustee, governing the 2024 Unsecured Notes.

14. ~~15.~~ "*2024 Unsecured Indenture Trustee*" means UMB Bank n.a., as indenture trustee under the 2024 Unsecured Indenture, and its predecessors, successors, assigns, or any replacement indenture trustee appointed pursuant to the terms of the 2024 Unsecured Indenture.

15. ~~16.~~ "*2024 Unsecured Notes*" means the 8.50% Senior Notes due November 15, 2024 under the 2024 Unsecured Indenture.

16. ~~17.~~ "*2024 Unsecured Notes Claim*" means any Claim arising on account of, derived from, based upon or arising under the 2024 Unsecured Indenture or related documents.

~~18. "*2024 Unsecured Notes Settlement Equity*" means [•]% of the New Common Equity, subject to dilution by any New Common Equity issued in respect of the Management Incentive Plan.~~

17. ~~19.~~ "*2026 Unsecured Indenture*" means the Indenture, dated as of November 27, 2019 (as amended by that certain First Supplemental Indenture, dated as of January 9, 2020, as further amended by that certain Second Supplemental Indenture, dated as of January 28, 2020, as further amended by that certain Third Supplemental Indenture, dated as of March 28, 2022, and as further amended by that certain Fourth Supplemental Indenture, dated as of March 28, 2022), by and among Wesco Holdings, the guarantors party thereto, and the 2026 Unsecured Indenture Trustee, governing the 2026 Unsecured Notes.

18. ~~20.~~ "*2026 Unsecured Indenture Trustee*" means UMB Bank n.a., as indenture trustee under the 2026 Unsecured Indenture, and its predecessors, successors, assigns, or any replacement indenture trustee appointed pursuant to the terms of the 2026 Unsecured Indenture.

19. ~~21.~~ "*2026 Unsecured Notes*" means the 9.00% Senior Notes due November 15, 2026 under the 2026 Unsecured Indenture.

20. ~~22.~~ "*2026 Unsecured Notes Claim*" means any Claim arising on account of, derived from, based upon or arising under the 2026 Unsecured Indenture or related documents.

~~23. "*2026 Unsecured Notes Settlement Equity*" means [•]% of the New Common Equity, subject to dilution by any New Common Equity issued in respect of the Management Incentive Plan.~~

21.   ~~24.~~ "*2027 Unsecured Indenture*" means the Indenture, dated as of November 27, 2019 (as amended by that certain First Supplemental Indenture, dated as of January 9, 2020, as further amended by that certain Second Supplemental Indenture, dated as of January 28, 2020, as further amended by that certain Third Supplemental Indenture, dated as of March 28, 2022, and as further amended by that certain Fourth Supplemental Indenture, dated as of March 28, 2022), by and among Wesco Holdings, the guarantors party thereto, and the 2027 Unsecured Indenture Trustee, governing the 2027 Unsecured Notes.

22.   ~~25.~~ "*2027 Unsecured Indenture Trustee*" means BOKF, NA, as indenture trustee under the 2027 Unsecured Indenture, and its predecessors, successors, assigns, or any replacement indenture trustee appointed pursuant to the terms of the 2027 Unsecured Indenture.

23.   ~~26.~~ "*2027 Unsecured Notes*" means the 13.125% Senior Notes due November 15, 2027 under the 2027 Unsecured Indenture.

24.   ~~27.~~ "*2027 Unsecured Notes Claim*" means any Claim arising on account of, derived from, based upon or arising under the 2027 Unsecured Indenture or related documents.

25.   "*50-Percent Shareholder*" means a "50-percent shareholder" (within the meaning of Section 382(g)(4)(D) of the Internal Revenue Code of 1986, as amended) of the Debtors.

26.   ~~28.~~ "*ABL Agent*" means Bank of America, N.A., as administrative agent and collateral agent under the ABL Credit Agreement, and its predecessors, successors, assigns, or any replacement agent appointed pursuant to the terms of the ABL Credit Agreement.

27.   ~~29.~~ "*ABL Credit Agreement*" means the Revolving Credit Agreement, dated as of January 9, 2020 (as amended on and before March 28, 2022), by and among Wolverine Intermediate Holding II Corporation, as Holdings, Wesco Holdings, as Ultimate Lead Borrower, certain subsidiaries of Wesco Holdings, as Borrowers and Guarantors, the ABL Agent and several financial institutions or other entities from time to time party thereto as "Lenders" and "Issuing Banks."

28.   ~~30.~~ "*ABL Facility*" means that certain asset-based credit facility governed the ABL Credit Agreement.

29.   ~~31.~~ "*ABL Facility Claim*" means any Claim arising on account of the "Obligations," as defined in the ABL Credit Agreement.

30.   "*ABL Lenders*" means the lenders under the ABL Facility.

31.   ~~32.~~ "*Administrative Expense*" means any cost or expense of administration of the Chapter 11 Cases entitled to priority pursuant to sections 364(c)(1), 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the Debtors' businesses; (b) professional compensation and reimbursement awarded or allowed pursuant to sections 330(a) or 331 of the Bankruptcy Code, including the Retained Professional Fees; (c) any administrative expense described in section 503(b)(9) of the Bankruptcy Code; (d) any and all fees and charges assessed against the Estates pursuant to

4

chapter 123 of title 28 of the U.S. Code; (e) DIP Financing Claims; and (f) Restructuring Expenses.

32.   ~~33.~~ "*Allowed*" means, with respect to any Claim or Interest, except as otherwise provided in this Plan, a Claim or Interest that has been or hereafter is: (a) evidenced by a Proof of Claim or Interest, as applicable, timely filed by the applicable Claims Bar Date or that is not required to be evidenced by a filed Proof of Claim or Interest, as applicable, under the Plan, the Bankruptcy Code or a Final Order, including the Confirmation Order or any Final Order resolving an objection to the Claim or Interest; (b) scheduled by the Debtors as neither disputed, contingent nor unliquidated, and as for which no Proof of Claim or Interest, as applicable, has been timely filed; or (c) expressly deemed Allowed (i) pursuant to the Plan, (ii) in any stipulation that is approved by the Bankruptcy Court or (iii) pursuant to any contract, instrument, indenture or other agreement entered into or assumed in connection herewith; *provided* that a Claim shall be considered Allowed pursuant to the foregoing clause (a) or (b) only if and to the extent that no objection to the allowance thereof or request for estimation has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Court or, if such an objection or request is so interposed, such Claim shall have been Allowed by a Final Order. Except as otherwise specified in the Plan or any Final Order (w) any Claim that has been or is hereafter scheduled by the Debtors as contingent, unliquidated, or disputed, and for which no Proof of Claim or Interest is or has been timely filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Court; (x) the amount of an Allowed Claim shall not include interest or other charges on such Claim from and after the Petition Date; (y) no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor or Reorganized Debtor, as applicable; and (z) for the avoidance of doubt, a Proof of Claim filed after the Claims Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-filed Claim; *provided* that an Allowed Claim: (1) includes a previously Disputed Claim to the extent such Disputed Claim becomes allowed and (2) shall be net of any setoff that may be exercised by any Debtor against the holder of such Claim. Notwithstanding anything to the contrary in the Plan, the Reorganized Debtors shall retain all claims and defenses with respect to Allowed Claims that are reinstated or otherwise Unimpaired pursuant to the Plan. "*Allow*," "*Allowing*," and "*Allowance*," shall have correlative meanings. A Claim allowed by the Debtors or by the Bankruptcy Court solely for the purpose of voting to accept or reject the Plan shall not be considered an Allowed Claim unless it satisfies this definition.

33.   ~~34.~~ "*Article*" means an article of the Plan.

34.   ~~35.~~ "*Avoidance Actions*" means any and all actual or potential claims and Causes of Action to avoid a transfer of property from, or an obligation incurred by, one or more of the Debtors, that arise under (a) chapter 5 of the Bankruptcy Code, including sections 544, 545, 547, 548, 549, 550, 551, and 553(b) of the Bankruptcy Code or (b) similar local, state, federal or non-U.S. law, including fraudulent transfer law.

35.   ~~36.~~ "*Bankruptcy Code*" has the meaning specified in this Plan's Introduction.

36.   ~~37.~~ "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Texas.

37.   38. "*Bankruptcy Rules*" means (a) the Federal Rules of Bankruptcy Procedure, as amended from time to time and as applicable to the Chapter 11 Cases, promulgated pursuant to 28 U.S.C. § 2075, and (b) the general, local, and chambers rules and procedures of the Bankruptcy Court.

38.   39. "*Business Day*" means any day other than (a) a Saturday or Sunday, (b) a "legal holiday" (as defined in Bankruptcy Rule 9006(a)), or (c) a day on which commercial banks in New York are required or authorized by law to remain closed.

40.   "*Canada/Mexico Debtors*" means Haas Group Canada, Haas TCM de Mexico, and Wesco Aircraft Canada.

39.   "*Carlyle*" means Carlyle Global Credit Investment Management, LLC and any of its managed, advised, or sub-advised funds.

40.   41. "*Cash*" means cash and cash equivalents.

41.   42. "*Cause of Action*" means any action, claim, counterclaim, cross-claim, third-party claim, cause of action, controversy, demand, right, remedy, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, debt, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. For the avoidance of doubt, "Cause of Action" includes: (a) any right of setoff, recoupment, or counterclaim and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code, including, but not limited to, Avoidance Actions; (d) any counterclaim or defense, including fraud, mistake, duress, usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any Avoidance Action.

42.   43. "*Chapter 11 Cases*" means the jointly administered cases of the Debtors under chapter 11 of the Bankruptcy Code.

43.   44. "*Claim*" means a "claim," as defined in section 101(5) of the Bankruptcy Code against a Debtor.

44.   45. "*Claim Objection and Settlement Procedures Order*" means the *Order Approving Claim Objection and Settlement Procedures* [Dkt. No. [•]].

45.   46. "*Claim Objection Deadline*" means the date that is 270 days following the Effective Date, or such later date that is approved by order of the Bankruptcy Court for cause upon motion by the Reorganized Debtors.

46.   47. "*Claims Agent*" means Kurtzman Carson Consultants LLC, in its capacity as claims agent retained in these cases.

47.   48. "*Claims Bar Date*" means the applicable deadline by which to file a Proof of Claim, as set forth in the Claims Bar Date Order.

6

48. 49. "*Claims Bar Date Order*" means the *Order (I) Setting Bar Dates for Filing Proofs of Claim, (II) Approving the Form of Proofs of Claim and the Manner of Filing, (III) Approving Notice of Bar Dates, and (IV) Granting Related Relief* [Dkt. No. 750].

49. 50. "*Claims Register*" means the official register of Claims maintained by the Claims Agent in the Chapter 11 Cases.

50. 51. "*Class*" means a class of Claims or Interests designated in Article III of the Plan.

51. 52. "*Committee*" means the official committee of unsecured creditors of the Debtors, appointed by the U.S. Trustee pursuant to section 1102 of the Bankruptcy Code on June 16, 2023 [Dkt. No. 261], as reconstituted from time to time.

52. 53. "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Cases.

53. 54. "*Confirmation Date*" means the date on which Confirmation occurs.

54. 55. "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan.

55. 56. "*Confirmation Objection Deadline*" means the deadline by which objections to Confirmation of the Plan must be received by the Debtors and filed on the docket of the Chapter 11 Cases, which deadline shall be established by the Bankruptcy Court in the Disclosure Statement Order.

56. 57. "*Confirmation Order*" means the Bankruptcy Court order confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which order shall be in form and substance reasonably acceptable to the Debtors and the Required Consenting 1L Noteholders.

57. "*Consenting 1L Noteholders*" has the meaning set forth in the Restructuring Support Agreement.

58. "*Consenting 1.25L Noteholders*" has the meaning set forth in the Restructuring Support Agreement.

59. "*Consenting 2027 Unsecured Noteholders*" has the meaning set forth in the Restructuring Support Agreement.

60. "*Consenting Equity Holders*" has the meaning set forth in the Restructuring Support Agreement.

61. 58. "*Consummation*" means the occurrence of the Effective Date.

62. 59. "*Covered Entities*" has the meaning ascribed to it in Article VIII.G.

63. 60. "*Covered Exculpation Matters*" has the meaning ascribed to it in Article VIII.F.

64. 61. "*Covered Matters*" has the meaning ascribed to it in Article VIII.G.

65. 62. "*Covered Released Matters*" has the meaning ascribed to it in Article VIII.E.

66. 63. "*Cure*" or "*Cure Claim*" means a monetary Claim (unless waived or modified by the applicable counterparty) on account of a Debtor's defaults under an Executory Contract and/or Unexpired Lease assumed by such Debtor under section 365 or 1123 of the Bankruptcy Code, other than (a) a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code or (b) a Claim that, by consent of the applicable counterparty, is to be treated as a General Unsecured Claim.

67. 64. "*D&O Policy*" means any insurance policy, including tail insurance policies, for directors', members', trustees', and officers' liability maintained by the Debtors and in effect or purchased as of the Petition Date.

68. 65. "*Debtor*" and "*Debtors*" have the meaning specified in this Plan's Introduction.

69. 66. "*Debtor Release*" means the releases set forth at Article VIII.D of the Plan.

70. 67. "*Definitive Documents*" means, collectively, the Plan (including the Plan Supplement), the Confirmation Order, the Solicitation Materials, the New Debt Documents, the New Organizational Documents, and all other documents, motions, pleadings, briefs, applications, orders, agreements, supplements, and other filings related to any of the foregoing or as may be reasonably necessary or advisable to implement the Restructuring and the Restructuring Transactions, and all other "Definitive Documents" as defined in the Restructuring Support Agreement.

71. 68. "*Description of Restructuring Transactions*" means a summary description of certain Restructuring Transactions, which shall be in form and substance acceptable to the Debtors and reasonably acceptable to the Required Consenting 1L Noteholders, including any changes to the corporate or capital structure of the Debtors (to the extent known), to be made on the Effective Date.

72. 69. "*DIP Agent*" means Wilmington Savings Fund Society, FSB, in its capacity as administrative agent and collateral agent under the DIP Note Purchase Agreement, its successors, assigns, or any replacement agent appointed pursuant to the terms of the DIP Documents.

73. 70. "*DIP Documents*" means the DIP Note Purchase Agreement, all other "Note Documents" (as defined in the DIP Note Purchase Agreement), and all other documentation related to the DIP Notes, including, as applicable, security agreements, pledge agreements, debentures, mortgages, control agreements, mortgages, deeds, charges, guarantees, promissory notes, intercompany notes, certificates, instruments, intellectual property security agreements, notes, fee letters and such other documents that are ancillary or incidental thereto or that may be reasonably requested by the DIP Secured Parties in connection with the DIP Notes, in each case, as amended, restated, supplemented, waived or otherwise modified from time to time in accordance with the terms thereof and authorized by the DIP Orders.

74. ~~71.~~ "*DIP Financing*" means the debtor-in-possession financing facility provided to the Debtors pursuant to the DIP Note Purchase Agreement and the DIP Orders.

75. ~~72.~~ "*DIP Financing Claim*" means any Claim on account of DIP Obligations.

76. ~~73.~~ "*DIP Note Purchase Agreement*" means that certain Senior Secured Superpriority Debtor-in-Possession Note Purchase Agreement, dated as of June 2, 2023, by and among Wesco Holdings, as issuer, Wolverine Intermediate Holding, the other guarantors party thereto, the DIP Agent and the several financial institutions or other entities from time to time party thereto as "DIP Purchasers", as amended, restated, modified, and/or supplemented from time to time in accordance with the terms thereof and the DIP Orders.

77. ~~74.~~ "*DIP Notes*" means the "Notes," as defined in the DIP Note Purchase Agreement.

78. ~~75.~~ "*DIP Obligations*" means all extensions of credit, financial accommodations, reimbursement obligations, fees and premiums (including commitment fees, upfront fees, exit fees, backstop fees or premiums, administrative agency fees, and any other fees payable pursuant to the DIP Documents), costs, expenses and other liabilities, and all other obligations (including indemnities and similar obligations, whether contingent or absolute) due or payable to or for the benefit of any DIP Secured Party or any indemnified party related thereto under the DIP Documents, including all "DIP Obligations" (as defined in the DIP Orders).

79. ~~76.~~ "*DIP Orders*" means the Interim DIP Order and the Final DIP Order.

80. ~~77.~~ "*DIP Purchasers*" means the "Purchasers," as defined in the DIP Note Purchase Agreement.

81. ~~78.~~ "*DIP Secured Parties*" means the "Secured Parties," as defined in the DIP Note Purchase Agreement.

82. ~~79.~~ "*Director*" means a member of the board of directors or board of managers, as applicable, of Reorganized Incora.

83. ~~80.~~ "*Disallowed*" means, with respect to any Claim or Interest, (a) a Claim or Interest, or any portion thereof, that has been disallowed by a Final Order ~~or,~~ (b) except as otherwise specified in the Plan or a Final Order, a Claim that has been scheduled by the Debtors at zero or as contingent, disputed or unliquidated or that has not been scheduled by the Debtors and, in each case, as to which no Proof of Claim has been timely filed, or (c) the contingent or unliquidated portion of a Disputed Claim for which a Proof of Claim has been filed, if no motion to estimate such portion has been filed on or before the Claim Objection Deadline. "*Disallow*" and "*Disallowance*" shall have correlative meanings.

84. ~~81.~~ "*Disbursing Agent*" means, as applicable, the Debtors or Reorganized Debtors or any Person or Entity that the Debtors or Reorganized Debtors select to make or facilitate distributions in accordance with the Plan.

85. ~~82.~~ "*Disclosure Statement*" means the *Disclosure Statement for the Joint Chapter 11 Plan of Wesco Aircraft Holdings, Inc. et al.*, dated as of ~~November 17~~December 27, 2023, as

it may be amended, supplemented, restated, or modified from time to time, including all of its exhibits and schedules.

86. ~~83.~~ "*Disclosure Statement Order*" means the order entered by the Bankruptcy Court, approving the Disclosure Statement.

87. ~~84.~~ "*Disputed*" means, with respect to a Claim or Interest, any Claim or Interest that is not yet Allowed or Disallowed, including (a) any Claim that is subject to review by the Debtors or that has been disputed in any manner by the Debtors prior to the Claim Objection Deadline and (b) any Claim as to which any party in interest has, on or before the Confirmation Date, interposed and not withdrawn an objection or request for estimation; *provided*, for the avoidance of doubt, that no Claim or Interest shall be Disputed if it is expressly deemed Allowed by this Plan or if it is Allowed by a Final Order.

88. ~~85.~~ "*Distribution Record Date*" means the Confirmation Date or such other date prior to the Effective Date that is selected pursuant to a notice filed by the Debtors on the docket in Chapter 11 Cases.

89. ~~86.~~ "*DTC*" means the Depository Trust Company.

90. ~~87.~~ "*Effective Date*" means, with respect to the Plan, (a) the first Business Day on which all conditions precedent specified in Article IX.A of the Plan have been satisfied or waived in accordance with the Plan or (b) such later date as agreed to by the Debtors and the Required Consenting 1L Noteholders (whose consent is not to be unreasonably withheld). Without limiting the foregoing, other than as set forth in the Description of Restructuring Transactions, any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

91. ~~88.~~ "*Entity*" means any "entity," as defined in section 101(15) of the Bankruptcy Code.

92. ~~89.~~ "*Estate*" means, with respect to a particular Debtor, the estate created for such Debtor upon commencement of its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

93. ~~90.~~ "*Excluded Party*" means any Entity that (a) elects to opt out of the Third-Party Release, if permitted to opt out; (b) files with the Bankruptcy Court an objection to the Plan, including the Third-Party Release or the Debtor Release, that is not consensually resolved before Confirmation, or supports any such objection or objector; or (c) is designated as an Excluded Party pursuant to the Plan Supplement; *provided that* (i) no Initial Consenting Party and (ii) none of the Committee, its members or any advisor thereto or related party shall be an Excluded Party pursuant to the foregoing clause (c).

94. ~~91.~~ "*Exculpated Parties*" means, collectively, and in each case in their capacities as such and, in each case, to the maximum extent permitted by law: (i) the Debtors, (ii) the Reorganized Debtors, (iii) the Committee and its members, ~~and~~ (iv) any independent director of a Debtor (including Patrick Bartels as independent director of Wolverine Intermediate Holding) and (v) in each case, the Retained Professionals of the foregoing.

95. 92. "*Executory Contract and/or Unexpired Lease*" means a contract or a lease to which a Debtor is a party or with respect to which the Debtor may be liable that is capable of being assumed, assumed and assigned or rejected under section 365 or 1123 of the Bankruptcy Code, including any modifications, amendments, addenda or supplements thereto.

96. 93. "*Existing Equity Documents*" means the governance documents of the Debtors in effect immediately prior to Consummation of the Plan.

97. 94. "*Existing Equity Interests*" means Interests in any Debtor other than Intercompany Interests.

98. 95. "*Final DIP Order*" means the Bankruptcy Court order filed at Docket No. 396, authorizing the Debtors to enter into the DIP Note Purchase Agreement and access the DIP Financing on a final basis and authorizing the consensual use of cash collateral of certain secured parties, including the ABL Lenders, and granting certain agreed adequate protection, as set forth therein.

99. 96. "*Final Order*" means, as applicable, an order entered by the Bankruptcy Court or other court of competent jurisdiction: (a) that has not been reversed, stayed, modified, amended, or revoked, and as to which (i) any right to appeal or seek leave to appeal, certiorari, review, reargument, stay, or rehearing has been waived or (ii) the time to appeal or seek leave to appeal, certiorari, review, reargument, stay, or rehearing has expired and no appeal, motion for leave to appeal, or petition for certiorari, review, reargument, stay, or rehearing is pending or (b) as to which an appeal has been taken, a motion for leave to appeal, or petition for certiorari, review, reargument, stay, or rehearing has been filed and (i) such appeal, motion for leave to appeal or petition for certiorari, review, reargument, stay, or rehearing has been resolved by the highest court to which the order or judgment was appealed or from which leave to appeal, certiorari, review, reargument, stay, or rehearing was sought and (ii) the time to appeal (in the event leave is granted) further or seek leave to appeal, certiorari, further review, reargument, stay, or rehearing has expired and no such appeal, motion for leave to appeal, or petition for certiorari, further review, reargument, stay, or rehearing is pending; *provided*, that the possibility that a request for relief under Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules or applicable non-bankruptcy law may be filed relating to such order shall not prevent such order from being a Final Order.

