## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| *In re* | Case No. 23-90611 (MI) |
| **WESCO AIRCRAFT HOLDINGS, INC.,** *et al.*,[1] | Chapter 11 |
| Debtors. | (Jointly Administered) |

### AGREED ORDER APPOINTING MEDIATOR
### AND GOVERNING MEDIATION PROCEDURE

**WHEREAS** on June 1, 2023 (the "***Petition Date***"), Wesco Aircraft Holdings, Inc. and its debtor affiliates, as debtors and debtors in possession (collectively, the "***Debtors***" or "***Incora***") in the above-captioned chapter 11 cases (these "***Chapter 11 Cases***") each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code;

**WHEREAS** these Chapter 11 Cases are being jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure and Rule 1015-1 of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas;

**WHEREAS** on the Petition Date, the Debtors commenced the above-captioned adversary proceeding (the "***Adversary Proceeding***");

---

[1] The Debtors operate under the trade name Incora and have previously used the trade names Wesco, Pattonair, Haas, and Adams Aviation. A complete list of the Debtors in these chapter 11 cases, with each one's federal tax identification number and the address of its principal office, is available on the website of the Debtors' noticing agent at http://www.kccllc.net/incora/. The service address for each of the Debtors in these cases is 2601 Meacham Blvd., Ste. 400, Fort Worth, TX 76137.

**WHEREAS** on August 23, 2023, the parties to the Adversary Proceeding filed summary judgment and/or Rule 12 motions (the "***Dispositive Motions***") as contemplated by a comprehensive scheduling order entered in the Adversary Proceeding;[2]

**WHEREAS** on September 6, 2023, the Official Committee of Unsecured Creditors (the "***Committee***") intervened in the Adversary Proceeding;

**WHEREAS** on November 27, 2023, the Committee filed its *Omnibus (I) Motion of the Official Committee of Unsecured Creditors for Exclusive Leave, Standing, and Authority to Prosecute and Settle Certain Claims, Causes of Action, and Claim Objections on Behalf of the Debtors' Estates and (II) Claim Objection* [Docket No. 994; corrected at Docket Nos. 1020 and 1025] (as amended or supplemented from time to time, the "***Committee Standing Motion***");

**WHEREAS** on January 8, 2024, the Committee, the Debtors, and the members of the First Lien Noteholder Group entered into the *Stipulation Regarding (A) Corrected Omnibus (I) Motion of the Official Committee of Unsecured Creditors for Exclusive Leave, Standing, and Authority to Prosecute and Settle Certain Claims, Causes of Action, and Claim Objections on Behalf of the Debtors' Estates and (II) Claim Objection and (B) First Amended Joint Chapter 11 Plan of Wesco Aircraft Holding Inc. et al.* [Docket No. 1191] (the "***Committee Stipulation***"), which set forth an

---

[2]   The parties to the Adversary Proceeding are: the Debtors; the members of the "***First Lien Noteholder Group***" (as defined in the verified statement filed at Docket No. 147); Carlyle Global Credit Investment Management, LLC, CCOF Onshore Co-Borrower LLC, CSP IV Acquisitions, L.P., CCOF Master, L.P., and Spring Creek Capital, LLC (collectively, the "***Carlyle Noteholders***"); Platinum Equity Advisors, LLC, Platinum Equity Capital Partners International, IV (Cayman) LP, and Wolverine Top Holding Corporation (collectively, "***Platinum***"); Citadel Equity Fund Ltd. (the "***Citadel Noteholder***"); Senator Investment Group LP and Unnamed Senator Funds c/o Senator Investment Group LP (the "***Senator Noteholder***"); Wilmington Savings Fund Society, FSB ("***WSFS***"); Langur Maize, L.L.C. ("***Langur Maize***"); and certain members of the "***Ad Hoc Group of 2024/2026 Noteholders***" (as defined in the verified statement filed at Docket No. 263). For purposes of this Mediation Order, all of the foregoing, including all members of the Ad Hoc Group of 2024/2026 Noteholders, regardless of whether they are parties to the Adversary Proceeding, shall be considered "***Parties***."

agreement to resolve the claims and claim objections identified in the Committee Standing Motion, the terms of which were memorialized in the Plan (as defined below);

