IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| WESCO AIRCRAFT HOLDINGS, INC., *et al.*[1] | Case No. 23-90611 (MI) |
| Debtors. | Jointly Administered |

**OBJECTION OF THE CHUBB COMPANIES TO THE MODIFIED FIRST AMENDED JOINT CHAPTER 11 PLAN OF WESCO AIRCRAFT HOLDINGS, INC., ET AL.**

ACE American Insurance Company, ACE Property & Casualty Insurance Company, Illinois Union Insurance Company, Federal Insurance Company, Great Northern Insurance Company, Chubb Custom Insurance Company, Chubb Indemnity Insurance Company, Executive Risk Indemnity Inc., Texas Pacific Indemnity Company, and each of their U.S.-based affiliates and successors (collectively, the "Chubb Companies"), by and through their undersigned counsel, hereby file this Objection (the "Objection") to the *Modified First Amended Joint Chapter 11 Plan of Wesco Aircraft Holdings, Inc., et al.* [Docket No. 1223] (the "Plan")[2], and in support of the Objection, the Chubb Companies respectfully state as follows:

**BACKGROUND**

A.  **The Bankruptcy Case.**

---

[1]   The Debtors operate under the trade name Incora and have previously used the trade names Wesco, Pattonair, Haas, and Adams Aviation. A complete list of the Debtors in these chapter 11 cases, with each one's federal tax identification number and the address of its principal office, is available on the website of the Debtors' noticing agent at http://www.kccllc.net/incora/. The service address for each of the Debtors in these cases is 2601 Meacham Blvd., Ste. 400, Fort Worth, TX 76137.

[2]   Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Plan.

1. On June 1, 2023 (the "Petition Date"), the Debtors each filed a voluntary petition for bankruptcy relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Court").

2. On January 12, 2024, the Debtors filed the Plan.

3. With respect to its treatment of insurance policies generally, Article V.D. of the Plan provides in relevant part as follows:

> Unless listed on the Schedule of Rejected Executory Contracts and Unexpired Leases, each of the insurance contracts, including all D&O Policies, are deemed to be and treated as Executory Contracts and/or Unexpired Leases under the Plan, and on and after the Effective Date, the Debtors shall be deemed to have assumed all insurance contracts, including all D&O Policies in place as of the Petition Date. In addition, after the Effective Date, all current and former officers, directors, agents, or employees who served in such capacity at any time before the Effective Date shall be entitled to the full benefits of any D&O Policy (including any "tail" policy) for the full term of such policy regardless of whether such officers, directors, agents, and/or employees remain in such positions after the Effective Date, in each case, solely to the extent set forth in such D&O Policies and subject to any terms and conditions thereof. In addition, after the Effective Date, the Reorganized Debtors shall not terminate or otherwise reduce the coverage under any D&O Policy (including any "tail policy") in effect as of the Petition Date; provided that, for the avoidance of doubt, any insurance contract, including tail insurance policies, for directors', members', trustees', and officers' liability to be purchased or maintained by the Reorganized Debtors after the Effective Date shall be subject to ordinary-course corporate governance of the Reorganized Debtor.

4. With respect to the Schedule of Rejected Executory Contracts mentioned above, the "Debtors or the Reorganized Debtors, as applicable, retain the right to alter, amend, modify or supplement the Schedule of Rejected Executory Contracts and Unexpired Leases, including by way of adding or removing a particular Executory Contract or Unexpired Lease from the Schedule

2

of Rejected Executory Contracts and Unexpired Leases *at any time through and including the Effective Date*." Plan Art. V.A (emphasis added).

