**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| WESCO AIRCRAFT HOLDINGS, INC, *et al.*, | Case No. 23-90611 (MI) |
| Debtors[1] | (Jointly Administered) |

**OBJECTION OF UMB BANK, N.A., AS SUCCESSOR INDENTURE TRUSTEE FOR**
**NOTES DUE 2024 AND NOTES DUE 2026 TO**
**MODIFIED FIRST AMENDED JOINT CHAPTER 11 PLAN**

(Relates to Docket No. 1223)

---

[1]    A complete list of the Debtors in these chapter 11 cases, with each one's federal tax identification number and the address of its principal office, is available on the website of the Debtors' noticing agent at http://www.kccllc.net/incora/. The service address for each of the Debtors in these cases is 2601 Meacham Blvd., Ste. 400, Fort Worth, TX 76137.

i

**TABLE OF CONTENTS**

BACKGROUND………………………….……………………….......................1

OBJECTION……………..……………………………………………....………………..3

A. The Plan Seeks to Improperly Impose Victory in the Adversary Proceeding…………………...3

B. The Plan Cannot be Confirmed for the Reasons Stated in the Noteholder Group Objection…....3

C. The Plan Violates Section 1123(a)(4)………………………………………………………..4

D. The Plan Unfairly Discriminates Against Holders of 2024 and 2026 Notes……………………6

E. Reservation of Rights………………………………………………………………………..9

REQUEST FOR RELIEF………………………………………………………............…10

## TABLE OF AUTHORITIES

Federal Cases:

*In re Cypresswood Land Partners, I,*
    409 B.R. 396, 422 (Bankr. S.D. Tex. 2009)……………………………………………………3

*In re W.R. Grace & Co.,*
    729 F.3d 311, 327 (3rd Cir. 2013)……………………………………………………….......5

*In re Mangia Pizza Investments, LP,*
    480 B.R. 669 (Bankr. W.D. Tex. 2012)……………………………………..…………..8

*In re Snyders Drug Stores, Inc.,*
    307 B.R. 889 (Bankr. N.D. Ohio 2004)……………………………………..…………..8


Federal Statutes:

11 U.S.C. §1123……………………………………………………….…….....1,4,5

11 U.S.C. § 1129……………………………………………………………1,4,6,7

UMB Bank, N.A., as successor indenture trustee for the 2024 and 2026 Notes described more fully below (the "Notes Trustee"), objects to the *Modified First Amended Joint Chapter 11 Plan of Wesco Aircraft Holdings, Inc. et al.* in these chapter 11 cases [Docket No. 1223] (as further modified, supplemented, or amended, the "Plan").

Confirmation of the Plan on its present terms would improperly circumvent the adversary proceeding that is pending in these chapter 11 cases to resolve fundamental issues affecting the 2024 and 2026 Notes and their place in the Debtors' capital structure. That litigation includes a challenge to a prepetition transaction that purported to reorder key terms of the 2024 and 2026 Notes. That litigation implicates significant issues for the terms for any plan that might be confirmed here. The Notes Trustee understands that by agreement of the Debtors and an ad hoc group of holders of the 2024 and 2026 Notes (the "Ad Hoc Holders") there may be separate, later, confirmation pleadings that relate to those disputes, leaving the focus for now on other Plan confirmation matters.

For now, the Notes Trustee joins in the initial plan objections raised by the Ad Hoc Holders in their Plan objections also filed today (the "Noteholder Group Objection"). The Notes Trustee additionally opposes the Plan since the Plan does not comply with Section 1123 of the Bankruptcy Code regarding equal treatment for claims within a plan class, and does not comply with the requirements of Section 1129(b)(1). The Plan cannot be confirmed.

## BACKGROUND

The Debtors' obligations include more than $530 million in principal owed under 8.50% senior notes due November 15, 2024, and 9.00% senior notes due November 15, 2026 (collectively, the "2024 and 2026 Notes"), plus interest, expenses, and other related amounts.

