# IN THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION

| | |
|---|---|
| *In re*<br><br>**WESCO AIRCRAFT HOLDINGS, INC.,** *et al.*,[1]<br><br>Debtors. | Case No. 23-90611 (MI)<br><br>Chapter 11<br><br>(Jointly Administered) |

# DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE AMENDED DISCLOSURE STATEMENT, (II) APPROVING RE-SOLICITATION OF CLASSES 4 AND 6 AND RELATED VOTING PROCEDURES, (III) APPROVING FORMS OF MODIFIED BALLOTS, (IV) SCHEDULING A CONFIRMATION HEARING, (V) ESTABLISHING NOTICE AND OBJECTION PROCEDURES, AND (VI) SHORTENING THE NOTICE AND OBJECTION PERIODS IN CONNECTION WITH THE FOREGOING

**Emergency relief has been requested. Relief is requested not later than 9:00 a.m. (Central Time) on September 5, 2024.**

---

[1]    The Debtors operate under the trade name Incora and have previously used the trade names Wesco, Pattonair, Haas, and Adams Aviation. A complete list of the Debtors in these chapter 11 cases, with each one's federal tax identification number and the address of its principal office, is available on the website of the Debtors' noticing agent at https://www.veritaglobal.net/incora. The service address for each of the Debtors in these cases is 2601 Meacham Blvd., Ste. 400, Fort Worth, TX 76137.

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on September 5, 2024 at 9:00 a.m. (Central Time) in Courtroom 404, 4th Floor, 515 Rusk, Houston, Texas 77002. Participation at the hearing will only be permitted by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility. You may access the facility at 1 (832) 917-1510. Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954554. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Isgur's home page at https://www.txs.uscourts. gov/content/united-states-bankruptcy-judge-marvin-isgur. The meeting code is "JudgeIsgur" (one word). Click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of either an electronic or an in-person appearance. To make your appearance, click the "Electronic Appearance" link on Judge Isgur's home page at https://www.txs.uscourts.gov/ content/united-states-bankruptcy-judge-marvin-isgur. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

**This motion refers to a plan of reorganization (the "*Modified Second Amended Plan*") and a disclosure statement (the "*Amended Disclosure Statement*") that have been proposed by the Debtors in these Chapter 11 Cases. The proposed Modified Second Amended Plan and Amended Disclosure Statement, as well as other pleadings, may be obtained free of charge by visiting the website of the Debtors' information agent (Verita Global) at https://veritaglobal.net/incora/ or by contacting Verita Global at 1 (877) 499-4509 (U.S./Canada) or +1 (917) 281-4800 (international).**

The above-captioned debtors and debtors in possession (the "***Debtors***")[2] respectfully state as follows.

---

[2]   A detailed description of the Debtors and their businesses is set forth in the *Declaration of Raymond Carney in Support of Chapter 11 Petitions and First Day Motions* [Docket. No. 13] (the "***First Day Declaration***"), filed with the Debtors' voluntary petitions for relief filed under title 11 of the United States Code (the "***Bankruptcy Code***"), on June 1, 2023 (the "***Petition Date***"). The Debtors are operating their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. An official committee of unsecured creditors was appointed on June 16, 2023; no trustee, examiner or other official committee has been appointed.

# RELIEF REQUESTED

1.      By this motion (the "***Motion***"),[3] the Debtors seek entry of an order attached hereto

(the "***Proposed Order***") approving the following:

   a.  *Adequacy of Information in the Amended Disclosure Statement.*[4]
       The proposed Amended Disclosure Statement, as containing
       "adequate information" for the purposes of section 1125 of the
       Bankruptcy Code.

   b.  *Notice.*   Notice of the hearing regarding the adequacy of the pro-
       posed Amended Disclosure Statement (the "***Disclosure Statement
       Hearing***").

   c.  *Solicitation and Voting Procedures.*   Procedures substantially in the
       form attached to the Disclosure Statement Order as **Exhibit 1** for:
       (i) soliciting, receiving, and tabulating votes to accept or reject the
       Modified Second Amended Plan (as defined herein); (ii) voting to
       accept or reject the Modified Second Amended Plan; (iii) opting out
       of the Third-Party Release, and (iv) filing objections to the Modified
       Second Amended Plan (the "***Solicitation and Voting Procedures***");

   d.  *Ballots.*   The modified forms of ballots (the "***Modified Ballots***")
       attached to the Disclosure Statement Order as **Exhibit 2A** (form of
       Master Ballot for Notes Claims) **Exhibit 2B** (form of Beneficial
       Holder Ballot for Notes Claims), and **Exhibit 2C** (form of Record
       Holder Ballot for 1L Notes Claims).

   e.  *Re-Solicitation Packages.*   The forms of documents to be delivered
       to holders of Claims in Classes 4 and 6 (the "***Re-Solicitation
       Packages***") in compliance with Bankruptcy Rules 3017(d) and
       2002(b).

   f.  *Amended Confirmation Hearing Notice.*   The form and manner of
       notice (the "***Amended Confirmation Hearing Notice***") of the hearing
       to consider Confirmation of the Modified Second Amended Plan (the
       "***Confirmation Hearing***"), substantially in the form attached to the
       Disclosure Statement Order as **Exhibit 3**.

   g.  *Confirmation Timeline.*   Establishing the following dates and dead-
       lines, consistent with the Court's direction at the confirmation status

---

[3]   Capitalized terms used but not defined in this Motion shall have the meanings ascribed to them in the *Modified
      First Amended Joint Chapter 11 Plan of Wesco Aircraft Holdings, Inc. et al.* (the "**Plan**") [Docket No. 1223] or
      *Disclosure Statement for the Modified First Amended Joint Chapter 11 Plan of Wesco Aircraft Holdings, Inc. et
      al.* (the "**Disclosure Statement**") [Docket No. 1224], as applicable.

