# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| *In re* **WESCO AIRCRAFT HOLDINGS, INC.**, *et al.*,[1] <br><br> Debtors. | Case No. 23-90611 (MI) <br> Chapter 11 <br> (Jointly Administered) |

## FURTHER NOTICE REGARDING STATUS OF MEDIATION AND CHAPTER 11 CONFIRMATION TIMELINE

**PLEASE TAKE NOTICE** that the Court held a status conference on November 20, 2024, at 4:00 p.m. (CDT) (the "***November 20 Status Conference***").

**PLEASE TAKE FURTHER NOTICE** that at the November 20 Status Conference, the Court requested that the Debtors file a statement on the docket no later than Friday, November 22, 2024, informing the Court of the status of mediation among key case parties, including whether a revised Plan reflecting a mediated resolution was filed, and ordered that the *Debtors' Emergency Motion for Entry of an Order Setting Confirmation-Related Deadlines* [Dkt. #2358] (the "***Confirmation Scheduling Motion***") be held in abatement pending such status update.

---

[1] The Debtors operate under the trade name Incora and have previously used the trade names Wesco, Pattonair, Haas, and Adams Aviation. A complete list of the Debtors in these chapter 11 cases, with each one's federal tax identification number and the address of its principal office, is available on the website of the Debtors' noticing agent at http://www.kccllc.net/incora/. The service address for each of the Debtors in these cases is 2601 Meacham Blvd., Ste. 400, Fort Worth, TX 76137.

**PLEASE TAKE FURTHER NOTICE** that on November 22, 2024, the Debtors filed the *Notice Regarding Status of Mediation and Chapter 11 Confirmation Timeline* [Dkt. #2368] (the "***November 22 Update***") providing an update to the Court on the status of mediation.

**PLEASE TAKE FURTHER NOTICE** that since the November 22 Update the mediation parties have reached agreement on the key mediation issues, which agreements are reflected in the term sheet attached hereto as **Exhibit 1**.

**PLEASE TAKE FURTHER NOTICE** that the mediation parties have not yet reached agreement on the terms of a revised plan of reorganization but that, given the mediation resolution, the parties expect they can work through plan language so that the Debtors may file a consensual revised plan of reorganization by Tuesday, November 26, 2024, and proceed with the proposed confirmation hearing on December 5, 2024.

**PLEASE TAKE FURTHER NOTICE** that to the extent a consensual revised plan is not filed on Tuesday, November 26, 2024, the Debtors will provide a further status update to the Court.

**PLEASE TAKE FURTHER NOTICE** that the Debtors do not oppose continued abatement of the Confirmation Scheduling Motion through Tuesday, November 26, 2024.

**PLEASE TAKE FURTHER NOTICE** that copies of all documents filed in these chapter 11 cases are available free of charge by visiting the Debtors' restructuring website at https://veritaglobal.net/incora. You may also obtain copies of any documents filed in these chapter 11 cases for a fee via PACER at http://www.txs.uscourts.gov.

*[Remainder of page intentionally blank]*

Dated: November 25, 2024

/s/ Charles A. Beckham, Jr.

Charles A. Beckham, Jr. (TX Bar No. 02016600)
Patrick L. Hughes (TX Bar No. 10227300)
Martha Wyrick (TX Bar No. 24101606)
Re'Necia Sherald (TX Bar No. 24121543)
HAYNES AND BOONE, LLP
1221 McKinney Street, Suite 4000
Houston, TX 77010
Telephone: 1 (713) 547-2000
Email:   Charles.Beckham@HaynesBoone.com
         Patrick.Hughes@HaynesBoone.com
         Martha.Wyrick@HaynesBoone.com
         ReNecia.Sherald@HaynesBoone.com

- and -

Dennis F. Dunne (admitted *pro hac vice*)
Samuel A. Khalil (admitted *pro hac vice*)
Benjamin M. Schak (admitted *pro hac vice*)
MILBANK LLP
55 Hudson Yards
New York, NY 10001
Telephone: 1 (212) 530-5000
Email:   DDunne@Milbank.com
         SKhalil@Milbank.com
         BSchak@Milbank.com

*Counsel to the Debtors and
Debtors in Possession*

**If you have any questions related to this notice, please call (888) 251-2937 (U.S./Canada) or +1 (310) 751-2613 (International) or visit www.kccllc.net/incora.**

## CERTIFICATE OF SERVICE

      I certify that, on November 25, 2024, a true and correct copy of the foregoing document was served through the Electronic Case Filing system of the United States Bankruptcy Court for the Southern District of Texas and as set forth in the Affidavit of Service to be filed by the Debtors' noticing agent.

