**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **In re:** | ) **Chapter 11** |
| | ) |
| **WESCO AIRCRAFT HOLDINGS, INC.,** | ) **Case No. 23-90611 (MI)** |
| ***et al.,*** [1] | ) |
| | ) |
| **Debtors.** | ) **(Jointly Administered)** |
| | ) |

**UNITED STATES TRUSTEE'S OBJECTION TO THE FURTHER MODIFIED**
**SECOND AMENDED JOINT PLAN OF WESCO AIRCRAFT HOLDINGS, INC. *ET AL.***

TO THE HONORABLE MARVIN ISGUR,
UNITED STATES BANKRUPTCY JUDGE:

Kevin M. Epstein, the United States Trustee for Region 7 (the "U.S. Trustee"), files this

objection to the *Further Modified Second Amended Joint Plan of Wesco Aircraft Holdings, Inc. et*

*al.* (the "Further Amended Plan")[2] [ECF No. 2408], and represents as follows:

**PRELIMINARY STATEMENT**

The U.S. Trustee hereby files this objection as a supplement to his *Objection to the Debtors'*

*Emergency Motion for Entry of an Order (i) Approving the Amended Disclosure Statement, (ii)*

*Approving Re-Solicitation of Classes 4 and 6 and Related Voting Procedures, (iii) Approving*

*Forms of Modified Ballots, (iv) Scheduling a Confirmation Hearing, and (vi) Shortening the Notice*

*and Objection Periods in Connection With the Foregoing* filed at ECF No. 2061 (the "Disclosure

---

[1] The Debtors operate under the trade name Incora and have previously used the trade names
Wesco, Pattonair, Haas, and Adams Aviation. A complete list of the Debtors in these chapter 11
cases, with each one's federal tax identification number and the address of its principal office, is
available on the website of the Debtors' noticing agent at http://www.kccllc.net/incora/. The
service address for each of the Debtors in these cases is 2601 Meacham Blvd., Ste. 400, Fort Worth,
TX 76137.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in
the Amended Plan.

Statement Objection"). All objections raised to the plan in the Disclosure Statement Objection are not waived and are reincorporated herein by reference.  In that objection, the U.S. Trustee argued that the proposed nonconsensual releases of non-debtor third parties by non-debtor third parties contained in the Second Amended Plan are not authorized under the United States Bankruptcy Code and the opt-out provisions are ineffective to confer consent to the third-party release.  At the hearing on the Disclosure Statement, the Court continued those objections to confirmation. The U.S. Trustee hereby files this supplement to his Disclosure Statement Objection to respond to the issue of whether class action procedures are comparable to the proposed opt-out procedure in the Further Amended Plan, address the change to the Exculpation Provision in the Further Amended Plan, and raise other objections to confirmation of the Further Amended Plan.  As further discussed below, federal class action law does not preempt state contract law, which governs consent to third-party releases in bankruptcy.

## SUPPLEMENTAL ARGUMENT

**I.    State Law—Not Federal Law—Governs Whether a Non-Debtor Has Consented to Release Another Non-Debtor.**

1.      Whether parties have reached an agreement—including an agreement not to sue—is governed by state law.  The only exception is if there is federal law that preempts applicable state contract law.  *See, e.g., Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393, 416 (2010) (plurality) ("For where neither the Constitution, a treaty, nor a statute provides the rule of decision or authorizes a federal court to supply one, 'state law must govern because there can be no other law.'") (quoting *Hanna v. Plumer*, 380 U.S. 460, 471-72 (1965)).  Here, state law applies because no federal law addresses the question of whether the non-debtor creditors in this case have agreed to release the non-debtor releasees.

### A.    No Federal Bankruptcy Law Preempts State Contract Law.

2.    The Supreme Court has definitively held that non-consensual third-party releases are not authorized under the Bankruptcy Code.  *Harrington v. Purdue Pharma L.P.,* 603 U.S. __, 144 S. Ct. 2071, 2082-88 (2024).  The Supreme Court in *Purdue* did not address whether consensual non-debtor releases can be included in a chapter 11 plan and confirmation order.

3.    As argued in the U.S. Trustee's Disclosure Statement Objection, no Bankruptcy Code provision authorizes courts, as part of an order confirming a chapter 11 plan, to "deem" a non-debtor to have consented to an agreement to release claims against other non-debtors where consent would not exist under state law.  *See* Disclosure Statement Objection, ECF 2061 at 6–7.  The Bankruptcy Code does not regulate agreements between non-debtors.  Indeed, even as to a debtor's contracts, it is well settled that state law governs whether parties have entered into a valid contract.  *See Houston v. Holder (In re Omni Video, Inc.)*, 60 F.3d 230, 232 (5th Cir. 1995) ("Federal bankruptcy law fails to address the validity of settlements and this gap should be filled by state law."); *De La Fuente v. Wells Fargo Bank, N.A. (In re De La Fuente)*, 409 B.R. 842, 845 (S.D. Tex. 2009) ("Where the United States is not a party, it is well established that settlement agreements in pending bankruptcy cases are considered contract matters governed by state law."). *See also Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co.*, 549 U.S. 443, 450-451 (2007) ("[T]he basic federal rule in bankruptcy is that state law governs the substance of claims, Congress having generally left the determination of property rights in the assets of a bankrupt's estate to state law.") (quotation marks omitted); *Butner v. United States*, 440 U.S. 48 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law.").