100. "*Financing Litigation*" means any Cause of Action arising out of or related to (a) the facts and circumstances alleged in any complaint filed in the 2022 Financing State Court Litigation, including all Causes of Action alleged therein; (b) the facts and circumstances alleged in any complaint, counterclaim, or crossclaim filed in the 2022 Financing Adversary Proceeding, including all Causes of Action alleged therein; (c) the Standing Motions, including all Causes of Action alleged therein; (d) the 2022 Financing Transactions, including: (i) the facts and circumstances related to the negotiation of and entry into the 1L Indenture or the 1.25L Indenture and any related transactions or agreements, including any related amendments to the Unsecured Notes Indentures or the security or collateral documents related thereto; (ii) any consents provided in connection with any amendments, supplements or waivers with respect to the 2024 Notes, the 2026 Notes, the 2027 Notes, the Unsecured Notes Indentures or related documents; (iii) the issuance of additional notes under the 2026 Unsecured Indenture; or (iv) the purchase or exchange of any "Obligations" under, and as defined in, the Unsecured Notes Indentures through

the 2022 Financing Transactions; and/or (e) any associated documentation or transactions related to the foregoing.

101. ~~97.~~ "*First Lien Noteholder Group*" means the ad hoc group of holders of 1L Notes and DIP Notes described in that certain *Verified Statement of Davis Polk & Wardwell LLP and Porter Hedges LLP Pursuant to Federal Rule of Bankruptcy Procedure 2019* [Dkt. No. 147], as amended from time to time.

102. ~~98.~~ "*General Administrative Expenses*" means any Administrative Expenses other than Retained Professional Fees, Restructuring Expenses, DIP Financing Claims, and Statutory Fees.

103. ~~99.~~ "*General Administrative Expenses Bar Date*" means the date that is thirty (30) calendar days after the later of (a) the Effective Date and (b) the date when such Claim becomes due and payable by the Debtors in the ordinary course, unless otherwise ordered by the Bankruptcy Court.

104. ~~100.~~ "*General Administrative Expenses Objection Deadline*" means the deadline for objecting to a General Administrative Expense, which shall be on the date that is the later of (a) 180 days after the Effective Date and (b) such later date as may be set by the Bankruptcy Court upon a motion by the Reorganized Debtors; *provided* that, if the Reorganized Debtors file such a motion before the expiration of the then-effective General Administrative Expenses Objection Deadline, such General Administrative Expenses Objection Deadline shall be tolled pending entry of a further order by the Bankruptcy Court.

~~101. "*General Unsecured Canada/Mexico Claim*" means a Claim asserted against a Canada/Mexico Debtor, other than an Administrative Expense, an Other Secured Claim, a Priority Tax Claim, a Priority Non-Tax Claim, an ABL Facility Claim, a 1L Notes Claim, a 1.25L Notes Claim, a PIK Notes Claim, an Intercompany Claim, a 2026 Unsecured Notes Claim, or a 2024 Unsecured Notes Claim.~~

105. ~~102.~~ "*General Unsecured Claim*" means any Claim, other than an Administrative Expense, an Other Secured Claim, a Priority Tax Claim, a Priority Non-Tax Claim, an ABL Facility Claim, a 1L Notes Claim ~~(other than a 1L Notes Deficiency Claim)~~, a 1.25L Notes Claim, a PIK Notes Claim, a General Unsecured Convenience Claim, or an Intercompany ~~Claim, a 2026 Unsecured Notes Claim, a 2024 Unsecured Notes Claim or a General Unsecured Canada/Mexico~~ Claim. For the avoidance of doubt, ~~any 1L~~every 2024 Unsecured Notes ~~Deficiency~~Claim, 2026 Unsecured Notes Claim and 2027 Unsecured Notes Claim shall be a General Unsecured Claim.[2]

106. ~~103.~~ "*General Unsecured Convenience Claim*" means any Claim that is Allowed in an amount of $~~[•]~~1,500,000 or less, other than an Administrative Expense, an Other Secured Claim, a Priority Tax Claim, a Priority Non-Tax Claim, an ABL Facility Claim, a 1L Notes

---

[2] ~~Notwithstanding anything to the contrary herein, the Debtors reserve the right to amend this Plan, including to reclassify 1.25L Notes Claims, 2026 Unsecured Notes Claims and/or 2024 Unsecured Notes Claims as General Unsecured Claims.~~

Claim, a 1L Notes Deficiency Claim, a 1.25L Notes Claim, a 2024 Unsecured Notes Claim or, a 2026 Unsecured Notes Claim, a 2027 Unsecured Notes Claim, a PIK Notes Claim, or an Intercompany Claim, or; *provided* that the Allowed amount of all Claims held by a holder and its Affiliates shall be aggregated for purposes of the foregoing calculation. Holders of Claims that are Allowed in an amount in excess of $1,500,000 that otherwise meet the foregoing criteria may opt into treatment as a General Unsecured Canada/MexicoConvenience Claim by making a ballot election to waive any Allowed amounts that are in excess of the $1,500,000 threshold.

107.   104.  "*Global Settlement*" has the meaning specified in Article IV.A of the Plan.

108.   105.  "*Governmental Unit*" means any "governmental unit," as defined in section 101(27) of the Bankruptcy Code.

106.   "*GUC Settlement Distribution*" means [•].

107.   "*Haas Group Canada*" means Haas Group Canada Inc.

108.   "*Haas TCM de Mexico*" means Haas TCM de Mexico, S. de R.L. de C.V.

109.   "*Impaired*" means "impaired" within the meaning of such term in section 1124 of the Bankruptcy Code.

110.   "*Indemnification Obligation*" means any existing or future obligation of any Debtor to indemnify current and former directors, officers, members, managers, sponsors, agents or employees of any of the Debtors who served in such capacity, with respect to or based upon such service or any act or omission taken or not taken in any of such capacities, or for or on behalf of any Debtor, whether pursuant to agreement, letters, the Debtors' respective memoranda, articles or certificates of incorporation, corporate charters, bylaws, operating agreements, limited liability company agreements, or similar corporate or organizational documents or other applicable contract or law in effect as of the Effective Date.

111.   "*Initial Consenting Party*" means each Consenting 1L Noteholder, Consenting 1.25L Noteholder and Consenting Equity Holder that is party to the Restructuring Support Agreement as of the date of its execution, [•], 2023.

112.   111.  "*Intercompany Claim*" means any Claim held by (a) another Debtor or (b) a non-Debtor that is a wholly owned (other than de minimis ownership by nominees that are employees of the Debtor) direct or indirect subsidiary of a Debtor.

113.   112.  "*Intercompany Interest*" means any Interest held by (a) a Debtor or (b) a non-Debtor that is a wholly owned (other than de minimis ownership by nominees that are employees of the Debtor) direct or indirect subsidiary of a Debtor.

114.   113.  "*Interest*" means any "equity security" (as such term is defined in section 101(16) of the Bankruptcy Code) or other equity interest in a Debtor, including any share of common or preferred stock, LLC interest, membership interest, partnership unit, or other evidence of ownership of, or a similar interest in, a Debtor, and any option, warrant, or right, contractual or otherwise, to purchase, sell, subscribe, or acquire any such equity security or other

equity interest in a Debtor, whether or not transferable, issued or unissued, authorized, or outstanding.

115.   ~~114.~~ "*Interim DIP Order*" means the Bankruptcy Court order filed at Docket No. 139, authorizing the Debtors to enter into the DIP Note Purchase Agreement and access the DIP Financing on an interim basis and authorizing the consensual use of cash collateral of certain secured parties, including the ABL Lenders, and granting certain agreed adequate protection, as set forth therein.

116.   ~~115.~~ "*Interim Distribution Date*" means any date after the Distribution Record Date on which the Debtors or Reorganized Debtors determine that an interim distribution should be made to holders of Allowed Claims, in light of, among other things, resolutions of Disputed Claims and the administrative costs of such a distribution.

117.   ~~116.~~ "*Lien*" means "lien," as defined in section 101(37) of the Bankruptcy Code.

118.   ~~117.~~ "*Management Incentive Plan*" means the Reorganized Debtors' management incentive compensation program to be established and implemented by the Reorganized Incora Board after the Effective Date.

119.   ~~118.~~ "*New Boards*" means the Reorganized Incora Board and the New Subsidiary Boards.

120.   ~~119.~~ "*New Common Equity*" means the new shares of common stock, limited liability company units or similar equity interests in Reorganized Incora to be issued on or after the Effective Date.

121.   ~~120.~~ "*New Debt Documents*" means the New Revolver Facility Documents, the New Exit Notes Documents and the New Takeback Notes Documents.

122.   ~~121.~~ "*New Exit Notes*" means the new notes to be issued in respect of DIP Financing Claims in accordance with the Plan pursuant to the terms and conditions of the New Exit Notes Documents, which notes shall have terms acceptable to the Debtors and the Required Consenting 1L Noteholders.

123.   ~~122.~~ "*New Exit Notes Documents*" means the documents that will govern the New Exit Notes, including (a) the New Exit Notes Indenture and (b) all other financing documents related to the New Exit Notes, which shall be, in each case, in form and substance acceptable to the Required Consenting 1L Noteholders.

124.   ~~123.~~ "*New Exit Notes Indenture*" means the indenture with respect to the New Exit Notes, which shall be in form and substance acceptable to the Required Consenting 1L Noteholders.

125.   ~~124.~~ "*New Financing*" means the New Revolver Facility, the New Exit Notes and the New Takeback Notes.

126.   125.  "*New Notes*" means the New Exit Notes and the New Takeback Notes, collectively and as applicable.

127.   126.  "*New Notes Indenture Trustees*" means the indenture trustees under the New Exit Notes Indenture and the New Takeback Notes Indenture.

128.   127.  "*New Organizational Documents*" means the new bylaws, certificates of incorporation, certificates of formation, limited liability company agreements, operating agreements, certificates of limited partnership, agreements of limited partnership, shareholder agreements, or such other organizational documents of the Reorganized Debtors, the forms or material terms of which shall (as to Reorganized Incora) be included in the Plan Supplement, which shall be, in each case, in form and substance acceptable to the Required Consenting 1L Noteholders.

129.   128.  "*New Revolver Facility*" means the new revolving facility with aggregate commitments of up to $[•]600,000,000, in the form of an asset-based revolver to be made available to the Reorganized Debtors by one or more lenders pursuant to and subject to the terms and conditions of the New Revolver Facility Documents, and which shall be in an amount and on terms acceptable to the Debtors and reasonably acceptable to the Required Consenting 1L Noteholders.

130.   129.  "*New Revolver Facility Agent*" means the administrative agent and collateral agent under the New Revolver Facility Documents.

131.   130.  "*New Revolver Facility Credit Agreement*" means the credit agreement with respect to the New Revolver Facility, which shall be in form and substance acceptable to the Debtors and reasonably acceptable to the Required Consenting 1L Noteholders.

132.   131.  "*New Revolver Facility Documents*" means the documents that will govern the New Revolver Facility, including (a) the New Revolver Facility Credit Agreement and (b) all other financing documents related to the New Revolver Facility, such as intercreditor agreements, pledges, mortgages, and guarantees, which shall be, in each case, in form and substance acceptable to the Debtors and reasonably acceptable to the Required Consenting 1L Noteholders.

133.   132.  "*New Revolver Facility Lenders*" means the lenders from time to time party to the New Revolver Facility Credit Agreement, in their capacities as such.

134.   133.  "*New Subsidiary Boards*" means the initial boards of directors or managers (as applicable) for the Reorganized Debtors other than Reorganized Incora.

135.   134.  "*New Takeback Notes*" means the new notes in the aggregate principal amount of $[•]420,000,000 to be issued in respect of 1L Notes Claims in accordance with the Plan pursuant to the terms and conditions of the New Takeback Notes Documents, which notes shall have terms acceptable to the Debtors and the Required Consenting 1L Noteholders.

136.   135.  "*New Takeback Notes Documents*" means the documents that will govern the New Takeback Notes, including (a) the New Takeback Notes Indenture and (b) all other

financing documents related to the New Takeback Notes, which shall be, in each case, in form and substance acceptable to the Required Consenting 1L Noteholders.

137. ~~136.~~ "*New Takeback Notes Indenture*" means the indenture with respect to the New Takeback Notes, which shall be in form and substance acceptable to the Required Consenting 1L Noteholders.

138. ~~137.~~ "*Other Secured Claim*" means any Secured Claim, other than a Priority Tax Claim (except as set forth in Article II.F), a DIP Financing Claim, an ABL Facility Claim or a 1L Notes Claim. For the avoidance of doubt, no 1.25L Notes Claim, 2024 Unsecured Notes Claim, 2026 Unsecured Notes Claim, 2027 Unsecured Notes Claim or PIK Notes Claim shall be an "Other Secured Claim."

139. ~~138.~~ "*Person*" means any "person," as defined in section 101(41) of the Bankruptcy Code.

140. ~~139.~~ "*Petition Date*" means June 1, 2023.

141. ~~140.~~ "*PIK Notes*" means the 13.750% Senior PIK Notes due April 15, 2028 under the PIK Notes Indenture.

142. ~~141.~~ "*PIK Notes Claim*" means any Claim arising on account of, derived from, based upon or arising under the PIK Notes Indenture or related documents.

143. ~~142.~~ "*PIK Notes Indenture*" means the Indenture, dated as of January 9, 2020 (as amended on March 28, 2022 and April 25, 2022), by and between Wolverine Intermediate Holding and the PIK Notes Indenture Trustee, governing the PIK Notes.

144. ~~143.~~ "*PIK Notes Indenture Trustee*" means Wilmington Savings Fund Society, FSB, as indenture trustee under the PIK Notes Indenture, and its predecessors, successors, assigns, or any replacement indenture trustee appointed pursuant to the terms of the PIK Notes Indenture

145. ~~144.~~ "*Plan*" means this *Joint Chapter 11 Plan of Wesco Aircraft Holdings, Inc. et al.*, together with all exhibits, appendices, and schedules thereto, including the Plan Supplement, as each of the same may be amended, modified or supplemented in accordance with its terms, which shall be, in each case, in form and substance ~~reasonably~~ acceptable to the Required Consenting 1L Noteholders ~~in all material respects~~ and consistent with the Specified Creditor Consent Rights (solely to the extent applicable).

146. ~~145.~~ "*Plan Supplement*" means the compilation of documents (or forms of documents), schedules, and exhibits to the Plan, as each may be amended, supplemented, or modified from time to time in accordance with this Plan, the Bankruptcy Code, and the Bankruptcy Rules, to be filed with the Bankruptcy Court, and which documents may include: (a) the New Organizational Documents; (b) the Description of Restructuring Transactions; (c) the New Exit Notes Indenture; (d) the New Takeback Notes Indenture; (e) the New Revolver Facility Credit Agreement; (f) a list of the members of the New Boards (to the extent known); (g) the Schedule of Rejected Executory Contracts and Unexpired Leases; (h) the Schedule of Assumed Executory Contracts and Unexpired Leases; (i) the Schedule of Retained Causes of Action; (j)

the schedule of Excluded Parties; and (jk) certain other documents as are necessary or advisable to implement the Restructuring. For the avoidance of doubt, the Debtors (with the consent of the Required Consenting 1L Noteholders, not to be unreasonably withheld) shall have the right to amend, supplement, or modify the Plan Supplement through the Effective Date in accordance with this Plan, the Bankruptcy Code, and the Bankruptcy Rules, and the Restructuring Support Agreement.

147.  146. "*Prepetition Agents*" means the ABL Agent, the 1L Indenture Trustee, the 1.25L Indenture Trustee, the PIK Notes Indenture Trustee, the 2024 Unsecured Indenture Trustee, the 2026 Unsecured Indenture Trustee, and the 2027 Unsecured Indenture Trustee, each in its capacity as such.

148.  147. "*Prepetition Debt Documents*" means the ABL Credit Agreement, the 1L Indenture, the 1.25L Indenture, the PIK Notes Indenture, the Unsecured Notes Indentures, and all documents, amendments, and supplements related to each of the foregoing.

149.  148. "*Priority Non-Tax Claim*" means any Claim that is entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than an Administrative Expense (including a DIP Financing Claim) or a Priority Tax Claim.

150.  149. "*Priority Tax Claim*" means any Claim of a Governmental Unit that is entitled to priority pursuant to section 502(i) or 507(a)(8) of the Bankruptcy Code.

151.  150. "*Privilege Rights*" means, collectively, any attorney-client privilege, attorney work-product protection, or any other similar privilege or protection from disclosure belonging to or operating in favor of the Debtors and their Estates.

152.  151. "*Pro Rata*" means, for the holder of an Allowed Claim or Interest in a particular Class, proportional to the ratio of the amount of such Allowed Claim or Interest to the amount of all Allowed Claims or Allowed Interests (as applicable) in the same Class or, as applicable and as specifically set forth in the Plan, multiple Classes.

153.  152. "*Professional Fee Escrow Account*" means the account established on the Effective Date pursuant to Article II.C.2.

154.  153. "*Proof of Claim*" means a proof of Claim filed in the Chapter 11 Cases.

155.  154. "*Reinstated*" means, with respect to a Claim, that such Claim is accorded treatment provided in section 1124(2) of the Bankruptcy Code.

156.  155. "*Related Parties*" means, with respect to a specified Entity, (x) such specified Entity's predecessors, successors, assigns, current or former shareholders, subsidiaries, affiliates, affiliated investment funds or investment vehicles, managed or advised accounts, funds, or other entities, and investment advisors, sub-advisors, managers, direct and indirect equity holders, portfolio companies, and management companies, (y) with respect to such specified Entity and each of the other Entities in the foregoing clause (x), such Entity's current and former directors, officers, principals, managers, members, partners (including limited partners), employees, trustees, independent contractors, managed accounts or funds, fund advisors, investment advisors, advisory board members, management companies, investment bankers, financial advisors, restructuring advisors, accountants, actuaries, agents, consultants,

representatives, attorneys, and other consultants and professional advisors; and (z) with respect to such specified Entity and each of the other Entities in each of the foregoing clauses (x) and (y), each such Entity's respective heirs, executors, estates, and nominees.

157.   156. "*Released Claims*" means the Causes of Action released under Article VIII.D and Article VIII.E.

158.   157. "*Released Parties*" means, collectively, the Releasing Parties; *provided* that no Excluded Party shall be a Released Party.

159.   158. "*Releasing Parties*" means, collectively, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) each non-Debtor affiliate; (d) [reserved]each of the Consenting 1L Noteholders, the Consenting 1.25L Noteholders and the Consenting Equity Holders; (e) the Committee and its members; (f) the DIP Purchasers; (fg) Wilmington Savings Fund Society, FSB, in its capacity as current and/or former indenture trustee, notes agent and collateral agent, as applicable, under the DIP Notes Purchase Agreement, the 1L Indenture, the 1.25L Indenture, the Unsecured Notes Indentures and the PIK Notes Indenture; (g) the ABL Agent; (h) the ABL Agent and the ABL Lenders; (i) the New Revolver Facility Agent and the New Revolver Facility Lenders; (ij) the New Notes Indenture Trustees; (jk) each holder of Claims or Interests that is entitled to vote on the Plan and either (i) votes to accept the Plan, (ii) abstains from voting on the Plan and does not elect to opt out of the Third-Party Release, or (iii) votes to reject the Plan and does not elect to opt out of the Third-Party Release; (kl) each holder of Claims or Interests that is deemed to reject or presumed to accept the Plan but does not elect to opt out of the Third-Party Release; (lm) with respect to each of the Entities in the foregoing clauses (a) through (kl), each such Entity's current and former Related Parties; *provided* that no holder that votes to accept the Plan shall be entitled to opt out of the Third-Party Release; *provided*, *further*, that, if any holder of a Claim or Interest does not elect to opt out of the Third-Party Release in any of its capacities, such holder and each of its Related Parties that is also a holder of a Claim or Interest shall be deemed to have not opted out of the Third-Party Release in all capacities.

160.   159. "*Reorganized Debtors*" means, collectively, Reorganized Incora, each Debtor as reorganized pursuant to this Plan and each of Reorganized Incora's direct and indirect subsidiaries, or any successors thereto, by merger, consolidation, or otherwise, in each case on or after the Effective Date.

161.   160. "*Reorganized Incora*" means, as determined by the Debtors (in consultation with the First Lien Noteholder Groupconsent of the Required Consenting 1L Noteholders) either (a) Wolverine Intermediate Holding or another Debtor, as reorganized pursuant to and under the Plan, or any successor or assign thereto by merger, consolidation, reorganization or otherwise or (b) a new Entity that may be formed or caused to be formed to, among other things, directly or indirectly, acquire substantially all of the assets and/or equity of the Debtors and issue the New Common Equity to be distributed pursuant to the Plan.

162.   161. "*Reorganized Incora Board*" means the board of Directors of Reorganized Incora on and after the Effective Date.

162.

163.   "*Required Consenting IL Noteholders*" ~~means~~has the ~~holders of, or investment advisors, sub-advisors, or managers of funds or accounts that hold, collectively, no less than [•]% of the aggregate principal amount of the 1L Notes outstanding under the 1L Indenture~~meaning set forth in the Restructuring Support Agreement.

164.   ~~163.~~ "*Restructuring*" means the comprehensive restructuring of the existing debt and other obligations of the Debtors on the terms and conditions set forth in this Plan and as contemplated by the Restructuring Support Agreement.

165.   ~~164.~~ "*Restructuring Expenses*" means the reasonable and documented fees and expenses, incurred in connection with the Chapter 11 Cases (including the ~~2022~~ Financing Litigation and the Restructuring) of (a) the professionals retained by, or on behalf of, the First Lien Noteholder Group or any member thereof, including Davis Polk & Wardwell LLP, Evercore Group, L.L.C., Porter Hedges LLP, Holwell Shuster & Goldberg LLP, and each other local or special counsel or other advisor to the First Lien Noteholder Group or any member thereof, (b) the DIP Agent and the professionals retained by, or on behalf of, the DIP Agent, including Pryor Cashman LLP and one local counsel to the DIP Agent in each applicable jurisdiction, (c) the 1L Indenture Trustee and the professionals retained by, or on behalf of, the 1L Indenture Trustee, including Pryor Cashman and one local counsel to the 1L Indenture Trustee in each applicable jurisdiction ~~and~~, (d) the ABL Agent and the professionals retained by, or on behalf of, the ABL Agent, including Cahill Gordon & Reindel LLP, FTI Consulting, Inc., and Norton Rose Fulbright US LLP, (e) the 1.25L Indenture Trustee and the professionals retained by, or on behalf of, the 1.25L Indenture Trustee, including Pryor Cashman and one local counsel to the 1.25L Indenture Trustee in each applicable jurisdiction and (f) all other creditor professionals who are entitled to reimbursement pursuant to the Restructuring Support Agreement (excluding, for the avoidance of doubt, any Retained Professionals); *provided* that the fees and expenses payable to the Restructuring Professionals listed in the foregoing clauses (e) and (f) shall be subject to the conditions and limitations set forth in the Restructuring Support Agreement.

166.   ~~165.~~ "*Restructuring Professional*" means any Person ~~who incurs~~entitled to payment of Restructuring Expenses.