**WHEREAS** on January 11, 2024, the Debtors, the members of the First Lien Noteholder Group, the Carlyle Noteholders, Langur Maize, and Platinum entered into a restructuring support agreement ("***RSA***");

**WHEREAS** on January 11, 2024, the Debtors filed their *Modified First Amended Joint Chapter 11 Plan of Wesco Aircraft Holdings, Inc. et al.* [Docket No. 1207] (the "***Plan***") and accompanying *Disclosure Statement for the Modified First Amended Joint Chapter 11 Plan of Wesco Aircraft Holdings, Inc. et al.* [Docket No. 1208] (the "***Disclosure Statement***"), incorporating the agreements set forth in the RSA and the Committee Stipulation;

**WHEREAS** on January 11, 2024, the Court held a hearing on the Debtors' Disclosure Statement and, on January 12, 2024, entered an order approving the Disclosure Statement [Docket No. 1228];

**WHEREAS** on January 18, 2024, the Court issued its *Memorandum Opinion* [Adv. No. 23-03091, Docket No. 508] and accompanying *Order on Motions for Summary Judgment* [Adv. No. 23-03091, Docket No. 509] in the Adversary Proceeding (together, the "***Opinion and Order***");

**WHEREAS** on January 23, 2024, the Court issued its *Supplement to Memorandum Opinion* [Adv. No. 23-03091, Docket No. 553] and accompanying *Amended Order on Motions for Summary Judgment* [Adv. No. 23-03091, Docket No. 554];

**WHEREAS** the Parties (other than WSFS) and the Committee are actively engaged in a trial concerning claims in the Adversary Proceeding that were not resolved, on an interlocutory basis, by the foregoing opinions and orders;

3

**WHEREAS** at the hearing on February 9, 2024, the Debtors proposed that the Parties engage in mediation to resolve outstanding issues in connection with these Chapter 11 Cases and the Adversary Proceeding;

**WHEREAS** each of the Parties and the Committee has indicated that it is supportive of the appointment of a mediator and agrees that mediation may be an efficient and effective mechanism to consensually resolve some or all of the issues relating to these Chapter 11 Cases, including those concerning the Adversary Proceeding.

Upon the request of the Debtors and the agreement of the Parties and the Committee, it is **HEREBY ORDERED** that:

1.      The Parties have agreed to participate in non-binding mediation before the Honorable Christopher M. Lopez (the "***Mediator***") to resolve any issues among the Parties relating to the Adversary Proceeding, including issues in the Chapter 11 Cases that may be affected by the Adversary Proceeding (the "***Mediation***"). The Ad Hoc Group of 2024/2026 Noteholders shall be permitted to designate one or more of its members to attend the Mediation to represent the group. The Mediator shall have absolute discretion as to the means and methods of any Mediation; *provided* that the Mediation shall be confidential and non-binding.

2.      The Mediator will mediate this matter in his capacity as a United States Bankruptcy Judge. The Mediator shall have absolute judicial immunity is his role as Mediator.

3.      The Committee shall be entitled to participate in the Mediation. Additional parties other than the Parties may also participate in the Mediation (a) with the prior written consent of the Mediator and all Parties or (b) upon further order of this Court. All participants in the Mediation shall be subject to the provisions of this order (the "***Mediation Order***").

4

4.      Except as otherwise set forth herein, the Court adopts Section S of the *Procedures for Complex Cases in the Southern District of Texas (Effective October 18, 2023)*; *provided* that (a) nothing herein shall alter, modify, or otherwise prejudice or impair any of the Parties' or other participants' rights or obligations under any pre-existing confidentiality agreements or protective orders, all of which shall remain in full force and effect and (b) in the event of any conflict between Section S and the terms of this Mediation Order, the terms of this Mediation Order shall control.