5. Article VI.F. of the Plan further provides for certain treatment of claims payable by insurance and the applicability of insurance policies:

> 2. Claims Payable by Third Parties
>
> No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to any Debtor's insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy; provided that if such holder is required to repay all or any portion of a Claim (either by contract or by order of a court of competent jurisdiction) to a Debtor's insurer, and such holder in fact repays all or a portion of the Claim to such insurer, the repaid amount of such Claim shall remain subject to the applicable treatment set forth in the Plan and the respective rights and defenses of the Debtors or Reorganized Debtors, as applicable, and the holder of such Claim. The insurers reserve all rights to defend and contest applicable causes of action or demands to the extent that they are brought against the insurers, or to the extent that such causes of action or demands seek recovery from the insurers. To the extent that one or more of the Debtors' insurers, in its role as an insurer (but not in any role as the issuer of surety bonds or similar instruments or as a guarantor of payment), agree to satisfy a Claim in full or in part (if and to the extent adjudicated by a court of competent jurisdiction or otherwise settled), then immediately upon such insurers' payment thereof, the applicable portion of such Claim may be expunged without an objection having to be filed and without any further notice to or action, order or approval of the Bankruptcy Court.
>
> 3. Applicability of Insurance Policies
>
> Except as otherwise provided in the Plan, distributions to holders of Claims covered by insurance contracts shall be in accordance with the provisions of any applicable insurance contract. Except as otherwise expressly set forth in the Plan, nothing in this Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity, including any holders of Claims, may hold against any other Entity under any insurance contract, including against insurers or any insured, nor shall anything contained in this Plan constitute or be deemed a waiver by such insurers of any rights or defenses, including coverage defenses, held by such insurers.

6. Additionally, the Plan also contains a so-called "Gatekeeper Provision," which provides that, before claimants can bring certain claims against the Debtors or any other "Covered Entity," such claimants must both (1) request a determination from the Court that their claim is a "colorable claim" – which determination the Court will have "sole and exclusive jurisdiction" to make – and not a claim released under the Plan, and (2) obtain from the Court specific authorization to bring such claim:

> With respect to any Covered Entity, no Entity or Person may commence or continue any action, employ any process, or take any other act to pursue, collect, recover or offset any Claim, Interest, debt, obligation, or Cause of Action relating or reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Covered Released Matter, Covered Matter, or Covered Exculpation Matter (including one that alleges the actual fraud, gross negligence, or willful misconduct of a Covered Entity), unless expressly authorized by the Bankruptcy Court after (1) it determines that, after notice and a hearing, such Claim, Interest, debt, obligation, or Cause of Action is colorable and (2) it specifically authorizes such Entity or Person to bring such Claim or Cause of Action. The Bankruptcy Court shall have sole and exclusive jurisdiction to determine whether any such Claim, Interest, debt, obligation, or Cause of Action is colorable and, only to the extent legally permissible and as provided for in Article XI, shall have jurisdiction to adjudicate such underlying colorable Claim, Interest, debt, obligation, or Cause of Action. Notwithstanding the foregoing, this paragraph shall not apply to the Langur Maize Retained Causes of Action

Plan at Art. VIII.F.

7. Finally, the Plan contemplates allowing the Reorganized Debtors to freely assume and assign any Executory Contact in Article V.B.2. in stating that "[t]he Debtors (with the consent of the Required Consenting 1L Noteholders) or the Reorganized Debtors may assume, assume and assign, or reject an Executory Contract and/or Unexpired Lease that is subject to an Assumption Dispute at any time prior to the resolution of the Assumption Dispute relating to the Executory Contract and/or Unexpired Lease."

B.     **The Insurance Program.**

8.     Prior to the Petition Date, the Chubb Companies issued certain insurance policies (as renewed, amended, modified, endorsed or supplemented from time to time, collectively, the "Policies") to one or more of the Debtors as named insureds.

9.     Pursuant to the Policies and any agreements related thereto (collectively, the "Insurance Program"), the Chubb Companies provide, *inter alia*, international advantage, package, errors and omissions, cyber, pollution, casualty, umbrella, general liability, automobile liability, workers' compensation, directors' and officers', fiduciary liability, employment practices liability, accident, inland marine, property and certain other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein; and the insureds, including one or more of the Debtors, are required to pay to the Chubb Companies certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the Insurance Program (collectively, the "Obligations").[3]

10.    The Obligations are payable over an extended period of time and are subject to future audits and adjustments.

## SUMMARY OF OBJECTION

11.    The Chubb Companies object to the Plan on the grounds that: (I) while it appears that the Debtors seek to retain the benefits of the Insurance Program (*see, e.g.*, Plan Art. V.D. (relating to insurance policies generally) and Plan Art. VI.F(2)-(3) (relating to payment of claims

---

[3]     The Obligations include both monetary and non-monetary obligations that the insureds, including one or more of the Debtors, may have.