The 2024 and 2026 Notes were issued pursuant Indentures dated as of November 27, 2019, as amended and supplemented from time to time, between Wolverine Escrow, LLC and The Bank of New York Mellon Trust Company, N.A., as original indenture trustee.

These chapter 11 cases were filed June 1 2023 (the "Petition Date") and a significant focus of the chapter 11 cases surrounds an adversary proceeding involving the 2024 and 2026 Notes and other debt obligations under the caption *"Wesco Aircraft Holdings, Inc., et al. v. SSD Investments LTD, et al."* Adv. Pro. No. 23-03091 (the "Adversary Proceeding"). The Notes Trustee was appointed as successor indenture trustee for the 2024 and 2026 Notes after the Petition Date.

The Adversary Proceeding reflects serious questions around the validity and effect of a March 2022 transaction by the Debtors and others that purported to reconfigure the priority of and security for the 2024 and 2026 Notes and other funded indebtedness (the "2022 Transaction").

The Adversary Proceeding was commenced to resolve the Debtors' position that the 2024 and 2026 Notes are unsecured given the 2022 Transaction; that position is fiercely disputed.

The Plan proposes to treat claims based on the 2024 and 2026 Notes as general unsecured claims that receive a pro rata share of a "Settlement Equity Pool" of approximately 3.5% of the new common equity to be issued under the Plan, subject to further dilution. *See* Plan, Art. III.B.8 and Art. I.A.190.

The Plan also provides that if the Plan is confirmed and consummated, the documents evidencing the 2024 and 2026 Notes would be generally cancelled, claims held by the Debtors and any "Releasing Parties" regarding the 2022 Transaction would be released, and a broad Plan injunction would enjoin parties in interest, including the Notes Trustee or holders of the 2024 and 2026 Notes, from taking action "to interfere with the implementation or consummation of [the] Plan." *See* Plan Art. VIII.G.

## OBJECTION

The Debtors are assigned the burden of proving that all relevant terms of the Bankruptcy Code for confirmation of the Plan are satisfied. *In re Cypresswood Land Partners, I*, 409 B.R. 396, 422 (Bankr. S.D. Tex. 2009). The Debtors must meet that burden by the preponderance of the evidence. *Id.* The Debtors cannot carry that burden with the current Plan.

### A.  *The Plan Seeks to Improperly Impose Victory for the Debtors in the Adversary Proceeding*

The Notes Trustee objects to the Plan since the Plan is premised on the Debtors' complete victory in the Adversary Proceeding. The Plan treats the 2024 and 2026 Notes as unsecured and does not provide any alternative to this unsecured treatment if the Adversary Proceeding is resolved on terms that grant holders of the 2024 and 2026 Notes any relief.  *See* Plan, Art. III.B.8 and Art. I.A.190. Since issues posed by the Debtors' posture with the Plan on these points will be dealt with for confirmation purposes later, it suffices for now that this Court noted from the bench in approving the disclosure statement for the Plan that the Debtors cannot use the Plan to "invok[e] equitable mootness to avoid an appeal."[2] There are serious issues surrounding the good faith requirements and other plan confirmation standards of the Bankruptcy Code given these circumstances. The Plan cannot be confirmed at this time given the contested and unresolved status of the 2022 Transaction in the Adversary Proceeding.

### B.  *The Plan Cannot be Confirmed for the Reasons Stated in the Noteholder Group Objection*

Even aside from the issues described immediately above, the Noteholder Group Objection reflects multiple other confirmation issues with the Plan. Each presents an independent reason why the Plan cannot be confirmed without material amendment.

---

[2]     An excerpt from the January 11, 2024 hearing transcript in the chapter 11 cases reflecting these comments is attached as **Exhibit A**.