[4]   *See Amended Disclosure Statement for the Modified Second Amended Joint Chapter 11 Plan of Wesco Aircraft
      Holdings, Inc. et al* (the "***Amended Disclosure Statement***") [Docket No. 2029].

conference on August 13, 2024 (the "*Status Conference*") and subject
to modification as necessary:

| Event | Date and Time |
|---|---|
| Filing of:<br>• Modified Second Amended Plan;<br>• Amended Disclosure Statement;<br>• Re-Solicitation Motion;<br>• Appellate Adjustment Mechanic | August 23, 2024 |
| Voting Record Date | September 3, 2024 |
| Proposed Deadline for Filing Objections to Re-Solicitation Motion and to Approval of the Amended Disclosure Statement | September 4, 2024 at 5:00 p.m. (CT) |
| Disclosure Statement Approval Hearing | September 5, 2024 at 9:00 a.m. (CT) |
| Deadline for Commencement of Solicitation | September 10, 2024 |
| Deadline to File:<br>• Objections to Confirmation of the Modified Second Amended Plan;[5]<br>• Post Updated Post-Trial Closing Briefs for Outstanding Issues in Connection with the 2024/2026 Noteholder Group's Amended Counterclaims | September 13, 2024 at 5:00 p.m. (CT) |
| Voting Deadline | September 27, 2024 at 5:00 p.m. (CT) |
| Voting Report | October 3, 2024 |
| Deadline for Replies to Objections to the Modified Second Amended Plan[6] | October 3, 2024 |
| Confirmation Hearing[7] | October 7, 2024 at 9:00 a.m. (CT) |

2.      The principal statutory bases for the relief sought in this Motion are sections 105,

365, 1125, 1126, and 1128 of title 11 of the Bankruptcy Code, Bankruptcy Rules 2002, 3016, 3017,

---

[5]   Including objections to the release of all claims set forth in the 2024/2026 Noteholder Group's Standing Motion.

[6]   Including replies and objections to the 2024/2026 Noteholder Group's Standing Motion (including Avoidance Actions).

[7]   For the avoidance of doubt, all pending standing motions, counterclaims of the 2024/2026 Noteholder Group, and all unresolved motions seeking adequate protection shall be heard at the Confirmation Hearing.

3018, and 3020, and Rules 2002-1, 3016-1, and 3016-2 of the Bankruptcy Local Rules of the U.S. Bankruptcy Court for the Southern District of Texas (the "***Local Rules***").

## JURISDICTION AND VENUE

3.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This Motion is a core proceeding under 28 U.S.C. § 157(b). Venue in the Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## MODIFIED SECOND AMENDED PLAN SUMMARY[8]

4.      The Modified Second Amended Plan classifies Claims and Interest into the following Classes, pursuant to section 1126 of the Bankruptcy Code:

| Class | Claims or Interests | Impairment | Voting Rights |
|-------|---------------------|------------|---------------|
| 1 | *Priority Non-Tax Claims:* Claims entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than Administrative Expenses (including DIP Financing Claims), and Priority Tax Claims. | Unimpaired | Presumed to accept |
| 2 | *Other Secured Claims:* Secured Claims, other than a Priority Tax Claim (except as set forth in Article II.F of the Plan), a DIP Financing Claim, an ABL Facility Claim, a 1L Notes Claim, or a 2026 Notes Claim. For the avoidance of doubt, no 1.25L Notes Claim, 2024 Unsecured Notes Claim, 2027 Unsecured Notes Claim, or PIK Notes Claim is an "Other Secured Claim." | Unimpaired | Presumed to accept |
| 3 | *ABL Facility Claims:* Claims arising on account of the "Obligations," as defined in the ABL Credit Agreement. | Unimpaired | Presumed to accept |
| 4 | *1L Notes Claims:* Claims arising on account of the "Obligations" under the "Note Documents," each as defined in the 1L Indenture. | Impaired | **Entitled to vote** |
| 5 | *1.25L Notes Claims:* Claims arising on account of the "Obligations" under the "Note Documents," each as defined in the 1.25L Indenture. | Impaired | Deemed to reject |

---

[8]   This summary is qualified in its entirety by reference to the Modified Second Amended Plan.

| Class | Claims or Interests | Impairment | Voting Rights |
|---|---|---|---|
| 6 | *2026 Notes Claims:*<br>Claims arising on account of, derived from, based upon or arising under the 2026 Indenture or related documents. | Impaired | **Entitled to vote** |
| 7a | *General Unsecured Claims:*<br>Claims, other than: Administrative Expenses, Other Secured Claims, Priority Tax Claims, Priority Non-Tax Claims, ABL Facility Claims, 1L Notes Claims, 2026 Notes Claims, 1.25L Notes Claims, PIK Notes Claims, General Unsecured Convenience Claims, 2024 Unsecured Notes Claims, and Intercompany Claims. For the avoidance of doubt, every 2027 Unsecured Notes Claim is a General Unsecured Claim. | Impaired | Previously voted |
| 7b | *General Unsecured Convenience Claims:*<br>Claims that are Allowed in an amount of $1,500,000 or less, that are not: Administrative Expenses, Other Secured Claims, Priority Tax Claims, Priority Non-Tax Claims, ABL Facility Claims, 1L Notes Claims, 1.25L Notes Claims, 2024 Unsecured Notes Claims, 2026 Unsecured Notes Claims, 2027 Unsecured Notes Claims, PIK Notes Claims, and Intercompany Claims. The Allowed amount of all Claims held by a holder and its Affiliates shall be aggregated for purposes of the foregoing calculation. Holders of Claims that are Allowed in an amount in excess of $1,500,000 that otherwise meet the foregoing criteria may opt into treatment as a General Unsecured Convenience Claim by making a ballot election to waive any Allowed amounts that are in excess of the $1,500,000 threshold. | Impaired | Previously voted |
| 7c | *2024 Unsecured Notes Claims:*<br>Claims arising on account of, derived from, based upon or arising under the 2024 Unsecured Indenture or related documents. | Impaired | Previously voted |
| 8 | *PIK Notes Claims:*<br>Claims against Wolverine Intermediate Holding Corporation arising on account of the PIK Notes or the PIK Notes Indenture or other related documents. | Impaired | Deemed to reject |
| 9 | *Intercompany Claims:*<br>Claims against a Debtor held by any other Debtor. | Impaired/<br>Unimpaired | Deemed to reject/<br>presumed to accept |
| 10 | *Existing Equity Interests:*<br>Interests other than Intercompany Interests. | Impaired | Deemed to reject |
| 11 | *Intercompany Interests:*<br>Interests in any Debtor held by another Debtor. | Unimpaired | Presumed to accept |

5.      The Modified Second Amended Plan includes consensual releases by the Debtors (the "***Debtor Release***") and by certain third parties (the "***Third-Party Release***"), as well as an exculpation provision, all of which release or limit the liabilities of the Debtors, the Reorganized

Debtors and certain other parties who played an integral role in the Debtors' reorganization from liability (or limit their liability) on certain claims and causes of action. Consistent with the procedures described in this Motion, Classes 4 and 6 will be given an opportunity to opt out of the Third-Party Release on a Ballot. As described below, and as will be further developed on the record at the Confirmation Hearing, these provisions are an integral part and essential elements of the Modified Second Amended Plan and the settlements underlying the Debtors' restructuring.