*/s/ Charles A. Beckham, Jr.*
Charles A. Beckham, Jr.

## **Exhibit 1**

Mediation Term Sheet

THIS TERM SHEET IS A NON-BINDING DRAFT AND IS INTENDED FOR DISCUSSIONS PURPOSES ONLY. THIS TERM SHEET DOES NOT INCLUDE A DESCRIPTION OF ALL OF THE TERMS, CONDITIONS AND OTHER PROVISIONS THAT MAY BE CONTAINED IN DEFINITIVE DOCUMENTATION. THE TERMS SET FORTH HEREIN ARE ILLUSTRATIVE, SUBJECT TO DILIGENCE, AND SUBJECT TO THE EXECUTION AND DELIVERY OF DEFINITIVE DOCUMENTATION BY THE PARTIES AND CONFIRMATION BY THE BANKRUPTCY COURT. THIS TERM SHEET IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES OR A SOLICITATION OF ACCEPTANCES OF A CHAPTER 11 PLAN WITHIN THE MEANING OF SECTION 1125 OF THE BANKRUPTCY CODE. ANY SUCH OFFER OR SOLICITATION WILL COMPLY WITH ALL APPLICABLE SECURITIES LAWS AND PROVISIONS OF THE BANKRUPTCY CODE. NOTHING CONTAINED IN THIS TERM SHEET SHALL BE AN ADMISSION OF FACT OR LIABILITY OR DEEMED BINDING ON ANY OF THE PARTIES HERETO.

1. Upon agreement by the 2024/2026 Holders and the PIMCO and Silver Point Noteholders (collectively, the "parties") on the terms described herein (which terms are subject to documentation), the mediator will report to the Bankruptcy Court on the resolution and urge an expedited plan process to reflect these terms.[1,2]

2. All parties, on behalf of themselves and their assigns, will agree not to argue equitable mootness.

3. The distributions that will be provided to the parties under the Plan on the effective date of the Plan are based on the Bankruptcy Court's rulings in the Adversary Proceeding. The parties agree that each of the parties are aggrieved parties with respect to such rulings such that they each have the right to (a) appeal the Adversary Proceeding rulings directly by way of appeal from any orders entered in the Adversary Proceeding and/or the confirmation order, irrespective of whether they were named in a particular count or cause of action that was adjudicated against the Debtors (or whether the Debtors themselves are appellants) and (b) defend against any appeal, as the case may be. For avoidance of doubt, the 2024/2026 Holders and PIMCO and Silver Point Noteholders preserve all of their respective rights in connection with such appeals and in the event the case is remanded for further proceedings.[3] Additionally, the Debtors will file a notice of appeal and file a joinder to the arguments of the PIMCO and Silver Point Noteholders solely to eliminate any doubt about those parties' ability to prosecute their appeal and will agree to waive

---

[1] For the avoidance of doubt, the provisions herein shall apply to and bind each party and their transferees, successors and assigns.

[2] For the avoidance of doubt, in the event of any conflict between this term sheet and the Plan, the terms of the Plan shall control in all respects.

[3] For the avoidance of doubt, the term "appeal" as used herein shall include any and all challenges made to the rulings or reports and recommendation of the Bankruptcy Court by or to a reviewing court.

any further participation in the appeal. The PIMCO and Silver Point Noteholders will not argue on appeal that the Debtors have joined in their argument other than to argue that such joinder eliminates any doubt about their ability to prosecute their appeal. The 2024/2026 Holders will not argue that the Debtors' failure to take any steps or the Debtors' limited involvement in connection with its participation in any appeal has any substantive effect or import. The parties further agree that none of the parties' rights or arguments will be limited in any way by the Debtors' non-involvement or limited involvement in any appeal or further proceeding, and that the parties are entitled to raise, any and all arguments and defenses that were raised in the Adversary Proceeding on appeal and in the event the case is remanded for further proceedings. The Debtors' non-involvement or limited involvement shall also not be construed as a waiver of any rights or consent to any portion of the Bankruptcy Court's ruling in the Adversary Proceeding, or agreement or objection to any claims or arguments asserted by the parties.

4. The parties will bear their own costs of the appeal, and the reorganized debtors shall not pay or reimburse the parties for their appellate expenses or otherwise indemnify any party in connection with the appeal.