4.    Because the Bankruptcy Code does not govern relationships between claim holders and non-debtor third-parties, state-law contract principles are the controlling authority when

determining whether a release is consensual.  *See, e.g.*, *Patterson v. Mahwah Bergen Retail Grp., Inc.,* 636 B.R. 641, 684–85 (E.D. Va. 2022) (describing bankruptcy courts in the District of New Jersey as "look[ing] to the principles of contract law rather than the bankruptcy court's confirmation authority to conclude that the validity of the releases requires affirmative consent"); *In re Smallhold, Inc.*, No. 14-10267 (CTG), 2024 WL 4296938, at *11 (Bankr. D. Del. Sept. 25, 2024) (recognizing that "some sort of affirmative expression of consent that would be sufficient as a matter of contract law" is required); *In re SunEdison, Inc.,* 576 B.R. 453, 458 (Bankr. S.D.N.Y. 2017) ("Courts generally apply contract principles in deciding whether a creditor consents to a third-party release."); *In re Arrowmill Dev. Corp.*, 211 B.R. 497, 506, 507 (Bankr. D.N.J. 1997) (explaining that a third-party release "is no different from any other settlement or contract" and thus "the validity of the release . . . hinge[s] upon principles of straight contract law or quasi-contract law rather than upon the bankruptcy court's confirmation order") (internal quotation marks omitted) (alterations in original).  As one court recently held, because "'nothing in the bankruptcy code contemplates (much less authorizes it)' . . . . any proposal for a non-debtor release is an ancillary offer that becomes a contract upon acceptance and consent." *In re Tonawanda Coke Corp.*, 662 B.R. 220, 222 (Bankr. W.D.N.Y. 2024) (quoting *Purdue*, 144 S. Ct. at 2086). Accordingly, "any such consensual agreement would be governed by state law." *Id.*

5.      Here, as argued below and in the U.S. Trustee's Disclosure Statement Objection, the Debtors are unable to demonstrate under state law that the Releasing Parties have affirmatively consented to release their property rights against non-debtor third-parties.

**B.      Federal Class Action Law Does Not Apply to Preempt State Contract Law.**

6.      At the September 5, 2024, hearing, the Court raised the question of whether, under Federal Rule of Civil Procedure 23, "opt-outs" could constitute consent because a court-approved

class action settlement may bind class members who do not opt-out of the class action. That analogy to class-action procedure is misplaced.

7.      First, Rule 23, incorporated by Bankruptcy Rule 7023, only applies in adversary proceedings. Plan confirmation is not an adversary proceeding to which Bankruptcy Rule 7023 applies so neither Rule 23 nor Bankruptcy Rule 7023 applies. Nor is there any provision in the Code that would authorize imposing non-debtor releases in chapter 11 plans on those who fail to opt-out. Accordingly, federal class action law does not apply and cannot preempt state contract law, which (as discussed below and in the U.S. Trustee's Disclosure Statement Objection) requires affirmative consent.

8.      Importantly, "people who fail to respond to class action notices are bound because that is the legal consequence that the Rule specifies, and not on the theory that their inaction is the equivalent of an affirmative joinder in an action." *In re Chassix Holdings, Inc.*, 533 B.R. 64, 78 (Bankr. S.D.N.Y. 2015). By contrast, "[t]here is no rule that specifies an 'opt-out' mechanism or a 'deemed consent' mechanism" to non-debtor releases imposed via a chapter 11 plan. *Id*. Absent a duly enacted statute or federal rule of procedure, a court cannot unilaterally transplant Rule 23(b)(3)'s class-action "opt-out" procedure to bankruptcy proceedings to confirm a chapter 11 plan.

9.      Indeed, as the court found in *Patterson v. Mahwah Bergen Retail Grp., Inc.*, "the comparison to class action litigation highlights the impropriety of finding releases consensual based merely on a failure to opt-out" because in class actions, unlike chapter 11 plan confirmations,

"courts must ensure that the class action complies with the unique requirements of Rule 23 of the Federal Rules of Civil Procedure."[3] 636 B.R. 641, 686 (E.D. Va. 2022).