167.   "*Restructuring Support Agreement*" means that certain Restructuring Support Agreement, dated as of [•], 2023, by and among the Debtors and the Consenting Parties (as defined in the Restructuring Support Agreement) thereto, as it may be joined, amended, restated or otherwise modified from time to time in accordance with its terms.

168.   ~~166.~~ "*Restructuring Transactions*" has the meaning set forth in Article IV.D.1 of the Plan.

169.   ~~167.~~ "*Retained Cause of Action*" means any Cause of Action that any Debtor may have or be entitled to assert on behalf of its Estate or itself and that is not released, waived, or transferred by the Debtors pursuant to the Plan, including any Causes of Action against Excluded Parties, and the Causes of Action set forth in the Schedule of Retained Causes of Action.

170.   ~~168.~~ "*Retained Professional*" means any Person retained by order of the Bankruptcy Court in connection with these Chapter 11 Cases pursuant to sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code. "Retained Professional" does not include any professional-service Entity that the Debtors are authorized to employ, compensate, and reimburse in the ordinary course of their businesses. For the avoidance of doubt, no Restructuring Professional shall be a Retained Professional.

171.   ~~169.~~ "*Retained Professional Fees*" means the accrued, contingent, and/or unpaid compensation for services rendered (including hourly, transaction, and success fees), and reimbursement for expenses incurred, by Retained Professionals, that: (a) are awardable and allowable pursuant to sections 327, 328, 329, 330, 331, 503(b)(4), and/or 1103 of the Bankruptcy Code or otherwise rendered allowable prior to the Confirmation Date; (b) have not been denied by the Bankruptcy Court by Final Order; (c) have not been previously paid (regardless of whether a fee application has been filed for any such amount); and (d) remain outstanding after applying any retainer that has been provided to such Retained Professional. To the extent that any amount of the foregoing compensation or reimbursement is denied or reduced by Final Order of the Bankruptcy Court or any other court of competent jurisdiction, that amount shall no longer constitute Retained Professional Fees.

172.   ~~170.~~ "*Schedule of Assumed Executory Contracts and Unexpired Leases*" means the schedule of executory contracts and unexpired leases to be assumed by the Debtors pursuant to the Plan, as set forth and as amended, modified or supplemented from time to time in the Plan Supplement.

173.   ~~171.~~ "*Schedule of Rejected Executory Contracts and Unexpired Leases*" means the schedule of executory contracts and unexpired leases to be rejected by the Debtors pursuant to the Plan, if any, as set forth and as amended, modified or supplemented from time to time in the Plan Supplement.

174.   ~~172.~~ "*Schedule of Retained Causes of Action*" means a schedule of Retained Causes of Action to be retained by the Reorganized Debtors as set forth and as amended, modified or supplemented from time to time in the Plan Supplement.

175.   ~~173.~~ "*Schedules*" means the schedules of assets and liabilities, statements of financial affairs, lists of holders of Claims and Interests and all amendments or supplements thereto filed by the Debtors with the Bankruptcy Court.

176.   ~~174.~~ "*Secured*" means, with respect to a Claim, any Claim or portion thereof that is secured by a Lien on property in which an Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

177.   ~~175.~~ "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, as amended, together with the rules and regulations promulgated thereunder.

20

178.   ~~176.~~ "*Servicer*" means any Person or Entity that has been empowered to act in the capacity of the Disbursing Agent with respect to a particular Class of Claims, including an administrative agent, an indenture trustee, or a collateral agent.

179.   "*Settlement Equity Pool*" means 3.5% of the New Common Equity, subject to dilution by any New Common Equity issued in respect of the Management Incentive Plan.

180.   ~~177.~~ "*Solicitation Materials*" means materials used in connection with the solicitation of votes on the Plan, including the Disclosure Statement, the Disclosure Statement Order, and any procedures established by the Bankruptcy Court with respect to solicitation of votes on the Plan.

181.   "*Specified Creditor Consent Rights*" has the meaning set forth in the Restructuring Support Agreement.

182.   ~~178.~~ "*Sponsor*" means those affiliates and investment funds managed by Platinum Equity Advisors, LLC or its affiliates that are direct or indirect holders of Existing Equity Interests, including Wolverine Top Holding Corporation.

183.   ~~179.~~ "*Standing Motions*" means (~~i~~a) the *Motion for Entry of An Order Granting Langur Maize, L.L.C. Standing to Pursue Fraudulent Transfer and Preference Claims*~~, No. 23-90611 (MI) (Bankr. S.D. Tex. August 15, 2023)~~ [Dkt. No. 650]~~;~~; (~~ii~~b) the *Amended and Supplemental Motion of the 2024/2026 Holders (I) Confirming Direct Standing to Pursue Certain Claims and Remedies Or, In the Alternative, (II) for Derivative Standing to Pursue Such Claims and Remedies and for Exclusive Settlement Authority*~~, No. 23-90611 (MI) (Bankr. S.D. Tex. August 15, 2023)~~ [Dkt. No. 652]; (c) the *Omnibus (I) Motion of the Official Committee of Unsecured Creditors for Exclusive Leave, Standing, and Authority to Prosecute and Settle Certain Claims, Causes of Action, and Claim Objections on Behalf of the Debtors' Estates and (II) Claim Objection* [Dkt. No. 994]; and (~~iii~~d) any other motion filed at any time in the Chapter 11 Cases (including in any adversary proceeding) seeking standing to pursue claims ~~and~~/or remedies on behalf of the Debtors' Estates.

184.   ~~180.~~ "*Statutory Fees*" means all fees payable pursuant to section 1930 of title 28 of the U.S. Code.

185.   ~~181.~~ "*Third-Party Release*" means the releases set forth at Article VIII.E of the Plan.

186.   ~~182.~~ "*U.S. Trustee*" means the Office of the United States Trustee.

187.   ~~183.~~ "*Unimpaired*" means, with respect to a Class, Claim, Interest, or a holder of a Claim or Interest, that such Class, Claim, Interest, or holder is not Impaired.

188.   ~~184.~~ "*Unsecured Notes Indentures*" means the 2024 Unsecured Indenture, the 2026 Unsecured Indenture, and the 2027 Unsecured Indenture.

189.   ~~185.~~ "*Voting Classes*" means the Classes entitled to vote to accept or reject the Plan.

186.   "*Wesco Aircraft Canada*" means Wesco Aircraft Canada Inc.

190.   ~~187.~~ "*Wesco Holdings*" means Wesco Aircraft Holdings, Inc.

191.   ~~188.~~ "*Wolverine Intermediate Holding*" means Wolverine Intermediate Holding Corp.

## B.   RULES OF INTERPRETATION

Unless otherwise specified in this Plan ~~or a Final Order of the Bankruptcy Court~~: (a) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (b) each pronoun stated in the masculine, feminine, or neutral gender shall include, in the appropriate context, the masculine, feminine, and the neutral gender; (c) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (d) all references to Articles or Articles are references to the Articles of this Plan; (e) all captions and headings are inserted for convenience of reference only and are not intended to be a part of, or to affect the interpretation of, the Plan; (f) any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors and assigns; (g) unless stated otherwise, all docket numbers used in the Plan shall refer to the docket in Case No. 23-90611 (MI); (h) any reference to an existing document, schedule, or exhibit, whether or not filed, having been filed, or to be filed, shall mean that document, schedule or exhibit, as it may thereafter be amended, modified, or supplemented; (i) other than as provided in the Description of Restructuring Transactions, any reference to an event occurring on a specified date, including on the Effective Date, shall mean that the event will occur on that date or as soon thereafter as reasonably practicable; (j) any reference to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; *provided* that the foregoing shall not be deemed to diminish or otherwise alter the consent rights set forth herein, in the Restructuring Support Agreement or in the DIP Note Purchase Agreement; (k) all references to statutes, regulations, orders, rules of courts and the like shall mean as amended from time to time and as applicable to the Chapter 11 Cases; (*l*) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, the applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (m) any capitalized term used but not otherwise defined in this Plan, which is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (n) all references in the Plan to Cash, monetary figures, "dollars," or "$" refer to the currency of the United States of America, unless otherwise expressly provided; and (o) at the discretion of the Debtors or Reorganized Debtors, amounts asserted in any currency other than U.S. dollars may be

deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition, on the Petition Date.

## C.    COMPUTATION OF TIME

Unless otherwise specifically stated in this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed by the Plan or the related solicitation materials. If the date on which a transaction may or shall occur pursuant to the Plan is not a Business Day, then such transaction shall instead occur on the next Business Day.

## D.    GOVERNING LAW

Unless federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, and unless specifically stated otherwise, the laws of the State of New York, without giving effect to the principles of conflict of laws that would require application of the law of another jurisdiction, shall govern the rights, obligations, construction, and implementation of the Plan and any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided*, *however*, that corporate or entity governance matters relating to the Debtors or the Reorganized Debtors shall be governed by the laws of the state or country of incorporation or organization of the relevant Debtor or Reorganized Debtor, as applicable.

## E.    CONSENT RIGHTS

Notwithstanding anything herein to the contrary, any and all consultation, information, notice and consent rights set forth in the DIP Note Purchase Agreement (so long as "Payment in Full," as defined in the DIP Note Purchase Agreement, has not occurred), the Restructuring Support Agreement (including the consent rights set forth in Section 3 thereof) or any Definitive Document shall be incorporated herein by this reference and shall be fully enforceable as if stated in full herein, including any consultation, information, notice and consent rights with respect to the form and substance of this Plan, the Plan Supplement, any supplement to the Disclosure Statement, any other Definitive Documents and any agreements or documents referenced in this Plan or the Plan Supplement, including any amendments, restatements, supplements, or other modifications to such documents, and any consents, waivers or other deviations under or from any such documents pursuant to such rights.

# ARTICLE II.
## ADMINISTRATIVE EXPENSES AND
## OTHER UNCLASSIFIED CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, DIP Financing Claims, other Administrative Expenses and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

## A.   GENERAL ADMINISTRATIVE EXPENSES

Each holder of an Allowed General Administrative Expense, to the extent its Allowed General Administrative Expense has not already been paid during the Chapter 11 Cases, shall receive, in full and final satisfaction of its General Administrative Expense, Cash equal to the Allowed amount of such General Administrative Expense in accordance with the following: (1) if such General Administrative Expense is Allowed as of the Effective Date, on or as soon as reasonably practicable after the Effective Date (or, if not then due, when such Allowed General Administrative Expense is due or as soon as reasonably practicable thereafter); (2) if such General Administrative Expense is not Allowed as of the Effective Date, no later than the first Business Day after the date that is thirty (30) calendar days after the date on which an order Allowing such General Administrative Expense becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed General Administrative Expense is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed General Administrative Expense without any further action by the holders of such Allowed General Administrative Expense; or (4) at such time and upon such terms as may be agreed upon by such holder and the Debtors (with the consent of the Required Consenting 1L Noteholders) or the Reorganized Debtors, as applicable.

Except as otherwise provided in this Article II.A, requests for payment of Allowed General Administrative Expenses must be filed with the Bankruptcy Court and served on the Reorganized Debtors pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the General Administrative Expenses Bar Date. **Holders of General Administrative Expenses that are required to, but do not, file and serve a request for payment of such General Administrative Expenses by the General Administrative Expenses Bar Date shall be forever barred, estopped, and enjoined from asserting such General Administrative Expenses against the Debtors or their property and such General Administrative Expenses shall be deemed discharged as of the Effective Date.** Notwithstanding the foregoing, no request for payment of a General Administrative Expense

need be filed with respect to a General Administrative Expense previously Allowed by Final Order of the Bankruptcy Court.

The Reorganized Debtors may settle General Administrative Expenses in the ordinary course of business without further notice and without further approval or an order of the Bankruptcy Court. The Debtors or the Reorganized Debtors, as applicable, may also choose to object to any General Administrative Expense no later than the General Administrative Expenses Objection Deadline, subject to extensions by the Bankruptcy Court or agreement in writing of the applicable parties. Unless the Debtors or the Reorganized Debtors (or other party with standing) objects to a timely filed and properly served General Administrative Expense, such General Administrative Expense will be deemed Allowed in the amount requested. In the event that the Debtor or the Reorganized Debtor objects to a General Administrative Expense, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court will determine whether such General Administrative Expense should be Allowed and, if so, in what amount.

Notwithstanding anything to the contrary in the Plan or the DIP Orders, no General Administrative Expense shall be Allowed pursuant to section 507(b) of the Bankruptcy Code.

## B.    RESTRUCTURING EXPENSES

The Debtors shall be obligated, jointly and severally, to pay all Restructuring Expenses in full in Cash, in accordance with the following procedures. No Restructuring Professional shall be required to comply with the U.S. Trustee fee guidelines or file an application seeking compensation for services or reimbursement of expenses with the Bankruptcy Court.

Any time that a Restructuring Professional seeks payment of Restructuring Expenses from the Debtors prior to Confirmation, such Restructuring Professional shall comply with the review procedures set forth in paragraph 17 of the Final DIP Order.

From and after the Confirmation Date, the Debtors or the Reorganized Debtors, as applicable, shall, without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, pay in Cash all Restructuring Expenses within ten (10) Business Days (or earlier, as provided below) after submission of an invoice to the Debtors or the Reorganized Debtors, as applicable, which may be in the same summary form permitted under the Final DIP Order but without any requirement that any Restructuring Professional comply with such review procedures.

All Restructuring Expenses incurred, or estimated in good faith to be incurred, up to and including the Effective Date shall be paid in full in Cash on the Effective Date (to the extent not previously paid during the course of the Chapter 11 Cases). The Debtors shall inform each of the Restructuring Professionals of the anticipated Effective Date at least five (5) Business Days in advance. All Restructuring Expenses to be paid on the Effective Date shall be estimated prior to and as of the Effective Date and such estimates shall be delivered to the Debtors at least two (2) Business Days before the anticipated Effective Date; *provided* that such estimates shall not be considered to be admissions or limitations with respect to such Restructuring Expenses.

After the Effective Date, the Reorganized Debtors shall continue to pay, when due, pre- and post-Effective Date Restructuring Expenses, whether incurred before, on or after the Effective Date when due and payable in the ordinary course of business.

The payment of Restructuring Expenses to Restructuring Professionals described in clauses (e) and (f) of the definition of "Restructuring Expenses" shall be subject in all respects to the conditions and limitations set forth in the Restructuring Support Agreement.

## C.   RETAINED PROFESSIONAL FEES

### 1.   Final Fee Applications

All final requests for payment of Retained Professional Fees incurred prior to the Effective Date must be filed with the Bankruptcy Court and served on the Reorganized Debtors, the U.S. Trustee, counsel to the Committee, and all other parties that have requested notice in these Chapter 11 Cases by no later than 60 days after the Effective Date, unless the Reorganized Debtors agree otherwise in writing. Objections to Retained Professional Fees must be filed with the Bankruptcy Court and served on the Reorganized Debtors and the applicable Retained Professional within 21 days after the filing of the applicable final fee application. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and any prior orders of the Bankruptcy Court in the Chapter 11 Cases, the Allowed amounts of all Retained Professional Fees shall be determined by the Bankruptcy Court and, once approved by the Bankruptcy Court, shall be paid in full in Cash from the Professional Fee Escrow Account as promptly as practicable; *provided*, *however*, that if the funds in the Professional Fee Escrow Account are insufficient to pay the full Allowed amounts of the Retained Professional Fees, the Reorganized Debtors shall promptly pay any remaining Allowed amounts from their Cash on hand.

For the avoidance of doubt, the immediately preceding paragraph shall not affect any professional that the Debtors are permitted to pay in the ordinary course of business without specific authority from the Bankruptcy Court (or in accordance with any prior order of the Bankruptcy Court). The Debtors and Reorganized Debtors may continue to make such payments after Confirmation and the Effective Date.

### 2.   Professional Fee Escrow Account

Each Retained Professional shall estimate its unpaid Retained Professional Fees, as of the Effective Date and shall deliver its estimate to the Debtors' counsel no later than three (3) Business Days before the anticipated Effective Date. A Retained Professional's estimate shall not be deemed to limit the Allowed amount of its Retained Professional Fees. If a Retained Professional does not provide an estimate, the Debtors may themselves estimate the unpaid and unbilled fees and expenses of such Retained Professional for purposes of funding the Professional Fee Escrow Account.

On the Effective Date, the Reorganized Debtors shall fund the Professional Fee Escrow Account in an amount equal to all asserted Claims for Retained Professional Fees incurred but unpaid as of the Effective Date (including, for the avoidance of doubt, any reasonable estimates

for unbilled amounts provided prior to the Effective Date). The Professional Fee Escrow Account may be an interest-bearing account. Amounts held in the Professional Fee Escrow Account shall not constitute property of the Reorganized Debtors. However, if a balance remains in the Professional Fee Escrow Account after all Retained Professionals have been paid their Allowed Retained Professional Fees, any such balance shall be promptly returned to, and shall then constitute property of, the Reorganized Debtors. No liens, claims, interests, or encumbrances shall encumber the Professional Fee Escrow Account or the funds held in the Professional Fee Escrow Account.

### 3. Fees and Expenses After Confirmation

Except as otherwise specifically provided in the Plan, the Debtors and the Reorganized Debtors, as applicable, shall pay, within ten (10) Business Days after submission of a detailed invoice to the Debtors or the Reorganized Debtors, as applicable, such reasonable claims for compensation or reimbursement incurred by Retained Professionals of the Debtors from and after the Confirmation Date and prior to the Effective Date. If the Debtors or the Reorganized Debtors, as applicable, dispute the reasonableness of any such invoice, the Debtors or the Reorganized Debtors, as applicable, or the affected professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of any such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved.

The Debtors or the Reorganized Debtors, as applicable, may, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, promptly pay in Cash the reasonable legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors or the Reorganized Debtors on and after the Confirmation Date. Following the Confirmation Date, no professional employed or retained by the Debtors shall be required to comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after the Confirmation Date, and the Reorganized Debtors may employ and pay any professional without further notice to or action, order, or approval of the Bankruptcy Court.

Notwithstanding the foregoing, the Debtors and all payments made by the Debtors (including in respect of any payments described in this Article II.C.3) prior to the Effective Date shall remain subject to the Final DIP Order in all respects.

### D. STATUTORY FEES

All Statutory Fees due and payable prior to, and that remain unpaid as of, the Effective Date shall be paid by the applicable Debtors on the Effective Date. After the Effective Date, the Reorganized Debtors shall be jointly and severally liable to pay all Statutory Fees when due and payable. The Debtors shall file all reports due prior to the Effective Date when they become due, in a form reasonably acceptable to the U.S. Trustee. After the Effective Date, the applicable Reorganized Debtors shall file with the Bankruptcy Court quarterly reports when they become due, in a form reasonably acceptable to the U.S. Trustee. Each one of the Debtors and the Reorganized Debtors shall remain obligated to pay its own Statutory Fees to the U.S. Trustee until the earliest of

that particular Debtor's case being closed, dismissed or converted to a case under Chapter 7 of the Bankruptcy Code. Nothing in the Plan shall prohibit the Reorganized Debtors (or the Disbursing Agent on behalf of the Reorganized Debtors) from paying any Statutory Fees that become due and payable.

### E.     DIP FINANCING CLAIMS

The DIP Financing Claims shall be Allowed in the full amount due and owing under the DIP Documents, including (a) the principal amounts outstanding on the Effective Date, (b) all interest accrued and unpaid thereon through and including the date of payment, and (c) all premiums, fees (including back-end fees and exit fees), expenses, and indemnification obligations under the DIP Documents. For the avoidance of doubt, the DIP Financing Claims shall not be subject to any avoidance, reduction, setoff, recoupment, recharacterization, subordination (equitable or contractual or otherwise), counterclaim, defense, disallowance, impairment, objection or any challenges under applicable law or regulation.

On the Effective Date, except to the extent that the Debtors (with the consent of the Required Consenting 1L Noteholders) and the holder of a DIP Financing Claim agree to different treatment of such holder's Claim, each holder of an Allowed DIP Financing Claim shall receive [(a) with respect to any portion thereof on account of outstanding principal and the Exit Premium (as defined in the DIP Note Purchase Agreement) due on the DIP Notes, an equivalent principal amount of New Exit Notes and (b) with respect to all other amounts (including accrued and unpaid interest on the DIP Notes), payment in full in Cash].

From and after entry of the Confirmation Order, the Debtors or Reorganized Debtors, as applicable, shall, without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, pay in Cash all DIP Fees and Expenses (as defined in the Final DIP Order) (to the extent not previously disputed or paid during the Chapter 11 Cases) in accordance with the procedures for payment of Restructuring Expenses described in Article II.B of the Plan.

### F.     PRIORITY TAX CLAIMS

Except to the extent that an Allowed Priority Tax Claim has not been previously paid in full or its holder and the Debtor against which it is asserted (with the consent of the Required Consenting 1L Noteholders) agree to less favorable treatment for such holder, in full and final satisfaction of each Priority Tax Claim, each holder of an Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code. In the event an Allowed Priority Tax Claim is Allowed as a Secured Claim, it shall be classified and treated as an Allowed Other Secured Claim.

# ARTICLE III.
## CLAIMS AND INTERESTS

### A.   CLASSIFICATION OF CLAIMS AND INTERESTS

#### 1.   General Terms

All Claims and Interests, except for those described in Article II of the Plan, are classified as set forth in this Article III. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim or Allowed Interest, as applicable, in that Class. To the extent a specified Class does not include any Allowed Claims or Allowed Interests, as applicable, then such Class shall be eliminated from the Plan for purposes of voting to accept or reject the Plan and shall not be considered in evaluating the Plan's compliance with section 1129(a)(8) of the Bankruptcy Code. If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine that controversy on or before the Confirmation Date.

#### 2.   Standards for Acceptance of a Plan

The Bankruptcy Code defines "acceptance" of a plan by a Class of (a) Impaired Claims as acceptance by creditors that hold at least two-thirds (⅔) in dollar amount and more than one-half (½) in number of the Allowed Claims in such Class held by creditors that cast ballots for acceptance or rejection of the Plan and (b) Impaired Interests as acceptance by Interest holders that hold at least two-thirds (⅔) in amount of the Allowed Interests in such Class held by holders that cast ballots for acceptance or rejection of the Plan. However, any Class of Claims or Interests that is Unimpaired under the Plan is deemed to have accepted the Plan and is therefore not entitled to vote to accept or reject the Plan. Likewise, any Class of Claims or Interests that does not entitle the holders of such Claims or Interests to receive or retain any property under the Plan on account of such Claims or Interests is deemed to have rejected the Plan and is therefore not entitled to vote to accept or reject the Plan.

If a Class contains Claims or Interests eligible to vote, but no holder of Claims or Interests in that Class delivers a valid and timely vote, the Plan shall be presumed accepted by that Class.