5.      The Mediation shall be conducted in person, unless otherwise directed by the Mediator or as set forth below. The Mediator, upon consultation with the Parties and the Committee, shall have the duty and authority to establish the time, place, mode, and deadlines for all Mediation activities, including pre-Mediation conferences, Mediation sessions, private meetings between the Mediator and Parties and the Committee, and the submission of relevant documents. Lead counsel for each Party shall attend the Mediation and such other conferences as the Mediator deems appropriate, unless otherwise agreed to with the Mediator. One or more principals for each Party (excluding the Committee) shall attend the Mediation if so requested by the Mediator. Subject to paragraph 6 below, co-counsel, insurers, and financial advisors to the Parties (including PJT Partners, Evercore Group L.L.C. ("***Evercore***"), and Perella Weinberg Partners ("***Perella***")) may also participate in the Mediation (including by receiving updates from the Parties). The Mediator is empowered to require individuals with the authority (subject to any required investment committee or other approvals) to bind each Party (but not the Committee) to attend any and all Mediation sessions; *provided* that such individuals will be given an option to attend such Mediation sessions virtually. The Stipulated Protective Order entered in these Chapter 11 Cases on September 6, 2023 [Docket No. 724] is hereby amended to permit the designation of parties' insurers and their counsel as individuals who are eligible to receive information pursuant to ¶ 5.2(K) and ¶ 5.3(H) thereof.

6.    The following sequestration protocols shall apply:

    a.   Any witness whose trial testimony has commenced but is not yet completed as of entry of this Mediation Order (i) shall not attend or participate in the Mediation until that witness's testimony is completed and (ii) shall remain subject to the Court's order sequestering witnesses (the "**_Sequestration Order_**"). Any witness whose trial testimony commences after entry of this Mediation Order shall remain subject to the Sequestration Order but may continue to attend or participate in the Mediation; _provided_ that this sentence shall not limit the application or effect of FRE 615(a)(2).

    b.   Without modifying or limiting subparagraph 6(a) above, the following witnesses or potential witnesses may, notwithstanding the Sequestration Order, attend and participate in the Mediation; _provided_ that no trial transcripts or excerpts of such trial transcripts shall be disclosed to such witnesses until their testimony is completed:

        i.   Rob Cook;

        ii.   Roopesh Shah;

        iii.   John Cesarz; and

        iv.   others as agreed by the Parties from time to time.

    c.   All other witnesses whose testimony in the Adversary Proceeding has not yet been completed shall be subject to the Sequestration Order; _provided_ that this sentence shall not limit the application or effect of FRE 615(a)(2).

7.     For the avoidance of doubt, except as provided in Paragraph 6, nothing in this Mediation Order shall amend or limit the current Sequestration Order unless permitted by further order of the Court.

8.     The Mediator may not be compelled to disclose to the Court or to any person any of the records, reports, summaries, notes, communications, or other documents received or made by the Mediator while serving in such capacity. The Mediator may not testify or be compelled to testify regarding the Mediation in connection with any arbitration, judicial, or other proceeding. The Mediator will not be a necessary party in any proceedings relating to the Mediation. Nothing contained in this paragraph prevents the Mediator from reporting (a) the status, but not the substance, of the mediation efforts to the Court or (b) whether a Party failed to participate in good faith in the Mediation, subject in each respect to paragraph 12 hereof.

9.     Each Party shall bear its own costs and expenses incurred in connection with the Mediation; *provided* that nothing herein shall prejudice any Party's right to seek and receive payment or reimbursement from the Debtors' estates or any other party of such costs and expenses (including attorneys' fees) as may be appropriate, or shall prejudice any other party's rights to oppose such an attempt; *provided*, for the avoidance of doubt, nothing herein shall override the provisions governing the payment of fees and expenses by the Debtors' estates in the *Final Order (I) Authorizing the Debtors To (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Granting Adequate Protection to Prepetition Secured Parties, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Dkt. No. 396] (the "***Final DIP Order***"), including pursuant to any Approved Budget (as defined in the Final DIP Order). Any expenses incurred by the Mediator (including costs of travel and lodging, if applicable) shall be paid by the Debtors' estates.

10.     The Parties, the Committee, and their respective counsel and financial advisors shall participate in the Mediation in good faith.