5

by the Debtors' insurers)), the Plan fails to clearly provide that, in order to do so, the Debtors and their successors must remain liable for the obligations thereunder; (II) the Plan attempts to improperly alter or otherwise modify the terms of the Insurance Program in several ways; (III) the Plan must provide that workers' compensation and direct action claims must continue in the ordinary course, and (IV) to the extent that the Debtors seek to assume and assign or otherwise transfer the Insurance Program (and/or the rights, benefits, interests and proceeds thereunder), the Insurance Program (and/or the rights, benefits, interests and proceeds thereunder) cannot be assigned or transferred without the consent of the Chubb Companies, which consent has not been sought or given.

## OBJECTION

### I. The Debtors' Successors Cannot Continue To Receive The Benefits Of The Insurance Program Without Remaining Liable For The Obligations Thereunder.

12. As set forth above, the Debtors appear to seek to retain the benefits of their Insurance Policies; however, the Plan fails to clearly provide for the treatment of the obligations thereunder.

13. Further, while simultaneously indicating their intent to retain such benefits, the Debtors leave open the possibility that any insurance policies could be rejected at any time prior to Effective Date. This leaves the Chubb Companies without clarity on the Debtors' true intentions with respect to the Insurance Program.

14. It is well-established that debtors and their successors cannot receive benefits of a contract without being liable for the obligations thereunder. *See Tompkins ex. rel. A.T. v. Troy Sch. Dist.*, 199 Fed. Appx. 463, 468 (6th Cir. 2006) (holding that it is a basic principle of contract law that a party to an agreement is constrained to accept the burdens as well as the benefits of the agreement); *St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 457 F.3d 766, 773 (8th

Cir. 2006) (finding that a party who accepts the benefit of a contract must also assume its burdens); *Bhushan v. Loma Alta Towers Owners Assoc., Inc.*, 148 Fed. Appx. 882, 888 (11th Cir. 2005) (stating "one who has accepted a contract's benefit may not challenge its validity in order to escape its burdens"); *S & O Liquidating P'ship v. C.I.R.*, 291 F.3d 454, 459 (7th Cir. 2002) ("A party who has accepted the benefits of a contract cannot 'have it both ways' by subsequently attempting to avoid its burdens."); *Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836, 839 (7th Cir. 1981) ("In short, [plaintiff] cannot have it both ways. [It] cannot rely on the contract when it works to its advantage, and repudiate it when it works to [its] disadvantage." (citations and quotations omitted)); *Ricketts v. First Trust Co. of Lincoln, Neb.*, 73 F.2d 599, 602 (8th Cir. 1934) (finding that "he who seeks equity must do equity, and that one may not accept the benefits and repudiate the burdens of his contract."); *Meierhenry Sargent Ltd. Liab. P'ship v. Williams*, No. 16-4180, 2017 U.S. Dist. LEXIS 65739, at *20 (D.S.D. May 1, 2017) ("Various courts have held that a party may not avail itself of a favorable aspect of the contract and then disavow a non-favorable aspect." (citations omitted)); *Power Sys. & Controls, Inc. v. Schneider Elec. USA, Inc.*, No. 10-137, 2010 U.S. Dist. LEXIS 56671 at *3 (E.D. Va. June 9, 2010) ("[A] party may not avail itself of one aspect of a contract and disavow another aspect of the contract in order to avoid its consequences. . .[.]"); *see also In re Fleming Cos.*, 499 F.3d 300, 308 (3d Cir. 2007) ("'The [debtor] . . . may not blow hot and cold. If he accepts the contract he accepts it *cum onere*. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other.'") (internal citations omitted); *Paradigm Air Carriers, Inc. v. Tex. Rangers Baseball Partners (In re Texas Rangers Baseball Partners)*, 521 B.R. 134, 179-80 (Bankr. N.D. Tex. 2014) ("A debtor may not merely accept the benefits of a contract and reject the burdens to the detriment of the other party.").