The Notes Trustee joins in the objections raised in the Noteholder Group Objection, and will not needlessly duplicate the arguments set forth on in the Noteholder Group Objection, but some key deficiencies with the Plan reflected there include:

(a) The Debtors' inability to satisfy the good faith requirements in Section 1129(a)(3) of the Bankruptcy Code in proposing the Plan;

(b) The Debtors' inability to establish the Plan is feasible;

(c) The Debtors' inability to establish the Plan complies with the best interests requirements under Section 1129(a)(7) of the Bankruptcy Code since liquidation should provide a superior recovery for holders of 2024 and 2026 Notes than the Plan;

(d) Plan exculpation terms that fold in prepetition conduct and exceed what is permissible under Fifth Circuit precedent; and

(e) The Debtors' more basic failure to include information concerning post-effective date organizational documents.

The Notes Trustee respectfully refers the Court and others to the Noteholder Group Objection for further detail.

### C.  The Plan Violates Section 1123(a)(4)

The Notes Trustee objects to confirmation of the Plan on the further grounds that the Plan does not comply with Section 1123(a)(4) of the Bankruptcy Code. The Plan identifies the claims associated with the 2024 and 2026 Notes as "2024 Unsecured Notes Claims" and "2026 Unsecured Notes Claims" and assigns those claims to Class 7a under the Plan.  *See* Plan, Art. III.B.8 and Art. I.A.190. The Plan then provides for the distribution of a *pro rata* share of the Settlement Equity Pool to holders of 2024 and 2026 Notes and other holders of allowed Class 7a Claims. *Id.* This treatment is inappropriate and inadequate given the issues in the Adversary Proceeding. This framework also means, at least, the Debtors are providing worse treatment for holders of 2024 and 2026 Notes than other members of proposed Class 7a.

Section 1123(a)(4) of the Bankruptcy Code requires the Debtors to provide the same treatment for each claim or interest of a particular class under the Plan.  Section 1123(a)(4) requires that "all claimants in a class must have 'the same opportunity' for recovery". *In re W.R. Grace & Co.*, 729 F.3d 311, 327 (3rd. Cir. 2013). The exception recognized in the Bankruptcy Code for this rule is for a holder of a particular claim or interest that agrees to less favorable treatment. *Id.* That exception is obviously not relevant here.

The Plan fails to give holders of 2024 and 2026 Notes the equal treatment Section 1123 requires since the Plan seeks to pass off to noteholders the Debtors' reimbursement obligations for Notes Trustee expenses. The Plan does so by providing that the Notes Trustee must look to its charging lien for reimbursement out of dividends otherwise promised on Notes claims. Article IV.C.3 of the Plan provides:

> [T]he Prepetition Debt Documents shall continue in effect solely to the extent necessary (a) to allow the holders of Claims to receive distributions under the Plan; (b) to allow the Debtors, the Reorganized Debtors, and the Prepetition Agents to make or receive distributions under and in accordance with the terms of the Plan and to take other actions pursuant to the terms of the Plan on account of Claims; (c) to allow the 2026 Unsecured Indenture Trustee, the 2024 Unsecured Indenture Trustee, the 2027 Unsecured Indenture Trustee, the PIK Notes Indenture Trustee, the 1L Indenture Trustee, and the 1.25L Indenture Trustee to exercise their rights, claims, causes of action, and interests (including their rights, if any, to compensation and indemnification as against any money or property distributable) under the 2026 Unsecured Indenture, the 2024 Unsecured Indenture, the 2027 Unsecured Indenture, the PIK Notes Indenture, the 1L Indenture, and the 1.25L Indenture, respectively, against any holder of 2024 Unsecured Notes Claims, 2026 Unsecured Notes Claims, 2027 Unsecured Notes Claims, PIK Notes Claims, 1L Notes Claims, and 1.25L Notes Claims, respectively, to the extent consistent with the Plan, including to exercise charging liens; (d) to allow the Prepetition Agents to enforce any obligations owed to them under the Plan and the Prepetition Debt Documents; (e) to preserve all rights, remedies, indemnities, powers, and protections, including rights of enforcement, of the Prepetition Agents, as applicable, against any person other than a Released Party; (f) to allow the Prepetition Agents to appear in the Chapter 11