6.     Further, in accordance with the Court's oral ruling in the Adversary Proceeding issued on July 10, 2024 (the "***Court's Ruling***"), whereby the Court determined that the rights, liens, and interests of the 2026 Noteholders remained intact following the 2022 Financing, amendments have been made to the Plan with respect to Class 4 (1L Notes Claims) and the newly created Class 6 claims (2026 Notes Claims). As a result of the Court's Ruling, the 2026 Notes Claims—originally treated as General Unsecured Claims under the Plan—are presently classified separately as Secured Claims, *pari passu* with the Secured portion of the 1L Notes Claims. Further, 2024 Unsecured Notes Claims (Class 7c) will receive ratable treatment in the event they are determined, in connection with an appeal of the Court's Ruling, to be secured.

7.     The Court's Ruling necessitated such amendments to the Plan to reflect the adjustment of distributions to the holders of 1L Notes Claims and 2026 Notes Claims and preserve the appellate rights of the parties to the Adversary Proceeding. Accordingly, on August 23, 2024, the Debtors filed the *Modified Second Amended Joint Chapter 11 Plan of Wesco Aircraft Holdings, Inc. et al.* (the "***Modified Second Amended Plan***"). Under the Modified Second Amended Plan, the portions of 1L Notes Claims and 2026 Notes Claims that are secured under the Court's Ruling will receive ratable consideration, subject to further adjustment in light of any appellate process. Furthermore, holders of General Unsecured Claims, 2024 Unsecured Notes Claims, and General Unsecured Convenience Claims will receive consideration that is economically equivalent or potentially superior to the consideration given to them under the Plan that they previously casted votes on. Thus, the only two groups of claimholders affected by amendments reflected in the Modified Second Amended Plan are the holders of the 1L Notes Claims (Class 4) and 2026 Notes

Claims (Class 6). A blackline of the Amended Disclosure Statement against the Disclosure Statement is attached hereto as **Exhibit 1**.

8.      In addition, attached hereto as **Exhibit 2** is a proposed LLC Agreement for Reorganized Incora from the First Lien Noteholder Group. The Debtors, the First Lien Noteholder Group, and the 2024/2026 Noteholder Group remain in discussion concerning the form of LLC Agreement and the form attached hereto does not reflect the Appellate Adjustment Mechanism. The Debtors have not yet received a proposed form of LLC Agreement from the 2024/2026 Noteholder Group, but will endeavor to file such form prior to the Disclosure Statement Hearing, if received. The Debtors are separately filing the draft Appellate Adjustment Mechanism as part of the Plan Supplement contemporaneously herewith.

9.      All other material terms of the Modified Second Amended Plan and Amended Disclosure Statement, including the treatment of all Classes other than Classes 4 and 6, remain the same as originally outlined in the Plan and Disclosure Statement. Some additional, minor, and technical revisions to the Plan would not have required any of the relief sought herein. *See* Fed. R. Bankr. P. 3019(a) ("If the court finds . . . that the proposed modification does not adversely change the treatment of the claim of any creditor . . . , [the modified plan] shall be deemed accepted by all creditors and equity security holders who have previously accepted the plan."). Accordingly, the Debtors have decided to re-solicit the votes of 1L Notes (Class 4) and 2026 Notes (Class 6) (together, the "***Re-Solicitation Classes***"), but not holders of Claims and Interests in other Classes (collectively, the "***Unaffected Classes***").[9] The Debtors propose that all solicitation, voting, and tabulation procedures for Unaffected Classes, as previously approved by the Court, remain in full force and effect.[10]

---

[9]    The Unaffected Classes include: Class 1 (Priority Non-Tax Claims), Class 2 (Other Secured Claims), Class 3 (ABL Facility Claims), Class 5 (1.25L Notes Claims), Class 7a (General Unsecured Claims), and Class 7b (General Unsecured Convenience Claims), Class 7c (2024 Unsecured Notes Claims), Class 8 (PIK Notes Claims), Class 9 (Intercompany Claims), Class 10 (Existing Equity Interests), or Class 11 (Intercompany Interests).

[10]    *See Order (I) Approving the Disclosure Statement, (II) Approving Solicitation and Voting Procedures, (III) Approving Forms of Ballots, (IV) Scheduling a Confirmation Hearing, and (V) Establishing Notice and Objection Procedures* [Docket No. 1228].

# BASIS FOR RELIEF

## I.   THE AMENDED DISCLOSURE STATEMENT CONTAINS ADEQUATE INFORMATION AND SHOULD BE APPROVED

### A.   The Adequate Information Standard Under Section 1125 of the Bankruptcy Code.

10.     Section 1125(b) of the Bankruptcy Code requires the plan proponent to provide holders of impaired claims and interests entitled to vote with "adequate information" regarding the proposed plan. Section 1125(a)(1) of the Bankruptcy Code provides that:

> "[A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable . . . a hypothetical investor of the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125(a)(1). The primary purpose of a disclosure statement is to provide all material information that creditors and interest holders affected by a proposed plan need to make an informed decision regarding whether or not to vote for the plan. *See, e.g.*, *Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 100 (3d Cir. 1988) ("[Section] 1125 seeks to guarantee a minimum amount of information to the creditor asked for its vote."); *Prudential Ins. Co. of Am. v. Monnier* (*In re Monnier Bros.*), 755 F.2d 1336, 1342 (8th Cir. 1985) ("The primary purpose of a disclosure statement is to give the creditors the information they need to decide whether to accept the plan." (citing 11 U.S.C. § 1125)); *In re Phoenix Petrol. Co.*, 278 B.R. 385, 392 (Bankr. E.D. Pa. 2001) ("[T]he general purpose of the disclosure statement is to provide 'adequate information' to enable 'impaired' classes of creditors and interest holders to make an informed judgment about the proposed plan and determine whether to vote in favor of or against that plan." (citing *Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 100 (3d Cir. 1988))); *In re Unichem Corp.*, 72 B.R. 95, 97 (Bankr. N.D. Ill. 1987) ("The primary purpose of a disclosure statement is to provide all material information which creditors and equity security holders affected by the plan need in order to make an intelligent decision whether to vote for or against the plan." (citing *In re Ligon*, 50 B.R. 127, 130 (M.D. Tenn. 1985)). Congress intended that such informed judgments would be

needed to both negotiate the terms of, and vote on, a plan of reorganization. *Century Glove, Inc.*, 860 F.2d at 100.

11.     "Adequate information" is a flexible standard, based on the facts and circumstances of each case. *See Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case."); *see also First Am. Bank of N.Y. v. Century Glove, Inc.*, 81 B.R. 274, 279 (D. Del. 1988) (noting that adequacy of disclosure for a particular debtor will be determined based on how much information is available from outside sources); S. Rep. No. 95-989, at 121 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5907 ("the information required will necessarily be governed by the circumstances of the case").