5. The parties will receive the same class of securities as each other. Without limiting the remedies available to a court of competent jurisdiction, the Plan and the definitive documentation will provide that such securities (and the holders thereof) will, to the extent ordered by a court of competent jurisdiction in the event of a remand following appeals of the Bankruptcy Court's rulings in the Adversary Proceeding based on the outcome of the appeal, be subject to turnover (or dilution or cancelation, subject to tax review and discussion). The securities will be subject to record-keeping to facilitate tracing in a manner to be negotiated in good faith by the parties. Securities may be transferred in accordance with the definitive documents with notice to the reorganized debtor and with all transferees being subject to all relevant documents (including with respect to the obligation to execute joinder and/or assignment agreements to the applicable definitive documentation), but no consent shall be required for any such transfer. The parties may urge any court to consider tax implications with respect to any remedy. The parties or their transferees, successors or assigns will not argue that any particular remedy is unavailable because it was not adequately disclosed or developed in the Plan, definitive documentation, or securities issued under the Plan. For the avoidance of doubt, all parties reserve their rights to seek any other remedy or to contest any remedy. The parties will immediately turn to good faith negotiation and documentation of the Plan and definitive documentation [consistent with the understanding that such documentation will take into account tax efficiency, notice to subsequent transferees, successors and assigns and mechanics of remedies.][4]

---

[4] No agreement with respect to characterization of how documentation is to be drafted but parties are in the advanced stages of plan drafting.

6. The professionals engaged by the 2024/2026 Holders will receive all reasonable and documented fees and expenses in connection with the bankruptcy case and the pre- and post-petition litigation concerning the 2022 Transaction through the effective date of the Plan, paid in cash, not subject to appeal, and the PIMCO and Silver Point Noteholders agree that neither they nor their transferees, successors or assigns shall challenge or contest such fees. For the avoidance of doubt, the 2024/2026 Holders agree that neither they nor their transferees, successors or assigns shall challenge or contest the fees and expenses of the PIMCO and Silver Point Noteholders [incurred through the effective date of the Plan].[5] .

7. All parties will support the Plan, the RSA and the Plan settlement, subject to paragraph 9 below.

8. The Plan settlement consideration will be taken solely from the 1L Notes Claim distributions under the Plan (not the 2026 Notes Claim distributions); the 2026 Notes Claims will not share in the Plan settlement regardless of the outcome of the appeal; at emergence, the 2024 Unsecured Notes Claims will receive their share of the Plan settlement as contemplated in the previously filed plans.

9. The Bankruptcy Court's approval of the settlement and release of all estate causes of action at confirmation will be a condition precedent to the Plan; provided that the settlement and release of certain estate causes of action alleged in the 2024/2026 holders' standing motion will be expressly subject to the provisions below.

    - If, on appeal of the Adversary Proceeding rulings, a reviewing court were to find that the 2024/2026 holders did not possess standing to bring a claim in their direct capacity for the remedy adjudicated by the Bankruptcy Court for breach of the 2026 indenture (as announced on the record on July 10, 2024 and further clarified on August 13, 2024) as part of such Adversary Proceeding rulings, then, to the extent it is also determined in such appeal that the 2022 transactions resulted in a breach of the 2024 and/or the 2026 indenture, the 2024 and/or 2026 holders, as applicable, may on remand revive and pursue their existing standing motion as to the effects of the 2022 transactions for equitable lien, equitable subordination and fraudulent conveyance (the "Subject Estate Claims"), and the applicable court shall consider de novo, pursuant to Bankruptcy Rule 9019, whether, taking into account the existing evidentiary record (as may be supplemented on remand) and the appellate court's rulings, (i) the settlement and release of the Subject Estate Claims should have been approved at confirmation, and (ii) the 2024 and/or 2026 holders, as applicable, should be granted standing to pursue such claims on behalf of the debtors' estates.

    - In connection with such standing motion:

---

[5] No agreement with respect to whether the limitation on ability to challenge fees applies only to fees incurred through the Effective Date.