10.     Federal class actions may proceed only after a court certifies that the class meets a series of rigorous procedural requirements designed to ensure the appropriateness and fairness of class-wide litigation.   For any class to be certified, Rule 23(a) requires a court to find: (1) commonality ("questions of law or fact common to the class"); (2) typicality (named parties' claims or defenses "are typical . . . of the class"); and (3) adequacy of representation (representatives "will fairly and adequately protect the interests of the class").  *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) (quoting Fed. R. Civ. P. 23); *see id.* at 621 (noting that these standards protect against the variability of equitable justice).

11.     Once those threshold showings are made, Rule 23(b) then requires that one of three further predicates is satisfied.  Speaking generally, Rule 23(b)(1) authorizes class treatment where "individual adjudications would be impossible or unworkable," while Rule 23(b)(2) authorizes class actions where "the relief sought must perforce affect the entire class at once."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011).  Rule 23(b)(3), in turn, authorizes class treatment only where a court finds both that "the questions of law or fact common to class members predominate over any questions affecting only individual members" and "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3). Opt-out procedures are only available in class actions under Rule 23(b)(3), not

---

[3] Further, "in the class action context there is a public policy that favors the consolidation of similar cases and that justifies the imposition of a rule that binds class members who have not affirmatively opted out."  *Chassix Holdings, Inc.*, 533 B.R. at 78.  By contrast, in the context of non-debtor releases imposed via a chapter 11 plan, there is no "general 'public policy' in favor of making third party releases applicable to as many creditors as possible."  *Id.*

those under Rule 23(b)(1) and 23(b)(2).  *See Wal-Mart Stores*, 564 U.S. at 362 (explaining that "unlike (b)(1) and (b)(2) classes, the (b)(3) class is not mandatory".)

12.     Congressionally approved class action procedures also entail additional procedural safeguards.  A class must be specifically defined to identify the class members and the class claims. Fed. R. Civ. P. 23(c)(1)(B).  Moreover, the court must appoint class counsel that can best "represent the interests of the class."  Fed. R. Civ. P. 23(g).  And for classes certified under Rule 23(b)(3), class members must receive "the best notice practicable" that must "clearly and concisely state in plain, easily understood language:" the nature of the action, who the class is, what their claims or defenses are; their right to appear in the action through an attorney; their right to exclude themselves from the action; how and when to exclude themselves; and the binding nature of the judgment if they do not. In other words, the Federal Rules of Civil Procedure set objective procedural protections before a class can be certified and potential members bound.

13.     Further, "any class settlement that would bind absent class members requires court approval." *Patterson*, 636 B.R. at 686 (citing Fed. R. Civ. P. 23(e)).  And approval may only be granted if, after a hearing, the court finds the settlement is "'fair, reasonable, and adequate' taking into account whether '(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate; and (D) the proposal treats class members equitably relative to each other.'" *Id*. at 687 (quoting Fed. R. Civ. P. 23(e)(2)).  "The inquiry appropriate under Rule 23(e) . . . protects unnamed class members from unjust or unfair settlements affecting their rights." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

14.     "None of these protections exist in the context of a non-debtor release in a bankruptcy action." *Patterson*, 636 B.R. at 686.  "[N]o party litigates on behalf of the absent

releasing party." *Id.*; *see also In re Smallhold Inc.,* No. 24-10267 (CTG), 2024 WL 4296938, at *12 n.53 (Bankr. D. Del. Sept. 25, 2024) ("[I]in the class action context, a class is only certified after a court makes a factual finding that the named representative is an appropriate representative of the unnamed class member. In the plan context, there is no named plaintiff, found by the court to be an adequate representative, whose actions may presumptively bind others."). And "[n]o party with a typical claim has a duty to ensure that he fairly and adequately represents the best interests of the absent releasing party." *Patterson*, 636 B.R. at 686. "Moreover, the absent releasing party does not enjoy counsel that will represent his best interests in his stead."[4]  *Id.*

15.     Finally, in a class action, members who fail to opt-out may still litigate their claims, and receive whatever proceeds are won in that litigation.  Conversely if a chapter 11 plan contains non-debtor releases subject to an opt-out provision, creditors completely lose their claims against the non-debtor and any corresponding compensation forever by failing to submit an opt-out ballot and even if they are unaware of the release opt-out.  Simply put, if a mere failure to opt-out to a non-debtor release constitutes consent in bankruptcy, "then no court carries an obligation to ensure the fairness, reasonableness and adequacy of the relief afforded the absent releasing parties." *Patterson*, 636 B.R. at 687.