Pursuant to sections 1129(b) and 1129(a)(10) of the Bankruptcy Code, a plan may be confirmed despite its rejection by a Class, so long as (among other things) at least one Impaired Class of Claims accepts the plan, determined without including any acceptance of such plan by an insider. This requirement will be satisfied by acceptance of the Plan by one or more of the Voting Classes of Claims. Certain of the Debtors may not have holders of Claims or Interests in

particular Classes. The Debtors intend to seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to each rejecting Class.

**3.      The Classes Under the Plan and Their Voting Rights**

Under this Plan, holders of Claims or Interests in Classes 4, ~~5, 6a, 6b,~~ 7a~~,~~ and 7b ~~[and 7c]~~ are the Voting Classes that are entitled to vote to accept or reject the Plan.

In light of the treatment set forth below in Article III.B, Classes 1, 2, 3, ~~[7c]~~ and 11 are Unimpaired and deemed to accept the Plan; they are therefore not entitled to vote to accept or reject the Plan. Holders of Claims in ~~Class~~Classes 5 and 8 and holders of Interests in Class 10 are due to receive or retain no property under the Plan on account of their Claims or Interests (as applicable); such holders are therefore not entitled to vote to accept or reject the Plan. Depending on their treatment, Class 9 either is Unimpaired or is due to receive or retain no property under the Plan; in either case, it is not entitled to vote to accept or reject the Plan. Holders of Claims or Interests in the remaining Classes (Classes 4, ~~5, 6a, 6b,~~ 7a~~,~~ and 7b ~~[and 7c]~~) are Impaired and are entitled to vote to accept or reject the Plan.

Pursuant to section 1122 of the Bankruptcy Code, the classification of Claims and Interests is summarized as follows:

| Class | Claims or Interests | Impairment | Voting Rights |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | Presumed to accept |
| 2 | Other Secured Claims | Unimpaired | Presumed to accept |
| 3 | ABL Facility Claims | Unimpaired | Presumed to accept |
| 4 | 1L Notes Claims | Impaired | **Entitled to vote** |
| 5 | 1.25L Notes Claims | Impaired | ~~Entitled to vote~~Deemed to reject |
| 6a | [Reserved] | | |
| 6b | [Reserved] | | |
| ~~6a~~ | ~~2026 Unsecured Notes Claims~~ | ~~Impaired~~ | ~~Entitled to vote~~ |
| ~~6b~~ | ~~2024 Unsecured Notes Claims~~ | ~~Impaired~~ | ~~Entitled to vote~~ |
| 7a | General Unsecured Claims | Impaired | **Entitled to vote** |
| 7b | General Unsecured Convenience Claims | Impaired | **Entitled to vote** |
| ~~7c~~ | ~~General Unsecured Canada/Mexico Claims~~ | ~~[•]~~ | ~~[•]~~ |
| 8 | PIK Notes Claims | Impaired | Deemed to reject |
| 9 | Intercompany Claims | Impaired/ Unimpaired | Deemed to reject/ presumed to accept |
| 10 | Existing Equity Interests | Impaired | Deemed to reject |

| Class | Claims or Interests | Impairment | Voting Rights |
|-------|---------------------|------------|---------------|
| 11 | Intercompany Interests | Unimpaired | Presumed to accept |

**B.**   **TREATMENT OF CLAIMS AND INTERESTS**

**1.**   **Class 1 – Priority Non-Tax Claims**

   **a.**   *Classification:*  Class 1 consists of all Priority Non-Tax Claims.

   **b.**   *Treatment:*  Except to the extent previously paid during the Chapter 11 Cases or the holder of an Allowed Priority Non-Tax Claim and the Debtors (with the consent of the Required Consenting 1L Noteholders, not to be unreasonably withheld) agree to less favorable treatment for such holder, each holder of an Allowed Priority Non-Tax Claim shall (a) receive from the applicable Reorganized Debtor, in full and final satisfaction of its Priority Non-Tax Claim, payment, in Cash, equal to the Allowed amount of such Claim, on the later of the Effective Date and the date when its Priority Non-Tax Claim becomes due and payable in the ordinary course or (b) be otherwise rendered Unimpaired.

   **c.**   *Voting:*  Class 1 is Unimpaired under the Plan. Holders of Priority Non-Tax Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

**2.**   **Class 2 – Other Secured Claims**

   **a.**   *Classification:*  Class 2 consists of all Other Secured Claims.

   **b.**   *Treatment:*  Except to the extent previously paid during the Chapter 11 Cases or the holder of an Allowed Other Secured Claim and the Debtors (with the consent of the Required Consenting 1L Noteholders, not to be unreasonably withheld) agree to less favorable treatment for such holder, each holder of an Allowed Other Secured Claim, at the option of the Debtors (with the consent of the Required Consenting 1L Noteholders, not to be unreasonably withheld), in full and final satisfaction of its Other Secured Claim, (a) shall receive Cash in an amount equal to the Allowed amount of its Other Secured Claim on the later of the Effective Date and the date that is 10 Business Days after the date such Other Secured Claim becomes an Allowed Claim; (b) shall receive, on the Effective Date or as soon as reasonably practicable thereafter, delivery of, or shall retain, the applicable collateral securing its Allowed Other Secured Claim up to the secured amount of such Claim pursuant to section 506(a) of the Bankruptcy Code and payment of any interest required under section 506(b) of the Bankruptcy Code; (c) shall have its Other Secured Claim Reinstated as of the Effective Date; or (d) shall receive such other

31

treatment sufficient to render its Allowed Other Secured Claim Unimpaired.

c.   *Voting:*  Class 2 is Unimpaired under the Plan. Holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

**3.   Class 3 – ABL Facility Claims**

a.   ***Classification:***  Class 3 consists of all ABL Facility Claims.

b.   ***Allowance:***  The ABL Facility Claims shall be Allowed in the aggregate principal amount then outstanding as of the Effective Date, plus accrued and unpaid interest at the non-default rate and fees through the Effective Date, subject to reduction for payments made by the Debtors.

c.   ***Treatment:***  Except to the extent previously paid during the Chapter 11 Cases or the holder of an ABL Facility Claim, the Debtors and the ~~Debtors~~Required Consenting 1L Noteholders agree to less favorable treatment for such holder, on the Effective Date, each holder of an ABL Facility Claim shall receive, in full and final satisfaction of its ABL Facility Claim, Cash in an amount equal to the Allowed amount of its ABL Facility Claim.

d.   ***Voting:***  Class 3 is Unimpaired under the Plan. Holders of ABL Facility Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

**4.   Class 4 – 1L Notes Claims**

a.   ***Classification:***  Class 4 consists of all 1L Notes ~~Claims other than 1L Notes Deficiency~~ Claims.

b.   ***Allowance:***  The 1L Notes Claims ~~(including the 1L Notes Deficiency Claims)~~ shall be Allowed in the amount of not less than $1,394,468,209.68 (the aggregate principal amount ~~of not less than $1,318,739,792, plus~~and accrued ~~and~~but unpaid interest ~~(including, for the avoidance of doubt, interest that was scheduled to be paid in kind on May 15, 2023) and~~thereon through the Petition Date), plus fees through the Petition Date, and shall not include any amount on account of "Applicable Premium," make-whole premium, call protection, or other similar amounts or premiums.

c.   ***Treatment:***  On the Effective Date, each holder of an Allowed 1L Notes Claim shall receive (i) its Pro Rata share of (A) $~~[•]~~420,000,000 in principal amount of New Takeback Notes and (B) ~~100~~96.5% of the New

Common Equity, subject to dilution by ~~(x)~~ any New Common Equity issued in respect of the Management Incentive Plan, and (~~y~~ii) ~~any other New Common Equity issued in respect of distributions on account of Allowed Claims under this Plan (if any).³~~the indemnification set forth under Article V.D.2.b.

The receipt of the foregoing consideration~~, along with the consideration on account of the 1L Notes Deficiency Claims in Class 7a,~~ shall be in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each 1L Notes Claim against each Debtor. As a component of the Global Settlement, each holder of a Claim in Class 4 shall waive any distribution from Class 7a on account of any deficiency claim.

    **d.**    *Voting:* Class 4 is Impaired under the Plan. Holders of 1L Notes Claims in Class 4 are entitled to vote to accept or reject the Plan.

**5.**    **Class 5 – 1.25L Notes Claims**

    **a.**    *Classification:* Class 5 consists of the 1.25L Notes Claims.

    **b.**    *Allowance:*~~–~~ The 1.25L Notes Claims shall be Allowed in the amount of $535,859,414.03 (the aggregate principal amount ~~of $519,016,212 plus~~and accrued ~~and~~but unpaid interest ~~and~~thereon through the Petition Date), plus fees through the Petition Date, and shall not include any amount on account of "Applicable Premium," make-whole premium, call protection, or other similar amounts or premiums.

    **c.**    *Treatment:* ~~On the Effective Date~~ As a component of the Global Settlement, each holder of ~~an Allowed 1.25L Notes~~a Claim in Class 5 shall ~~receive such holder's Pro Rata share~~waive any distribution on account of ~~[the~~its 1.25L Notes ~~Settlement Consideration].~~

~~The receipt of the foregoing consideration shall be in full and final satisfaction, settlement, release, and discharge of, and in exchange for, the 1.25L Notes Claims against each Debtor~~Claims.

Therefore, no property will be distributed to holders of 1.25L Notes Claims. Each 1.25L Notes Claim shall be released and cancelled on the Effective Date.

    **d.**    *Voting:* Class 5 is Impaired under the Plan. Holders of 1.25L Notes Claims are ~~entitled~~deemed to ~~vote to accept or reject~~have rejected the Plan~~.~~

---

³ ~~Treatment of prepetition indemnity claims and any post emergence indemnification of holders of 1L Notes Claims remains to be determined.~~

6.      **Class 6a – 2026 Unsecured Notes Claims**

a.      *Classification:*  Class 6a consists of all 2026 Unsecured Notes Claims.

b.      *Allowance:*  The 2026 Unsecured Notes Claims shall be Allowed in the aggregate principal amount of $336,978,622, plus accrued and unpaid interest and fees thereon through the Petition Date, and shall not include any amount on account of "Applicable Premium," make-whole premium, call protection, or other similar amounts or premiums.

c.      *Treatment:*  On the Effective Date, each holder of an Allowed 2026 Unsecured Notes Claim shall receive such holder's Pro Rata share of the [2026 Unsecured Notes Settlement Equity].

The receipt of the foregoing consideration shall be in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each 2026 Unsecured Notes Claim against each Debtor.

d.      *Voting:* Class 6a is Impaired under the Plan. Holders of 2026 Unsecured Notes Claims are entitled to vote to accept or reject the Plan.

7.      **Class 6b – 2024 Unsecured Notes Claims**

a.      *Classification:*  Class 6b consists of all 2024 Unsecured Notes Claims.

b.      *Allowance:*  The 2024 Unsecured Notes Claims shall be Allowed in the aggregate principal amount of $176,772,000, plus accrued and unpaid interest and fees thereon through the Petition Date, and shall not include any amount on account of "Applicable Premium," make-whole premium, call protection, or other similar amounts or premiums.

c.      *Treatment:*  On the Effective Date, each holder of an Allowed 2024 Unsecured Notes Claim shall receive such holder's Pro Rata share of the [2024 Unsecured Notes Settlement Equity].

The receipt of the foregoing consideration shall be in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each 2024 Unsecured Notes Claim against each Debtor.

d.      *Voting:* Class 6 is Impaired under the Plan. Holders of 2024 Unsecured Notes Claims are pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

6.      **[Reserved]**

7.      **[Reserved]**

8.      **Class 7a – General Unsecured Claims**

a.      *Classification:* Class 7a consists of all General Unsecured Claims against one or more Debtors.

b.      *Allowance:*

i.      The ~~1L~~2024 Unsecured Notes ~~Deficiency~~ Claims shall be Allowed in the amount of $184,984,336.09 (the aggregate principal amount ~~of [•] (which shall be deemed equal to the Allowed 1L Notes Claims minus the aggregate value distributed on account of such 1L Notes Claims under Article III.B.4)~~and accrued but unpaid interest thereon through the Petition Date), plus fees through the Petition Date, and shall not include any amount on account of "Applicable Premium," make-whole premium, call protection, or other similar amounts or premiums.

ii.      The 2026 Unsecured Notes Claims shall be Allowed in the amount of $353,557,970.20 (the aggregate principal amount and accrued but unpaid interest thereon through the Petition Date), plus fees through the Petition Date, and shall not include any amount on account of "Applicable Premium," make-whole premium, call protection, or other similar amounts or premiums.

iii.      The 2027 Unsecured Notes Claims shall be Allowed in the amount of $111,608,496.29 (the aggregate principal amount ~~of $104,125,000, plus~~and accrued ~~and~~but unpaid interest ~~and~~thereon through the Petition Date), plus fees through the Petition Date, and shall not include any amount on account of "Applicable Premium," make-whole premium, call protection, or other similar amounts or premiums.

~~iii~~

iv.      Other General Unsecured Claims shall be Allowed or Disallowed in accordance with Article VI.

c.      *Treatment:* On the Effective Date (or as soon thereafter as reasonably practicable in accordance with the resolution and distribution provisions set forth herein), each holder of an Allowed General Unsecured Claim shall receive ~~such holder's~~its Pro Rata share ~~[(calculated as if all 2026 Unsecured Notes Claims and 2024 Unsecured Notes Claims were General Unsecured Claims)]~~ of the ~~[GUC~~ Settlement ~~Distribution]~~Equity Pool.

The receipt of the foregoing consideration shall be in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each General Unsecured Claim against each Debtor.

    d.    **Voting:** Class 7a is Impaired under the Plan. Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

**9.**    **Class 7b – General Unsecured Convenience Claims**

    a.    **Classification:** Class 7b consists of all General Unsecured Convenience Claims.

    b.    **Treatment:** Except to the extent previously paid during the Chapter 11 Cases or such holder agrees to less favorable treatment (with the consent of the Required Consenting 1L Noteholders, not to be unreasonably withheld), each holder of an Allowed General Unsecured Convenience Claim shall receive such holder's Pro Rata share of Cash in ~~an~~the amount ~~equal to  [•]~~of $7,500,000; *provided* that in no event shall any holder of General Unsecured Convenience Claims recover more than 10.00% of the Allowed amount of its General Unsecured Convenience Claim.

        The receipt of the foregoing consideration shall be in full and final satisfaction, settlement, release, and discharge of, and in exchange for, each General Unsecured Convenience Claim against each Debtor.

    c.    **Voting:** Class 7b is Impaired under the Plan. Holders of General Unsecured Convenience Claims are entitled to vote to accept or reject the Plan.

~~**10.**~~    ~~**Class 7c – General Unsecured Canada/Mexico Claims**~~

    ~~a.~~    ~~**Classification:** Class 7c consists of all General Unsecured Canada/Mexico Claims.~~

    ~~b.~~    ~~**Treatment:**  [•].~~

    ~~c.~~    ~~**Voting:** Class 7c is [•].~~

**10.**  ~~**11.**~~ **Class 8 – PIK Notes Claims**

    a.    **Classification:** Class 8 consists of all PIK Notes Claims.

    b.    **Treatment:** No property will be distributed to holders of PIK Notes Claims. Each PIK Notes Claim shall be released and cancelled on the Effective Date.

    c.    **Voting:** Class 8 is Impaired under the Plan. Holders of PIK Notes Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

**11.** ~~12.~~ **Class 9 – Intercompany Claims**

    **a.**    *Classification:* Class 9 consists of all Intercompany Claims.

    **b.**    *Treatment:* No property will be distributed to holders of Intercompany Claims. Each Intercompany Claim shall be either Reinstated or released and cancelled, as ~~determined appropriate by the Debtors~~described in the Description of Restructuring Transactions, on or after the Effective Date.

    **c.**    *Voting:* Depending on the treatment accorded, Intercompany Claims are either Unimpaired or Impaired under the Plan. Holders of Intercompany Claims are conclusively presumed to have accepted or deemed to have rejected the Plan pursuant to section 1126(f) or 1126(g) of the Bankruptcy Code and, in either case, are not entitled to vote to accept or reject the Plan.

**12.** ~~13.~~ **Class 10 – Existing Equity Interests**

    **a.**    *Classification:* Class 10 consists of all Existing Equity Interests.

    **b.**    *Treatment:* Holders of Existing Equity Interests shall not receive any distribution or retain any property on account of their Existing Equity Interests. On the Effective Date, all Existing Equity Interests will be cancelled, released and extinguished, and will be of no further force or effect.

    **c.**    *Voting:* Class 10 is Impaired under the Plan. Holders of Existing Equity Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

**13.** ~~14.~~ **Class 11 – Intercompany Interests**

    **a.**    *Classification:* Class 11 consists of all Intercompany Interests.

    **b.**    *Treatment:* Unless otherwise provided for in the Description of Restructuring Transactions, each Intercompany Interest shall be Reinstated solely to the extent necessary to maintain the Reorganized Debtors' organizational structure.

    **c.**    *Voting:* Class 11 is Unimpaired under the Plan. Holders of Intercompany Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan.

C.    RESERVATIONS OF RIGHTS ~~GOVERNING~~REGARDING UNIMPAIRED CLAIMS

Except as otherwise specifically provided in the Plan, nothing in the Plan shall affect, diminish, or impair the Debtors' or the Reorganized Debtors' rights and defenses, both legal and equitable, with respect to any Reinstated Claim or Unimpaired Claim, including legal and equitable defenses to setoffs or recoupment against Reinstated Claims or Unimpaired Claims. Except as otherwise specifically provided in the Plan, nothing in the Plan shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, right of setoff, or other legal or equitable defense that the Debtors had immediately prior to the Petition Date against or with respect to any Claim that is Unimpaired by the Plan. Except as otherwise specifically provided in the Plan, the Debtors and the Reorganized Debtors shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights of setoff, and other legal or equitable defenses that the Debtors had immediately prior to the Petition Date fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' and Reorganized Debtors' legal and equitable rights with respect to any Reinstated Claim or Claim that is Unimpaired by this Plan may be asserted after the Confirmation Date and the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

D.    SUBORDINATION OF CLAIMS

Except as expressly provided in this Plan, the Allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors and the Reorganized Debtors reserve the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination that may apply.

E.    VOTING CLASSES

Any Class that does not have a Claim or an Interest, as applicable, as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for all purposes. If a Class is eligible to vote and no holder of Claims or Interests, as applicable, eligible to vote in such Class votes to accept or reject the Plan, the Plan shall be deemed accepted by such Class.

# ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

### A.   GLOBAL SETTLEMENT OF CLAIMS AND INTERESTS

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute an arms' length and good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan, including (a) all Claims ~~and Interests~~ and controversies related to the 2022 Financing Transactions and the ~~2022~~ Financing Litigation, (b) Claims arising from diminution of value from collateral, (c) valuation of collateral supporting the ABL Facility, the 1L Notes and the 1.25L Notes, (~~c~~d) the amount of secured and unsecured Claims arising from the 1L Notes and 1.25L Notes pursuant to section 506(a)(1) of the Bankruptcy Code, (e) rights to cash payments on account of DIP Financing Claims under section 1129(a)(9)(A) of the Bankruptcy Code, ~~and~~ (~~d~~f) all Claims on account of make-whole premiums, call protection, and similar amounts and premiums, and (g) the applicability of turnover of proceeds arising under any intercreditor agreement. All distributions made to holders of Allowed Claims and Interests in any Class in accordance with the Plan are intended to be, and shall be, final. Among other things, the Plan provides for a global settlement among the Debtors and various creditors of the Debtors (the "*Global Settlement*"), which provides substantial value to the Debtors' Estates.

### B.   SOURCES OF CONSIDERATION FOR DISTRIBUTIONS

#### 1.   Cash

The Reorganized Debtors shall fund distributions under the Plan required to be paid in Cash, if any, with Cash on hand (including Cash from operations and Cash received under the DIP Financing in accordance with the DIP Documents and Cash received on the Effective Date).

#### 2.   New Financing

On the Effective Date, the Reorganized Debtors shall be authorized to execute, deliver, and enter into the New Debt Documents, subject to the requisite approvals, without further (a) notice to or order of the Bankruptcy Court; (b) vote, consent, authorization, or approval of any Person; or (c) action by the holders of Claims or Interests. Confirmation of the Plan shall be deemed approval of the New Financing and the New Debt Documents, all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, and authorization of the

Reorganized Debtors to enter into, execute, and deliver the New Debt Documents and such other documents as may be required to effectuate the treatment afforded by the New Financing.

The New Debt Documents shall constitute legal, valid, binding, and authorized joint and several obligations of the applicable Reorganized Debtors, enforceable in accordance with their respective terms, and such obligations shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever under applicable law, the Plan, or the Confirmation Order and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any other applicable non-bankruptcy law. The financial accommodations to be extended pursuant to the New Debt Documents are reasonable and are being extended, and shall be deemed to have been extended, in good faith and for legitimate business purposes.

On the Effective Date, all of the Liens to be granted in accordance with the New Debt Documents (a) shall be deemed to be approved; (b) shall be legal, binding, and enforceable Liens on the collateral granted under the respective New Debt Documents in accordance with the terms thereof; (c) shall (i) be deemed automatically perfected on the Effective Date without the need for the taking of any further filing, recordation, approval, consent, or other action, and (ii) have the priorities as set forth in the respective New Debt Documents, and be subject only to such Liens as may be permitted under the New Debt Documents; and (d) shall not be enjoined or subject to discharge, impairment, release, avoidance, recharacterization, or subordination (including equitable subordination) for any purposes whatsoever and shall not constitute preferential transfers, fraudulent conveyances, or other voidable transfers under the Bankruptcy Code or any applicable non-bankruptcy law. The Reorganized Debtors and the secured parties (and their designees and agents) under such New Debt Documents shall be authorized to make all filings and recordings, and to obtain all governmental approvals and consents, and to take any other actions necessary to establish and perfect such Liens under the provisions of the applicable state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and the Confirmation Order (it being understood that perfection of the Liens granted under the New Debt Documents shall occur automatically on the Effective Date by virtue of the entry of the Confirmation Order, and any such filings, recordings, approvals, and consents shall not be necessary or required), and the Reorganized Debtors and the secured parties (and their designees and agents) under such New Debt Documents will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens to third parties.

To the extent that any holder of a Secured Claim that has been satisfied or discharged pursuant to the Plan, or any agent for such holder, has filed or recorded any Liens to secure such holder's Secured Claim, then on or as soon as practicable after the Effective Date, such holder (or the agent for such holder) shall, at the Debtors' or Reorganized Debtors' sole cost and expense, take any and all steps reasonably requested by the Debtors, Reorganized Debtors, the New Notes Indenture Trustees, or the New Revolver Facility Agent that are necessary to cancel and/or extinguish such Liens (it being understood that such Liens held by holders of Secured Claims that are satisfied on the Effective Date pursuant to the Plan shall be automatically canceled or extinguished on the Effective Date by virtue of the entry of the Confirmation Order). To the extent any direction under any of the Prepetition Debt Documents is required to effectuate

the cancellation or extinguishment of Liens described above, the Confirmation Order shall be deemed to have provided such direction and shall include language effectuating the foregoing.