11.     The Mediator shall direct the form and content of any submissions, whether written or oral, to the Mediator (the "***Submissions***"), and no Party shall provide Submissions to the Mediator absent such direction. Prior to the Mediation, the Mediator may confer with one or more of the Parties and the Committee to determine what materials would be helpful to the Mediator or the Mediation. The Submissions shall not be filed with the Court. Notwithstanding the foregoing, any Party or the Committee may contact the Mediator or any person designated by the Mediator for this purpose for the sole purpose of requesting a Mediation session or private meeting or teleconference.

12.     The participants in the Mediation, including the Mediator, the Parties, the Committee, and their advisors are prohibited from divulging, outside of the Mediation, any oral or written information disclosed by the Parties or the Committee during or concerning the Mediation and shall treat all such information as strictly confidential and non-public, subject only to paragraph 17, below. No person may rely on or introduce as evidence in any arbitration, judicial, or other proceeding, evidence pertaining to any aspect of the mediation effort, including but not limited to:  (a) views expressed or suggestions made by a Party or the Committee with respect to a possible settlement of any dispute; (b) the fact that another Party or the Committee had or had not indicated willingness to accept a proposal for settlement made by the Mediator; (c) proposals made or views expressed by the Mediator; (d) oral or written statements or admissions made by a Party or the Committee in the course of the Mediation; and (e) documents prepared for the purpose of, in the course of, or pursuant to the Mediation, including but not limited to the Submissions. Without limiting the foregoing, the Parties and the Committee are bound by (x) Rule 408 of the

Federal Rules of Evidence, and (y) any applicable federal or state statute, rule, common law, or judicial precedent relating to the privileged nature of settlement discussions, mediations, or other alternative dispute resolution procedures. All statements and Submissions made during the course of the Mediation are deemed settlement discussions and are made without prejudice to any Party's or the Committee's legal position and are inadmissible for any purpose in any legal proceeding. All of the foregoing notwithstanding, any information otherwise known, discoverable, or admissible or admitted in evidence does not become exempt from discovery, inadmissible in evidence, or otherwise usable at trial merely by being expressed or by a Party or the Committee in the Mediation.

13.    No financial, legal or other advisor that participates in the Mediation shall owe any duties or have any liability to any person (other than its own client) in respect of any analysis or information provided in connection with the Mediation, whether consisting of different scenarios, financial models, or other analyses.

14.    The Parties, the Committee, the Mediator, and all participants in the Mediation shall protect proprietary information.

15.    The disclosure of privileged information to the Mediator shall not result in waiver or otherwise adversely affect the privileged nature of such information.

16.    No Party shall (a) be deemed to be or become an insider, a temporary insider, a nonstatutory insider under bankruptcy law, an agent, or a fiduciary of any of the Debtors, (b) be deemed to owe any duty to the Debtors or their estates, (c) undertake any duty to any party in interest, or (d) be deemed to misappropriate any information of the Debtors or any person that has designated any material as confidential or highly confidential, with respect to each of the foregoing clauses (a) through (d), as a result of (i) participating in any mediation conference conducted

9

pursuant to this Mediation Order, (ii) being aware, or being in possession, of any settlement proposal delivered or received by any party in interest or their agents or advisors in connection with a mediation conference conducted pursuant to this Mediation Order, or (iii) with respect to any mediation conference conducted pursuant to this Mediation Order, acting together in a group with other holders of securities issued by the Debtors, as applicable ("***Debtor Party Securities***"); *provided* that nothing herein shall affect any Party's pre-existing fiduciary obligations or compliance with applicable non-bankruptcy law or regulation. No party in interest in these Chapter 11 Cases, including each of the Debtors or any successor to the Debtors, shall have any claim, defense, objection, or cause of action of any nature whatsoever against a Party, including, but not limited to, any objection to a claim, or any other basis to withhold, subordinate, disallow, or delay payment or issuance of any consideration to a Party on account of a claim based on such Party's trading in Debtor Party Securities by reason of such Party's receipt, as a result of participation in the Mediation, of (a) information with respect to which, at the time of such trading, such Party has no duty of confidentiality under a confidentiality agreement, or (b) a settlement proposal, whether or not such settlement proposal is confidential; *provided*, however, that nothing herein shall be deemed to waive any claims for non-compliance with this Mediation Order or any other contractual confidentiality obligations.