15. Further, the Insurance Program is an integrated insurance program and therefore must be read, interpreted and enforced in its entirety. *See Huron Consulting Servs., LLC v. Physiotherapy Holdings, Inc. (In re Physiotherapy Holdings, Inc.)*, 538 B.R. 225, 233 (D. Del. 2015) (finding that separately drafted agreements dated at different times but relating to the same subject constitute one cohesive agreement); *In re Aneco Elec. Constr.*, 326 B.R. 197, 202 (Bankr. M.D. Fla. 2005) (finding "single, non-severable agreement" where contracts were between same parties and obligations of each party are mutually dependent upon the other); *In re Karfakis*, 162 B.R. 719 (Bankr. E.D. Pa. 1993) (stating that "two contracts which are essentially inseparable can be, and should be, viewed as a single, indivisible agreement between the parties").

16. Accordingly, to the extent that the Debtors or their successors (here, the Reorganized Debtors) seek to retain the benefits of any portion of the Insurance Program, the entirety of the Insurance Program must be assumed by or must vest in the Debtors' successors. The Debtors or any of their successors, including the Reorganized Debtors must also remain liable in full for all of the Debtors' Obligations arising under the Insurance Program, regardless of when they arise.

17. The Plan must therefore be clarified to provide the Reorganized Debtors shall remain liable in full for all of the Obligations arising under the Insurance Program.

## II.    The Plan Improperly Alters The Terms Of The Insurance Program.

18. Neither the Debtors nor this Court can rewrite the Insurance Program but rather the Insurance Program must be enforced as written. *See, e.g.*, *In re WorldCorp, Inc.*, 252 B.R. 890, 897 (Bankr. D. Del. 2000) (a court may not "rewrite [a] contract to include terms that a party wishes [it] had bargained for, but did not, prior to execution of the agreement"); *see also Coca-Cola Bottling Co. of Shreveport v. Coca-Cola Co.*, 769 F. Supp. 671, 707 (D. Del. 1991) *aff'd*, 988

F.2d 414 (3d Cir. 1993) ("Courts do not rewrite contracts to include terms not assented to by the parties."); *Ally Financial Inc., v. Wells Fargo Bank, N.A. (In re Residential Capital, LLC)*, 531 B.R. 25, 45 (Bankr. S.D.N.Y. 2015) (a party cannot convince a court to "rewrite [a] contract to fulfill [its] unspoken expectation") (quoting, in part, *Buena Vista Home Entm't, Inc. v. Wachovia Bank, N.A. (In re Musicland Holding Corp.)*, 374 B.R. 113, 121 (Bankr. S.D.N.Y. 2007)); *In re Best Mfg. Grp. LLC*, 2012 WL 589643, at *6 (Bankr. D. N.J. 2012) ("Where the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written."); *In re Enterprise Lighting Inc.*, 1994 Bankr. LEXIS 1307 at *7 (Bankr. E.D. Va. Jan. 21, 1994) (the generally broad equitable powers of a bankruptcy court "have not been interpreted to go so far as to allow the Court to rewrite contracts or create new contractual rights between the Debtor and a third party").

19.  However, the Plan contains multiple provisions that purport to alter or modify the Insurance Program and the terms and conditions thereof.

**1.  Impermissible release of obligations under the Insurance Program.**

20.  As noted above, through the Plan, it appears that the Debtors seek to continue to receive the benefits of the Insurance Program. However, the Plan does not adequately address the continuing obligations of the Debtors or their successors under the Insurance Program.

21.  To the contrary, the Plan contains provisions which provide for the release of liens, the vesting of assets in the Debtors' successors free and clear of liens, releases of certain third-parties, and exculpation and injunctions against certain actions. *See, e.g.*, Plan Arts. IV.C.(2); VIII.C-G.