Cases or in any proceeding in the Bankruptcy Court or any other court relating to such documents in furtherance of the foregoing; and (g) with respect to the 2027 Unsecured Indenture and the 2027 Unsecured Notes, to allow for the prosecution and defense of the Langur Maize Retained Causes of Action against and recovery from the Langur Maize Excluded Parties; provided that any provisions regarding turnover of proceeds arising under any intercreditor agreement that constitute Prepetition Debt Documents shall be cancelled and discharged and of no force or effect; and provided, further that nothing in this Article IV.C.3 shall affect the discharge of Claims or Interests pursuant to the Plan or the effectiveness of the Debtor Release or the Third-Party Release.[3]

The Plan accordingly deprives holders of 2024 and 2026 Notes equal footing for even the *de minimis* recovery the Plan contemplates for creditors the Debtors have assigned to Class 7a under the Plan.

The Plan should be amended to provide holders of 2024 and 2026 Notes treatment reflecting the issues raised by the Adversary Proceedings and should at least also provide for a cash payment of the Notes Trustee's reasonable and documented expenses, including professional fees given these issues.

### D.  The Plan Unfairly Discriminates Against Holders of 2024 and 2026 Notes

The Notes Trustee objects to the Plan since it also unfairly discriminates against holders of 2024 and 2026 Notes. The Plan unfairly discriminates against holders of 2024 and 2026 Notes by seemingly providing for the payment of expenses for every other corporate trust service provider and agent in these proceedings while not providing this same reimbursement to the Notes Trustee.

The Debtors must satisfy the requirements of Section 1129(b) to confirm the Plan since the Notes Trustee believes the Debtors cannot comply with the requirements of Section 1129(a)(8) of the Bankruptcy Code with respect to the current Plan and can only confirm the Plan under the

---

[3]     The Plan does not adequately provide for the Notes Trustee's charging lien rights either; properly drafted charging lien terms would have the charging lien attach to Plan dividends earmarked for 2024 and 2026 Notes and provide for coordination with the Notes Trustee and Debtors in Plan distributions to ensure payment of Notes Trustee expenses.

"cram down" terms of Section 1129(b). The Notes Trustee understands that claims associated with the 2024 and 2026 Notes comprise a supermajority of the claims assigned to Class 7a under the Plan and expects most holders of 2024 and 2026 Notes are casting votes to reject the Plan given the circumstances of the Plan and the Adversary Proceeding.

Section 1129(b)(1) prohibits the Debtors from confirming a plan that "discriminates unfairly" against holders of 2024 and 2026 Notes:

> [I]f all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph [8] if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

11 U.S.C. § 1129(b).

The Debtors have ignored these provisions by presenting a Plan where every other corporate trust service provider will receive cash reimbursement for its expenses. Under the Plan, each of the other corporate trust providers will be paid their fees and expenses as "Restructuring Expenses" defined as:

> [T]he reasonable and documented fees and expenses, incurred in connection with the Chapter 11 Cases (including the Financing Litigation and the Restructuring), whether incurred before, on or after the Petition Date, of (a) the professionals retained by, or on behalf of, the First Lien Noteholder Group or any member thereof, including Davis Polk & Wardwell LLP, Evercore Group, L.L.C., Porter Hedges LLP, Holwell Shuster & Goldberg LLP, and each other local or special counsel or other advisor to the First Lien Noteholder Group or any member thereof, (b) the DIP Agent and the professionals retained by, or on behalf of, the DIP Agent, including Pryor Cashman LLP and one local counsel to the DIP Agent in each applicable jurisdiction, (c) the 1L Indenture Trustee and the professionals retained by, or on behalf of, the 1L Indenture Trustee, including Pryor Cashman and one local counsel to the 1L Indenture Trustee in each applicable jurisdiction, (d) BOKF, in its capacities as 2024 Unsecured Indenture Trustee, 2026 Unsecured Indenture Trustee, and 2027 Unsecured Indenture Trustee, and