12.     Courts in the Fifth Circuit acknowledge that a determination of "adequate information" under section 1125 resides within the broad discretion of the bankruptcy court. *See, e.g.*, *Mabey v. Sw. Elec. Power Co.* (*In re Cajun Elec. Power Coop., Inc.*), 150 F.3d 503, 518 (5th Cir. 1998) ("The legislative history of § 1125 indicates that, in determining what constitutes 'adequate information' with respect to a particular disclosure statement, 'both the kind and form of information are left essentially to the judicial discretion of the court' and that 'the information required will necessarily be governed by the circumstances of the case.'") (internal citations omitted); *In re Tex. Extrusion Corp.*, 844 F.2d at 1157 ("The determination of what is adequate information is subjective and made on a case by case basis. This determination is largely within the discretion of the bankruptcy court."). Accordingly, this determination must be made on a case-by-case basis, focusing on the unique facts and circumstances of each case. *See Phx. Petrol. Co.*, 278 B.R. at 393.

13.     In making the determination of what constitutes adequate information for the purposes of section 1125, courts typically examine whether a disclosure statement contains the following information:

      a.  the circumstances that gave rise to the filing of the bankruptcy petition;

      b.  the available assets and their value;

      c.  the anticipated future of the debtor;

d.  the sources of the information provided in the disclosure statement;

e.  the condition and performance of the debtor while in chapter 11;

f.  the claims against the estate;

g.  a liquidation analysis setting forth the estimated return that creditors would receive under chapter 7;

h.  the accounting and valuation methods used to produce the financial information in the disclosure statement;

i.  the future management of the debtor, including the amount of compensation to be paid to any insiders, directors, and/or officers of the debtor;

j.  a summary of the plan of reorganization;

k.  financial information that would be relevant to creditors' determinations of whether to accept or reject the plan;

l.  the risks being taken by the creditors and interest holders;

m.  the tax consequences of the plan; and

n.  the relationship of the debtor with its affiliates.

*See In re U.S. Brass Corp.*, 194 B.R. 420, 424–25 (Bankr. E.D. Tex. 1996); *see also In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170–171 (Bankr. S.D. Ohio 1988) (listing factors courts have considered in reviewing adequacy of information); *In re Metrocraft Pub. Servs., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984) (same). This list is not meant to be exhaustive, nor must every disclosure statement include all of the foregoing information. *See In re U.S. Brass Corp.*, 194 B.R. at 424; *see also Phoenix Petroleum*, 278 B.R. at 393 (cautioning that "no one list of categories will apply in every case"); *In re Dakota Rail, Inc.*, 104 B.R. 138, 142 (Bankr. D. Minn. 1989) (describing a similar list as "nonexclusive and nonexhaustive"). Thus, a bankruptcy court may decide what information is appropriate in each case.

### B.    The Amended Disclosure Statement Contains Adequate Information.

14.    The Debtors respectfully submit that the Amended Disclosure Statement addresses each of the salient types of information identified above, maintains substantially all of the same information as previously approved by the Court in the Disclosure Statement, and provides Classes

4 and 6 with sufficient information to make an informed voting decision. Specifically, the Amended

Disclosure Statement contains the following:

a. a description of the Debtors' prepetition business, organizational structure, equity and capital structures (*see* Disc. Stmt., § II);

b. the history of the Debtors' businesses, including the events leading to the commencement of the Chapter 11 Cases (*see* Disc. Stmt., § II);

c. material developments and anticipated events in the Chapter 11 Cases (*see* Disc. Stmt., § III);

d. a summary of the Modified Second Amended Plan, including plain English descriptions of the proposed treatment of claims in each Class (*see* Disc. Stmt., § IV);

e. a description of the procedures for soliciting votes to accept or reject the Modified Second Amended Plan and voting on the Modified Second Amended Plan (*see* Disc. Stmt., § V);

f. an overview of confirmation procedures and statutory requirements for confirmation and consummation of the Modified Second Amended Plan (*see* Disc. Stmt., § VI);

g. a discussion of the material federal tax consequences of the Modified Second Amended Plan to the Reorganized Debtors and to investors typical of the holders of various claims (*see* Disc. Stmt., § VII); and

h. certain securities law considerations and risk factors to be considered in determining whether to vote to accept the Modified Second Amended Plan (*see* Disc. Stmt., §§ VIII, IX);

i. an analysis of alternatives to the Modified Second Amended Plan, including a liquidation analysis (*see* Disc. Stmt., § X; an updated analysis to be filed prior to the Disclosure Statement Hearing).

15.     Accordingly, the Debtors submit that the Amended Disclosure Statement contains

adequate information within the meaning of section 1125 of the Bankruptcy Code and applicable

case law and should be approved.

**C.    The Amended Disclosure Statement Provides Sufficient Notice of Injunction, Release, and Exculpation Provisions in the Modified Second Amended Plan.**

16.     Bankruptcy Rule 3017(a) requires parties to receive not less than 28 days' notice of

the Disclosure Statement Hearing. Fed. R. Bankr. P. 3017(a); *see also* Fed. R. Bankr. P. 2002(b)

(requiring not less than 28 days' notice of the hearing to consider the approval of a disclosure

statement and of the deadline to object to the adequacy of a disclosure statement). Further,

Bankruptcy Rule 2002(a) requires at least twenty-one (21) days' notice by mail to all creditors and indenture trustees of the time fixed to accept or reject a proposed modification of a plan. Fed. R. Bankr. P. 2002(a)(5). Notwithstanding these notice requirements, Bankruptcy Rule 9006(c)(1) allows a court, in its discretion, to shorten time periods set by the Bankruptcy Rules "for cause shown." Fed. R. Bankr. P. 9006(c)(1).

17.     Here, cause exists to shorten the notice period because the noteholders holding 1L Notes and 2026 Notes are sophisticated investors who have participated throughout the Chapter 11 Cases. As such, those noteholders are well aware of the issues involved in the Modified Second Amended Plan and the necessity to amend the Plan in accordance with the Court's Ruling. Furthermore, at the Status Conference, counsel for ad hoc groups of noteholders in both proposed Voting Classes emphasized their support for a quick process to emerge from bankruptcy and did not object to the Court's proposed timing for the plan process. Aug. 13, 2024 Hrg. Tr. at 39: 7-8, 15-23. Accordingly, the Debtors request that the Court approve this notice as appropriate and in compliance with the requirements of the Bankruptcy Rules and Local Rules.