3

- o the parties (i) will not re-open the evidentiary record, except to the extent ordered by an applicable court as a result of any appeals, in the Adversary Proceeding, which will be binding on all parties, but (ii) will have the ability to supplement the evidentiary record to the same extent that they would be entitled to at a confirmation hearing absent this consensual Plan. The parties also acknowledge and agree that the 2024/2026 Holders previously demanded (on or about June 28, 2023 (*see* Docket No. 652-8) that the Debtors pursue the Subject Estate Claims and the Debtors declined (on or about June 30, 2023) (*see* Docket No. 652-9) such that, in the event this paragraph 9 is later invoked, no party will make such demand again or claim that any further demand is required;

  - o the Debtors will not modify their position with respect to standing (including as set forth in the *Debtors' Motion for Summary Judgment* (Adversary Proceeding Dkt. 199); *Debtors' Memorandum of Law in Opposition to Formerly Secured Noteholders' Motion for Partial Judgment on the Pleadings* (Adversary Proceeding Dkt. 270); *Debtors' Reply in Support of Their Motion for Summary Judgment* (Adversary Proceeding Dkt. 318); *Debtors' Memorandum of Law in Opposition to the 2024/2026 Holders' Amended and Supplemental Standing Motion* (Dkt No. 1126); *Counterclaim Defendants' Amended Joint Post-Trial Brief* (Adversary Proceeding Dkt. 1398)); and

  - o all arguments are preserved with respect to the impact of the DIP Order and the 2024/2026 Noteholders' pending motion to reconsider to the DIP Order (Docket No. 1890), as existed immediately prior to confirmation of the Plan.

- In connection with any litigation of the Subject Estate Claims upon approval of the 2024/2026 holders' standing motion in accordance with the above:

  - o all parties shall have the right to argue whether the value provided under the Plan on account of the Plan settlement and release of estate causes of action should be offset against any such Subject Estate Claims;

  - o the plaintiffs and defendants in any proceedings related to such Subject Estate Claims will have available to them all claims, defenses and arguments in response thereto as if asserted immediately prior to confirmation without regard to the Plan or the consummation thereof, and no such claims, defenses or arguments will be discharged, released, waived or enjoined pursuant to the Plan in connection with such litigation;

4

- o all parties will preserve all rights with respect to the appropriate allocation of any proceeds of the Subject Estate Claims in accordance with the Bankruptcy Code or other applicable law, without regard to the Plan or the consummation thereof including all rights with respect to whether such proceeds should be allocated to any Claims (whether Secured or not Secured, and notwithstanding any waiver of Claims under this Plan, including pursuant to Article III.B.5.b or Article III.B.9.b of the Plan); and

- o [any remedy in respect of the Subject Estate Claims (after taking the above into account) will be limited to the New Common Equity and New Takeback Notes distributed under the Plan on account of 1L Notes Claims and 2026 Notes Claims and any proceeds of such New Common Equity and New Takeback Notes.][6]

- The right to revive the 2024/2026 standing motion and pursue the Subject Estate Claims as described above will be limited to the *Amended and Supplemental Motion of the 2024/2026 Holders (I) Confirming Direct Standing to Pursue Certain Claims and Remedies or, in the Alternative, (II) for Derivative Standing to Pursue Such Claims and Remedies and for Exclusive Settlement Authority* [Dkt. No. 652]. The Plan shall provide that, if the standing motion is approved in whole or in part, each claim so approved shall be deemed to have been asserted as of the date of the standing motion and no party shall assert that any such claim will have become barred by any time-based defense when asserted, including, without limitation, as a result of the lapsing of any applicable statute of limitations or statute of repose.

10. The parties will request that the Bankruptcy Court issue a final decision, order and report and recommendation for all matters decided in the Adversary Proceeding as between the 2024/2026 Holders, on the one hand, and the Debtor and/or PIMCO and Silver Point Noteholders, on the other hand (including with respect to the 2024/2026 Holders' tortious interference claims and the March 2022 $250 million in new money). For the avoidance of doubt, the parties retain the right to file any motions for clarification or reconsideration (and to oppose such motions), which will be subject to terms set forth above regarding appeal. The parties agree to jointly request that the appeal of any plan confirmation order and any matters decided in the Adversary Proceeding as between the 2024/2026 Holders and the Debtors and/or PIMCO and Silver Point Noteholders will be consolidated and briefed on the same schedule. In order to facilitate this coordination, the parties also agree to request the Bankruptcy Court issue a final decision, order, and report and recommendation at its earliest practical convenience so as to facilitates a coordinated appeal with the confirmation order, and to stay, hold in abeyance, adjourn, or otherwise extend any interim deadlines to the extent necessary for any such appeals pending entry of the final decision, order and report and recommendation requested hereby. The parties

---

[6] Under discussion and subject to Plan drafting.

5

further agree that this agreement shall apply during any intermediate appeal until a final non-appealable order.

11. The parties will negotiate governance provisions and minority protections; the mediator will remain involved in resolving and mediating those and any other issue that arises. Any Plan and settlement, including the agreements described herein, shall be subject to mutual agreement on governance terms and minority protections.