16.     Notably, state law also provides class-action procedures in which unnamed class members are bound by a court-approved class settlement unless they opt-out.  *See* Tex. R. Civ. P. 42.  But outside of that class-action context and in narrow circumstances inapplicable here, a

---

[4] Although the official committee of unsecured creditors owes a fiduciary duty to the creditor body as a whole, it does not owe a duty to any individual creditor or any specific group of creditors, and the diverse body of creditors to whom it owes duties often has conflicting interests.  *See In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 717, 722 (Bankr. S.D.N.Y. 1992) (fiduciary duty of individual members of an official committee "extends to the class as a whole, not to its individual members").  Further, the committee's duties relate only to claims against the debtor, not claims against non-debtors.

person cannot force a contract on someone else by deeming silence, such as a failure to "opt-out," to be consent. *See* Disclosure Statement Objection, ECF 2061 at 7–14; *infra* Part II.

## II.        Under State Law, Silence Is Not Consent.

17.        Because there is no federal law that preempts applicable state law, state law applies to determine if the would-be non-debtor releasors have agreed to release the non-debtor releasees. And under state law, as argued in the U. S. Trustee's Disclosure Statement Objection, such an agreement requires affirmative consent, which is lacking here. *See* Disclosure Statement Objection, ECF 2061 at 7-14.

18.        As the Fifth Circuit has explained: "Tacit acquiescence between relative strangers ignores the basic tenets of contract law. . . .  While there may be exceptions in cases involving parties with longstanding relationships, generally speaking, 'silence or inaction does not constitute acceptance of an offer.'"  *Imperial Ind. Supply Co v. Thomas*, 825 F. App'x 204, 207 (5th Cir. Sept. 2, 2020) (quoting *Norcia v. Samsung Telecomms Am., LLC*, 845 F.3d 1279, 1284 (9th Cir. 2017)). In the words of the United States District Court for the Northern District of Texas: "This idea that [the plaintiff] can unilaterally bind another party to a contract, however, is contrary to law.  It is a fundamental principle of contract law that to create an enforceable contract, there must be a clear and definite offer followed by a clear and definite acceptance in accordance with the offer's terms." *Redmond v. Williams*, No. 22-cv-00910, 2023 LW 7984388, at *6 (E.D. Tex. Sept. 13, 2023).

19.        For example, the Fifth Circuit has held that acceptance of an offer (in that case a counteroffer) "is established only by conforming to the rules governing acceptance, not a separate theory of 'waiver and ratification.'"[5] *Houston Dairy, Inc. v. John Hancock Mut. Life Ins. Co.*, 643

---

[5] *Houston Dairy* applied Mississippi law, *id*. at 1186, but the Fifth Circuit has noted that "Mississippi contract law follows general common law principles on what constitutes mutual assent." *Imperial Ind. Supply Co v. Thomas*, 825 F. App'x 204, 207 (5th Cir. Sept. 2, 2020).

F.2d 1185, 1186 (5th Cir. 1981). In *Houston Dairy*, without an affirmative acceptance, depositing a check sent with the offer did not create a contract. *Id.* Likewise, even if receiving distributions under a plan were analogized to receiving a check from an offeror—although it is a poor analogy as the Releasing Parties receive nothing from the Released Parties—merely depositing a check without more is not acceptance of an offer. *Houston Dairy*, 643 F.2d at 1186.

20.     The Ninth Circuit's decision in *Norcia*, cited by the Fifth Circuit in *Imperial Ind. Supply Co. v. Thomas* 825 F. App'x at 207, provides another good example of why there is no consent based on mere provision of an opt-out form with chapter 11 plan solicitations. In *Norcia*, a consumer bought a Samsung phone from a Verizon Wireless store and signed the Verizon Wireless Customer Agreement. *Norcia*, 845 F.3d at 1282. Among the contents of the phone's box was a Samsung "Product Safety & Warranty Information" brochure that contained an arbitration provision, which "stated that purchasers could opt-out of the arbitration agreement by providing notice to Samsung within 30 calendar days of purchase, either through email or by calling a toll-free telephone number." *Id.* It also stated that opting out would not affect the warranty coverage. *Id.* The customer did not take any steps to opt-out. *Id.* When the customer later sued Samsung, Samsung argued that the arbitration provision applied. *Id.* at 1282-83.

21.     As an initial matter, the *Norcia* court rejected the argument that the customer agreed to the arbitration provisions by signing his contract with Verizon: "The Customer Agreement is an agreement between Verizon Wireless and its customer. Samsung is not a signatory." 845 F.3d at 1290. That is even more true in the context of a chapter 11 plan. Not only are the non-debtor Released Parties not signatories to it, a chapter 11 plan is not a contract but a creature of the Bankruptcy Code specifically for determining how the debtor will pay its creditors, not for resolving claims between non-debtors.