All of the New Notes issued and/or distributed pursuant to the Plan shall be exempt from the registration requirements of Section 5 of the Securities Act and any "blue sky" laws of any U.S. jurisdiction pursuant to section 1145(a) of the Bankruptcy Code, except to the extent that the recipient is an "underwriter" within the meaning of section 1145(b) of the Bankruptcy Code.

### 3. New Common Equity

On the Effective Date, Reorganized Incora is authorized to issue or cause to be issued, and shall issue, the New Common Equity pursuant to and in accordance with the Plan, without further notice to or order of the Bankruptcy Court; act or action under applicable law, regulation, order, or rule; or the vote, consent, authorization, or approval of any Person.

The New Common Equity shall be distributed in accordance with the treatment set forth at Article III.B.

All of the New Common Equity issued and/or distributed pursuant to the Plan shall be exempt from the registration requirements of Section 5 of the Securities Act and any "blue sky" laws of any U.S. jurisdiction pursuant to section 1145(a) of the Bankruptcy Code, except to the extent that the recipient is an "underwriter" within the meaning of section 1145(b) of the Bankruptcy Code.

### C. EFFECTS OF THE PLAN

### 1. Organizational Existence

Except as otherwise provided in the Plan, each Debtor and each of its direct and indirect subsidiaries shall continue to exist after the Effective Date as a separate corporation, limited liability company, limited partnership, or other form, as the case may be, with all the powers of a corporation, limited liability company, limited partnership, or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective bylaws, limited liability company agreement, operating agreement, limited partnership agreement (or other formation documents) in effect prior to the Effective Date, except to the extent such formation documents are amended, amended and restated, replaced or otherwise modified pursuant to the New Organizational Documents. To the extent such documents are amended, amended and restated, replaced or otherwise modified pursuant to the New Organizational Documents, such documents are deemed to be amended, amended and restated, replaced or otherwise modified pursuant to the Plan and require no further action or approval (other than any requisite filings required under applicable law).

### 2. Vesting of Assets in the Reorganized Debtors

Except as otherwise provided in the Plan, on the Effective Date, pursuant to section 1141(b) and section 1141(c) of the Bankruptcy Code, all property in any Debtor's Estate, including any property acquired by any Debtor pursuant to the Plan, shall vest in the applicable Reorganized Debtor and, if applicable, any Entity or Entities formed pursuant to the

Restructuring Transactions to hold the assets of the Debtors, free and clear of all Liens, Claims, charges, or other encumbrances. On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtors may operate their businesses and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without notice and without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

Notice of the Plan or of the Confirmation Order shall be conclusively deemed to be adequate notice that Liens, Claims, charges, or other encumbrances are being extinguished. Any Person having a Lien, Claim, charge, or other encumbrance against any of the property vested in accordance with the foregoing paragraph shall be conclusively deemed to have consented to the transfer, assignment, and vesting of such property to or in the Reorganized Debtors free and clear of all Liens, Claims, charges, or other encumbrances by failing to object to confirmation of the Plan, except as otherwise provided in the Plan.

### 3.  Cancellation of Loans, Securities, and Agreements

Except as otherwise provided in the Plan, on the Effective Date: (a) the Prepetition Debt Documents, the Existing Equity Documents, and any other credit agreement, collateral agreement, indenture, certificate, equity security, share, note, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of, or ownership interest in, the Debtors or giving rise to any Claim or Interest (except such agreements, certificates, notes, or other instruments or documents evidencing any indebtedness or obligation of, or ownership interest in, the Debtors that are Reinstated, amended and restated, entered into or issued pursuant to the Plan) shall be deemed cancelled, released, surrendered, extinguished and discharged and of no force or effect, without any need for further action or approval of the Bankruptcy Court, the Debtors, any holder of any Claim or Interest or any other Person or Entity, and no party (including the Debtors, the Reorganized Debtors and any non-Debtor affiliates) shall have any continuing obligations or duties thereunder or in any way related thereto, which shall be deemed satisfied in full, canceled, released, discharged, and of no further force or effect; and (b) the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws or certificate or articles of incorporation, or similar documents governing the shares, certificates, notes, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of, or ownership interest in, the Debtors (except such agreements, certificates, notes, or other instruments or documents evidencing any indebtedness or obligation of, or ownership interest in, the Debtors that are specifically Reinstated, amended and restated, entered into or issued pursuant to the Plan) shall be deemed satisfied in full, released, and discharged, without any need for further action or approval of the Bankruptcy Court, the Debtors, any holder of any Claim or Interest or any other Person or Entity. To the extent any direction under the Prepetition Debt Documents is required to effectuate the foregoing, the Confirmation Order shall be deemed to have provided such direction and shall include language providing therefor.

Notwithstanding such cancellation and discharge, the Prepetition Debt Documents shall continue in effect solely to the extent necessary (a) to allow the holders of Claims to receive distributions under the Plan; (b) to allow the Debtors, the Reorganized Debtors, and the Prepetition Agents to make or receive distributions under and in accordance with the terms of the

Plan and to take other actions pursuant to the terms of the Plan on account of Claims; (c) to allow the 2026 Unsecured Indenture Trustee, the 2024 Unsecured Indenture Trustee, the 2027 Unsecured Indenture Trustee, the PIK Notes Indenture Trustee, the 1L Indenture Trustee, and the 1.25L Indenture Trustee to exercise their rights, claims, causes of action, and interests (including their rights, if any, to compensation and indemnification as against any money or property distributable) under the 2026 Unsecured Indenture, the 2024 Unsecured Indenture, the 2027 Unsecured Indenture, the PIK Notes Indenture, the 1L Indenture, and the 1.25L Indenture, respectively, against any holder of 2024 Unsecured Notes Claims, 2026 Unsecured Notes Claims, 2027 Unsecured Notes Claims, PIK Notes Claims, 1L Notes Claims, and 1.25L Notes Claims, respectively, to the extent consistent with the Plan, including to exercise charging liens; (d) to allow the Prepetition Agents to enforce any obligations owed to them under the Plan; and (e~~the~~ Prepetition Debt Documents; (e) to preserve all rights, remedies, indemnities, powers, and protections, including rights of enforcement, of the 1L Indenture Trustee, the 1.25L Indenture Trustee, and the PIK Notes Indenture Trustee, as applicable, against any person other than a Released Party; and (f) to allow the Prepetition Agents to appear in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court relating to such documents in furtherance of the foregoing; *provided* that any provisions regarding turnover of proceeds arising under any intercreditor agreement that constitute Prepetition Debt Documents shall be cancelled and discharged and of no force or effect; and *provided further* that nothing in this Article IV.C.3 shall affect the discharge of Claims or Interests pursuant to the Plan or the effectiveness of the Third-Party Release.

Except for the foregoing, upon Consummation of the Plan, the Prepetition Agents ~~shall~~and each of their respective directors, officers, employees, agents, affiliates, controlling persons, and legal and financial advisors shall be discharged and shall have no further obligation or liability, and shall otherwise be relieved of all further duties and responsibilities related to the foregoing documents; *provided* that any provisions of such documents that by their terms survive their termination shall survive in accordance with their terms.

Upon the full payment or other satisfaction of an Allowed Other Secured Claim, or promptly thereafter, the holder of such Allowed Other Secured Claim shall deliver to the Debtors or Reorganized Debtors, as applicable, any collateral or other property of a Debtor held by such holder, together with any termination statements, instruments of satisfaction, or releases of all security interests with respect to its Allowed Other Secured Claim that may be reasonably required to terminate any related financing statements, mortgages, mechanics' or other statutory Liens, lis pendens, or similar interests or documents and take all other steps reasonably requested by the Debtors, the Reorganized Debtors, the New Notes Indenture Trustees, or the New Revolver Facility Agent that are necessary to cancel or extinguish Liens securing such holder's Other Secured Claim.

4. **Binding Effect of New Organizational Documents**

Each holder of the New Common Equity (whether issued and distributed hereunder or otherwise, and in each case, whether such New Common Equity is held directly or indirectly through the facilities of DTC) shall be deemed to be a party to, and shall be bound to the terms

of, the applicable New Organizational Documents, in accordance with their terms, from and after the Effective Date, even if not a signatory thereto.

**D.    AUTHORIZATION TO IMPLEMENT THE PLAN**

**1.    Restructuring Transactions**

In consummating the Plan, the Debtors and the Reorganized Debtors shall be authorized, to the extent consistent with the Plan, to enter into such transactions and take such other actions (in ~~consultation~~each case, with the ~~First Lien Noteholder Group in material respects~~consent of the Required Consenting 1L Noteholders) as may be necessary or appropriate to effect a corporate and other organizational restructuring of their businesses, to otherwise simplify the overall corporate and other organizational structure of the Debtors, to reincorporate or reorganize certain of the Debtors under the laws of jurisdictions other than the laws under which such Debtors currently are incorporated or formed, and to alter the tax status of the Debtors (collectively, "*Restructuring Transactions*"). The Restructuring Transactions may include one or more mergers, consolidations, dispositions, transfers, assignments, contributions, liquidations or dissolutions, as may be determined by the Debtors (in ~~consultation~~each case, with the ~~First Lien Noteholder Group in material respects~~consent of the Required Consenting 1L Noteholders) to be necessary or appropriate, including any such transaction necessary or appropriate to result in substantially all of the respective assets, properties, rights, liabilities, duties, and obligations of certain of the Debtors vesting in one or more surviving, resulting, or acquiring entities. Subject to the terms of the Plan, in each case in which the surviving, resulting, or acquiring Entity in any such transaction is a successor to a Debtor, that surviving, resulting, or acquiring Entity shall perform the obligations of the corresponding Debtor or Reorganized Debtor pursuant to the Plan to pay or otherwise satisfy the Allowed Claims against and Interests in that Debtor, except that any contract, instrument or other agreement or document effecting a disposition to the surviving, resulting or acquiring Entity, which may provide that another Entity (including another Reorganized Debtor) will perform such obligations. The Restructuring Transactions may occur prior to, on, or after the Effective Date.

In effecting the Restructuring Transactions, the Debtors and the Reorganized Debtors shall be permitted to (a) execute and deliver appropriate agreements or other documents of merger, consolidation, restructuring, disposition, liquidation, or dissolution containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable non-bankruptcy law and such other terms to which the applicable Entities may agree; (b) form new Entities, execute and deliver appropriate documents in connection therewith containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable non-bankruptcy law, and issue equity in such newly formed Entities; (c) execute and deliver appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, duty, or obligation on terms consistent with the terms of the Plan and having such other terms to which the applicable Entities may agree and effectuate such transfers, assignments, assumptions, or delegations in accordance with such instruments, including to any Entities formed in accordance with the Restructuring Transactions and the Plan; (d) file appropriate certificates or articles of merger, consolidation, or dissolution pursuant to applicable non-bankruptcy law; and (e) take all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings, or vacating previously filed

filings or recordings, that may be required by applicable non-bankruptcy law in connection with such transactions. Each agent of the Debtors and other Persons authorized to make filings with respect to the Debtors is directed to cooperate with and to take direction from the Debtors and the Reorganized Debtors as to the foregoing.

To the extent known, any Restructuring Transactions will be summarized in the Description of Restructuring Transactions, and shall be subject to the terms and conditions of the Plan and~~, in material respects,~~ the ~~reasonable~~ consent of the Required <u>Consenting</u> 1L Noteholders.

## 2.     Actions to Effectuate the Plan

All actions contemplated under the Plan (including, for the avoidance of doubt, the Plan Supplement) shall be deemed authorized and approved in all respects, including, with respect to the applicable Reorganized Debtors: (a) appointment of the New Boards pursuant to Article IV.E and any other managers, directors, or officers for the Reorganized Debtors identified in the Plan Supplement; (b) the issuance and distribution of the New Common Equity by Reorganized Incora; (c) entry into the New Organizational Documents; (d) entry into the New Debt Documents; and (e) implementation of the Restructuring Transactions.

All matters provided for in the Plan involving the corporate or other organizational structure of the Debtors or the Reorganized Debtors, and any corporate or other entity action required by the Debtors or Reorganized Debtors in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, managers, or officers of the Debtors or the Reorganized Debtors.

On and after the Effective Date, the Debtors, the Reorganized Debtors and their respective officers, directors or managers shall each be authorized and (as applicable) directed to issue, execute, deliver, file, or record the contracts, securities, instruments, releases, and other agreements and documents contemplated under the Plan (or necessary or desirable to effectuate, implement, or further evidence the transactions contemplated under the Plan) in the name, and on behalf, of the Debtors or the Reorganized Debtors, including any and all agreements, documents, securities, and instruments relating to the foregoing. The authorizations and approvals set forth in this Article IV.D.2 shall be effective notwithstanding any approvals, authorization or requirements under applicable non-bankruptcy law, except for those expressly required pursuant to the Plan or the New Organizational Documents.

## 3.     Authorization and Issuance of the New Common Equity

All of the New Common Equity issued or distributed pursuant to the Plan shall be issued and distributed free and clear of all Liens, Claims, and other Interests. All of the New Common Equity issued or distributed pursuant to the Plan shall be duly authorized, validly issued, and, as applicable, fully paid and non-assessable. Each distribution and issuance of the New Common Equity under the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments

evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

## E. DIRECTORS AND OFFICERS

### 1. Resignation of Incumbent Directors

As of the Effective Date, the terms of the current directors and managers of each Debtor shall expire, and each such director and manager will be deemed to have resigned and shall have no continuing obligation in their capacity as such to the Reorganized Debtors after the Effective Date.

### 2. New Boards of Directors

~~On the Effective Date, the~~The Reorganized Incora Board shall ~~consist of [•] Directors, which shall~~ be determined and selected by the Required Consenting 1L Noteholders, and the identities of such Directors will be disclosed, to the extent known, in the Plan Supplement. As of the Effective Date, the applicable New Subsidiary Boards shall be appointed in accordance with the applicable New Organizational Documents, and the identities of the members thereof will be disclosed, to the extent known, in the Plan Supplement. From the Effective Date, each of the directors or managers, as applicable, of the Reorganized Debtors shall serve pursuant to the terms of the applicable New Organizational Documents and may be replaced or removed in accordance with the New Organizational Documents.

### 3. Officers

Except as otherwise provided in the Plan Supplement, the officers of the Debtors immediately before the Effective Date shall serve as the initial officers of each of the respective Reorganized Debtors on and after the Effective Date, except that those officers who are employed by or partners of the Sponsor shall be deemed to have resigned and shall bear no further duties to any of the Debtors or the Reorganized Debtors. From and after the Effective Date, the selection of officers of the Reorganized Debtors shall be as provided by their respective organizational documents.

## F. TAX AND REGULATORY MATTERS

### 1. Filing of New Organizational Documents

On or prior to the Effective Date or as soon thereafter as is practicable, the applicable Reorganized Debtors shall, if so required under applicable local law, file their New Organizational Documents with the applicable Secretaries of State or other applicable authorities in their respective jurisdictions of organization in accordance with the laws of the respective jurisdictions. Pursuant to section 1123(a)(6) of the Bankruptcy Code, the New Organizational Documents will prohibit the issuance of non-voting equity securities, but only to the extent required by section 1123(a)(6) of the Bankruptcy Code. After the Effective Date, the Reorganized Debtors may amend and restate their respective New Organizational Documents and other constituent documents as permitted by the laws of their respective jurisdictions of

organization, and their respective New Organizational Documents, without further order of the Bankruptcy Court.

## 2.    Section 1146 Exemption

In accordance with section 1146 of the Bankruptcy Code, (a) the issuance, distribution, transfer, or exchange of any securities, instruments or documents, including the New Common Equity; (b) the creation of any lien, mortgage, deed of trust, or other security interest; (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan or the reinvesting, transfer or sale of any real or personal property of the Debtors pursuant to, in implementation of, or as contemplated in the Plan (whether to one or more of the Reorganized Debtors or otherwise); (d) the grant of collateral under the New Debt Documents; (e) the Restructuring Transactions; and (f) the issuance, renewal, modification, or securing of indebtedness by such means, and the making, delivery, or recording of any deed, bill of sale, assignment or other instrument of transfer under, in furtherance of, contemplated by, arising out of or in any way related to, the Plan, including the Confirmation Order, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment (except, in each case, to the extent required under applicable foreign law), and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing, other than in respect of any tax imposed under applicable foreign law), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## G.    PRESERVATION OF CAUSES OF ACTION

In accordance with section 1123(b) of the Bankruptcy Code, but subject in all respects to Article VIII.D of the Plan, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Retained Causes of Action (and all Privilege Rights with respect thereto), whether arising before or after the Petition Date, in any court or other tribunal including, in an adversary proceeding filed in the Chapter 11 Cases, and including any actions specifically enumerated in the Schedule of Retained Causes of Action.

The Reorganized Debtors may pursue such Retained Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors in their discretion.

**No Person or Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Retained Cause of Action against them as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Retained Causes of Action against them.** Unless any Cause of Action against a Person is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order of the Bankruptcy Court, the Reorganized Debtors expressly reserve all Causes of Action as Retained Causes of Action, for later adjudication, and, therefore no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or Consummation of the Plan.

The Reorganized Debtors, through their authorized agents or representatives, shall retain and shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Retained Causes of Action, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

## H.   MANAGEMENT INCENTIVE PLAN

The Reorganized Debtors will reserve a pool ~~of [•]%~~ of the New Common Equity to be agreed by the Debtors and the Required Consenting 1L Noteholders for a post-emergence Management Incentive Plan for management employees of the Reorganized Debtors, which will contain terms and conditions (including with respect to participants, form, allocation, structure, duration and timing and extent of issuance and vesting) as determined by the Reorganized Incora Board after the Effective Date.

# ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND/OR UNEXPIRED LEASES

## A.   ASSUMPTION AND REJECTION

Except as otherwise provided in this Plan, each Executory Contract and/or Unexpired Lease shall be deemed assumed, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date, pursuant to section 365 of the Bankruptcy Code, unless such Executory Contract and/or Unexpired Lease (a) was previously assumed or rejected; (b) previously expired or was terminated pursuant to its own terms; (c) is the subject of a motion to reject, assume, or assume and assign filed on or before the Effective Date; or (d) is designated specifically as an Executory Contract or Unexpired Lease on the Schedule of Rejected Executory Contracts and Unexpired Leases; *provided* the Debtors or the Reorganized Debtors, as applicable, retain the right to alter, amend, modify or supplement the Schedule

of Rejected Executory Contracts and Unexpired Leases, including by way of adding or removing a particular Executory Contract or Unexpired Lease from the Schedule of Rejected Executory Contracts and Unexpired Leases at any time through and including (60) Business Days after the Effective Date.

Unless previously approved by the Bankruptcy Court, the Confirmation Order will constitute an order of the Bankruptcy Court approving the above-described rejections, assumptions, and assignments, all pursuant to sections 365(a) and 1123 of the Bankruptcy Code and effective upon Consummation of the Plan.

Except as otherwise provided in this Plan or agreed to by the Debtors and the applicable counterparty, each Executory Contract and/or Unexpired Lease assumed pursuant to this Article V.A or by any order of the Bankruptcy Court, which has not been assigned to a third party prior to the Confirmation Date, shall revest in, and be fully enforceable by, the applicable Reorganized Debtor in accordance with its terms (including any amendments to any Executory Contracts and/or Unexpired Leases that were entered into after the Petition Date), except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law. To the maximum extent permitted by law, to the extent that any provision in any Executory Contract and/or Unexpired Lease assumed or assumed and assigned pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract and/or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified or stricken such that the transactions contemplated by the Plan shall not entitle the non-Debtor that is party thereto to terminate such Executory Contract and/or Unexpired Lease or to exercise any other default-related rights with respect thereto.

Nothing contained in the Plan shall constitute an admission by the Debtors that any Executory Contract and/or Unexpired Lease is, in fact, an Executory Contract and/or Unexpired Lease or that the Debtors or the Reorganized Debtors have any liability thereunder.

**B.   ASSUMED CONTRACTS AND LEASES**

**1.   Cure of Defaults and Objections to Cure and Assumption**

The Allowed Cure Claim for each Executory Contract and/or Unexpired Lease shall be $0.00, unless (a) the Debtors (with the consent of the Required Consenting 1L Noteholders, not to be unreasonably withheld) affirmatively propose to Allow a Cure Claim for an Executory Contract and/or Unexpired Lease in a different amount by listing it on the Schedule of Assumed Executory Contracts and Unexpired Leases, (b) a Final Order is entered Allowing a Cure Claim in a different amount, or (c) the Debtors (subject to with the Claim Objection and Settlement Procedures Order consent of the Required Consenting 1L Noteholders) or Reorganized Debtors, as applicable, otherwise agree with the applicable party or parties to an Executory Contract and/or Unexpired Lease to Allow a Cure Claim in a different amount. The Debtors (subject to with the Claim Objection and Settlement Procedures Order consent of the Required Consenting 1L Noteholders) and the Reorganized Debtors may settle any Cure Claim without any further notice to or action, order, or approval of the Bankruptcy Court. Unless otherwise agreed upon in

writing by the parties to the applicable Executory Contract and/or Unexpired Lease (with the consent of the Required Consenting 1L Noteholders, not to be unreasonably withheld, as to material Executory Contracts and/or Unexpired Leases), all objections to the assumption of any Executory Contract and/or Unexpired Lease pursuant to the Plan, including to any Cure Claim set forth in the Schedule of Assumed Executory Contracts and Unexpired Leases, must be filed with the Bankruptcy Court on or before the Confirmation Objection Deadline or such other deadline that may be set by the Bankruptcy Court. Any such request that is not timely filed shall be Disallowed and forever barred, estopped, and enjoined from assertion, and shall not be enforceable against any Debtor or Reorganized Debtor, without the need for any objection by the Debtors or Reorganized Debtors or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.

Except as set forth below, the Debtors or the Reorganized Debtors shall satisfy all Allowed Cure Claims in respect of assumed Executory Contracts and Unexpired Leases by payment in Cash, on the Effective Date or as soon as reasonably practicable thereafter, of the Allowed amount. Each Cure Claim shall be deemed fully satisfied, released, and discharged upon such payment; *provided*, *however*, that nothing herein shall prevent the Reorganized Debtors from paying any Cure Claim despite the failure of the relevant counterparty to file such request for payment of such Cure Claim. The consummation of this Plan on the Effective Date shall be conclusively deemed to provide "adequate assurance of future performance" as to all Executory Contracts and/or Unexpired Leases that are assumed.