17.     To account for the involvement of publicly traded securities, the following disclosures will be made regarding the conduct of the mediation. Upon the earliest to occur of (i)  75 days after the commencement of Mediation, (ii) the Mediation Termination Date (as defined below), (iii) the Mediator, the Debtors, the Ad Hoc Group of 2024/2026 Noteholders, the First Lien Noteholder Group, or the Court declaring in writing (which may be by email to all Parties) the Mediation to have been successful, terminated, or suspended, or (iv) the Debtors, the Ad Hoc

Group of 2024/2026 Noteholders, or the First Lien Noteholder Group withdrawing from Mediation (which withdrawal must be made in writing, email being acceptable, and communicated to all Parties) (each of (i) through (iv) the "***Disclosure Triggering Event***"), the Debtors shall, within three business days following such Disclosure Triggering Event (the "***Cleansing Deadline***"), disclose to the public in a written statement (either on the docket of the main bankruptcy case or by distributing a press release through a widely disseminated news or wire service) the following information: (a) the fact that Mediation occurred among the Parties and other participants concerning the Adversary Proceeding, *provided* that any Party that designates itself as an "ad hoc" group may be identified as such without the identities of the individual holders but with the aggregate amount of holdings of the Debtor Party Securities beneficially owned or controlled by such "ad hoc" group; (b) whether negotiations are or are not continuing; (c) if an agreement has been reached among any of the Parties concerning the terms of a settlement, a detailed description of the terms; (d) if an agreement has not been reached with any of the Parties concerning the terms of a settlement (1) the fact that such an agreement has not been reached, and (2) a description of the last settlement proposal delivered by the Debtors to any Party that memorializes the terms of a potential settlement; and (e) any other confidential information disclosed by the Debtors to the Parties or other participants through the period ending on the Cleansing Deadline, to the extent not theretofore publicly disclosed, the possession of which would prohibit a Party or other participant from buying, selling, or trading the Debtor Party Securities (pursuant to United States securities laws or applicable blue sky laws) or which would otherwise constitute material non-public information with respect to the Debtors or the Debtor Party Securities ("***MNPI***"), with the information set forth in the foregoing clauses (a) through (e) referred to as the "***Cleansing Material***." Upon the disclosure of the Cleansing Material, any confidential information contained

therein shall be deemed public and no longer confidential. For the avoidance of doubt, Cleansing

Material will not include any information provided only to advisors of Parties holding Debtor Party

Securities, including any settlement proposals that were designated and remained "Advisors'-

Eyes-Only" (or words of similar import) and were not disclosed to any such holder with the consent

the Debtors. The Debtors shall provide all Parties with a draft of the proposed Cleansing Material

at least 24 hours prior to the Cleansing Deadline and shall in good faith incorporate any reasonable

comments that any Party submits to the Cleansing Material. If the Debtors do not (i) provide a

draft of the proposed Cleansing Material to a Party pursuant to the foregoing sentence or (ii) does

not, in the reasonable judgment of a Party after consultation with counsel, disclose all of the

Cleansing Material by the Cleansing Deadline), such Party may, within two business days

following the Cleansing Deadline provide the Debtors (or their representatives) with a notice of

the insufficiency of the Cleansing Materials, together with copies of proposed additional materials

to be disclosed, provided that a Party may send such a notice within 12 hours prior to the Cleansing

Deadline if it has not received a draft of the proposed Cleansing Materials at that time. During the

succeeding 3-business-day period following the receipt of a notice of insufficiency, the Debtors

and the noticing Party shall attempt in good faith to resolve such Party's reasonable requests for

additions or modifications to the Cleansing Materials. If no agreement can be reached during such

3-business-day period, the Party noticing the insufficiency may make generally available to the

public additional materials that the Party believes in good faith should have been included in the

Cleansing Materials and the possession of which by the Party would prohibit the Party from

buying, selling, or trading the Debtor Party Securities (pursuant to United States securities laws or

applicable blue sky laws). No Party shall have any liability at law or equity for the disclosure of

additional materials made in compliance with the previous sentence and the other provisions of

this paragraph, provided that such disclosure was not made in bad faith and did not include materials that were designated and remained "Advisors-Eyes'-Only" (or words of similar import).