22.  However, and as discussed at length above, is well-established that debtors and their successors cannot seek to receive the benefits of a contract without being liable for the obligations thereunder. *See, e.g.*, *supra* at ¶¶ 12-13.

9

23. Therefore, the Plan must clarify that nothing in the Definitive Documents or any other document related thereto including, but not limited to those provisions identified above, shall modify, alter or impair the Insurance Program, including the rights and obligations of the Chubb Companies and the Debtors thereunder. It must also clarify that nothing in the Definitive Documents or any other document related thereto expands, modifies or otherwise alters the coverages provided under the Insurance Program.

### 2. Unclear and inconsistent restrictions on handling and administration of insured claims.

24. The Plan provides that certain claims against certain third parties, which may include claims covered by insurance, can only go forward if, among other things, the claimant first obtains from the Court an order allowing the claim to go forward, and the Court shall have "sole and exclusive jurisdiction" to determine whether any claim is "colorable." *See* Plan at Art. VIII.G.

25. As an initial matter, it is well-established that the Plan cannot confer the Court with jurisdiction over any dispute or proceeding. *See In re U.S. Brass Corp.*, 301 F.3d 296, 303 (5th Cir. 2002) ("[T]he source of the bankruptcy court's subject matter jurisdiction is neither the Bankruptcy Code nor the express terms of the Plan."); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 228 (3d Cir. 2004) ("[J]urisdiction cannot be conferred … in a plan of reorganization"); *In re Acis Cap. Mgmt., L.P.*, 604 B.R. 484, 515 (N.D. Tex. 2019), *aff'd sub nom. Matter of Acis Cap. Mgmt., L.P.*, 850 F. App'x 302 (5th Cir. 2021) ("Parties may not, in the course of ordering their private affairs, enlarge *or shrink* Article III or the federal statutes governing subject matter jurisdiction.") (emphasis in original). Thus, to the extent the Plan purports to confer any jurisdiction, including any exclusive jurisdiction, on the Court, this is contrary to applicable law.

26. Moreover, the provisions in the Plan that potentially purport to confer exclusive jurisdiction on the Court over insured claims and that require claimants to obtain certain determinations from the Court before pursuing their claims appear to be in conflict with the provisions of the Plan that contemplate claims being paid from the available proceeds of any applicable insurance policies. *See* Plan at VI.F(2)-(3).

27. Thus, the Chubb Companies are unable to determine based on the Plan what, if anything, will be required before they can handle and administer claims potentially covered by the Insurance Program or what impediments the Plan may seek to impose on the Chubb Companies' rights to handle and administer claims under the Insurance Program.

28. Accordingly, the Chubb Companies further object to the Plan on this basis.

### III. The Plan Must Provide That Workers' Compensation Claims and Direct Action Claims Must Continue In The Ordinary Course.

29. The Plan does not provide for the handling of workers' compensation claims or direct action claims against the Debtors' insurers.

30. Both workers' compensation claims and direct action claims are subject to state-law regulations that dictate the resolution of such claims, which cannot be modified by the terms of the Debtors' Plan. *See, e.g.*, *Ohio v. Mansfield Tire & Rubber Co. (In re Mansfield Tire & Rubber Co.)*, 660 F.2d 1108 (6th Cir. 1981) (finding that the administration of workers' compensation claims was a valid exercise of a state's police powers and exempt from the automatic stay provisions); *see also* La. R.S. 22:1269 (2012) (Louisiana grants injured persons a right of direct action against a tortfeasor's insurer, which, in several instances, may be brought against the insurer alone, or against both the insured and insurer jointly and *in solido*); Wis. Stat. § 632.24 (2012) (Wisconsin grants injured persons a right of direct action against a tortfeasor's

11

insurer irrespective of whether liability is presently established or is contingent and to become fixed or certain by final judgment against the insured).

31. Accordingly, the Plan must clarify that workers' compensation and direct action claims must continue to be administered, handled, defended, settled, and/or paid in the ordinary course, and relatedly, the Chubb Companies may continue to so administer, handle, defend, settle, and/or pay such covered claims in the ordinary course, and pursuant to the terms of the Insurance Program and applicable non-bankruptcy law.