> ArentFox Schiff LLP in its capacity as counsel to BOKF, (e) the ABL Agent and the professionals retained by, or on behalf of, the ABL Agent, including Cahill Gordon & Reindel LLP, FTI Consulting, Inc., and Norton Rose Fulbright US LLP, (f) the 1.25L Indenture Trustee and the professionals retained by, or on behalf of, the 1.25L Indenture Trustee, including Pryor Cashman and one local counsel to the 1.25L Indenture Trustee in each applicable jurisdiction, and (g) all other creditor professionals who are entitled to payment of fees and expenses pursuant to the Restructuring Support Agreement (excluding, for the avoidance of doubt, any Retained Professionals); provided that the fees and expenses payable to the Restructuring Professionals listed in the foregoing clauses (f) and (g) shall be subject to the conditions and limitations set forth in the Restructuring Support Agreement.

*See* Art. I.A.174 (defining "Restructuring Expenses"), Art 2.B (providing for payment of same). Every other debt creditor in the chapter 11 cases will receive a Plan distribution that is not diluted by expenses incurred by the associated trustee, agent, or similar representative.

Holders of 2024 and 2026 Notes will have distributions diluted, however since the Notes Trustee is relegated under the Plan to charging lien rights it has against the plan securities the Plan contemplates for distribution on account of claims on the 2024 and 2026 Notes. *See* Plan Art. IV.C.3 (providing for continuation of the Prepetition Debt Documents for limited purposes, including, without limitation, "to allow the [Notes Trustee] … to exercise their rights, claims, causes of action, and interests (including their rights, if any, to compensation and indemnification as against any money or property distributable) . . . .").

Astoundingly, Restructuring Expenses proposed in the Plan include expenses of the Notes Trustee's immediate predecessor, BOKF, ***for acting in the very same capacity under the very same documents the Notes Trustee serves now***. With all or at least most of the other funded debt creditors impaired under the Plan, the treatment on these issues should be the same.  See *In re Mangia Pizza Investments, LP,* 480 B.R. 669 (Bankr. W.D. Tex. 2012); *In re Snyders Drug Stores,*

8

*Inc.* 307 B.R. 889 (Bankr. N.D. Ohio 2004). The Debtors' effort to discriminate in this manner should be denied.

### E.  Reservation of Rights

The Notes Trustee continues to review the Plan and supporting documentation and submits this Objection without prejudice to, and with a full reservation of, (i) any positions asserted by holders of the 2024 and 2026 Notes, and (ii) all rights of the Notes Trustee to supplement or amend this Objection in advance of, or in connection with, any hearing to confirm the Plan. Nothing herein is intended to be a waiver by the Notes Trustee of any right, objection, argument, claim, or defense with respect to any matter, including matters involving the Plan, all of which are hereby expressly reserved.

The Notes Trustee similarly reserves all rights to make a separate application for payment of administrative expenses for reimbursement of expenses incurred in connection with its services in these proceedings, including professional fees.

[text continued]

9

**REQUEST FOR RELIEF**

For the foregoing reasons, the Court should deny confirmation of the Plan.

Dated: May 3, 2024

**MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY, AND POPEO, PC**

*/s/ Nathan Coco*
Nathan F. Coco, Esq.
Texas Bar No. 24091122

Nathan F. Coco, Esq.
919 Third Avenue
New York, New York 10022
Telephone: (212) 935-3000
Email: *NFCoco@mintz.com*

-and-

Ian A. Hammel, Esq. (*pro hac vice*)
One Financial Center
Boston, Massachusetts 02111
Telephone: (617) 542-6000
Email: *IAHammel@mintz.com*

*Counsel to UMB Bank, N.A., as successor
indenture trustee*

10

## <u>Certificate of Service</u>

I certify that on May 3, 2024, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas and upon those parties contemplated by the *"ORDER (I) APPROVING THE DISCLOSURE STATEMENT, (II) APPROVING SOLICITATION AND VOTING PROCEDURES, (III) APPROVING FORMS OF BALLOTS, (IV) SCHEDULING A CONFIRMATION HEARING, AND (V) ESTABLISHING NOTICE AND OBJECTION PROCEDURES"*

By:      */s/ Nathan Coco*
          Nathan F. Coco