18.     Along with this Motion, the Debtors are filing with the Court, and serving on all known holders of Claims or Interests, notice of the Disclosure Statement Hearing (the "***Disclosure Statement Hearing Notice***") which identifies (a) the date, time, and place of the Disclosure Statement Hearing, (b) how to obtain a copy of this Motion and related pleadings, including the proposed Modified Second Amended Plan and Amended Disclosure Statement, and (c) the deadline and procedures for filing objections to the Amended Disclosure Statement.

19.     Bankruptcy Rule 3016(c) requires that, if a plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code, the plan and disclosure statement must describe, in specific and conspicuous language, the acts to be enjoined and the entities subject to the injunction. Fed. R. Bankr. P. 3016(c). Similarly, Bankruptcy Rule 2002(c) requires that notice must be provided of the time fixed for filing objections and the hearing to consider confirmation of the chapter 11 plan. Fed. R. Bankr. P. 2002(c).

20.     Article VIII of the Modified Second Amended Plan and Section IV.H of the Amended Disclosure Statement describe in detail (a) the entities subject to or providing a release under the Modified Second Amended Plan, (b) the Causes of Action released, (c) the entities entitled to exculpation under the Modified Second Amended Plan, and (d) the entities subject to and covered by a permanent injunction. The relevant language in these articles is in bold typeface, making it conspicuous to anyone who sees it. The Amended Confirmation Hearing Notice also states in clear and bolded text that the Modified Second Amended Plan contains release, exculpation, and injunction provisions, including the Third-Party Releases. Likewise, the Modified Ballots and the introductory pages of the Amended Disclosure Statement itself each conspicuously alert the relevant holders of Claims and Interests to the Third-Party Releases and the opportunity to opt out.

21.     Accordingly, the Debtors respectfully submit that the Amended Disclosure Statement complies with Bankruptcy Rule 3016(c) by conspicuously describing the conduct and parties enjoined, released, or exculpated by the Modified Second Amended Plan, and the Amended Confirmation Hearing Notice complies with Bankruptcy Rule 2002(c) by conspicuously describing the nature and entities subject to the injunction under the Modified Second Amended Plan.

## II.   THE COURT SHOULD APPROVE THE RE-SOLICITATION AND VOTING PROCEDURES, THE MODIFIED BALLOTS, THE TIMELINE, AND THE FORMS OF NOTICES RELATED TO RE-SOLICITATION AND CONFIRMATION OF THE MODIFIED SECOND AMENDED PLAN

### A.     The Court Should Approve the Re-Solicitation and Voting Procedures.

22.     Section 1126(c) of the Bankruptcy Code provides that:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under section (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designed under subsection (e) of this section, that have accepted or rejected the plan.

11 U.S.C. § 1126(c).

23.     The proposed Re-Solicitation and Voting Procedures set forth specific criteria for the voting and tabulation of Modified Ballots. The Debtors believe that the proposed Re-Solicitation and Voting Procedures will facilitate the Modified Second Amended Plan confirmation process. Specifically, the procedures will clarify any obligations of holders of Claims entitled to vote to accept or reject the Modified Second Amended Plan and will create a straightforward process by which the Debtors can determine whether they have satisfied the numerosity requirements of section 1126(c) of the Bankruptcy Code.

24.     The Debtors also respectfully request that the Court determine that the proposed Re-Solicitation Package satisfies section 1127 of the Bankruptcy Code. Pursuant to section 1127(c) of the Bankruptcy Code, "[t]he proponent of a modification shall comply with section 1125 of this title with respect to the plan as modified." 11 U.S.C. § 1127(c). This requirement to comply with section 1125 of the Bankruptcy Code, however, does not necessarily mandate wholesale re-solicitation of a plan. A modified plan must provide a new disclosure statement and resolicit votes "only when and to the extent that the debtor intends to solicit votes from previously dissenting creditors or when the modification materially and adversely impacts parties who previously voted for the plan." *See In re Cypresswood Land Partners, I*, 409 B.R. 396, 440 (Bankr. S.D. Tex. 2009) (quoting *In re Am. Solar King Corp.*, 90 B.R. 808, 823 (Bankr. W.D. Tex. 1988)).

25.     Bankruptcy Rule 3019 explains when it is necessary to resolicit parties who have previously voted on the plan. If the modified plan "does not adversely change" a claimant's treatment, then Bankruptcy Rule 3019 permits the court to attribute prior acceptances to an amended plan. *In re Am. Solar King Corp.*, 90 B.R. at 825. If a modification does not "materially" impact a claimant's treatment, the change is not adverse and the court may deem that prior acceptances apply to the amended plan as well. *Id*. at 826.

26.     Here, the Modified Second Amended Plan modifies the economic treatment of Claims only in Classes 4, 6, and 7c. The economic treatment of Class 7c (2024 Unsecured Notes Claims) may *improve*, subject to the outcome of the Adversary Proceeding; the First Amended Plan treated these Claims as General Unsecured Claims, while the new Modified Second Amended

Plan allows them to share in secured recoveries if their holders succeed in establishing secured status on appeal. The Modified Second Amended Plan neither materially nor adversely affects the treatment of creditors holding Claims in the Unaffected Classes. *See In re Am. Solar King Corp.*, 90 B.R. at 824 ("A modification is material if it so affects a creditor or interest holder who accepted the plan that such entity, if it knew of the modification, would be likely to reconsider its acceptance.") (quoting 8 Collier on Bankruptcy ¶ 3019.01 (15th ed. 1987)). In particular, the equity distributions to holders of General Unsecured Claims have been reduced in direct proportion to the reduction in the estimated amount of Claims in that Class, resulting from the removal of 2026 Notes Claims and 2024 Unsecured Notes Claims from that Class. Thus, parties in interest in the Unaffected Classes are not entitled to re-solicitation. Additionally, Classes 4 and 6 have already received voluminous solicitation packages distributed in connection with the Plan, and the proposed Re-Solicitation Package is appropriately tailored, streamlined, and limited so as to conserve estate resources while conveying necessary disclosures in respect of the Modified Second Amended Plan. The Debtors submit that the Re-Solicitation and Voting Procedures are in the best interests of their estates, holders of Claims, and other parties in interest, and that good cause supports the relief requested herein. Accordingly, the Debtors believe that re-solicitation of Classes 4 and 6 is warranted, that re-solicitation of the Unaffected Classes is not required as a result of the Modified Second Amended Plan, and that the proposed Re-Solicitation Package to be sent to Classes 4 and 6 should be approved.