10

22.     The Ninth Circuit further held that the customer's failure to opt-out did not constitute consent to arbitrate.  Unsurprisingly—because there was no applicable federal law and the question was not whether one could opt-out of a class action—the court applied the "general rule," applicable under California law, that "silence or inaction does not constitute acceptance of an offer."  845 F.3d at 1284 (quotation marks omitted); *accord Tex. Ass'n of Ctys. Cty. Gov't Risk Mgmt. Pool v. Matagorda Cty.*, 52 S.W.3d 128, 132–33 (Tex. 2000).  The customer did not agree to arbitrate because he did not "sign the brochure or otherwise act in a manner that would show his intent to use his silence, or failure to opt-out, as a means of accepting the arbitration agreement."  *Norcia*, 845 F.3d at 1285 (quotation marks omitted).  "Samsung's offer to arbitrate all disputes with [the customer] cannot be turned into an agreement because the person to whom it is made or sent makes no reply, even though the offer states that silence will be taken as consent, unless an exception to this general rule applies."  845 F.3d at 1286 (quotation marks and citation omitted).

23.     The Ninth Circuit explained that exceptions to this rule exist when the offeree has a duty to respond or when the offeree retains the offered benefits but held neither exception applied. *Norcia*, 845 F.3d at 1284-85.  There was no state law imposing a duty on the customer to act in response to the offer, the parties did not have a prior course of dealing that might impose such a duty, and the customer did not retain any benefits by failing to act given that the warranty applied whether or not he opted out of the arbitration provision.  *Id*. at 1286.

24.     Here, too, the debtor's creditors have not signed an agreement to release the non-debtor releasees nor acted in any other manner to suggest that their silence manifests acceptance of an offer to release them.  Rather, the plan would impose non-debtor releases and injunctions on creditors—regardless of whether they vote to accept or reject the plan or do not vote at all—based

11

on their silence, the failure to return an opt-out form.  This silence does not fit within any of the exception to the state-law requirement of an affirmative manifestation of consent.

25.     First, as in *Norcia*, the Debtors' creditors have no state law duty to respond to an offer to release non-debtors such that their silence would constitute consent.  Nor do these creditors have any prior course of dealing with the released non-debtors that could conceivably impose such a duty.  There is no such duty under federal law, either.  Creditors have no affirmative obligation to act on a plan at all.  *See, e.g.,* 11 U.S.C. § 1126(a) (providing that creditors "may" vote on a plan); *In re SunEdison, Inc.*, 576 B.R. at 460–61 (recognizing that creditors have no duty to speak regarding a plan that would allow a court to infer consent from silence).  Correspondingly, creditors have no obligation to read a plan.  And creditors who have no intention of voting in the first place are unlikely to do so.  Further, because impaired creditors have a federal right under the Bankruptcy Code to vote on a chapter 11 plan, 11 U.S.C. § 1126(a), merely exercising that right does not manifest consent to release claims against non-debtors.  Even more obviously, an unimpaired creditor, or an impaired creditor receiving nothing under a plan who is deemed to reject the plan, neither of whom has the right to vote on a plan, does not manifest consent to a non-debtor release by failing to return an opt-out form.

26.     Second, as in *Norcia*, 845 F.3d at 1286, creditors are not "silently tak[ing] offered benefits" from the released non-debtors, such that consent may be inferred.  Restatement (Second) of Contracts § 69 cmt. a (1981).  The only benefits received by the creditors are distributions from the debtor's chapter 11 plan.  Thus, "[e]ssentially, creditors are being asked to give releases to third parties for no consideration."  *In re Tonawanda Coke Corp.*, 662 B.R. at 222.  Because the plan's distributions are not contingent on agreeing to the non-debtor release, one cannot infer consent to the release from mere acceptance of those distributions from the debtor.  *See Norcia*, 845 F.3d at

1286 (holding customer did not retain any benefits when warranty applied regardless of failure to opt-out).  Further, non-debtors have no right to prevent a debtor's creditors from receiving distributions under the debtor's chapter 11 plan, and thus acceptance of those distributions does not manifest acceptance of an offer to release non-debtors.  *See Railroad Mgmt. Co., L.L.C. v. CFS La. Midstream Co.*, 428 F.3d 214, 223 (5th Cir. 2005) ("In the absence of any evidence that Strong had the right to exclude CFS from the property in question or that CFS accepted any service or thing of value from Strong, no reasonable jury could conclude that CFS's failure to remove its pipeline upon Strong's demand constituted consent to a contract.").

27.     Furthermore, failure to return an opt-out form is not consent because—whether they are asked to vote or not—claimants have no reason to expect that an offer to contract with non-debtors will be included in the plan solicitation.  As the Third Circuit has explained, there can be no presumption that someone has agreed to contractual provisions of which they are "on notice," unless "there is a reasonable basis to conclude that consumers will have understood the document contained a bilateral agreement."  *See Noble v. Samsung Elec. Am., Inc.*, 682 F. App'x 113, 117-118 (3d Cir. 2017); *see also Norcia*, 845 F.3d at 1289 ("[N]o contract is formed when the writing does not appear to be a contract and the terms are not called to the attention of the recipient.") (quotation marks omitted).