Assumption of any Executory Contract and/or Unexpired Lease pursuant to the Plan shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any such Executory Contract and/or Unexpired Lease at any time before the date that it is assumed. Subject to the resolution of any timely objections in accordance with Article V.B.2, any Proofs of Claim filed with respect to an Executory Contract and/or Unexpired Lease that has been assumed or assumed and assigned shall be deemed Disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

## 2. Dispute Resolution

If a counterparty to an Executory Contract and/or Unexpired Lease files a timely objection regarding the amount of any Cure Claim or any other matter pertaining to assumption or the cure of defaults required by section 365(b)(1) of the Bankruptcy Code (each, an "*Assumption Dispute*"), the Assumption Dispute shall be resolved by the Bankruptcy Court or otherwise as may be agreed upon by the Debtors (subject towith the Claim Objection and Settlement Procedures Orderconsent of the Required Consenting 1L Noteholders) or the Reorganized Debtors and the counterparty.

The Debtors (with the consent of the Required Consenting 1L Noteholders, not to be unreasonably withheld, as to material Executory Contracts and/or Unexpired Leases) or the Reorganized Debtors may assume, assume and assign, or reject an Executory Contract and/or Unexpired Lease that is subject to an Assumption Dispute at any time prior to the resolution of the Assumption Dispute relating to the Executory Contract and/or Unexpired Lease. During the

Assumption Dispute, the counterparty shall continue to perform under the applicable Executory Contract and/or Unexpired Lease. If the Assumption Dispute is resolved or determined unfavorably to the Debtors or Reorganized Debtors, the Debtors or Reorganized Debtor may either affirm the assumption or reject the applicable Executory Contract and/or Unexpired Lease after such determination, in which case the counterparty may file a Proof of Claim within 30 days after notice of rejection.

Any Assumption Dispute, including one styled as an objection to Confirmation, may be scheduled to be heard by the Bankruptcy Court at or after the Confirmation Hearing and may be adjourned from time to time by the Debtors upon notice to the Bankruptcy Court.

**3.     Modifications, Amendments, Supplements, Restatements, and Other Agreements**

Unless otherwise provided in the Plan, each Executory Contract and/or Unexpired Lease that is assumed and, if applicable, assigned to the Reorganized Debtors, shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract and/or Unexpired Lease, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously terminated or is otherwise not in effect.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and/or Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract and/or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

**C.     REJECTED CONTRACTS AND LEASES: CLAIMS FOR DAMAGES**

If the rejection of an Executory Contract and/or Unexpired Lease by the Debtors results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be classified and treated in Class 7ba (General Unsecured Claims), and may be objected to in accordance with the provisions of Article VI and applicable provisions of the Bankruptcy Code and Bankruptcy Rules. Such Claims shall be asserted within 30 days following entry of the order (including the Confirmation Order) approving the Debtors' rejection of the applicable executory contract or unexpired lease. The Allowance of all such Claims shall be subject to all applicable limitations, including the caps set forth in section 502(b)(6) of the Bankruptcy Code. All such Claims not filed within such time will be Disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, their Estates or the Reorganized Debtors, or the property thereof, without the need for any objection by the Debtors or Reorganized Debtors or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied,

51

released, and discharged, notwithstanding anything in the Schedules, if any, or a Proof of Claim to the contrary.

### D.   PARTICULAR CONTRACTS AND LEASES

### 1.   Insurance Policies

Unless listed on the Schedule of Rejected Executory Contracts and Unexpired Leases, each of the insurance contracts, including all D&O Policies, are deemed to be and treated as Executory Contracts and/or Unexpired Leases under the Plan, and on and after the Effective Date, the Debtors shall be deemed to have assumed all insurance contracts, including all D&O Policies in place as of the Petition Date.

In addition, after the Effective Date, all current and former officers, directors, agents, or employees who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of any D&O Policy (including any "tail" policy) for the full term of such policy regardless of whether such officers, directors, agents, and/or employees remain in such positions after the Effective Date, in each case, solely to the extent set forth in such D&O Policies and subject to any terms and conditions thereof. In addition, after the Effective Date, the Reorganized Debtors shall not terminate or otherwise reduce the coverage under any D&O Policy (including any "tail policy") in effect as of the Petition Date; *provided* that, for the avoidance of doubt, any insurance contract, including tail insurance policies, for directors', members', trustees', and officers' liability to be purchased or maintained by the Reorganized Debtors after the Effective Date shall be subject to ordinary-course corporate governance of the Reorganized Debtors.

### 2.   Indemnification Obligations

#### a.   ~~2.~~ *Indemnification of Directors, Officers, and Others*

Except as set forth on the Schedule of Rejected Contracts and Unexpired Leases, any Indemnification Obligation to indemnify current and former officers, directors, members, managers, agents, or employees with respect to all present and future actions, suits, and proceedings against the Debtors or such officers, directors, members, managers, agents, or employees based upon any act or omission for or on behalf of the Debtors shall (a) remain in full force and effect; (b) not be discharged, impaired, or otherwise affected in any way, including by the Plan, the Plan Supplement, or the Confirmation Order; (c) not be limited, reduced, or terminated after the Effective Date; and (d) survive unimpaired and unaffected irrespective of whether such Indemnification Obligation is owed for an act or event occurring before, on or after the Petition Date; *provided* that the Reorganized Debtors shall not indemnify officers, directors, members, or managers, as applicable, of the Debtors for any claims or Causes of Action that (x) are not indemnified by such Indemnification Obligation; or (y) arise out of or relate to any act or omission that is a criminal act or constitutes intentional fraud, gross negligence, or willful misconduct; *provided*, *further*, that the obligations in this section shall not apply to any Excluded Party or any other Person that is employed by or a partner of (or indemnified by) the Sponsor, and any obligations to indemnify any such Person shall be terminated upon the occurrence of the Effective Date regardless of whether such obligations are captured on the Schedule of Assumed Executory Contracts and Unexpired Leases or the Schedule of Rejected Contracts and Unexpired

Leases. Except as provided in the foregoing sentence, all such obligations shall be deemed and treated as executory contracts to be assumed by the Debtors under the Plan and shall continue as obligations of the Reorganized Debtors, and, if necessary to effectuate such assumption under local law, one or more of the Reorganized Debtors shall contractually assume such obligations.

No Entity or Person may assert any Cause of Action against any independent director of a Debtor (including Patrick Bartels as independent director of Wolverine Intermediate Holding) arising out of or related to a Covered Exculpation Matter without first seeking authority from the Bankruptcy Court. Any request for such authority shall: (i) be made in writing with notice to all affected parties and shall include a proposed complaint setting forth any alleged Causes of Action and the detailed factual basis in support of such Causes of Action; (ii) indemnify each independent director against whom any such Causes of Action are asserted against costs associated with the successful defense of any such Causes of Action that are allowed to proceed; and (iii) propose a reasonable attorney fee reserve amount, which amount shall be subject to modification by the Bankruptcy Court and shall be deposited by the Entity or Person asserting such Causes of Action in the Bankruptcy Court's registry to secure the payment of such indemnity.

Any Claim filed on account of an indemnification obligation to a director, manager, officer, or employee of the Debtors as of the Effective Date shall be deemed satisfied and may be expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed by the Reorganized Debtors, or honored or reaffirmed, as the case may be pursuant to the Plan, without an objection having to be filed and without any further notice or action, order or approval of the Bankruptcy Court. For the avoidance of doubt, this Plan is without prejudice to any indemnification of the holders of 1L Notes Claims that may be provided by the Reorganized Debtors from and after the Effective Date on account of 1L Notes Claims.

   **b.**   *Indemnification of 1L Indenture Trustee and Holders of 1L Notes Claims*

   *Following the Effective Date, holders of 1L Notes Claims as of the Effective Date (including the 1L Indenture Trustee) and their respective Related Parties shall be indemnified by the Reorganized Debtors with respect to all present and future actions, suits, and proceedings against holders of 1L Notes Claims or their respective Related Parties in connection with or related to the 2022 Financing Transactions, the Financing Litigation, and/or any other Causes of Action in connection with or related to the 1L Indenture (including, with respect to the 1L Indenture Trustee, for its reasonable and documented fees and expenses and for the reasonable and documented fees and expenses of its counsel) or the other Note Documents (as defined in the 1L Indenture), on the same terms as afforded under the 1L Indenture or the other Note Documents (as defined in the 1L Indenture); provided that the Reorganized Debtors shall not so indemnify any Excluded Party or its Related Parties.*

**3.**   **Compensation and Benefit Plans**

   Unless otherwise provided in this Plan (including on the Schedule of Rejected Executory Contracts and Unexpired Leases) and except as applicable to any Excluded Party or any other Person that is employed by or a partner of the Sponsor, all employment, restrictive covenant,

confidentiality, and non-competition agreements, collective bargaining agreements, offer letters (including any severance set forth therein), bonus, gainshare and cash-based incentive programs, vacation, holiday pay, severance, retirement, supplemental retirement, employee or director or officer indemnity, medical, dental, vision, life and disability insurance, flexible spending account, and other health and welfare benefit plans, programs, agreements and arrangements, and all other wage, compensation, employee expense reimbursement, and other benefit obligations (collectively, the "*Compensation and Benefit Plans*")] are deemed to be, and shall be treated as, Executory Contracts under the Plan and, on the Effective Date, subject to the following provisos, shall be deemed assumed pursuant to sections 365 and 1123 of the Bankruptcy Code (in each case, as amended prior to or on the Effective Date); *provided* that Consummation shall not constitute a change in control or term of similar meaning pursuant to any such plans; *provided*, *further*, that no employee equity or equity-based plans, or any provisions set forth in any Compensation and Benefits Plans that provide for rights to acquire equity interests in any of the Debtors, including Existing Equity Interests, shall be assumed, or deemed assumed, by the Reorganized Debtors, or assumed and assigned, or deemed to be assumed and assigned, to Reorganized Incora.

For the avoidance of doubt, the foregoing shall not (1) limit, diminish, or otherwise alter the Reorganized Debtors' defenses, claims, Causes of Action, or other rights with respect to the Compensation and Benefit Plans, or (2) impair the ability of the Reorganized Debtors, to implement the Management Incentive Plan and to determine the Compensation and Benefit Plans of the Reorganized Debtors on or after the Effective Date, in each case consistent with the Plan.

### E.   POSTPETITION CONTRACTS AND LEASES

Subject to Article V.B.3, new contracts and leases entered into after the Petition Date by any Debtor, will be performed by the applicable Debtor or Reorganized Debtor, as the case may be, liable thereunder in the ordinary course of its business or as authorized by the Bankruptcy Court. Accordingly, such contracts and leases (including any assumed Executory Contracts and/or Unexpired Leases) will survive and remain unaffected by entry of the Confirmation Order, and, on the Effective Date, shall revest in and be fully enforceable by the applicable Reorganized Debtor in accordance with its terms, except as such terms may have been modified by order of the Bankruptcy Court.

## ARTICLE VI.
### CLAIMS RESOLUTION

### A.   ALLOWANCE OF CLAIMS AND INTERESTS, GENERALLY

Except as otherwise expressly provided in the Plan and without regard to any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Confirmation Date, the Debtors (with the consent of the Required Consenting 1L Noteholders unless otherwise permitted under the Claim Objection and

Settlement Procedures Order), and Reorganized Debtors shall have the sole authority, without any further notice to or action, order, or approval by the Bankruptcy Court, to (a) agree to Allow any Disputed Claim pursuant to clause (c)(iii) of the definition of "Allowed," which has not been made subject to an objection or request for estimation prior to the Confirmation Date, (b) file, withdraw, or litigate to judgment objections to Disputed Claims, (c) settle or compromise any Disputed Claim that has not been made subject to an objection or request for estimation prior to the Confirmation Date, and (d) direct the Claims Agent to adjust the Claims Register to reflect all resolutions of Disputed Claims.

The Reorganized Debtors shall file any objections to Claims (including any omnibus objections) no later than the Claim Objection Deadline (as it may be extended).

Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any holder of a Claim that has been Allowed, Disallowed or estimated by order of the Bankruptcy Court be entitled to seek reconsideration of such an order unless it filed a motion requesting reconsideration on or before 21 days after the date of the order.

## B.    CONTINGENT AND UNLIQUIDATED CLAIMS

Except with respect to a Claim that is Allowed pursuant to clause (a) or (c) of the definition of "Allowed," any Claim that is listed in the Schedules as contingent, unliquidated or disputed, and for which no superseding Proof of Claim has been filed, shall be considered Disallowed and shall be expunged by the Debtors and the Claims Agent without further notice to any party or action, approval or order of the Bankruptcy Court.

At any time prior to the Claim Objection Deadline, the Debtors and Reorganized Debtors or the applicable claimant may request that the Bankruptcy Court estimate, pursuant to section 502(c) of the Bankruptcy Code, any Disputed Claim that is presented in a Proof of Claim as contingent or unliquidated, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim, including during the litigation of any objection to any Claim or during the appeal relating to such objection. If neither the Reorganized Debtors nor the applicable claimant has filed a motion to estimate a contingent or unliquidated Claim (or portion of the Claim) on or before the Claim Objection Deadline, then the Claim (or portion of the Claim) shall be Disallowed without need for further notice or order of the Court.

## C.    AMENDMENTS

On or after the Confirmation Date, a Claim may not be amended without the prior authorization of (a) the Bankruptcy Court or (b) the Debtors or Reorganized Debtors, as applicable.

The Debtors, prior to the Effective Date, and the Reorganized Debtors, after the Effective Date, may amend the Schedules with respect to any Claim (other than any Claim that otherwise

is or becomes an Allowed Claim or is released hereunder or otherwise by a Final Order) and to make distributions pursuant to the Plan based on such amended Schedules (if no Proof of Claim is timely filed in response to such amendment) without approval of the Bankruptcy Court. If any such amendment to the Schedules reduces the amount of a Claim or adversely changes the nature or priority of a Claim that was previously scheduled as undisputed, liquidated and not contingent, the Debtors or the Reorganized Debtors, as applicable, shall provide the holder of such Claim with notice of such amendment and the opportunity to file a Proof of Claim pursuant to the Claims Bar Date Order. For the avoidance of doubt, the Reorganized Debtors shall have the authority to Dispute any Claim that has been listed on the Schedules (other than any Claim that is otherwise an Allowed Claim), even if not listed as disputed, unliquidated and/or contingent.

### D.   CLAIMS SUBJECT TO AVOIDANCE ACTIONS

Except as otherwise provided in a Final Order of the Bankruptcy Court, any Claim held by an Entity against which a Debtor or a Reorganized Debtor pursues an Avoidance Action or an action to recover property under sections 542, 543, 550 or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, in each case other than a Released Claim, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and the holder of such Claim shall not receive any distribution under the Plan on account of such Claim until such time as such action has been resolved and, to the extent applicable, all sums due from such holder have been turned over to the Debtors or the Reorganized Debtors, as applicable. For the avoidance of doubt, the Claims Objection Deadline shall not apply to the filing of an Avoidance Action, including an Avoidance Action that seeks disallowance of a Claim as relief.

### E.   CLAIMS PAID OR PAYABLE BY THIRD PARTIES

#### 1.   Claims Paid by Third Parties

The Debtors or Reorganized Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be Disallowed without an objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment (before or after the Effective Date) on account of such Claim from a party that is not a Debtor or Reorganized Debtor; *provided*, *however*, if such holder is required to repay all or any portion of a Claim (either by contract or by order of a court of competent jurisdiction) to the party that is not a Debtor or Reorganized Debtor, and such holder in fact repays all or a portion of the Claim to such third party, the repaid amount of such Claim shall remain subject to the applicable treatment set forth in the Plan and the respective rights and defenses of the Debtors or Reorganized Debtors, as applicable, and the holder of such Claim. To the extent a holder of a Claim receives a distribution on account of such Claim under the Plan and receives payment from a party that is not a Debtor or the Reorganized Debtor on account of such Claim, such holder shall, within 10 days of receipt thereof, repay or return the distribution to the applicable Debtor or Reorganized Debtor, to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such holder to timely repay

or return such distribution shall result in the holder owing the applicable Reorganized Debtor annualized interest at the federal judgment rate, as in effect as of the Petition Date, on such amount owed for each Business Day after the 10-day grace period specified above until the amount is repaid.

### 2. Claims Payable by Third Parties

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to any Debtor's insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy; *provided* that if such holder is required to repay all or any portion of a Claim (either by contract or by order of a court of competent jurisdiction) to a Debtor's insurer, and such holder in fact repays all or a portion of the Claim to such insurer, the repaid amount of such Claim shall remain subject to the applicable treatment set forth in the Plan and the respective rights and defenses of the Debtors or Reorganized Debtors, as applicable, and the holder of such Claim. The insurers reserve all rights to defend and contest applicable causes of action or demands to the extent that they are brought against the insurers, or to the extent that such causes of action or demands seek recovery from the insurers. To the extent that one or more of the Debtors' insurers, in its role as an insurer (but not in any role as the issuer of surety bonds or similar instruments or as a guarantor of payment), agree to satisfy a Claim in full or in part (if and to the extent adjudicated by a court of competent jurisdiction or otherwise settled), then immediately upon such insurers' payment thereof, the applicable portion of such Claim may be expunged without an objection having to be filed and without any further notice to or action, order or approval of the Bankruptcy Court.

### 3. Applicability of Insurance Contracts

Except as otherwise provided in the Plan, distributions to holders of Claims covered by insurance contracts shall be in accordance with the provisions of any applicable insurance contract. Except as otherwise expressly set forth in the Plan, nothing in this Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity, including any holders of Claims, may hold against any other Entity under any insurance contract, including against insurers or any insured, nor shall anything contained in this Plan constitute or be deemed a waiver by such insurers of any rights or defenses, including coverage defenses, held by such insurers.

### F. [RESERVED]

### G. ~~F.~~ CLAIM RESOLUTION PROCEDURES CUMULATIVE

All of the aforementioned objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Disputed Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

# ARTICLE VII.
## DISTRIBUTIONS

### A.    THE DISBURSING AGENT AND SERVICERS

### 1.    Powers and Roles

All distributions under the Plan shall be made by the Disbursing Agent on the Effective Date (or, if a Claim is not an Allowed Claim on the Effective Date, on the next Interim Distribution Date) or as soon as reasonably practicable thereafter. Where Allowed Claims that are governed by a separate agreement and administered by a Servicer, the Disbursing Agent and the Reorganized Debtors, together with the applicable Servicer, shall use commercially reasonable efforts to implement distributions in accordance with the Plan and with the applicable agreements.

Without further order of the Bankruptcy Court, the Disbursing Agent and, where applicable, the Servicers, shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals and incur reasonable fees and expenses to represent it with respect to such responsibilities; and (d) exercise such other powers as may be vested in them by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the Plan.

If the Disbursing Agent is one or more of the Reorganized Debtors, the Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. The Servicers shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

### 2.    Expenses

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and documented expenses incurred by the Disbursing Agent or the Servicers on or after the Effective Date (including the reasonable and documented fees and expenses of counsel) in connection with making distributions shall be paid by the Reorganized Debtors, without duplication of payments of Restructuring Expenses or Retained Professional Fees. Additionally, in the event that the Disbursing Agent is ordered or required to give a bond or surety, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtors.

## B.   DELIVERY PROCEDURES

### 1.   Record Date

Except as otherwise provided in the Plan or prior Bankruptcy Court order, the Disbursing Agent shall make distributions to holders of Allowed Claims as of the Distribution Record Date at the address for each such holder as indicated in the Debtors' records as of the date of any such distribution.

The manner of such distributions shall be determined at the discretion of the Reorganized Debtors. In addition, with respect to payment of any Cure Claim or disputes over any Cure Claim, neither the Debtors nor the Disbursing Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable Executory Contract or Unexpired Lease as of the Effective Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Cure Claim.

### 2.   Interim Distribution Date

Except as otherwise provided in the Plan or prior Bankruptcy Court order, the Disbursing Agent shall make additional interim distributions to holders of Allowed Claims that were not considered Allowed as of Distribution Record Date.

The Reorganized Debtors shall have sole discretion to determine the timing of these Interim Distribution Dates based on among other things, resolutions of Disputed Claims and the administrative costs of such a distribution. The manner of such distributions shall be determined at the reasonable discretion of the Reorganized Debtors.

### 3.   Publicly Held Securities

The Distribution Record Date and subsequent Interim Distribution Record Dates shall not apply to publicly held securities deposited with DTC and, in connection with any distribution under the Plan to be effected through the facilities of DTC (whether by means of book-entry exchange, free delivery, or otherwise), the Debtors or the Reorganized Debtors, as applicable, shall be entitled to recognize and deal for all purposes under the Plan with holders of Claims in each Class to the extent consistent with the customary practices of DTC used in connection with such distributions.

### 4.   Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any holder is undeliverable for any reason (including an undeliverable address or the recipient's failure to provide necessary information), no distribution to such holder shall be made unless and until the holder has cured the reason that its distribution was undeliverable, after which its distribution shall be made on the next Interim Distribution Date without interest; *provided*, *however*, that any undeliverable distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of 180 calendar days after the date on which such distribution was first attempted to be made, as determined in good faith by Reorganized Incora; *provided*, *further*, that the Debtors or Reorganized Debtors, as applicable, shall use reasonable efforts to locate a holder if any

distribution is returned as undeliverable. After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtors automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, state or other jurisdiction escheat, abandonment, or unclaimed property laws to the contrary), and the claim of any holder to such property or interest in property shall be discharged and forever barred.

Checks issued on account of Allowed Claims shall be null and void if not negotiated within 180 calendar days from and after the date of issuance thereof. Requests for reissuance of any check must be made directly and in writing to the Disbursing Agent by the holder of the relevant Allowed Claim within the 180-calendar-day period. After such date, the relevant Allowed Claim (and any Claim for reissuance of the original check) shall be automatically discharged and forever barred, and such funds shall revert to the Reorganized Debtors (notwithstanding any applicable federal, state, other U.S. or non-U.S. jurisdiction's escheat, abandoned, or unclaimed property laws to the contrary).

A distribution shall be deemed unclaimed if a holder has not: (w) accepted a particular distribution or, in the case of distributions made by check, negotiated such check; (x) given notice to the Reorganized Debtors of an intent to accept a particular distribution; (y) responded to the Debtors' or Reorganized Debtors' requests for information necessary to facilitate a particular distribution; or (z) taken any other action necessary to facilitate such distribution.

The Debtors, the Reorganized Debtors, and the Disbursing Agents, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan, except in the event of actual fraud, gross negligence, or willful misconduct, as determined by a Final Order of a court of competent jurisdiction.

### 5.    Manner of Payment

At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by check, wire transfer, automated clearing house, or credit card, or as otherwise required or provided in applicable agreements.