18.     The Mediation shall terminate on the earlier of (a) the date on which the Mediator determines that the Mediation has terminated and advises the Parties and the Committee of such determination and (b) April 1, 2024, unless extended by agreement of the Mediator, the Ad Hoc Group of 2024/2026 Noteholders, and the First Lien Noteholder Group (the "***Mediation Termination Date***"). Any Party or the Committee shall have the right to withdraw from the Mediation at any time by providing written notice (which may be by email) to the Mediator and all Parties; *provided* that such a withdrawal shall not give rise to a Disclosure Triggering Event except in the case of a withdrawal by the Debtors, the Ad Hoc Group of 2024/2026 Noteholders, or the First Lien Noteholder Group.

19.     Unless otherwise ordered by the Court, the assignment to Mediation does not delay or stay discovery, trial in the Adversary Proceeding, any hearings that are or may be scheduled, or any deadlines that are or may be set by the Court, whether in Case No. 23-90611 or in the Adversary Proceeding.

20.     Entry of this Mediation Order shall not affect the rights or obligations of any parties-in-interest with respect to the Plan or these Chapter 11 Cases generally.

21.     The Court retains jurisdiction in connection with this Mediation Order and all matters arising from or related thereto.


Houston, Texas
Dated: _____, 2024

                                           _____
                                           THE HONORABLE MARVIN ISGUR
                                           UNITED STATES BANKRUPTCY JUDGE

**AGREED as to form and substance.**

*/s/ Charles A. Beckham, Jr.*

MILBANK LLP

Dennis F. Dunne (admitted *pro hac vice*)
Samuel A. Khalil (admitted *pro hac vice*)
Benjamin M. Schak (admitted *pro hac vice*)
55 Hudson Yards
New York, NY 10001
Telephone: 1 (212) 530-5000
Email:      DDunne@Milbank.com
            SKhalil@Milbank.com
            BSchak@Milbank.com

Andrew M. Leblanc (admitted *pro hac vice*)
1850 K Street, N.W., Suite 1100
Washington, DC 20006
Telephone: 1 (202) 835-7500
Email:      ALeblanc@Milbank.com

Samir L. Vora (admitted *pro hac vice*)
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: 1 (424) 836-4000
Email:      SVora@Milbank.com

- and -

QUINN EMANUEL URQUHART & SULLIVAN
LLP

Susheel Kirpalani (admitted *pro hac vice*)
Victor Noskov (admitted *pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: 1 (212) 849-7000
Email:      SusheelKirpalani@QuinnEmanuel.com
            VictorNoskov@QuinnEmanuel.com

- and -

HAYNES AND BOONE, LLP

Charles A. Beckham, Jr. (TX Bar No. 02016600)
Patrick L. Hughes (TX Bar No. 10227300)
Re'Necia Sherald (TX Bar No. 24121543)
1221 McKinney Street, Suite 4000
Houston, TX 77010
Telephone: 1 (713) 547-2000
Email:      Charles.Beckham@HaynesBoone.com
            Patrick.Hughes@HaynesBoone.com
            ReNecia.Sherald@HaynesBoone.com

*Counsel to the Debtors and*
*Debtors in Possession*

*/s/ Angela Libby*

PORTER HEDGES LLP

John F. Higgins (TX Bar No. 09597500)
M. Shane Johnson (TX Bar No. 24083263)
Megan Young-John (TX Bar No. 24088700)
Bryan L. Rochelle (TX Bar No. 24107979)
1000 Main Street, 36th Floor
Houston, TX  77002
Telephone:  1 (713) 226-6000
Email:     JHiggins@PorterHedges.com
           SJohnson@PorterHedges.com
           MYoung-John@PorterHedges.com
           BRochelle@PorterHedges.com

- and -

DAVIS POLK & WARDWELL LLP

Damian S. Schaible (admitted *pro hac vice*)
Angela Libby (admitted *pro hac vice*)
Stephanie Massman (admitted *pro hac vice*)
450 Lexington Avenue
New York, NY  10017
Telephone:  1 (212) 450-4000
Email:     Damian.Schaible@DavisPolk.com
           Angela.Libby@DavisPolk.com
           Stephanie.Massman@DavisPolk.com