### IV. The Insurance Program Cannot Be Assigned or Otherwise Transferred Without the Prior Written Consent of the Chubb Companies, Which Has Not Been Sought or Given.

32. The Plan provides the Reorganized Debtors the unfettered ability to assume and assign Executory Contracts. *See* Plan at Art. V.B.2.

33. To the extent that the Debtors seek to assign or otherwise transfer the Insurance Program (and/or the rights, benefits, interests and proceeds thereunder), such assignment cannot occur without the express written consent of the Chubb Companies.

34. Section 365 of the Bankruptcy Code governs a debtor's use of executory contracts and unexpired leases and provides the basis by which a debtor may assume and assign said contracts.

35. Section 365(f)(1), which allows assignment of a contract or lease despite a prohibition, restriction, or condition in the contract to the contrary, is not without limits. Section 365(f) is subject to and controlled in all respects by section 365(c). *See* 11 U.S.C. § 365(f)(1) ("Except as provided in subsection (b) and (c) of this section[.]"); *see also In re Trump Ent. Resorts, Inc.*, 526 B.R. 116, 122 (Bankr. D. Del. 2015) ("Section 365(f)(1), though, is expressly subject to any alternative rule provided in Section 365(c).").

36. Pursuant to 11 U.S.C. § 365(c), a debtor may not assume or assign an executory contract if applicable law excuses the counterparty from accepting performance from or rendering performance to an entity other than the debtor and such party does not consent to the assumption or assignment. 11 U.S.C. § 365(c)(1)(A) and (B).

37. Therefore, under section 365(c)(1) "if non-bankruptcy law provides that the [counterparty] would have to consent to an assignment of the [executory] contract to a third party, *i.e.*, someone 'other than the debtor or the debtor in possession,' then [the Debtor] . . . cannot assume that contract" and, by extension, assign it. *In re West Elecs. Inc.*, 852 F.2d 79, 83 (3d Cir. 1988); *see also Trump Ent. Resorts, Inc.*, 526 B.R. at 122 ("The Section 365(c)(1) limitation on the assumption of executory contracts applies whenever the contract is 'subject to a legal prohibition against assignment' to a third party and the non-debtor party to the contract does no consent to assignment.").

38. Applicable non-bankruptcy law does, in fact, prohibit the assignment of insurance policies without the insurer's consent. *See, e.g.*, *Banco Popular v. Kanning*, No. A-13-CV-200 RP, 2015 U.S. Dist. LEXIS 175647, at *25 (W.D. Tex. Mar. 9, 2015) (finding that a purported assignment of an insurance policy that did not comply with the express terms of the insurance policy was not enforceable); *Rotella v. Cutting*, 2011 Tex. App. LEXIS 7116, Tex. App.—Fort Worth 2011, *no pet*.) (where an insurer's express written consent to any transfer of rights under an insurance policy is required by the terms of the policy, failure to evidence the insurer's express written consent renders any purported transfer invalid); *Mercedes-Benz of W. Chester v. Am. Family Ins.*, Nos. CA2009-09-244, CA2009-09-245, CA2009-09-246, 2010 Ohio App. LEXIS 1898 at ¶ 22 (Ohio Ct. App. May 24, 2010) (finding that third party "cannot impute a legally binding obligation to pay against [insurer]" where insureds assigned insurance contract without

insurer's consent, because to find otherwise "would place an undue risk and burden on [insurer]"); *Touchet v. Guidry*, 550 So. 2d 308, 313 (La. App. 1989) (holding that an insurance policy is a personal contract between the insurer and the named insured and that "coverage terminates when the contract is assigned or transferred without the consent, permission, and approval of both contracting parties") (citations omitted); *Shadid v. Am. Druggist Fire Ins. Co.*, 386 P.2d 311 (Okla. 1963) (noting the importance of an insurer's consent to an assignment of an insurance policy, and holding that the policy does not pass to the purchaser simply by a sale of the insured property).[4]