27.     The Debtors respectfully request that Kurtzman Carson Consultants LLC d/b/a Verita Global, in its capacity as solicitation agent for the Debtors (the "***Solicitation Agent***"), be authorized (to the extent not authorized by another order of the Court) to assist the Debtors in: (a) distributing the Re-Solicitation Packages; (b) receiving, tabulating, and reporting on the Modified Ballots cast to accept or reject the Modified Second Amended Plan; (c) responding to inquiries from holders of Claims and Interests and other parties in interest relating to the Amended Disclosure Statement, the Modified Second Amended Plan, the Modified Ballots, the Re-Solicitation Packages, and all other documents and matters related thereto, including the

procedures and requirements for voting to accept or reject the Modified Second Amended Plan and for objecting to the Modified Second Amended Plan; (d) soliciting votes on the Modified Second Amended Plan; and (e) if necessary, contacting creditors regarding the Modified Second Amended Plan.

28.     Bankruptcy Rule 3018(c) provides, in part, that "[a]n acceptance or rejection [of a plan] shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent and conform to the appropriate Official Form." Fed. R. Bankr. P. 3018(c).

29.     Consistent with these requirements, the Debtors propose to use the Re-Solicitation and Voting Procedures to facilitate the process of tabulating all votes received. To ease and clarify the process of tabulating votes, the Debtors propose that a Modified Ballot be counted in determining the acceptance or rejection of the Modified Second Amended Plan only if it satisfies certain criteria. Specifically, the Solicitation Agent will not count a Modified Ballot if, among other things, it is illegible or not clearly marked, it is submitted by a holder of a Claim that is not entitled to vote on the Modified Second Amended Plan, or it is unsigned. The Debtors may, subject to a contrary order of the Court and with notice to the Committee and the First Lien Noteholder Group, waive any defects or irregularities as to any particular Modified Ballot or waive the Voting Deadline as to any particular Modified Ballot at any time, either before or after the close of voting, and will disclose any such waivers in the Voting Report.

**B.     The Court Should Approve the Forms of the Modified Ballots.**

30.     In accordance with Bankruptcy Rule 3018(c), the Debtors have prepared Modified Ballots. Although based on Official Form No. 314, the Modified Ballots have been customized to address the particular circumstances of the Chapter 11 Cases and include certain additional information that is relevant and appropriate. The Modified Ballots are substantially similar to the Ballots previously approved by this Court, with technical modifications to account for new deadlines and other immaterial revisions. The Modified Ballots also clarify that Beneficial Holder Ballots will be delivered, or Nominees will be required to provide information about the Beneficial

Holders submitting votes on the Modified Second Amended Plan, to the Debtors upon request. In consideration of the foregoing, the Modified Ballots are in full compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and all applicable nonbankruptcy laws, rules, and regulations. Accordingly, the Debtors respectfully request that this Court approve the Modified Ballots.

31.    As part of the Re-Solicitation Package, the Debtors propose to distribute Modified Ballots, substantially in the forms attached to the Disclosure Statement Order as **Exhibits 2A–2C,** to Classes 4 and 6.

> **C.    The Court Should Approve the Form and Distribution of the Re-Solicitation Packages to Classes 4 and 6.**

32.    Bankruptcy Rule 3017(d) specifies the materials to be distributed to holders of claims and interests upon approval of a disclosure statement, including the court-approved plan and disclosure statement and notice of the time within which acceptances and rejections of the plan may be filed. Fed. R. Bankr. P. 3017(d). In accordance with this requirement, on or before the Solicitation Deadline, the Debtors will cause the Solicitation Agent to distribute the Re-Solicitation Packages by first-class U.S. mail to Classes 4 and 6 (or their Nominees, as applicable).

33.    Each Re-Solicitation Package will include the following materials:

       a.    the Modified Second Amended Plan, including a redline against the Plan;

       b.    a copy of the Solicitation and Voting Procedures;

       c.    the Amended Confirmation Hearing Notice;

       d.    the approved Amended Disclosure Statement (and its exhibits);

       e.    the Disclosure Statement Order (excluding exhibits);

       f.    a Modified Ballot (or Master Ballot, as applicable), with detailed voting instructions on how to complete the Modified Ballot;[11] and

       g.    such other materials as the Court may direct to include in the Re-Solicitation Package.

---

[11]    Service of the Re-Solicitation Package to the Beneficial Holders of the 1L Notes Claims (Class 4) and 2026 Notes Claims (Class 6) may be performed electronically, or otherwise in their Nominees' customary practice.

34.    The Debtors request authorization to distribute the Modified Second Amended Plan, the Amended Disclosure Statement (including its exhibits), the Disclosure Statement Order, the Modified Ballot, and the Amended Confirmation Hearing Notice to Classes 4 and 6 in electronic medium (for instance on a flash drive). Electronic distribution of the more voluminous documents will save money for the Debtors' estates, while still providing all parties with the relevant information.

35.    In addition to accepting hard copy Ballots via first class mail, overnight courier, and personal delivery to Incora Ballot Processing Center, c/o Verita Global, 222 N. Pacific Coast Hwy., Ste. 300, El Segundo, CA 90245, the Debtors request authorization for the Solicitation Agent to accept Master Ballots from Nominees via email to IncoraBallots@veritaglobal.com. The Debtors request that Ballots will be deemed delivered only when the Solicitation Agent actually receives a properly executed Ballot, whether through the online portal, email, or on paper, as applicable.

36.    In many instances, certain brokerage firms and banks or their agents (collectively, the "***Nominees***") hold Notes Claims against Debtors in "street name" on behalf of their beneficial owners (the "***Beneficial Holders***"). To ensure proper tabulation of votes for such Claims, the Solicitation Agent will deliver Re-Solicitation Packages to the holders of record as of the Voting Record Date, including Nominees, with instructions to forward same to their respective Beneficial Holder clients.  Additionally, the Nominees will also receive Master Ballots. The Beneficial Holder Ballots will instruct each Beneficial Holder voting on the Modified Second Amended Plan through a Nominee to return its Beneficial Holder Ballot to such Nominee in sufficient time for the Nominee to timely cast votes to accept or reject the Modified Second Amended Plan on behalf of its Beneficial Holders. A Nominee shall obtain votes and other elections from the Beneficial Holders in one of the following two ways:

      a.  *Pre-Validated Ballots.*  The Nominee may "pre-validate" a Beneficial Holder Ballot by (a) signing the Beneficial Holder Ballot; (b) indicating on the Beneficial Holder Ballot the amount and the account number of the Claims held by the Nominee for the particular Beneficial Holder; and (c) forwarding the Beneficial Ballot, together with the Amended Disclosure Statement, a postage-paid return envelope pre-addressed to the Solicitation Agent, and other materials requested to be forwarded, to the Beneficial Holder for voting.