28.     In addition, there is no acceptance of an offer when there is insufficient notice of the alleged contractual terms, as there is here for at least some Releasing Parties.  *See* Disclosure Statement Objection, ECF 2061 at 12-13, 14-16.  The Ninth Circuit in *Norcia* explained that "[e]ven if there is an applicable exception to the general rule that silence does not constitute acceptance, courts have rejected the argument that an offeree's silence constitutes consent to a contract when the offeree reasonably did not know that an offer had been made." 845 F.3d at 1285;

*see also id.* ("[A]n offeree, regardless of apparent manifestation of his consent, is not bound by inconspicuous contractual provisions of which he was unaware, contained in a document whose contractual nature is not obvious.") (quotation marks omitted).

## III.    Opt-Outs Cannot Be Imposed Based on a Procedural Default Theory

29.    Applicable state contract law cannot be disregarded on a procedural default theory, previously applied by some courts, under which creditors who remain silent are held to have forfeited their rights against non-debtors if they received notice of the non-debtor release but failed to object, just as they would forfeit their right to object to a debtor's plan if they failed timely to do so.  *See, e.g., In re Arsenal Intermediate Holdings, LLC*, No. 23-10097, 2023 WL 2655592, at *5-*6 (Bankr. D. Del. Mar. 27, 2023), *abrogated by In re Smallhold, Inc.*, No. 14-10267, 2024 WL 4296938, at *8-*11 (Sept. 25, 2024); *In re DBSD North America, Inc.*, 419 B.R. 179, 218-19 (Bankr. S.D.N.Y. 2009), *aff'd on other grounds*, 2010 WL 1223109 (S.D.N.Y. Mar. 24, 2010), *rev'd in part and aff'd in part*, 634 F.3d 79 (2d Cir. 2011); *In re Robertshaw US Holding Corp.*, No. 24-90052, 2024 WL 3897812, at *17 (Bankr. S.D. Tex. 2024) (citing *Arsenal Intermediate Holdings, LLC*, 2023 WL 2655592, at *6-8).  These courts had reasoned that so long as the creditors received notice of a proposed non-debtor release and were informed of the consequences if they did not opt-out or object to that release, there is no unfairness or deprivation of due process from binding them to the release.  *Cf. Smallhold*, 2024 WL 4296938, at *1 (describing this reasoning as having treated a mere "failure to opt-out" as "allow[ing] entry of the third-party release to be entered by default").

30.    This is wrong.  Forfeiture principles do not apply to consent, which requires an affirmative manifestation of assent, not a mere failure to object.  As the court in *Smallhold* recently explained, "[u]nder established principles," courts may enter relief against a party who has procedurally defaulted by not responding "only after satisfying themselves that the relief the

plaintiff seeks is relief that is at least potentially available to the plaintiff in litigation" when actually contested. *Smallhold, Inc.*, 2024 WL 4296938, at *2; *see also Id*. at *13 ("[T]he obligation of a party served with pleadings to appear and protect its rights is limited to those circumstances in which it would be appropriate for a court to enter a default judgment if a litigant failed to do so."). But a third-party release is not "an ordinary plan provision that can properly be entered by 'default' in the absence of an objection." *Id*. "It is unlike the listed cure amount where one can properly impose on a creditor the duty to object, and in the absence of such an objection bind the creditor to the judgment." *Id*. That is because, unlike for a creditor's claims against the debtor, the Bankruptcy Code affords no affirmative authority to order a release of claims against third parties.

31.     The *Smallhold* court provided an illustration that makes obvious why, even with clear notice, a mere failure to object or opt-out of a proposed release does not constitute the manifestation of assent necessary to constitute consent under state law:

> Consider, for example, a plan of reorganization that provided that each creditor who failed to check an "opt-out" box on a ballot was required to make a $100 contribution to the college education fund for the children of the CEO of the debtor. Just as in the case of Party A's letter to Party B, no court would find that in these circumstances, a creditor that never returned a ballot could properly be subject to a legally enforceable obligation to make the $100 contribution.

*Id*. at *2. None of the cases that imposed a non-debtor release based merely on a creditor's failure to object or opt-out "provides any limiting principle that would distinguish the third-party release from the college education fund plan." *Id*. Thus, it is not "appropriate to require creditors to object or else be subject to (or be deemed to 'consent' to) such a third-party release." *Id*. at *10.

32.     Because *Purdue* establishes that a nonconsensual third-party release is "*per se* unlawful," it follows that a third-party release "is not the kind of provision that would be imposed on a creditor on account of that creditor's default." *Id*. at *2. Rather, absent an affirmative

showing of consent, a court lacks any power to approve the non-debtor release.  And besides the now-discredited default theory, there is "no other justification for treating the failure to 'opt-out' as 'consent' to the release [that] can withstand analytic scrutiny." *Id*.  Because a chapter 11 plan cannot permissibly impose non-debtor releases without the affirmative consent of the releasing parties, a release cannot be imposed based on a creditor's mere failure to respond regarding the non-debtor release.  Rather, an "*affirmative expression of consent* that would be sufficient as a matter of contract law" is required.  *Id*. at *11 (emphasis added).[6]

### A.   Smallhold's conclusion that voting plus a failure to opt-out equals consent to a non-debtor release is incorrect.