## C.    CALCULATION

### 1.    Full Amount Payable

Unless otherwise provided in the Plan or paid pursuant to a prior Bankruptcy Court order, on the Effective Date (or, if a Claim is not an Allowed Claim on the Effective Date, then on the date that such Claim becomes Allowed or as soon as reasonably practicable thereafter), each holder of an Allowed Claim or Allowed Interest shall receive the full amount of the distributions that the Plan provides for Allowed Claims or Allowed Interests in the applicable Class. Distributions on account of any Disputed Claims (which will only be made if and when they become Allowed Claims) shall be made pursuant to the provisions set forth in Article VII of the Plan. If any payment or act under the Plan is required to be made or performed on or by a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day. Distributions on account of Claims in unimpaired Classes that are asserted in non-U.S. currency may, at the Debtors' discretion, be paid

in the applicable non-U.S. currency. Distributions on account of Claims in all other Classes shall be converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in The Wall Street Journal, National Edition, on the Petition Date.

**2.      Distributions on Account of Obligations of Multiple Debtors**

For all purposes associated with distributions under the Plan, each Claim that has been asserted against multiple Debtors will be treated as a single Claim and shall result in a single distribution under the Plan. [For the avoidance of doubt, each Claim Allowed against one or more Canada/Mexico Debtors and asserted against one or more other Debtors shall be treated as a Claim against the applicable Canada/Mexico Debtor.]

**3.      Minimum Distributions**

No fractional New Common Equity shall be distributed to a holder of an Allowed Claim on account of its Allowed Claim. When any distribution pursuant to the Plan would otherwise result in the issuance of a number of shares (or LLC interests or other such units) of New Common Equity that is not a whole number, the actual distribution of such New Common Equity shall be rounded as follows: (a) fractions of greater than one-half (½) shares of New Common Equity shall be rounded to the next higher whole number and (b) fractions of one-half (½) or less of New Common Equity shall be rounded to the next lower whole number with no further payment on their account. The total number of authorized shares of New Common Equity to be distributed to holders of Allowed Claims may be adjusted as necessary to account for the foregoing rounding.

Notwithstanding any other provision of the Plan, no Cash payment valued at less than $100.00, in the reasonable discretion of the Disbursing Agent and the Debtors or the Reorganized Debtors (as applicable), shall be made to a holder of an Allowed Claim on account of such Allowed Claim. Such Allowed Claims to which this limitation applies shall be discharged and its holder forever barred from asserting that Claim against the Reorganized Debtors or their property.

**4.      Setoff and Recoupment**

The Debtors and the Reorganized Debtors may, but shall not be required to, set off against any Claim or Interest (for purposes of determining the Allowed amount of such Claim or Interest on which distribution shall be made), any claims of any nature whatsoever that the Debtors or the Reorganized Debtors may have against the holder of such Claim or Interest that have not been otherwise released, compromised or settled on or prior to the Effective Date (pursuant to the Plan or otherwise); *provided* that neither the failure to do so nor the Allowance of any Claim or Interest under this Plan shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such claim the Debtors or the Reorganized Debtors may have against the holder of such Claim or Interest.

**5.      No Postpetition Interest**

Except as to the DIP Financing Claims and as required by the Bankruptcy Code, postpetition interest shall not accrue or be paid on any Claims or Interests, and no holder of a

Claim or Interest shall be entitled to interest accruing on or after the Petition Date on any such Claim or Interest.

### 6.    Allocation Between Principal and Accrued Interest

Except as otherwise provided in the Plan, the aggregate consideration paid to holders with respect to their Allowed Claims shall be treated pursuant to the Plan as allocated first to the principal amount of such Allowed Claims (to the extent thereof) and, thereafter, to the interest, if any, accrued through the Effective Date.

### 7.    Single Satisfaction of Claims

Notwithstanding anything else contained in the Plan or Confirmation Order, in no case shall a distribution be made under the Plan on account of an Allowed Claim to the extent that the aggregate value of all property received or retained on account of such Allowed Claim (from whatever source) would exceed 100 percent of the underlying Allowed Claim.

### D.    DISTRIBUTIONS TO HOLDERS OF DISPUTED CLAIMS

Notwithstanding any other provision of the Plan, (a) no distributions will be made under the Plan on account of a Disputed Claim until such Claim becomes an Allowed Claim pursuant to a Final Order, if ever, and (b) except as otherwise agreed by the Debtors or the Reorganized Debtors, as applicable, no partial distributions with respect to a Disputed Claim will be made under the Plan until all disputes in connection with such Disputed Claim have been resolved by settlement or Final Order.

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, any distributions under the Plan shall be made to the holder of such Allowed Claim in accordance with the provisions of the Plan on the next Interim Distribution Date, without any interest to be paid on account of such Claim.

### E.    EXEMPTION FROM SECURITIES LAWS

### 1.    Exemption for Distributions Under Plan

The offer, issuance, and distribution under the Plan of the New Common Equity and New Notes shall be exempt, without further act or actions by any Entity, from registration under the Securities Act and any other applicable securities laws to the fullest extent permitted by section 1145 of the Bankruptcy Code, except with respect to an Entity that is an "underwriter" with respect to such securities, as that term is defined in section 1145(b) of the Bankruptcy Code. Subject to the transfer provisions, if any, and other applicable provisions set forth in the New Organizational Documents, the New Exit Notes Documents or the New Takeback Notes Documents, as applicable, these securities may be resold without registration under the Securities Act or other federal securities laws pursuant to the exemption provided by section 4(a)(1) of the Securities Act, unless the holder is an "underwriter" with respect to such securities, as that term is defined in section 1145(b) of the Bankruptcy Code. In addition, if the holder is not

an "underwriter" with respect to such securities, as that term is defined in section 1145(b) of the Bankruptcy Code, but such holder is an "affiliate" (as defined in Rule 144(a)(1) under the Securities Act) of the issuer, such holder may resell such securities without registration pursuant to and in accordance with the applicable provisions of Rule 144 (the manner of sale provisions of Rule 144(f) apply to New Common Equity but do not apply to New Notes) under the Securities Act (other than the holding period requirement in Rule 144(d) applicable to "restricted securities") or another available exemption under the Securities Act. In addition, such persons will also be entitled to resell such securities in transactions registered under the Securities Act following the effectiveness of an applicable registration statement, if one is filed with the SEC and becomes effective. Further, subject to the transfer provisions, if any, and other applicable provisions set forth in the New Organizational Documents, the New Exit Notes Documents or the New Takeback Notes Documents, such section 1145 exempt securities generally may be resold without registration under state securities laws pursuant to various exemptions provided by the respective laws of the several states.

**2.      Exemption for Issuances to Underwriters**

The offer, sale, issuance, and distribution under the Plan of any New Common Equity or any New Notes issued to an Entity that is an "underwriter" with respect to such securities, as that term is defined in section 1145(b) of the Bankruptcy Code, shall be exempt from registration under the Securities Act and any other applicable securities laws in reliance on the exemption from registration set forth in Section 4(a)(2) under the Securities Act (and on applicable state law registration exemptions) and/or Regulation D promulgated thereunder (and on the preemption of state law registration requirements afforded thereby) or, solely to the extent such exemptions are not available, other available exemptions from registration under the Securities Act. Such securities will be considered "restricted securities" and may not be transferred except pursuant to an effective registration statement or under an available exemption from the registration requirements of the Securities Act, such as, under certain conditions, the resale provisions of Rule 144 under the Securities Act, subject to, in each case, the transfer provisions, if any, and other applicable provisions set forth in the New Organizational Documents, the New Exit Notes Documents, or the New Takeback Notes Documents.

**F.      DTC**

Should the Debtors (with the consent of the Required Consenting 1L Noteholders) or the Reorganized Debtors elect on or after the Effective Date to reflect any ownership of the New Common Equity and/or the New Notes through the facilities of DTC, the Reorganized Debtors need not provide any further evidence other than the Plan or the Confirmation Order with respect to the treatment of transfers, exercise, removal of restrictions, or conversion of New Common Equity and/or New Notes under applicable U.S. federal, state or local securities laws.

DTC shall be required to accept and conclusively rely upon the Plan and Confirmation Order in lieu of a legal opinion regarding whether the New Common Equity and/or the New Notes are exempt from registration and/or eligible for DTC book-entry delivery, settlement and depository services. Each Entity that becomes a holder of New Common Equity and/or New

Notes indirectly through the facilities of DTC will be deemed bound by the terms and conditions of the applicable New Organizational Documents, New Exit Notes Documents or New Takeback Notes Documents and shall be deemed to be a beneficial owner of New Common Equity and/or New Notes subject to the terms and conditions of the applicable New Organizational Documents, New Exit Notes Documents or New Takeback Notes Documents.

Notwithstanding anything to the contrary in the Plan, no Entity (including, for the avoidance of doubt, DTC) may require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the New Common Equity and/or the New Notes are exempt from registration and/or eligible for DTC book-entry delivery, settlement and depository services.

## G.   COMPLIANCE WITH TAX REQUIREMENTS

In connection with the Plan, to the extent applicable, the Reorganized Debtors and the Disbursing Agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtors and the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtors reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support and other spousal awards, liens, and encumbrances. Notwithstanding the above, each holder of an Allowed Claim or Allowed Interest that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such distribution. The Debtors have the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to any issuing or disbursing party for payment of any such tax obligations. The Debtors may require, as a condition to receipt of a distribution, that the holder of an Allowed Claim complete and return a Form W-8 or W-9 or similar form, as applicable to each such holder.

# ARTICLE VIII.
## PROVISIONS RELATING TO RELEASES, EXCULPATIONS, AND INJUNCTIONS

### A.   COMPROMISE AND SETTLEMENT

The Confirmation Order will constitute the Bankruptcy Court's approval of the settlements reflected in the Plan, including the Debtor Release and the Third-Party Release, and further, shall constitute the Bankruptcy Court's finding and determination that such settlements, including the Debtor Release and the Third-Party Release are (a) by conferring substantial benefits on the Debtors' Estates, an exercise of the Debtors' business judgment and in the best interests of the Debtors, their Estates, and all holders of Claims and Interests; (b) fair, equitable, and reasonable; (c) made in good faith; (d) in exchange for the good and valuable consideration and substantial contributions provided by the Released Parties; (e) an integral and non-severable element of the Plan and the transactions incorporated therein, and essential to the Confirmation and Consummation of the Plan; (f) given and made after due notice and opportunity for hearing; and (g) a bar to any Entity asserting any Released Claim. In addition, the allowance, classification, and treatment of any Allowed Claims of a Released Party take into account any Released Claim that may exist between the Debtors and any Released Party and, as of the Effective Date, any and all such Released Claims are settled, compromised, and released as set forth in the Plan. The Confirmation Order shall authorize and approve the releases of the Released Parties by all Entities and Persons of all the Released Claims that are satisfied, compromised, and settled pursuant to this Plan. Except as expressly set forth in the Plan, nothing in the Plan shall compromise or settle, in any way whatsoever, (x) any Causes of Action against any Excluded Party or any other Entity that is not a Released Party; (y) any Causes of Action that are preserved pursuant to Article IV.G; or (z) any Causes of Action included on the Schedule of Retained Cause of Action.

In accordance with the provisions of the Plan, and pursuant to Bankruptcy Rule 9019, without any further notice to, or action, order, or approval of, the Bankruptcy Court, after the Effective Date, the applicable Reorganized Debtors may, in their sole and absolute discretion, compromise and settle (1) Claims (including Causes of Action) against and Interests in the Debtors not previously Allowed (if any) and (2) claims (including Causes of Action) held by the Reorganized Debtors against other Entities.

## B.   DISCHARGE OF CLAIMS AND TERMINATION OF INTERESTS

> The discharge provisions set forth in this Article VIII.B are binding on all Persons and Entities, and are enforceable through the injunction provisions set forth below at Article VIII.G.

Except as otherwise provided in the Plan, effective as of the Effective Date of each applicable Debtor: (a) the rights afforded in the Plan and the treatment of all Claims and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all claims and interests of any nature whatsoever, including any interest accrued on such claims from and after the Petition Date, against the applicable Debtors or any of their assets, property, or estates; (b) the Plan shall bind all holders of Claims against and Interests in the Debtors, notwithstanding whether any such holders failed to vote to accept or reject the Plan or voted to reject the Plan; (c) all Claims and Interests shall be satisfied, discharged, and released in full, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code; and (d) all Entities shall be precluded from asserting against the Debtors, the Debtors' Estates, the applicable Reorganized Debtors, their successors and assigns and their assets and properties any other Claims or Interests based upon any documents, instruments, or any act or omission, transaction, or other activity of any kind or nature that occurred before the Effective Date.

## C.   RELEASE OF LIENS

> The lien release provisions set forth in this Article VIII.C are binding on all Persons and Entities, and are enforceable through the injunction provisions set forth below at Article VIII.G.

Except as otherwise expressly provided in the Plan, or in any contract, instrument, release, or other agreement or document that is created, amended, ratified, entered into, or Reinstated pursuant to the Plan (including the New Debt Documents), on the Effective Date, concurrently with the applicable distributions made pursuant to the Plan and the effectiveness of the New Debt Documents, and without any further approval or order of the Bankruptcy Court and without any action or filing being required to be made by the Debtors:

1.   all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released and discharged, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtors and each of their successors and assigns,

2.   the DIP Agent and the Prepetition Agents shall be directed (as if directed by the applicable percentage of lenders and/or noteholders required under the DIP Documents and the Prepetition Debt Documents) to release any such mortgages, deeds of trust, Liens, pledges, or other security interests held by such holder and to take such actions as may be requested by the Reorganized Debtors, the New

Revolver Facility Agent or the New Notes Indenture Trustees] to evidence the release of such mortgages, deeds of trust, Liens, pledges, or other security interests, including the execution, delivery, and filing or recording of any related releases or discharges as may be requested by the Reorganized Debtors, the New Revolver Facility Agent or the New Notes Indenture Trustees, or as may be required in order to effectuate the foregoing, in each case, at the Reorganized Debtors' cost and expense, and

3.    the Reorganized Debtors (and any of their respective agents, attorneys, or designees) shall be authorized to execute and file on behalf of creditors Form UCC-3 termination statements, intellectual property assignments, mortgage or deed of trust releases, or such other forms or release documents in any jurisdiction as may be necessary or appropriate to evidence such releases and implement the provisions of this Article VIII.C, including, for the avoidance of doubt, with respect to the DIP Notes.

The presentation or filing of the Confirmation Order to or with any federal, state, local or non-U.S. agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such mortgages, deeds of trust, Liens, pledges, or other security interests.

## D.    RELEASES BY THE DEBTORS

Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, as of the Effective Date, each of the Released Parties shall be expressly, absolutely, unconditionally, irrevocably, generally, individually, and collectively, released, acquitted, and discharged by the Debtors, the Reorganized Debtors, and each of their Estates from any and all Causes of Action, including any derivative Causes of Action asserted or assertable by or on behalf of a Debtor, Reorganized Debtor, or any of their Estates, any Causes of Action that any Debtor, Reorganized Debtor, or any of their Estates would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Debtors, the Reorganized Debtors, or their Estates (whether individually or collectively) ever had, now have, or thereafter can, shall, or may have, based on or relating to, or in any manner arising from, in whole or in part: (i) the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions (except to the extent the Debtors or Reorganized Debtors retain Intercompany Claims for accounting or tax purposes), the Chapter 11 Cases, the purchase, sale, or rescission of any security of the Debtors, the Global Settlement, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Support Agreement, the Definitive Documents, the DIP Financing, the New Exit Notes, the New Takeback Notes, the New Revolver Facility, the New Common Equity, the Disclosure Statement, or the Plan, including the Plan Supplement; (ii) any Restructuring Transaction, contract, instrument, release, or

67

other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Definitive Documents, the DIP Financing, the use of cash collateral authorized under the DIP Orders and the adequate protection granted in connection therewith, the New Exit Notes, the New Takeback Notes, the New Revolver Facility, the New Common Equity, the Disclosure Statement, or the Plan, including the Plan Supplement; (iii) the business or contractual arrangements between any Debtor and any Released Party, whether before or during the Debtors' restructuring, or the restructuring of Claims and Interests before or during the Chapter 11 Cases; (iv) the assumption, rejection, or amendment of any Executory Contract and/or Unexpired Lease; (v) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is affected through the Restructuring (including pursuant to the Plan) or classified in the Plan; (vi) the filing or administration of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; (vii) the 2022 Financing Transactions, the 2022 Financing Litigation or the settlement thereof, including pursuant to the Global Settlement; or (viii) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing, including the 1L Indenture, 1.25L Indenture, 2024 Unsecured Indenture, 2026 Unsecured Notes Indenture, 2027 Unsecured Notes Indenture, the PIK Notes Indenture, or the ABL Credit Agreement and including any amendments to the foregoing and all matters relating thereto.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above shall not release, and the Reorganized Debtors shall retain, (a) to the extent that any Causes of Action against the Debtors are not released or discharged pursuant to the Plan, any rights of the Debtors to assert any and all counterclaims, crossclaims, offsets, indemnities, claims for contribution, defenses, and similar claims in response to such Causes of Action, (b) any Cause of Action set forth in the Schedule of Retained Causes of Action, (c) any Cause of Action unknown to the Debtors as of the Effective Date that arises out of actual fraud, or gross negligence of an Entity other than a Debtor, (d) any Cause of Action against any Excluded Party, (e) any post-Effective Date obligations of any Entity under the Plan, any Restructuring Transaction, any Definitive Document (including those set forth in the Plan Supplement), or other document, instrument or agreement executed to implement the Plan, (f) any Cause of Action that is of a commercial nature and arising in the ordinary course of business, such as accounts receivable and accounts payable on account of goods and services being performed, (g) any Cause of Action arising from any obligations owed to the Debtors pursuant to an Executory Contract and/or Unexpired Lease that is not otherwise rejected by the Debtors pursuant to section 365 of the Bankruptcy Code before, after, or as of the Effective Date, or (h) any Cause of Action against a

holder of a Disputed Claim to the extent necessary to administer and resolve such Disputed Claim solely in accordance with this Plan.

E.    RELEASES BY HOLDERS OF CLAIMS (THIRD-PARTY RELEASE)

> **The release provisions set forth in this Article VIII.E are binding on all Releasing Parties, as defined herein, and are enforceable through the injunction provisions set forth below at Article VIII.~~GArticle VIII.~~G.**
>
> **Holders of Claims or Interests in the Voting Classes should refer to Section V.D.3 of the Disclosure Statement for further information regarding these release provisions, including instructions to opt out from being a Releasing Party.**

As of the Effective Date, each of the Releasing Parties (other than the Debtors) shall be deemed to have expressly, absolutely, unconditionally, irrevocably, generally, individually, and collectively, released, acquitted, and discharged each of the Released Parties from any and all Causes of Action, including any derivative Causes of Action asserted or assertable by or on behalf of a Debtor, Reorganized Debtor, or any of their Estates, and any Causes of Action asserted or assertable by or on behalf of the holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Releasing Parties (whether individually or collectively) ever had, now have, or thereafter can, shall, or may have, based on or relating to, or in any manner arising from, in whole or in part: (i) the Debtors, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Chapter 11 Cases, the purchase, sale, or rescission of any security of the Debtors, the Global Settlement, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Support Agreement, the Definitive Documents, the DIP Financing, the New Exit Notes, the New Takeback Notes, the New Revolver Facility, the New Common Equity, the Disclosure Statement, or the Plan, including the Plan Supplement; (ii) any Restructuring Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Restructuring Support Agreement, the Definitive Documents, the DIP Financing, the use of cash collateral authorized under the DIP Orders and the adequate protection granted in connection therewith, the New Exit Notes, the New Takeback Notes, the New Revolver Facility, the New Common Equity, the Disclosure Statement, or the Plan, including the Plan Supplement; (iii) the business or contractual arrangements between any Debtor and any Released Party, whether before or during the Debtors' restructuring, or the restructuring of Claims and Interests before or during the Chapter 11 Cases; (iv) the assumption, rejection, or amendment of any Executory Contract and/or Unexpired Lease; (v) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is affected through the Restructuring (including pursuant to the Plan) or classified in

the Plan; (vi) the filing or administration of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; (vii) the 2022 Financing Transactions, the ~~2022~~ Financing Litigation or the settlement thereof, including pursuant to the Global Settlement; or (viii) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing, including the 1L Indenture, 1.25L Indenture, 2024 Unsecured Indenture, 2026 Unsecured Notes Indenture, 2027 Unsecured Notes Indenture, the PIK Notes Indenture, or the ABL Credit Agreement and including any amendments to the foregoing and all matters relating thereto (collectively, the "*Covered Released Matters*").

Notwithstanding anything to the contrary in the foregoing, the releases set forth above shall not release (a) to the extent that any Causes of Action against any Releasing Party are not released or discharged pursuant to the Plan, any rights of such Releasing Party to assert any and all counterclaims, crossclaims, offsets, indemnities, claims for contribution, defenses, and similar claims in response to such Causes of Action (*provided that, except as set forth in Article V.D.2, no such counterclaims, crossclaims, offsets, indemnities, claims for contribution, defenses, or similar claims may be asserted against the Debtors, or the Reorganized Debtors or any Related Party of the Reorganized Debtors to the extent such claims have been released or discharged pursuant to the Plan*), (b) any Cause of Action (other than any Cause of Action against the Debtors, the Reorganized Debtors, or any Related Party of the Reorganized Debtors) unknown to such Releasing Party as of the Effective Date that arises out of actual fraud, or gross negligence of an Entity other than such Releasing Party, (c) any Cause of Action against any Excluded Party, or (d) any post-Effective Date obligations of any Entity under the Plan, any Restructuring Transaction, any Definitive Document (including those set forth in the Plan Supplement), or other document, instrument or agreement executed to implement the Plan.

F.    EXCULPATION

> The exculpation provisions set forth in this Article VIII.F are binding on all Persons and Entities, and are enforceable through the injunction provisions set forth below at Article VIII.G.

Without affecting or limiting the releases set forth in Article VIII.D and Article VIII.E ~~of the Plan~~, and notwithstanding anything in the Plan to the contrary, to the fullest extent permitted by applicable law, no Exculpated Party shall have or incur, and each Exculpated Party shall be released and exculpated from, any claim or Cause of Action in connection with or arising out of the administration of the Chapter 11 Cases; the negotiation and pursuit of the DIP Financing; the <u>Restructuring Support Agreement; the</u> New Exit Notes, the New Takeback Notes; the New Revolver Facility; the Plan (including the Plan Supplement); the Disclosure Statement; the ~~2022~~ Financing Litigation; the Restructuring Transactions; the solicitation of votes for, or confirmation of the Plan; any settlement or other acts approved by the Bankruptcy Court; the funding of the Plan; Consummation of the Plan; the administration and implementation of the Plan or the property to be distributed under the Plan; the issuance or distribution of securities

under or in connection with the Plan; the issuance, distribution, purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Reorganized Debtors under or in connection with the Plan; or the transactions in furtherance of any of the foregoing (collectively, the "*Covered Exculpation Matters*"); *provided* that the foregoing shall not be deemed to release, affect, or limit any post-Effective Date rights or obligations of the Exculpated Parties under the Plan (including the Plan Supplement), the New Financing, any Restructuring Transaction, or any Definitive Document, or other document, instrument, or agreement executed to implement the Plan.