- and -

HOLWELL SHUSTER & GOLDBERG LLP

Neil R. Lieberman (admitted *pro hac vice*)
Benjamin F. Heidlage (admitted *pro hac vice*)
Kevin D. Benish (admitted *pro hac vice*)
Sarah E. Maher (admitted *pro hac vice*)
Spence Colburn (admitted *pro hac vice*)
425 Lexington Avenue
New York, NY  10017
Telephone:  1 (646) 837-5124
Email:     NLieberman@HSGLLP.com
           BHeidlage@HSGLLP.com
           KBenish@HSGLLP.com
           SMaher@HSGLLP.com
           SColburn@HSGLLP.com

*Counsel to the First Lien Noteholder Group*

*/s/ Ryan T. Scarborough*

WILLIAMS AND CONNOLLY LLP

Dane H. Butswinkas (admitted *pro hac vice*)
Ryan T. Scarborough (admitted *pro hac vice*)
Ellen Oberwetter (admitted *pro hac vice*)
Joseph G. Catalanotto (admitted *pro hac vice*)
680 Maine Avenue, S.W.
Washington, DC  20024
Telephone:  1 (202) 434-5000
Email:     DButswinkas@WC.com
           RScarborough@WC.com
           EOberwetter@WC.com
           JCatalanotto@WC.com

*Counsel to Platinum*

*/s/ William A. Clareman*

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Andrew J. Ehrlich (admitted *pro hac vice*)
William A. Clareman (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, NY 10019
Telephone: 1 (212) 373-3000
Email:      AEhrlich@PaulWeiss.com
              WClareman@PaulWeiss.com

- and -

GRAY REED

Jason S. Brookner (TX Bar No. 24033684)
Lydia R. Webb (TX Bar No. 24083758)
1300 Post Oak Blvd., Suite 1200
Houston, TX 77056
Telephone: 1 (713) 986-7000
Email:      JBrookner@GrayReed.com
              LWebb@GrayReed.com

- and -

FRIEDMAN KAPLAN SEILER ADELMAN & ROBBINS LLP

Anne E. Beaumont (admitted *pro hac vice*)
Blair P. Albom (admitted *pro hac vice*)
7 Times Square, 28th Floor
New York, NY 10036
Telephone: 1 (212) 833-1100
Email:      ABeaumont@FKLaw.com
              BAlbom@FKLaw.com

*Counsel to the Carlyle Noteholders*

*/s/ Thomas E. Redburn, Jr.*

LOWENSTEIN SANDLER LLP

Michael S. Etkin (admitted *pro hac vice*)
Thomas E. Redburn, Jr. (admitted *pro hac vice*)
Andrew D. Behlmann (admitted *pro hac vice*)
Rachel Maimin (admitted *pro hac vice*)
Maya Ginsburg (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Telephone: 1 (212) 262-6700
Email:      MEtkin@Lowenstein.com
              TRedburn@Lowenstein.com
              ABehlmann@Lowenstein.com
              RMaimin@Lowenstein.com
              MGinsburg@Lowenstein.com

*Counsel to the Citadel Noteholder*

*/s/ Matthew B. Stein*

K ASOWITZ B ENSON T ORRES LLP

Constantine Z. Pamphilis (TX Bar No. 00794419)
1415 Louisiana Street, Suite 2100
Houston, TX  77002
Telephone:  1 (713) 220-8800
Email:      DPamphilis@Kasowitz.com

Matthew B. Stein (admitted *pro hac vice*)
Andrew R. Kurland (admitted *pro hac vice*)
1633 Broadway
New York, NY  10019
Telephone:  1 (212) 506-1700
Email:      MStein@Kasowitz.com
            AKurland@Kasowitz.com

*Counsel to the Senator Noteholder*

*/s/ Marion R. Harris*

P RYOR C ASHMAN LLP

Seth H. Lieberman (admitted *pro hac vice*)
Patrick Sibley (admitted *pro hac vice*)
Marion R. Harris (admitted *pro hac vice*)
Kaveri Arora (admitted *pro hac vice*)
7 Times Square
New York, NY  10036
Telephone:  1 (212) 421-4100
Email:      SLieberman@PryorCashman.com
            PSibley@PryorCashman.com
            MHarris@PryorCashman.com
            KArora@PryorCashman.com