39. Similarly, insurers cannot be compelled to provide insurance coverage to any entity. *See Atwood v. Progressive Ins. Co.*, No. 950051089S, 1997 Conn. Super. LEXIS 2450, at *18 (Conn. Super. Ct. Sept. 3, 1997) (stating that "[i]nsurers should not, for example, be forced to assume coverage for a risk which at the time a policy was written was not fairly in its and the insured's contemplation"); *King v. Meese*, 43 Cal. 3d 1217, 1222 (Cal. 1987) (noting that "an insurer may refuse to insure based on any permissible classification"); *Cummins v. Nat'l Fire Ins. Co.*, 81 Mo. App. 291, 296 (Mo. Ct. App. 1899) ("An insurance company may well refuse to insure some persons. They, like any other entity, have a right of choice as to who they will contract with and they can no more be forced to a change of the assured than the assured could be forced to accept insurance from some other company (in which he may have no confidence) than the one contracted with.").

---

[4] Some courts have found that insurance policies may be assigned to a trust created under § 524(g) pursuant to a plan under § 1123 without the consent of the insurer. *See, e.g.*, *In re Fed.-Mogul Glob.*, 684 F.3d 355, 382 (3d Cir. 2012) (holding that anti-assignment provisions in insurance policies were "preempted by § 1123(a)(5)(B) [of the Bankruptcy Code] to the extent they prohibit transfer to a § 524(g) trust."); *In re W.R. Grace & Co.*, 475 B.R. 34, 198-99 (D. Del. 2012) (holding that anti-assignment provisions in insurance policies were preempted by § 1123(a)(5)(B) in the context of the establishment of a § 524(g) trust). The present case does not involve an assignment to a trust created pursuant to § 524(g).

14

40. Therefore, the Insurance Program (and/or the rights, benefits, interests and proceeds thereunder) cannot be assigned without the prior written consent of the Chubb Companies.

41. Further, as a condition precedent for any consent that may be given by the Chubb Companies to an assignment, sale, or other transfer of the Insurance Program (and/or the rights, benefits, interests and proceeds thereunder), the Debtors and the assignee may be required to execute one or more assumption agreements, in form and substance acceptable to the Chubb Companies. These agreements have not yet been negotiated, let alone executed.

42. Accordingly, because the Chubb Companies have not consented to any proposed assignment of the Insurance Program (and/or the rights, benefits, interests and proceeds thereunder), the Chubb Companies reserve their rights with respect to any and all such assignments at this time.

**V.     Reservation Of Rights.**

43. The Chubb Companies specifically reserve all of their rights with respect to the Insurance Program and their right to assert additional objections to the Plan.

WHEREFORE, the Chubb Companies respectfully request that this Court: (a) either (i) deny confirmation of the Plan, or (ii) condition confirmation of the Plan on inclusion of the modifications requested herein; and (b) grant such other relief as is just and proper.

Dated: March 4, 2024                    Respectfully submitted,

        DUANE MORRIS LLP

        /s/   Corey M. Weideman
        Corey M. Weideman, Esquire (SBT 24056505)
        DUANE MORRIS LLP
        1330 Post Oak Boulevard, Suite 800
        Houston, TX 77056-3166
        Email: cmweideman@duanemorris.com

        -and-

        Wendy M. Simkulak, Esquire
        Drew S. McGehrin, Esquire
        DUANE MORRIS LLP
        30 South 17th Street
        Philadelphia, PA 19103-4196
        Telephone: (215) 979-1000
        Email: wmsimkulak@duanemorris.com
        Email: dsmcgehrin@duanemorris.com

        *Counsel for the Chubb Companies*

**CERTIFICATE OF SERVICE**

      I, Corey M. Weideman, certify that I am not less than 18 years of age, and that on the date set forth below, I caused a true and correct copy of the *Objection Of The Chubb Companies To The Modified First Amended Joint Chapter 11 Plan of Wesco Aircraft Holdings, Inc., et al* to be served by electronic transmission upon all parties eligible to receive services through this Court's CM/ECF system.

Dated: March 4, 2024                          */s/ Corey M. Weideman*
                                                      Corey M. Weideman, Esquire (SBT 24056505)