The Beneficial Holder must then complete the information requested in the Beneficial Ballot and return the Beneficial Ballot directly to the Solicitation Agent in the pre-addressed, postage-paid return envelope so that it is received by the Solicitation Agent on or before the Voting Deadline. A list of the Beneficial Holders to whom "pre-validated" Beneficial Ballots were delivered should be maintained by Nominees for inspection for at least one year from the Voting Deadline.

b. *Master Ballots.* The Nominee may obtain the votes of Beneficial Holders by forwarding to each Beneficial Holder an unsigned Beneficial Holder Ballot through mail, VIF, email, or any other reliable and customary method of collecting votes from a Beneficial Holder, together with the Disclosure Statement, a postage-paid return envelope addressed to the Nominee (in the case of a physical mailing), and other materials requested to be forwarded. Each such Beneficial Holder must then indicate its vote and other elections on the Beneficial Holder Ballot, complete the information requested on the Beneficial Holder Ballot, review the certifications contained on the Beneficial Holder Ballot, execute the Beneficial Holder Ballot, and return the Beneficial Holder Ballot to the Nominee. If it is accepted practice for a Nominee to collect votes through a VIF, email, or other method, the Beneficial Holder shall follow the Nominee's instruction for completing and submitting its votes to the Nominee. After collecting the Beneficial Holders' votes, the Nominee should, in turn, complete a Master Ballot compiling the votes and other information from the Beneficial Holders, execute the Master Ballot, and deliver the Master Ballot to the Solicitation Agent so that it is received by the Solicitation Agent at or before the Voting Deadline. All Beneficial Ballots returned by Beneficial Holders should either be forwarded to the Solicitation Agent along with the Master Ballot or retained by the Nominee for inspection for at least one year from the Voting Deadline. Each Nominee should advise its Beneficial Holders to return their Beneficial Ballots to the Nominee by a date and time calculated by the Nominee to allow it to prepare and return the Master Ballot to the Solicitation Agent so that the Master Ballot is received by the Solicitation Agent on or before the Voting Deadline.

37.     The Debtors will also send complete Re-Solicitation Packages (excluding the Modified Ballots) to the U.S. Trustee and all parties required to be notified under Rule 2002 of the Bankruptcy Rules and Rule 2002-1 of the Local Rules (the "***2002 List***") as of the Voting Record Date. The Debtors respectfully submit that the foregoing procedures comply with Bankruptcy Rule 3017(d) and, therefore, should be approved.

### D.     The Court Should Approve the Voting Record Date and Voting Deadline.

38.     Bankruptcy Rule 3017(d) provides that, for purposes of soliciting votes on a chapter 11 plan, "creditors and equity security holders shall include holders of stock, bonds, debentures,

notes and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." Fed. R. Bankr. P. 3017(d). Bankruptcy Rule 3018(a) contains a similar provision regarding determination of the record date for voting purposes. Fed. R. Bankr. P. 3018(a). Additionally, Bankruptcy Rule 3017(c) provides that before approving the disclosure statement, the Court must fix a time within which the holders of claims and interests may accept or reject a plan and may fix a date for the hearing on confirmation of a plan. *See* Fed. R. Bankr. P. 3017(c).

39.     Accordingly, the Debtors request that the Court exercise its authority under Bankruptcy Rules 3017(d) and 3018(a) to establish: (i) September 3, 2024, as the voting record date (the "***Voting Record Date***"); (ii) September 10, 2024, as the solicitation mailing deadline by which the Debtors must distribute Re-Solicitation Packages, including Modified Ballots, to Classes 4 and 6 (the "***Solicitation Deadline***"); and (iii) September 27, 2024 at 5:00 p.m. (CT) as the voting deadline (the "***Voting Deadline***"), which date may be extended by the Debtors, and by oral or written notice to the Solicitation Agent. The Debtors may extend the Voting Deadline an unlimited number of times, by any increment, and retroactively. The Debtors will have no obligation to publish, advertise, or otherwise communicate any such extension, other than by notifying each of the Prepetition Indenture Trustees for conveyance to the noteholders in their respective facilities, notifying the First Lien Noteholder Group, notifying the Committee, posting a notice on the Solicitation Agent's website for the case, and filing a notice of the extension with the Court. The Debtors will also disclose any extension of the Voting Deadline in the Voting Report.

40.     After the Re-Solicitation Packages have been distributed to Classes 4 and 6, Classes 4 and 6 should complete, execute, and return their Modified Ballots in accordance with the instructions contained in such Modified Ballots so that they are actually received by the Solicitation Agent on or before the Voting Deadline.

41.     The foregoing will afford Classes 4 and 6 at least 17 days within which to receive the Re-Solicitation Packages, review and analyze the materials in the Re-Solicitation Packages, and make an informed decision as to whether to vote to accept or reject the Modified Second

Amended Plan before the Voting Deadline. Accordingly, the Debtors request that the Court approve the form of, and the proposed procedures for distributing, the Re-Solicitation Packages to Classes 4 and 6.

> **E.     The Court Should Approve the Amended Confirmation Hearing Notice and Procedures for Objecting to Confirmation of the Modified Second Amended Plan Distributing Other Materials.**

42.     Section 1128 of the Bankruptcy Code provides that a court shall hold a hearing on confirmation of a plan and provides that parties in interest can object to confirmation. 11 U.S.C. § 1128. Additionally, Bankruptcy Rule 3017(c) provides that, on or before approval of a disclosure statement, a court shall fix a time for the hearing on confirmation of a plan. Fed. R. Bankr. P. 3017(c). In accordance with section 1128 of the Bankruptcy Code and Bankruptcy Rule 3017(c), and consistent with the Court's remarks during the Status Conference with regard to scheduling,[12] the Debtors request that the Court establish October 7, 2024 at 9:00 a.m. (CT) as the Confirmation Hearing Date.

43.     The Debtors also request that the Court approve the manner in which parties in interest may object to confirmation of the Modified Second Amended Plan. Pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court." Fed. R. Bankr. P. 3020(b)(1). The Amended Confirmation Hearing Notice, which will be served upon all entities in the creditor matrix, will require that objections to confirmation of the Modified Second Amended Plan or requests for modifications to the Modified Second Amended Plan, if any, must:

> a.     be in writing;
>
> b.     conform to the Bankruptcy Rules, Local Rules, and any orders of the Court;
>
> c.     set forth the name and address of the objecting party and the nature and amount of Claims or Interests held or asserted by the objecting party;
>
> d.     state, with particularity, the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; and

---

[12]    *See* Status Conference transcript at 71:17–72:8, August 13, 2024.

e.    be filed with the Court (contemporaneously with a proof of service) on or before September 13, 2024 at 5:00 p.m. (CT) (the "**Confirmation Objection Deadline**").