33.   The U.S. Trustee recognizes that the court in *Smallhold* found that, in at least some circumstances, the act of voting on a debtor's plan (whether to accept or reject it) combined with a failure to exercise an opt-out option can constitute consent to a non-debtor release.  *See Smallhold,* 2024 WL 4296938, at *14.  The *Smallhold* decision, however, although stating it was applying "ordinary contract principles," 2024 WL 4296938, at *3, failed to faithfully apply those principles to the question of when silence can constitute consent.  For the reasons discussed above, contract principles do not support imputing consent for a third-party release based merely upon a creditor's neglect to exercise an opt-out option and that remains true even when that option is conspicuous or well-advertised.

34.   In *Smallhold*, the court reasoned that consent to a non-debtor release could be understood to exist because the act of voting on a debtor's plan is an "affirmative step" taken after being told that failing to opt-out would bind the voter to the non-debtor release.  *Smallhold,* 2024

---

[6] For those reasons, the *Smallhold* court expressly disapproved of its prior decision in *Arsenal*, which had relied on the procedural default theory.  *See id.* at *8 ("On the central question presented, the Court concludes that its decision in *Arsenal* does not survive *Purdue Pharma*.").

WL 4296938, at *14.  But while voting is certainly an "affirmative step" with respect to the debtor's plan, it is not a "*manifestation of intention* that silence may operate as acceptance" of a third-party release.  Restatement (Second) of Contracts § 69 cmt. a (1981) (emphasis added).  The bankruptcy exists to resolve debtor's liabilities, not those of third parties.  And because, as noted above, *supra* ¶ 24, creditors have no affirmative obligation to act even as to a debtor's plan, they certainly can have no duty to respond to an offer to release non-debtors of liabilities that exist outside the bankruptcy case entirely.  Further, because impaired creditors have a federal right under the Bankruptcy Code to vote on a chapter 11 plan, 11 U.S.C. § 1126(a), merely exercising that right does not manifest consent to release claims against non-debtors.  Thus, the act of voting on a plan without taking an additional step to opt-out is still merely silence with respect to the non-debtor release.

35.     As explained by the Restatement, "[t]he mere receipt of an unsolicited offer does not impair the offeree's freedom of action or inaction"—in this case, the freedom to vote on a chapter 11 plan—"or impose on him any duty to speak," such as by checking an opt-out box or returning an opt-out form.  Restatement (Second) of Contracts § 69 cmt. a (1981).  Voting on a plan while failing to opt-out thus cannot be equated with affirmative conduct manifesting consent to the non-debtor release.  Just like the hypothetical creditors in *Smallhold* could not be forced to contribute $100 to a college fund to benefit the debtor's CEO's children merely because they failed to return a ballot with an "opt-out" box, *Smallhold*, 2024 WL 4296938, at *2, creditors who cast such a ballot should not be forced to make such a contribution merely because they failed to check that "opt-out" box.  State law affords no basis to conclude that consent to release *third-party* claims (which are governed by *nonbankruptcy* law) can properly be inferred from a party's mere failure to check an opt-out box on a ballot expressing views about the proposed treatment of a creditor's

17

claims against the *debtor* (governed by *bankruptcy* law). *See supra* ¶¶28-31. As a result, the "general proposition" that *Smallhold* recognized continues to apply: "creditors must *affirmatively express consent to the release* in order to be bound by it." *Id.* at \*8 (emphasis added); *accord* at \*10 ("[I]t is no longer appropriate to require creditors to object or else be subject to (or be deemed to 'consent' to) such a third-party release.").

36. Notably, the Ninth and Second Circuit cases cited by *Smallhold* do not support its conclusion that the act of voting on a chapter 11 plan while remaining silent regarding the non-debtor release constitutes consent. *Smallhold,* 2024 WL 4296938, at \*14 n.60 (citing *Berman v. Freedom Financial Network*, 30 F.4th 849, 856 (9th Cir. 2022); *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 75 (2d Cir. 2017)). Those cases emphasize the importance of notice as one prerequisite to consent, recognizing that "an offeree, *regardless of apparent manifestation of his consent*, is not bound by inconspicuous contractual provisions of which he is unaware, contained in a document whose contractual nature is not obvious." *Meyer*, 868 F.3d at 74 (internal quotation marks omitted; emphasis added). Those cases thus concern the requirements for when someone can be deemed on "inquiry notice" of terms they did not read. *See Berman*, 30 F.4th at 856; *Meyer*, 868 F.3d at 75. But while notice of a contractual term is certainly a necessary precondition to finding consent, notice is not alone sufficient. *See, e.g., Meyer*, 868 F.3d at 74; *Norcia*, 845 F.3d at 1284; Restatement (Second) of Contracts § 69 cmt. a (1981). Whether there has been sufficient notice of an offer is a distinct question from whether there has been a manifestation of an intent to accept that offer, particularly where the offer—*i.e.*, the proposed third-party release—amounts to a side agreement governed by nonbankruptcy law and benefiting distinct parties. As explained above, for that side agreement to be valid, there must also be a manifestation of consent to that