Each Exculpated Party shall be entitled in all respects to rely reasonably (and to have relied reasonably) on the advice of counsel with respect to the Exculpated Party's duties and responsibilities. The Exculpated Parties have, and upon implementation of the Plan, shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of, and distribution of, consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable laws, rules, or regulations protecting such Exculpated Parties from liability.

The exculpations set forth in this Article VIII.F do not apply to any Causes of Action arising out of or relating to any act or omission of an Exculpated Party that is determined by a Final Order of a court of competent jurisdiction to have constituted gross negligence, willful misconduct, or actual fraud on the part of the Exculpated Party.

## G.   INJUNCTIONS

**The injunctions set forth in this Article VIII.G are binding on all Persons and Entities, and enjoin certain conduct not otherwise enjoined under the Bankruptcy Code.**

**Upon entry of the Confirmation Order, all Persons and Entities shall be ENJOINED from taking any actions to interfere with the implementation or consummation of this Plan, or the vesting of the Estates' assets in, and the enjoyment of such assets by, the Reorganized Debtors pursuant to this Plan.**

Except as otherwise expressly provided in this Plan or in the Confirmation Order, upon entry of the Confirmation Order, all Persons and Entities are permanently ENJOINED, from and after the Effective Date, from commencing or continuing any action, the employment of process, or any other act, to pursue, collect, recover or offset any Claim, Interest, debt, obligation or Cause of Action (including, for the avoidance of doubt, the ~~2022~~ Financing Litigation) that has been extinguished, discharged, released or made subject to exculpation under this Plan (the "*Covered Matters*"), whether against the Debtors, the Reorganized Debtors, (solely with respect to the Releasing Parties) the Released Parties, or the Exculpated Parties (the "*Covered Entities*"). The acts enjoined by the foregoing injunction include any act to:

1.  enforce, attach, collect, or recover by any manner or means any judgment, award, decree, or order against a Covered Entity or any of the property or interests in property of a Covered Entity on account of or in connection with or with respect to any Covered Matter;

2.  create, renew, perfect, or enforce any lien or encumbrance of any kind against a Covered Entity or any of the property or interests in property of a Covered Entity on account of or in connection with or with respect to any Covered Matter; or

3.  assert any right of setoff, subrogation, or recoupment of any kind against any obligation due from a Covered Entity or from any of the property or interests in property of a Covered Entity on account of or in connection with or with respect to any Covered Matter, unless the Person or Entity holding such setoff, subrogation or recoupment right has asserted such a right and has expressly stated its intent to preserve its right in a document filed with the Bankruptcy Court and served on the Debtors and the applicable Covered Entity no later than the earlier of (x) 28 days after entry of the Confirmation Order and (y) the Effective Date.

Without limiting the generality of the foregoing, no Entity shall treat, or cause any other Entity to treat, any stock (within the meaning of Section 382(g)(4)(D) of the Internal Revenue Code of 1986, as amended) of any Debtor held by any 50-Percent Shareholder as "becoming worthless" (within the meaning of Section 382(g)(4)(D) of the Internal Revenue Code of 1986, as amended), with respect to any taxable year ending prior to the Effective Date.

With respect to any Covered Entity, no Entity or Person may commence or continue any action, employ any process, or take any other act to pursue, collect, recover or offset any Claim, Interest, debt, obligation, or Cause of Action relating or reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Covered Released Matter, Covered Matter, or Covered Exculpation Matter (including one that alleges the actual fraud, gross negligence, or willful misconduct of a Covered Entity), unless expressly authorized by the Bankruptcy Court after (1) it determines that, after notice and a hearing, such Claim, Interest, debt, obligation, or Cause of Action is colorable and (2) it specifically authorizes such Entity or Person to bring such Claim or Cause of Action. The Bankruptcy Court shall have sole and exclusive jurisdiction to determine

whether any such Claim, Interest, debt, obligation, or Cause of Action is colorable and, only to the extent legally permissible and as provided for in Article XI, shall have jurisdiction to adjudicate such underlying colorable Claim, Interest, debt, obligation, or Cause of Action.

Notwithstanding anything to the contrary in the foregoing, the injunction does not enjoin any Entity from bringing an action to enforce the terms of this Plan, the Confirmation Order, the Restructuring Support Agreement, any other Definitive Document, or other document, instrument, or agreement executed to implement this Plan, the Confirmation Order, the Restructuring Support Agreement or any other Definitive Document. The injunctions set forth in this Article VIII.G shall extend to any successors of the Debtors, the Reorganized Debtors, the Released Parties, the Exculpated Parties and all of their respective property and interests in property.

## H.   SUBORDINATION RIGHTS

The classification and manner of satisfying all Claims and Interests under the Plan take into consideration all subordination rights, whether arising under general principles of equitable subordination, contract, section 510(c) of the Bankruptcy Code, or otherwise, that a holder of a Claim or Interest may have against other Claim or Interest holders with respect to any distribution made pursuant to the Plan. Except as provided in the Plan, all subordination rights that a holder of a Claim may have with respect to any distribution to be made pursuant to the Plan shall be discharged and terminated, and all actions related to the enforcement of such subordination rights shall be permanently enjoined.

# ARTICLE IX.
## CONDITIONS TO EFFECTIVE DATE

## A.   THE CONDITIONS

These are the conditions to each Debtor's Effective Date, which must be satisfied or waived in accordance with Article IX.B) at or before Consummation of the Plan:

1. the Final DIP Order shall be in full force and effect, and there shall be no default or event of default existing under the DIP Notes;

2. the Bankruptcy Court shall have entered the Confirmation Order and any other order required to approve any Definitive Document, which shall be Final Orders and in form and substance acceptable to the Debtors and reasonably acceptable in all material respects to the Required Consenting 1L Noteholders and consistent with the Specified Creditor Consent Rights (solely to the extent applicable);

3. all governmental and regulatory approvals, consents, authorizations, rulings, or other documents that are necessary to implement and effectuate the Plan, including those that are legally required for the consummation of the

Restructuring (including, for the avoidance of doubt, any approvals required in connection with the transfer, change of control, or assignment of permits and licenses held by the applicable Debtor, unless such permits or licenses are abandoned), shall have been obtained, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 (as amended) or applicable review periods under non-U.S. antitrust law shall have expired;

4.  the final version of the Plan, including all schedules, supplements, and exhibits thereto, including in the Plan Supplement (including all documents contained therein), shall be (a) except as otherwise provided in the Restructuring Support Agreement, in form and substance ~~reasonably~~ acceptable ~~in all material respects~~to the Debtors and to the Required Consenting 1L Noteholders and (b) consistent with the Specified Creditor Consent Rights (solely to the extent applicable);

5.  all Definitive Documents (including all documents in the Plan Supplement) to be executed, delivered, assumed, or performed upon or in connection with Consummation shall have been (or shall, contemporaneously with the occurrence of the Effective Date, be) (a) executed and in full force and effect, delivered, assumed, or performed, as the case may be, and in form and substance consistent with the Restructuring Support Agreement (including consistent with the Specified Creditor Consent Rights (solely to the extent applicable)), and the Required Consenting 1L Noteholders shall have consented in writing to the form thereof in accordance with their consent rights set forth in the Restructuring Support Agreement; (b) to the extent required, filed with the applicable Governmental Units in accordance with applicable law; and (c) any conditions precedent contained in such documents shall have been satisfied or waived in accordance with the terms thereof, except with respect to such conditions that by their terms shall be satisfied substantially contemporaneously with or after Consummation of the Plan;

6.  there shall not be in effect any (a) order, opinion, ruling, or other decision entered by any court or other Governmental Unit or (b) U.S. or other applicable law staying, restraining, enjoining, prohibiting, or otherwise making illegal the implementation of any of the transactions contemplated by the Plan;

7.  all financing necessary for the Plan shall have been obtained, and any documents related thereto, including the New Debt Documents, shall have been executed, delivered, and be in full force and effect (with all conditions precedent thereto having been satisfied or waived, except with respect to such conditions that by their terms shall be satisfied contemporaneously with or after Consummation of the Plan);

8.  all conditions to the transfer and/or issuance of the New Common Equity shall have occurred;

9.  the Restructuring Transactions shall have been (or shall, contemporaneously with the occurrence of the Effective Date, be) implemented in a manner consistent in

all material respects with the Plan and in all respects with the Restructuring Support Agreement;

10. the Debtors shall have paid in full in Cash all Restructuring Expenses incurred, or estimated in good faith to be incurred, through the Effective Date, in accordance with and subject to Article II.B of the Plan;

11. the Professional Fee Escrow Account shall have been established and funded in full, in Cash, in accordance with, and subject to Article II.C of the Plan;

12. the 2022 Financing Litigation shall have been resolved, pursuant to one or more Final Orders (which may include the Confirmation Order), in a form and manner satisfactory to the Debtors and the Required Consenting 1L Noteholders, each in their sole and absolute discretion (and in a manner consistent with the 1.25L Noteholder Consent Rights (solely to the extent applicable)); and

13. no notice of termination or breach shall have been delivered by the Required Consenting 1L Noteholders under the Restructuring Support Agreement or any Definitive Document in accordance with the terms thereof, and noneither the Restructuring Support Agreement nor any Definitive Document shall have otherwise been terminated.

## B.   WAIVER OF CONDITIONS

The conditions to the Effective Date set forth in this Article IX may be waived, without notice, leave, or order of the Bankruptcy Court, only by the Debtors with the consent of the Required Consenting 1L Noteholders (not to be unreasonably withheld)and in a manner consistent with the Specified Creditor Consent Rights (solely to the extent applicable); *provided* that (a) condition 10 may be waived by the Debtors with the consent of the applicable Restructuring Professional(s) and (b) condition 11 may be waived by the Debtors and the Committee. If any such condition precedent is waived pursuant to this section and the Effective Date occurs, the Debtors shall be estopped from withdrawing such waiver after the Effective Date, the waiver of such condition precedent shall benefit from the "equitable mootness" doctrine, and the occurrence of the Effective Date shall foreclose any ability to challenge the Plan in any court. If the Plan is confirmed for fewer than all of the Debtors, only the conditions applicable to the Debtor or Debtors for which the Plan is confirmed must be satisfied or waived for the Effective Date to occur with respect to such Debtors.

# ARTICLE X.
## MODIFICATION, REVOCATION
## OR WITHDRAWAL OF PLAN

**A.    MODIFICATION AND AMENDMENTS**

The Debtors reserve the right to (a) modify the Plan, with the consent of the Required , whether such modification is material or immaterial, with the consent of the Required Consenting 1L Noteholders and in material respectsa manner consistent with the Specified Creditor Consent Rights (notsolely to be unreasonably withheld), whether such modification is material or immaterial, andthe extent applicable) and (b) seek Confirmation consistent with the Bankruptcy Code. Subject to those restrictions on modifications set forth in the Plan, the Restructuring Support Agreement, and the requirements of section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, each Debtor expressly reserves its respective rights to revoke or withdraw, or to alter, amend, or modify the Plan with respect to such Debtor, one or more times, after Confirmation, and, to the extent necessary may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan, in material respects with the consent of the Required Consenting 1L Noteholders (not to be unreasonably withheldand in a manner consistent with the Specified Creditor Consent Rights (solely to the extent applicable).

After the Confirmation Date, but before the Effective Date, the Debtors may make appropriate technical adjustments and modifications to this Plan (including the Plan Supplement) without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect the treatment of holders of Allowed Claims or Allowed Interests under this Plan.

**B.    EFFECT OF CONFIRMATION ON MODIFICATIONS**

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since its solicitation are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

**C.    REVOCATION OR WITHDRAWAL**

The Debtors reserve the right to revoke or withdraw the Plan, in consultation with the Committee, with respect to any or all of the Debtors prior

to the Confirmation Date and to file subsequent plans of reorganization. If the Debtors revoke or withdraw the Plan or Confirmation does not occur, then (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), assumption of Executory Contracts and/or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claims or Interests; (ii) prejudice in any manner the rights of such Debtor or any other Entity; (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity; or (iv) be used by the Debtor or any other Entity as evidence (or in any other way) in any litigation, including with regard to the strengths or weaknesses of any of the parties' positions, arguments or claims. For the avoidance of doubt, the foregoing sentence shall not be construed to limit or modify any rights under the Restructuring Support Agreement.

# ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and Consummation of the Plan, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or Unsecured status, or amount of any Claim or Interest, including (a) the resolution of any request for payment of any Administrative Expense and (b) the resolution of any objections to the Secured or Unsecured status, priority, amount, or allowance of Claims or Interests;

2. adjudicate all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Retained Professionals pursuant to the Bankruptcy Code or the Plan;

3. resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract and/or Unexpired Lease to which the Debtors are party or with respect to which the Debtors may be liable, and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims for rejection damages or Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract and/or Unexpired Lease that is assumed, or assumed and assigned; (c) the Reorganized Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article V, the Executory Contracts and Unexpired Leases to the Schedule of Assumed Executory Contracts and Unexpired Leases,

the Schedule of Rejected Executory Contracts and Unexpired Leases or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.  ensure that distributions are accomplished pursuant to the provisions of the Plan;

5.  adjudicate any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

6.  adjudicate any and all matters related to sections 1141 and 1146 of the Bankruptcy Code;

7.  enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Confirmation Order, the Plan, the Plan Supplement or the Disclosure Statement;

8.  enter and enforce any order for the sale or transfer of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.  resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.  issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan and ensure compliance with the Plan;

11.  hear and determine any cases, controversies, suits, disputes, or Causes of Action involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in the Plan, including under Article VIII and enter such orders as may be necessary or appropriate to implement or enforce such releases, injunctions, and other provisions;

12.  resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.E;

13.  enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14.  determine any other matters that may arise in connection with, or relate to, the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

15.  enter any order or final decree concluding or closing the Chapter 11 Cases;

16.     adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

17.     consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18.     determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.     adjudicate matters concerning state, local, federal, and foreign taxes and fees in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

20.     adjudicate whether and in what amount a Claim or Interest is Allowed;

21.     adjudicate matters related to the DIP Financing and the DIP Orders;

22.     recover all assets of the Debtors and property of the Estates, wherever located;

23.     adjudicate any disputes concerning whether an Entity had sufficient notice of the Chapter 11 Cases, the Disclosure Statement, any solicitation conducted in connection with the Chapter 11 Cases, any bar date established in the Chapter 11 Cases, or any deadline for responding or objecting to the amount of a Cure, in each case, for the purpose of determining whether a Claim or Interest is discharged under this Plan or for any other purpose;

24.     adjudicate any rights, claims, or Causes of Action held by, or accruing to, the Debtor pursuant to the Bankruptcy Code or pursuant to any federal statute or legal theory, including, but not limited to, those set forth on the Schedule of Retained Causes of Action;

25.     enforce all orders previously entered by the Bankruptcy Court;

26.     adjudicate any Cause of Action against any independent director of a Debtor (including Patrick Bartels as independent director of Wolverine Intermediate Holding) arising out of or related to a Covered Exculpation Matter to the maximum extent permitted by law;

27.     adjudicate the 2022 Financing Litigation; and

28.     adjudicate any other matter as to which the Bankruptcy Court has jurisdiction.

Notwithstanding the foregoing, the New Organizational Documents, the New Debt Documents and any other documents contained in the Plan Supplement shall be governed in accordance with applicable jurisdictional, forum selection, and dispute resolution clauses that may be set forth in those documents.

# ARTICLE XII.
## MISCELLANEOUS PROVISIONS

**A.    EFFECT OF PLAN**

**1.    Reservation of Rights**

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect as to a Debtor if the Effective Date does not occur as to such Debtor. None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the holders of Claims or Interests before Consummation.

**2.    Immediate Binding Effect**

Subject to Article IX.A and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon Consummation, the terms of the Plan shall be immediately effective and enforceable and binding upon the Debtors, the Reorganized Debtors, and any and all holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are party, or subject to, the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all of the Debtors' counterparties to Executory Contracts and/or Unexpired Leases and any other prepetition agreements.

**3.    Entire Agreement**

Except as otherwise indicated, the Plan (including the Plan Supplement) supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan; provided that the Restructuring Support Agreement shall remain in full force and effect in accordance with its respective terms.

**4.    Successors and Assigns**

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

**5.    Termination of Injunctions and Stays**

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or

any order of the Bankruptcy Court, and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. For the avoidance of doubt, (a) upon the Effective Date, the automatic stay pursuant to Bankruptcy Code section 362 of any litigation proceedings against or involving the applicable Debtors shall terminate and (b) all injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

## 6.      Votes Solicited in Good Faith

Upon Confirmation, the Debtors shall be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code and, pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and their respective affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys shall be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of securities offered and sold under the Plan and any previous plan, and, therefore, none of any such parties or individuals or the Reorganized Debtors will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the securities offered and sold under the Plan and any previous plan.

## 7.      Dissolution of the Committee

On the Effective Date with respect to the Plan, the Committee shall be deemed to have been dissolved, and its members, and their respective officers, employees, counsel, advisors and agents, shall be released and discharged of and from all further authority, duties, responsibilities, and obligations related to and arising from and in connection with the Chapter 11 Cases, except with respect to any continuing confidentiality obligations and for the limited purposes of, if applicable, prosecuting requests for allowance of compensation of and reimbursement of expenses incurred by the Committee or its Retained Professionals prior to the Effective Date.

## 8.      Closing of Chapter 11 Cases

On and after the Effective Date, all of the Chapter 11 Cases of the Debtors shall be deemed closed except for one of the Chapter 11 Cases as determined by the Reorganized Debtors, and all contested matters and adversary proceedings relating to any of the Debtors (including Claim objections) shall be administered and heard in such Chapter 11 Case, irrespective of whether the contested matter or adversary proceeding was commenced against a Debtor whose Chapter 11 Case was closed. Upon the occurrence of the Effective Date, the Reorganized Debtors shall be permitted to change the name of the remaining Debtor and case caption of the remaining open Chapter 11 Case as desired, in the Reorganized Debtors' sole discretion.

The Reorganized Debtors may at any time seek to close any remaining Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

## B.    Contents of Plan

### 1.    Exhibits

All exhibits, schedules, supplements, and appendices to the Plan (including any other documents to be executed, delivered, assumed, or performed in connection with Consummation of the Plan) are incorporated into and are a part of the Plan as if set forth in full in the Plan.

### 2.    Non-Severability

Before Confirmation, if any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors (with the consent of the Required Consenting 1L Noteholders and in a manner consistent with the Specified Creditor Consent Rights (solely to the extent applicable)), shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. Confirmation shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without consent of the Debtors or the Reorganized Debtors, consistent with the terms set forth herein; and (c) non-severable and mutually dependent.

### 3.    Conflicts

In the event of a conflict between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of a conflict between the Plan (excluding the Plan Supplement) and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order). In the event of a conflict between the Confirmation Order and the Plan, the Confirmation Order shall control.

## C.    Notices

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtors, or the Reorganized Debtors, shall be served on:

Wesco Aircraft Holdings, Inc.
2601 Meacham Blvd., Suite 400
Fort Worth, TX 76137
Attn: Dawn Landry

with a copy to:

       Milbank LLP
       55 Hudson Yards
       New York, NY 10001
       Attention:    Dennis F. Dunne
                     Samuel A. Khalil
                     Benjamin M. Schak
       Email:       DDunne@Milbank.com
                     SKhalil@Milbank.com
                     BSchak@Milbank.com

~~And~~and with a copy to the First Lien Noteholder Group, delivered to:

       Davis Polk & Wardwell LLP
       450 Lexington Avenue
       New York, ~~New York~~ NY 10017
       Attention:    Damian S. Schaible
                     Angela M. Libby
                     Stephanie Massman
       Email: ~~damian.schaible@davispolk.com~~    Damian.Schaible@DavisPolk.com
       Angela.Libby@DavisPolk.com
       Stephanie.Massman@DavisPolk.com

and with a copy to Carlyle, delivered to:

       Paul, Weiss, Rifkind, Wharton & Garrison LLP
       1285 Avenue of the Americas
       New York, NY 10019
       Attention:    Paul M. Basta
                     John Weber
                     Xu Pang
       Email:       PBasta@PaulWeiss.com
                     JWeber@PaulWeiss.com
                     XPang@PaulWeiss.com

and with a copy to Sponsor, delivered to both:

       Williams & Connolly LLP
       680 Maine Avenue, S.W.
       Washington, DC 20024
       Attention:    Dane H. Butswinkas
                     Ryan T. Scarborough
                     Ellen Oberwetter
       Email:       DButswinkas@WC.com
                     ~~angela.libby@davispolk.com~~ RScarborough@WC.com
                     ~~stephanie.massman@davispolk.com~~ EOberwetter@WC.com

and

        Latham & Watkins LLP
        1271 6th Avenue
        New York, NY 10020-1300
        Attention:      Keith Simon
                       Annemarie Reilly
        Email:         Keith.Simon@lw.com
                       Annemarie.Reilly@lw.com

After entry of the Confirmation Order, the Debtors shall notify all Persons entitled to notice of filings in the Chapter 11 Cases that each such Person (other than the U.S. Trustee) must file a renewed request pursuant to Bankruptcy Rule 2002 in order to continue to receive documents that are filed after the Effective Date. After service of that notice and Consummation of the Plan, the Reorganized Debtors shall be authorized to limit the list of Persons receiving documents pursuant to Bankruptcy Rule 2002 to the Reorganized Debtors, the U.S. Trustee and those Persons that have filed renewed requests.

*[Remainder of page intentionally blank]*

Dated: ~~November 17~~December 27, 2023
Fort Worth, Texas

WESCO AIRCRAFT HOLDINGS, INC.,
on behalf of itself and each of its Debtor affiliates

By: */s/ David Coleal*

David Coleal
Chief Executive Officer

Document comparison by Workshare Compare on Wednesday, December 27, 2023 10:05:33 AM

| Input: | |
|---|---|
| Document 1 ID | file://C:\Users\sheraldr\OneDrive - Haynes and Boone, LLP\Desktop\As Filed - Plan.docx |
| Description | As Filed - Plan |
| Document 2 ID | netdocuments://4861-1823-4492/12 |
| Description | Wesco (Incora) - Plan |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 547 |
| Deletions | 524 |
| Moved from | 10 |
| Moved to | 10 |
| Style changes | 0 |
| Format changes | 0 |
| Total changes | 1091 |