- and -

V INSON & E LKINS LLP

Paul E. Health (TX Bar No. 09355050)
Matthew W. Moran (TX Bar No. 24002642)
Elias M. Medina (TX Bar No. 24123107)
845 Texas Avenue, Suite 4700
Houston, TX  77002
Telephone:  1 (713) 758-2222
Email:      PHeath@VELaw.com
            MMoran@VELaw.com
            EMedina@VELaw.com

*Counsel to WSFS*

/s/ Zachary D. Rosenbaum

FOLEY & LARDNER LLP

John P. Melko
1000 Louisiana Street, Suite 2000
Houston, TX  77002
Telephone:  1 (713) 276-5500
Email:      JMelko@Foley.com

Mark F. Hebbeln (admitted *pro hac vice*)
321 North Clark Street, Suite 3000
Chicago, IL  60654
Telephone:  1 (312) 832-4500
Email:      MHebbeln@Foley.com

- and -

KOBRE & KIM LLP

Adam M. Lavine (admitted *pro hac vice*)
Zachary D. Rosenbaum (admitted *pro hac vice*)
Darryl G. Stein (admitted *pro hac vice*)
Igor Margulyan (admitted *pro hac vice*)
Michael S. Brasky (admitted *pro hac vice*)
John G. Conte (admitted *pro hac vice*)
800 Third Avenue
New York, NY  10022
Telephone:  1 (212) 488-1200
Email:      Adam.Lavine@KobreKim.com
            Zachary.Rosenbaum@KobreKim.com
            Darryl.Stein@KobreKim.com
            Igor.Margulyan@KobreKim.com
            Michael.Brasky@KobreKim.com
            John.Conte@KobreKim.com

*Counsel to the Ad Hoc Group of 2024/2026 Noteholders*

/s/ Michael C. Schneidereit

JONES DAY

Bruce Bennett (admitted *pro hac vice*)
555 South Flower Street, 50th Floor
Los Angeles, CA  90071
Telephone:  1 (213) 489-3939
Email:      BBennett@JonesDay.com

Michael C. Schneidereit (admitted *pro hac vice*)
Nicholas Walter (admitted *pro hac vice*)
250 Vesey Street
New York, NY  10281
Telephone:  1 (212) 326-3939
Email:      MSchneidereit@JonesDay.com
            NCEWalter@JonesDay.com

Matthew C. Corcoran (admitted *pro hac vice*)
325 John H McConnell Blvd. #600
Columbus, OH  43215
Telephone:  1 (614) 469-3939
Email:      MCCorcoran@JonesDay.com

*Counsel to Langur Maize*

*/s/ Lorenzo Marinuzzi*

MCDERMOTT WILL & EMERY LLP

Charles R. Gibbs (TX Bar No. 7846300)
Jack G. Haake (TX Bar No. 24127704)
2501 North Harwood Street, Suite 1900
Dallas, TX  75201
Telephone:  1 (214) 295-8000
Email:       CRGibbs@MWE.com
             JHaake@MWE.com

- and -

Kristin K. Going (admitted *pro hac vice*)
Darren Azman (admitted *pro hac vice*)
Deanna Boll (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, NY  10017
Telephone: 1 (212) 547-5400
Email:       KGoing@MWE.com
             DAzman@MWE.com
             DBoll@MWE.com

- and -

MORRISON & FOERSTER LLP

Lorenzo Marinuzzi (admitted *pro hac vice*)
Theresa A. Foudy (admitted *pro hac vice*)
Michael Birnbaum (admitted *pro hac vice*)
Benjamin Butterfield (admitted *pro hac vice*)
Raff Ferraioli (admitted *pro hac vice*)
250 West 55th Street
New York, NY  10019
Telephone:  1 (212) 468-8000
Email:       LMarinuzzi@MoFo.com
             TFoudy@MoFo.com
             MBirnbaum@MoFo.com
             BButterfield@MoFo.com
             RFerraioli@MoFo.com

*Counsel to the Official Committee*
*of Unsecured Creditors*