44.    Bankruptcy Rule 2002(l) also permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice." Fed. R. Bankr. P. 2002(l). In addition to mailing the Amended Confirmation Hearing Notice, the Debtors propose to publish the Amended Confirmation Hearing Notice (or a notice substantially similar to it) in the national edition of the *New York Times* (national edition) and the *Financial Times* (global edition), and any local publications that the Debtors deem appropriate (and will disclose in the Claims Agent's affidavit of service), within ten (10) business days after entry of the Disclosure Statement Order or as soon as reasonably practicable thereafter. The Debtors will also publish the Amended Confirmation Hearing Notice on the Debtors' case information website and on the Court's docket.

> F.    **The Court Should Approve the Form and Distribution of the Amended Confirmation Hearing Notice to the Unaffected Classes.**

45.    After approval of a disclosure statement, the debtor must transmit the plan, the approved disclosure statement, a notice of the time within which acceptances and rejections of such plan may be filed, and any other information that the court may direct to certain holders of claims. *See* Fed. R. Bankr. P. 3017(d).

46.    The holders of Claims and Interests in the Unaffected Classes are not entitled to vote on the Modified Second Amended Plan and are not affected by the amendments made therein. As a result, the Debtors propose not to serve them with Re-Solicitation Packages. Instead, on or before the Solicitation Deadline, in lieu of a Re-Solicitation Package, the Solicitation Agent will mail (first-class postage prepaid) an Amended Confirmation Hearing Notice to holders of Claims and Interests in Classes 1, 2, 3, 5, 7a, 7b, 7c, 8, and 10 (holders of Notes Claims in those Classes

will instead receive an Amended Confirmation Hearing Notice through their DTC Nominees or their Nominees' third-party proxy agent) and to counterparties.

47.     The Debtors request that they not be required to mail Re-Solicitation Packages or other solicitation materials to: (a) holders of Claims that have already been paid in full during the Chapter 11 Cases; (b) holders of Claims that the Debtors are authorized to pay in full in the ordinary course of business pursuant to an order previously entered by this Court and that the Debtors expect in good faith to pay in full in the ordinary course; (c) holders of Claims in Class 9 (Intercompany Claims) and Class 11 (Intercompany Interests); or (d) any party to which a previous notice was sent but was subsequently returned as undeliverable.

48.     The Debtors believe that the foregoing procedures will provide parties in interest adequate notice of the approval of the Amended Disclosure Statement, the Voting Record Date, the Voting Deadline, the Confirmation Objections Deadline, and the time, date and place of the Confirmation Hearing.

      **G.**     **All Original Solicitation, Voting, and Tabulation Procedures Remain in Full Force and Effect and Other Classes Do Not Require Re-Solicitation.**

49.     The amendments reflected in the Modified Second Amended Plan and Amended Disclosure Statement do not materially and adversely affect any of the Unaffected Classes. Accordingly, the Debtors request that the Court find that all other solicitation and tabulation procedures with respect to the Plan, as previously approved by the Court, other than the re-solicitation of Classes 4 and 6, apply to the Modified Second Amended Plan with the same force and effect as they applied to the Plan.

### III.   NON-SUBSTANTIVE MODIFICATIONS

50.     The Debtors request authorization to make non-substantive changes to the Amended Disclosure Statement, Modified Second Amended Plan, Amended Confirmation Hearing Notice, Re-Solicitation Packages, Modified Ballots, Re-Solicitation and Voting Procedures, and related documents without further orders of the Court, including changes to correct typographical and grammatical errors, if any, and to make conforming changes to the Amended Disclosure Statement,

the Modified Second Amended Plan, and any other materials in the Re-Solicitation Packages before distribution. Fed. R. Bankr. P. 3019.

## EMERGENCY CONSIDERATION

51.     The Procedures for Complex Cases in the Southern District of Texas (the "***Complex Case Procedures***") require that all motions seeking relief on less than 21-days' notice must be filed as "emergency" motions. The Debtors request emergency consideration of this Motion so that the confirmation process can go forward on the expedited schedule previously suggested by the Court.

## NOTICE

52.     Pursuant to Bankruptcy Rule 2002 and paragraph 11 of the Procedures for Complex Cases in the Southern District of Texas, notice of this Motion will be provided to all creditors (and their nominees) and indenture trustees, all equity security holders, the official committee of unsecured creditors, the Securities and Exchange Commission, the United States Trustee for Region 7, and all other parties in interest listed on the master service list maintained by the Debtors. The Debtors respectfully submit that no further notice is required under the circumstances.

[*Remainder of page intentionally blank*]

Upon the foregoing Motion, the Debtors respectfully request that the Court (a) enter an order granting this Motion in substantially the form proposed and (b) grant such other relief as is just and proper.

Dated: August 23, 2024

Respectfully submitted,

*/s/ Charles A. Beckham, Jr.*

Charles A. Beckham, Jr. (TX Bar No. 02016600)
Patrick L. Hughes (TX Bar No. 10227300)
Martha Wyrick (TX Bar No. 24101606)
Re'Necia Sherald (TX Bar No. 24121543)
HAYNES AND BOONE, LLP
1221 McKinney Street, Suite 400
Houston, TX  77010
Telephone: 1 (713) 547-2000
Email:      Charles.Beckham@HaynesBoone.com
            Patrick.Hughes@HaynesBoone.com
            Martha.Wyrick@HaynesBoone.com
            ReNecia.Sherald@HaynesBoone.com

- and -

Dennis F. Dunne (admitted *pro hac vice*)
Samuel A. Khalil (admitted *pro hac vice*)
Benjamin M. Schak (admitted *pro hac vice*)
MILBANK LLP
55 Hudson Yards
New York, NY  10001
Telephone: 1 (212) 530-5000
Email:      DDunne@Milbank.com
            SKhalil@Milbank.com
            BSchak@Milbank.com

*Counsel to the Debtors and*
*Debtors in Possession*

## CERTIFICATE OF SERVICE

I certify that, on August 23, 2024, a true and correct copy of the foregoing document was served through the Electronic Case Filing system of the United States Bankruptcy Court for the Southern District of Texas, and will be served as set forth in the Affidavit of Service to be filed by the Debtors' noticing agent.

*/s/ Charles A. Beckham, Jr.*
Charles A. Beckham, Jr.