agreement. *See, e.g., Berman*, 30 F.4th at 85; *Norcia*, 845 F.3d at 1284; Restatement (Second) of Contracts § 69 cmt. a (1981).

## IV.    The Exculpation Provision is Overly Broad in Violation of Fifth Circuit Authority.

37.    The U.S. Trustee's objection to the Exculpation Provision raised in the Disclosure Statement Objection is not waived and is reincorporated herein by reference in its entirety. ECF No. 2061, ¶¶ 45-9. The change to the Exculpation Provision included in the Further Amended Plan does not resolve the U.S. Trustee's objection. The definition of "Exculpated Parties" continues to include the Reorganized Debtors and any independent director of a Debtor (including Patrick Bartels as independent director of Wolverine Intermediate Holding). The U.S. Trustee explained why that does not comport with the Fifth Circuit's direction in *NexPoint Advisors, L.P. v. Highland Cap. Mgmt. L.P. (In re Highland Cap. Mgmt., L.P.),* 48 F.4th 419, 437–38 (5th Cir. 2022), *cert. denied,*144 S. Ct. 2714 (2024), *and cert. denied* 144 S. Ct. 2715 (2024) in its previous objection. The main substantive change to the Exculpation Provision reads as follows:

> "Without affecting or limiting the releases set forth in Article VIII.D and Article VIII.E, and notwithstanding anything in the Plan to the contrary, to the fullest extent permitted by applicable law, no Exculpated Party shall have or incur, and each Exculpated Party shall be released and exculpated from, any claim or Cause of Action arising on or after during the period from the Petition Date to the Effective Date (and following the Effective Date solely with respect to any issuance or distribution of securities, the distribution of any property, or the implementation of the Restructuring, each pursuant to and in accordance with the Plan) in connection with or arising out of the administration of the Chapter 11 Cases;…"

Amended Plan, Art. VIII.F.

38.    This change does not provide the necessary temporal limitation to the Exculpation Provision because it seeks to include transactions and distributions that will take place "following the Effective Date." Exculpation in this Circuit is permissible only where it is limited to actions taken from the Petition Date until the Effective Date, not beyond that.

39.     Accordingly, as set forth herein and in the previous objection, the Exculpation Provision fails to comport with the Fifth Circuit's direction in *NexPoint Advisors, L.P. v. Highland Cap. Mgmt. L.P. (In re Highland Cap. Mgmt., L.P.),* 48 F.4th 419, 437–38 (5th Cir. 2022), *cert. denied,*144 S. Ct. 2714 (2024), *and cert. denied* 144 S. Ct. 2715 (2024), because it seeks exculpation for the Reorganized Debtors and any independent director of the Debtors, and for conduct after the Effective Date of the Amended Plan.

**V.     Objection to Waiver of Stay Pursuant to Fed. R. Bank. P. 3020(e)**

40.     Finally, in the event the Court overrules the objections of the U.S. Trustee to the Further Amended Plan, the U.S. Trustee objects to any waiver of the fourteen-day stay period pursuant to Fed. R. Bankr. P. 3020(e), which provides that "[a]n order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 3020(e).  The Committee Notes explain that subsection (e) was "added to provide sufficient time for a party to request a stay pending appeal of an order confirming a plan under chapter 9 or chapter 11 of the Code before the plan is implemented and an appeal becomes moot." *Id*.  The Debtors have presented no exigencies that would justify departing from the Rule's imposition of an automatic 14-day stay and impeding the ability to obtain appellate review.


DATED: December 12, 2024                    Respectfully submitted,

                                            KEVIN M. EPSTEIN
                                            UNITED STATES TRUSTEE

                                            */s/ Andrew Jiménez*
                                            Andrew Jiménez
                                            U.S. Department of Justice
                                            United States Trustee Program
                                            District of Columbia Bar 991907
                                            Email: Andrew.Jimenez@usdoj.gov
                                            515 Rusk Street, Suite 3516

Houston, TX 77002
(713) 718-4668
(713) 718-4670 Fax

**<u>Certificate of Service</u>**

I certify that, on December 12, 2024, a true and correct copy of foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on those parties registered to receive electronic notices.

*/s/ Andrew Jiménez*
Andrew Jiménez