IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| *In re*<br>**WESCO AIRCRAFT HOLDINGS, INC.**, *et al.*,[1]<br>    Debtors. | Case No. 23-90611 (MI)<br>Chapter 11<br>(Jointly Administered) |

# DECLARATION OF BRIAN E. CEJKA IN SUPPORT OF CONFIRMATION OF THE FURTHER MODIFIED SECOND AMENDED JOINT CHAPTER 11 PLAN OF WESCO AIRCRAFT HOLDINGS, INC., *ET AL.*

---

[1] The Debtors operate under the trade name Incora and have previously used the trade names Wesco, Pattonair, Haas, and Adams Aviation. A complete list of the Debtors in these chapter 11 cases, with each one's federal tax identification number and the address of its principal office, is available on the website of the Debtors' noticing agent at http://www.veritaglobal.net/incora/. The service address for each of the Debtors in these cases is 2601 Meacham Blvd., Ste. 400, Fort Worth, TX 76137.

I, Brian E. Cejka, declare under the penalty of perjury as follows:

1. I am a Managing Director in the North American Commercial Restructuring Practice at Alvarez & Marsal North America, LLC ("**A&M**"), a global professional services firm with principal offices located at 600 Madison Avenue, 8th Floor, New York, New York 10022. The Debtors retained A&M as restructuring advisors to assist the Debtors in these cases. *See Order Authorizing the Employment and Retention of Alvarez & Marsal North America, LLC as Restructuring Advisors to the Debtors and Debtors in Possession Effective as of the Petition Date* [Dkt. No. 481]. I received a Bachelor of Accounting from Southern Methodist University. I am a non-practicing Certified Public Accountant and a Certified Insolvency and Restructuring Advisor. I have more than 25 years of restructuring experience. Since joining A&M's North American Commercial Restructuring Practice, I have provided restructuring advice to companies, creditors, shareholders, and other interested parties on restructuring transactions both in chapter 11 and on an out-of-court basis.

2. I submit this declaration (this "**Declaration**") in support of the *Further Modified Second Amended Joint Chapter 11 Plan of Wesco Aircraft Holdings, Inc., et al.* [Dkt. No. 2408] (including any exhibits, schedules, or supplements thereto and as may be amended, modified, or supplemented from time to time in accordance with the terms thereof, the "**Plan**").[1] I am over the age of 18 and authorized to submit this Declaration.

3. I am knowledgeable about, and familiar with, the Debtors' business and financial affairs, day-to-day operations, books and records, the circumstances leading to the commencement of the Chapter 11 Cases, and the terms of the Plan. Except as otherwise indicated herein, the facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, or my opinion based upon my experience, knowledge, and information concerning the

---

[1] Capitalized terms used but not defined herein have the meanings in the Plan, the *Disclosure Statement for the Modified Second Amended Joint Chapter 11 Plan of Wesco Aircraft Holdings, Inc. et al.* [Dkt. No. 2083] (the "*Disclosure Statement*"), or the *Debtors' Memorandum of Law (I) in Support of Confirmation of the Further Modified Second Amended Joint Chapter 11 Plan of Wesco Aircraft Holdings, Inc. et al. and (II) in Response to Objections*, filed contemporaneously herewith, as applicable.

Debtors' operations and financial affairs. If called upon to testify, I could and would testify to the facts set forth herein on that basis.

4. Based upon my personal involvement in the negotiation of the terms of the Plan and the transactions embodied therein, as well as my discussions with the Debtors' other advisors, I believe the Plan was proposed in good faith, and the Debtors, acting through their officers, directors, managers, and advisors, have conducted themselves in good faith and fairly in relation to the formulation and negotiation of, and solicitation of votes on, the Plan.

## I. THE PLAN SATISFIES THE REQUIREMENTS OF SECTION 1129.

5. I am aware that the Debtors, as the proponents of the Plan, must demonstrate that the Plan satisfies the requirements of section 1129 of the Bankruptcy Code. Below I set out facts with respect to certain of those requirements, the events that have occurred during the pendency of the Chapter 11 Cases, my experience as the Debtors' financial advisor, and discussions I have had with the Debtors' other advisors and with members of the Debtors' management team. As set forth below, I believe the Plan satisfies all applicable provisions of section 1129 of the Bankruptcy Code.

### A. The Plan Satisfies the Requirements of Section 1129(a).

#### 1. *The Plan Complies with the Applicable Provisions of the Bankruptcy Code (§ 1129(a)(1)).*

6. I understand that Bankruptcy Code section 1129(a)(1) requires the Plan to comply with the applicable provisions of the Bankruptcy Code. As detailed below, I believe the Plan satisfies this requirement.

##### a. The Plan Satisfies the Classification Requirements of Section 1122.

7. The Plan provides for the following 11 Classes of Claims and Interests: (a) Class 1 (Priority Non-Tax Claims); (b) Class 2 (Other Secured Claims); (c) Class 3 (ABL Facility Claims); (d) Class 4a (Secured 1L Notes Claims); (e) Class 4b (1L Notes Deficiency Claims); (f) Class 4c (New Money Claims); (g) Class 5 (1.25L Notes Claims); (h) Class 6a (Secured 2026 Notes Claims); (i) Class 6b (2026 Notes Deficiency Claims); (j) Class 7a (General Unsecured Claims);

(k) Class 7b (General Unsecured Convenience Claims); (*l*) Class 8 (PIK Notes Claims); (m) Class 9 (Intercompany Claims); (n) Class 10 (Existing Equity Interests); and (o) Class 11 (Intercompany Interests).

8. I understand the Plan's classification scheme generally tracks the Debtors' prepetition capital structure and divides Claims and Interests into Classes based on the underlying instruments giving rise to those Claims and Interests:

- ***Class 1 (Priority Non-Tax Claims)***. Class 1 is comprised of Claims entitled to priority under section 507(a) of the Bankruptcy Code, other than Administrative Expenses (including DIP Financing Claims), and Priority Tax Claims.

- ***Class 2 (Other Secured Claims)***. Class 2 is comprised of Secured Claims other than Priority Tax Claims (except as set forth in Article II.F of the Plan), DIP Financing Claims, ABL Facility Claims, 1L Notes Claims, or 2026 Notes Claims. For the avoidance of doubt, 1.25L Notes Claims, 2024 Unsecured Notes Claims, 2027 Unsecured Notes Claims, and PIK Notes Claims are not Other Secured Claims.

- ***Class 3 (ABL Facility Claims)***. Class 3 is comprised of Claims arising on account of the "Obligations" under, and as defined in, the ABL Credit Agreement.

- ***Class 4a (Secured 1L Notes Claims)***. Class 4a is comprised of Claims that are Secured arising on account of the "Obligations" under the "Notes Documents," each as defined in the 1L Indenture.

- ***Class 4b (1L Notes Deficiency Claims)***. Class 4b is comprised of Claims that are not Secured arising on account of the "Obligations" under the "Notes Documents," each as defined in the 1L Indenture.

- ***Class 4c (New Money Claims)***. Class 4c is comprised of Claims for notes issued or attempted to be issued in exchange for the additional notes that were issued or attempted to be issued pursuant to that certain Note Purchase Agreement, dated as of March 28, 2022, by and among Wesco Holdings as issuer, certain purchasers party thereto, and the other parties thereto.

- ***Class 5 (1.25L Notes Claims)***. Class 5 is comprised of Claims arising on account of the "Obligations" under the "Note Documents," each as defined in the 1.25L Indenture.

- ***Class 6a (Secured 2026 Notes Claims)***. Class 6a is comprised of Claims that are Secured arising on account of, derived from, based upon or arising under the 2026 Indenture or related documents (excluding any Claim for payment or

- *Class 6b (2026 Notes Deficiency Claims)*. Class 6b is comprised of Claims that are not Secured arising on account of, derived from, based upon or arising under the 2026 Indenture or related documents.

- *Class 7a (General Unsecured Claims)*. Class 7a is comprised of all unsecured Claims other than Administrative Expenses, Other Secured Claims, Priority Tax Claims, Priority Non-Tax Claims, ABL Facility Claims, 1L Notes Claims, 2026 Notes Claims, 1.25L Notes Claims, PIK Notes Claims, General Unsecured Convenience Claims, or Intercompany Claims. For the avoidance of doubt, 2024 Unsecured Notes Claims and 2027 Unsecured Notes Claims are General Unsecured Claims.

- *Class 7b (General Unsecured Convenience Claims)*. Class 7b is comprised of unsecured Claims that are Allowed in an amount of $1,500,000 or less, other than Administrative Expenses, Other Secured Claims, Priority Tax Claims, Priority Non-Tax Claims, ABL Facility Claims, 1L Notes Claims, 1.25L Notes Claims, 2024 Unsecured Notes Claims, 2026 Notes Claims, 2027 Unsecured Notes Claims, PIK Notes Claims, or Intercompany Claims.

- *Class 8 (PIK Notes Claims)*. Class 8 is comprised of Claims against Wolverine Intermediate Holding Corporation arising on account of the PIK Notes, the PIK Notes Indenture, or other related documents.

- *Class 9 (Intercompany Claims)*. Class 9 is comprised of Claims against a Debtor held by any other Debtor.

- *Class 10 (Existing Equity Interests)*. Class 10 is comprised of Interests in any Debtor other than Intercompany Interests.

- *Class 11 (Intercompany Interests)*. Class 11 is comprised of Interests in any Debtor held by another Debtor.

9. I believe the Plan's classification structure is rational and appropriate because Claims and Interests assigned to each of the above Classes are substantially similar to the other Claims and Interests in such Class. Claims (rights to payment) are classified separately from Interests (representing ownership interests). The Plan provides for the separate classification of Claims and Interests based upon the different legal nature and/or priority of such Claims and Interests.

      b.       <u>The Plan Satisfies the Mandatory Plan Requirements of Section 1123(a).</u>

10.      ***Section 1123(a)(1).*** As set forth above, the Plan designates Classes of Claims and Interests as required by section 1123(a)(1).

11.      ***Sections 1123(a)(2)-(3).*** The Plan identifies Classes 1, 2, 3, 9, and 11 as Unimpaired or potentially Unimpaired and Classes 4a, 4b, 4c, 5, 6a, 6b, 7a, 7b, 7c, 8, 9, and 10 as Impaired or potentially Impaired. In addition, the Plan sets forth the treatment of the Claims and Interests in each Class. I understand this satisfies the requirements of sections 1123(a)(2) and (3) of the Bankruptcy Code.

12.      ***Section 1123(a)(4).*** The holders of Allowed Claims or Interests within each Class will receive the same treatment as all other holders of Allowed Claims or Interests within such Class. With respect to the Voting Classes, all holders of Allowed Claims in such classes—even those who vote to reject the Plan—will receive the same distributions on account of their Claims. Thus, the Plan satisfies section 1123(a)(4).

13.      ***Section 1123(a)(5).*** I believe the Plan provides for adequate and proper means for its implementation, which I understand is required by Bankruptcy Code section 1123(a)(5). Article IV of the Plan, as well as other provisions, sets forth the means by which the Plan will be implemented. Among other things, Article IV of the Plan effectuates the global settlement and authorizes the Debtors to issue new securities and engage in a series of restructuring transactions that will implement the economic terms of the Plan in a tax-efficient manner, to be described more precisely in the Plan Supplement.

14.      ***Section 1123(a)(6).*** I understand the securities being issued pursuant to the Plan are voting equity securities and Article IV of the Plan provides that the New Organizational Documents will prohibit the issuance of any non-voting equity securities to the extent required by section 1123(a)(6). Additionally, the New LLC Agreement (to be filed in the Plan Supplement) will expressly prohibit the issuance of non-voting securities. Accordingly, I believe the Plan satisfies section 1123(a)(6).

15. **Section 1123(a)(7).** Article IV of the Plan outlines the manner of selecting the officers, directors, and/or managers of the Reorganized Debtors and of the ultimate parent Reorganized Company, and these provisions are consistent with the interests of the debtors' claimholders and with public policy. Accordingly, I believe the Plan satisfies section 1123(a)(7).

   c. The Plan Satisfies the Discretionary Provisions of Section 1123(b).

16. I understand section 1123(b) of the Bankruptcy Code sets forth permissive provisions that may be incorporated into the Plan, including that the Plan may: (a) impair or leave unimpaired any class of claims or interests; (b) provide for the assumption or rejection of executory contracts and unexpired leases; (c) provide for the settlement or adjustment of any claim or interest belonging to the debtor or the estates; and (d) include any other appropriate provision not inconsistent with the applicable provisions of chapter 11. As set forth below, I believe the Plan is consistent with Bankruptcy Code section 1123(b).

17. Article III.B of the Plan describes the treatment of Unimpaired Classes and Impaired Classes, which I understand is consistent with section 1123(b) of the Bankruptcy Code. In addition, Article V.A of the Plan provides for the assumption of all Executory Contracts and Unexpired Leases other than those that are expressly rejected.

18. Further, as I understand, the Plan includes certain settlements, third-party releases, exculpations, and injunctions, which are the product of extensive good-faith, arm's-length negotiations, were a material inducement for parties to enter into the Restructuring Support Agreement and to extend the DIP and exit financing and are supported by the key constituencies of the Chapter 11 Cases. As set forth in section II of this Declaration, I believe these interconnected provisions are appropriate under the circumstances and, based upon my understanding of the Bankruptcy Code and discussions with the Debtors' legal advisors, these provisions are consistent with the Bankruptcy Code.

   d. The Plan Complies with Section 1123(d).

19. Article V.B of the Plan provides that the cure amounts for all assumed Executory Contracts and Unexpired Leases are $0.00 unless otherwise specified. The Debtors have filed a

Schedule of Assumed Executory Contracts and Unexpired Leases, which sets forth non-zero cure amounts for certain Executory Contracts and Unexpired Leases, and, consistent with the Plan, the Debtors have adjourned consideration of cure objections and will continue discussions with counterparties to resolve any cure disputes.

        **2.**      *The Debtors Have Complied with the Applicable Provisions of the Bankruptcy Code (§ 1129(a)(2)).*

20. I understand Bankruptcy Code section 1129(a)(2) requires the Debtors to comply with the applicable provisions of the Bankruptcy Code. I believe the Debtors have complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126.

21. On September 5, 2024, the Court entered an order [Dkt. No. 2086] approving the Disclosure Statement as containing "adequate information" within the meaning of section 1125 of the Bankruptcy Code and approved the Re-Solicitation Package. I understand that, in accordance with the re-solicitation and voting procedures, the Debtors re-solicited votes from holders of Claims and Interests in Classes 4a and 6a and that all other Classes entitled to vote have already been solicited according to the Solicitation and Voting Procedures previously approved by the Court in the *Order (I) Approving the Disclosure Statement, (II) Approving Solicitation and Voting Procedures, (III) Approving Forms of Ballots, (IV) Scheduling a Confirmation Hearing, and (V) Establishing Notice and Objection Procedures* [Dkt. No. 1228]. In addition, based on discussions with the Debtors' advisors, I understand that the Debtors' solicitation and tabulation of votes on the Plan thus far were proper and conformed with the solicitation procedures approved by the Bankruptcy Court and with the requirements of the Bankruptcy Code. I also understand, based on discussions with the Debtors' advisors, that the Debtors intend to continue soliciting votes from Classes 4a and 6a until the applicable voting deadline for such classes on December 20, 2024, in conformance with the solicitation procedures approved by the Bankruptcy Court and the requirements of the Bankruptcy Code.

22. The Debtors, following the filing of this Declaration, may make immaterial changes to the Plan prior to the Confirmation Hearing pursuant to section 1127 of the Bankruptcy Code. I

have no reason to believe any of those modifications will require additional disclosures or solicitation of votes.

        3.        *The Plan Was Proposed in Good Faith (§ 1129(a)(3)).*

        23.        I believe the Plan has been proposed in good faith and the Debtors' reasons for commencing the Chapter 11 Cases and proposing the Plan are consistent the purposes of the Bankruptcy Code. Specifically, I believe the Plan will enable Incora to deleverage its balance sheet, improve liquidity, and strengthen its operations—positioning reorganized Incora's business for long-term success. Moreover, the Plan is the product of extensive arm's-length negotiations among the Debtors and many of their leading creditors.

        4.        *The Plan Provides that the Debtors' Payment of Professional Fees and Expenses Are Subject to Court Approval (§ 1129(a)(4)).*

        24.        I understand the payment of the Retained Professional Fees is the only category of payments that falls within the ambit of section 1129(a)(4) in these Chapter 11 Cases, and the Plan prohibits payment of the Retained Professional Fees without Court approval. All Retained Professional Fees will be subject to prior Court approval as reasonable in accordance with section 1129(a)(4) of the Bankruptcy Code. Specifically, Article II.C of the Plan provides that Retained Professionals must file their final requests for payment of Retained Professional Fees no later than 60 calendar days after the Effective Date, thereby providing adequate time for the U.S. Trustee and all parties in interest to review such fees before a final fee hearing.

        5.        *The Debtors Have Disclosed All Necessary Information Regarding Directors, Officers, and Insiders (§ 1129(a)(5)).*

        25.        To the best of my knowledge, the Debtors have satisfied or will satisfy section 1129(a)(5) of the Bankruptcy Code. In the Plan Supplement, the Debtors will disclose the identities of persons proposed to serve on the Board of the Reorganized Company and all insiders that the Reorganized Debtors will employ or retain. In addition, the Debtors' current officers, who have guided Incora through the tumult of bankruptcy while cutting costs and gaining new customers, will retain their positions and will continue to serve at the discretion of the Board of the Reorganized Company.

### 6. The Plan Is in the Best Interests of All the Creditors (§ 1129(a)(7)).

26. I understand, based upon my discussions with the Debtors' legal advisors, that section 1129(a)(7) of the Bankruptcy Code, commonly known as the "best interest test," applies to individual dissenting holders of impaired claims and interests, and is generally satisfied through a comparison of the estimated recoveries by each such holder in a hypothetical chapter 7 liquidation of the applicable debtor on the plan effective date against the estimated recoveries under the proposed plan. I believe the Plan satisfies this requirement.

27. In connection with the development of the Plan and Disclosure Statement, the Debtors, with the assistance of their advisors, prepared a liquidation analysis attached to the Disclosure Statement at Exhibit C (the "*Liquidation Analysis*"). I am familiar with the Liquidation Analysis and its underlying financial data and assumptions, and I believe such assumptions are reasonable. I also believe the estimated aggregate amounts of Claims and the liquidation values of the Debtors' assets in the context of a liquidation are fair, reasonable, consistent with my extensive experience as a financial advisor to distressed companies and tailored to the Debtors' specific business and assets. Nothing has come to my attention since the Debtors filed the Disclosure Statement that would lead me to believe the Liquidation Analysis should be revised.

28. The projected recoveries under the Plan and those estimated in the Liquidation Analysis are as follows:

| Class and Designation | Plan Recoveries | Liquidation Recoveries | |
| --- | --- | --- | --- |
| | | Low | High |
| Carveout Reserve Claims[2] | 100.0% | 100.0% | 100.0% |
| DIP Claims | 100.0% | 77.3% | 100.0% |

---

[2] Carve-out reserve claims, defined as the "Carve-Out" in the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Liens and Providing Superpriority Administrative Expense Claims, (III) Granting Adequate Protection to Prepetition Secured Parties, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Dkt. No. 396], include any outstanding Professional Fees, fees required to be paid to the Claims Register and the U.S. Trustee, and fees and expenses up to $100,000 incurred by a trustee under section 726(B) of the Bankruptcy Code that have not been paid prior to the Conversion Date, as well as an aggregate amount not to exceed $6.0 million for the Post-Trigger Fee Cap.

| Class and Designation | Plan Recoveries | Liquidation Recoveries | |
|---|---|---|---|
| | | Low | High |
| Administrative Claims | 100.0% | 0.0% | 0.4%[3] |
| Priority Tax Claims | 100.0% | 0.0% | 0.8% |
| 1 Priority Non-Tax Claims | N/A | N/A | N/A |
| 2 Other Secured Claims | 100.0% | 100.0% | 100.0% |
| 3 ABL Facility Claims | 100.0% | 100.0% | 100.0% |
| 4 1L Notes Claims[4] | 40.0%-67.0% | 0.0% | 4.1% |
| 5 1.25L Notes Claims | 0.0% | 0.0% | 0.0% |
| 6 2026 Notes Claims[5] | 50.0%-83.0% | 0.0% | 5.1% |
| 7a General Unsecured Claims | 2.0%-4.0% | 0.0% | 0.0% |
| 7b General Unsecured Convenience Claims | 10.0% | 0.0% | 0.0% |
| 7c 2024 Unsecured Notes Claims | 2.0%-4.0% | 0.0% | 0.0% |
| 8 PIK Notes Claims | 0.0% | 0.0% | 0.0% |
| 9 Intercompany Claims | 0.0% or 100.0% | 0.0% | N/A[6] |
| 10 Existing Equity Interests | N/A | 0.0% | 0.0% |
| 11 Intercompany Interests | N/A | 0.0% | 0.0%[7] |

---

[3]  Recovery of individual Administrative Expenses range from 0.0%-5.0% depending on the Debtor and range from 0.0% - 0.4% on a consolidated basis.

[4]  The 1L Notes Claims includes those in Class 4a (Secured 1L Notes Claims), Class 4b (1L Notes Deficiency Claims), and Class 4c (New Money Claims).

[5]  The 2026 Notes Claims includes those in Class 6a (Secured 2026 Notes Claims) and Class 6b (2026 Notes Deficiency Claims).

[6]  Recovery on Intercompany Claims is estimated to range from 0 - 100% depending on the Debtor.

[7]  Recovery on Intercompany Interests is estimated to range from 0 - 100% depending on the Debtor.

- 10 -

29. In comparing the estimated recoveries under the Plan to the estimated recoveries in the Liquidation Analysis, I believe the projected recoveries for all creditors under the Plan are equal to or more than the recoveries estimated in a hypothetical chapter 7 liquidation. Accordingly, I believe the Plan complies with section 1129(a)(7) of the Bankruptcy Code.

### 7. *The Plan Has Been or Will Be Accepted by All Impaired Classes Except Those That Are Subject to Cram-Down (§ 1129(a)(8)).*

30. I understand section 1129(a)(8) of the Bankruptcy Code requires that each impaired class of claims or interests must accept the plan. Holders of Claims and Interests in Class 4b (1L Notes Deficiency Claims), Class 4c (New Money Claims), Class 5 (1.25L Notes Clams), Class 6b (2026 Notes Deficiency Claims), Class 8 (PIK Notes Claims), Class 9 (Intercompany Claims) (in the event Intercompany Claims are not Reinstated), and Class 10 (Existing Equity Interests) are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Furthermore, I understand Class 7a has voted to reject the Plan. Nevertheless, as discussed below, I believe the Plan can still be confirmed because it satisfies the "cram down" provisions of section 1129(b) of the Bankruptcy Code with respect to Classes 4b, 4c, 5, 6b, 7a, 8, 9, and 10.

### 8. *The Plan Provides for Payment in Full of All Allowed Priority Claims (§ 1129(a)(9)).*

31. I am aware that section 1129(a)(9) of the Bankruptcy Code requires that certain priority claims be paid in full on the effective date of a plan and that the holders of certain other priority claims receive certain specified deferred cash payments. The Plan provides that each holder of an Allowed General Administrative Expense Claim will receive Cash equal to the Allowed amount of such Claim on the Effective Date (or, if payment is not then due, then in the applicable Debtor's ordinary course of business). In addition, the Plan provides that holders of Allowed Priority Tax Claims shall be treated in accordance with the terms set forth in section 1129(a)(9)(C). Therefore, I believe the Plan satisfies the requirements of section 1129(a)(9).

      **9.     *At Least One Class of Impaired, Non-Insider Claims Accepted the Plan (§ 1129(a)(10)).***

      32.    I understand, based upon my discussions with the Debtors' legal advisors, that section 1129(a)(10) of the Bankruptcy Code provides that at least one impaired class of claims must accept the plan "without including any acceptance of the plan by any insider." I understand that Class 7b, which is Impaired, voted to accept the Plan independent of any insiders' votes.

      **10.    *The Plan Is Feasible (§ 1129(a)(11)).***

      33.    I am aware that section 1129(a)(11) of the Bankruptcy Code requires a plan to be feasible—*i.e.*, not likely to be followed by liquidation or the need for further financial reorganization. Based upon my understanding of the Plan, my discussions with the Debtors' advisors and management team, and my experience with, and knowledge of, the Debtors' business and industry, I believe that the Plan is feasible: the Plan will allow the Reorganized Debtors to emerge as a competitive, financially flexible, and healthy company and is not likely to be followed by liquidation or the need for further financial reorganization. This conclusion is based upon, among other things, the Debtors' analysis of their ability to meet their obligations under the Plan, as well as the consolidated Financial Projections the Debtors have prepared for each fiscal year following the Effective Date through 2029. Those Financial Projections, and the assumptions on which they are based, are set forth in **<u>Exhibit A</u>** attached to this Declaration.

      34.    I reviewed the Financial Projections and believe the Financial Projections were based on reasonable assumptions based upon the current views and understanding of the members of the Debtors' management, each of whom has years of experience in, and an intimate understanding of, the aerospace industry (among other specialized industry experience). Specifically, the Financial Projections were developed based on the Debtors' business plan, which covers the period from fiscal year 2024 through fiscal year 2029, and supplemented by actual performance through September 30, 2024, as well as current and projected conditions in each of the Debtors' markets and businesses.

35. The Financial Projections assume the Plan will be consummated by December 31, 2024. Based on the Financial Projections, the Reorganized Debtors will have the ability to make all the payments and distributions required pursuant to the Plan. As the Financial Projections show, the Reorganized Debtors' improved financial performance is projected to result in $128 million of Adjusted EBITDA in fiscal year 2024, which will grow to $275 million in fiscal year 2029.

36. Further, although characterized as debt, the New Takeback Notes will not require cash interest payments or a cash principal payment at any point and, as such, should be viewed similar to convertible equity for purposes of the feasibility analysis. Thus, the New Takeback Notes are presented distinctly from the New Revolver Facility and New Exit Notes on the balance sheet to allow parties-in-interest to discern between operating leverage and total leverage.

37. The Financial Projections were prepared on a holistic basis, utilizing a number of reasonable and good-faith assumptions based upon the current views and understanding of the Debtors' management, and were informed by the current understanding of the conditions in the Debtors' markets. I do not believe any changes have taken place since the Financial Projections in Exhibit A were prepared that require further modifications or amendments to the Financial Projections. The Financial Projections have been shared with advisors to the Committee, to the First Lien Noteholder Group, and to the 2024/2026 Noteholder Group.

### 11. *All Statutory Fees Have Been or Will Be Paid (§ 1129(a)(12)).*

38. Article II.D of the Plan provides that all Statutory Fees, to the extent not previously paid, must be paid on the Effective Date and thereafter as required until the Chapter 11 Cases are closed, dismissed, or converted to cases under chapter 7 of the Bankruptcy Code.

### 12. *The Plan Honors Outstanding Benefits (§ 1129(a)(13)).*

39. I understand that section 1129(a)(13) of the Bankruptcy Code requires that all retiree benefits continue post-confirmation at the levels established in accordance with section 1114 of the Bankruptcy Code. Pursuant to Article V of the Plan, the Debtors will assume all Compensation and Benefit Plans. Accordingly, I believe the Plan satisfies section 1129(a)(13).

### B. The Plan Satisfies Cram-Down Requirements with Respect to Rejecting Classes (§ 1129(b)).

40. I understand that section 1129(b)(1) of the Bankruptcy Code excuses a plan's compliance with section 1129(a)(8) (*i.e.*, not all impaired classes of claims have accepted the plan) so long as all other components of section 1129(a) are satisfied, and the Plan is "fair and equitable" and "does not discriminate unfairly" with respect to rejecting classes.

41. I further understand, based upon my discussions with the Debtors' legal advisors, that to be "fair and equitable" with respect to a class of claims or interests, no holder of claims or interests in a class junior to the rejecting impaired class will receive or retain property under the plan on account of such junior claim or interest. Under the Plan, no holders of Claims in Classes that are junior to Classes 4b, 4c, 5, 6b, 7a, 8, and 10 will receive or retain any property on account of those Claims, and there are no Interests junior to Interests in Class 10. Accordingly, I believe the Plan is fair and equitable with regard to the rejecting Classes.

42. Further, based upon my discussions with the Debtors' legal advisors, I understand that unfair discrimination occurs when similarly situated classes are treated differently without a reasonable basis. I do not believe the Plan discriminates unfairly with respect to Class 4b (1L Notes Deficiency Claims), Class 4c (New Money Claims), Class 5 (1.25L Notes Claims), Class 6b (2026 Notes Deficiency Claims), Class 7a (General Unsecured Claims), Class 8 (PIK Notes Claims), or Class 10 (Existing Equity Interests). As discussed above, the Claims and Interests in each such Class are legally distinct in nature from the Claims and Interests, as applicable, in any other Class. Therefore, given that the Claims and Interests in Classes 4b, 4c, 5, 6b, 5, 7a, 8, and 10 are "dissimilar" from the Claims and Interests in all other Classes, the Plan does not discriminate unfairly with respect to those Classes.

43. Finally, the cramdown requirements should not be applied to Intercompany Claims (Class 9), which have no economic substance and will be impaired only to preserve, improve, or simplify the accounting or tax position of the Reorganized Debtors' enterprise. In any event, each

holder of an Intercompany Claim is a proponent of the Plan and has therefore waived any objection to its treatment under the Plan.

### C. Only One Plan Has Been Proposed (§ 1129(c)).

44. The Plan is the only plan that the Debtors are seeking confirmation for.

### D. The Purpose of the Plan Is Not to Avoid Taxes or Application of the Securities Act (§ 1129(d)).

45. I can confirm that the purpose of the Plan is not to avoid taxes or the application of section 5 of the Securities Act, and no governmental unit has requested that the Court decline to confirm the Plan on such grounds.

### E. Other Requirements of Section 1129 Are Not Applicable to the Plan.

46. Based on my understanding of the Plan and discussion with the Debtors' legal advisors, the following provisions of the Bankruptcy Code are inapplicable to the Plan: (a) section 1129(a)(6) because the Debtors are not subject to the jurisdiction of any governmental regulatory commission; (b) section 1129(a)(14) because the Debtors do not have domestic support obligations; (c) section 1129(a)(15) because no Debtor is an individual; (d) section 1129(a)(16) because each of the Debtors that is a corporation is a moneyed, business, or commercial corporation; and (e) section 1129(e) because none of the Chapter 11 Cases is a small business case.

## II. THE THIRD-PARTY RELEASES, EXCULPATIONS, AND INJUNCTIONS SET FORTH IN THE PLAN ARE APPROPRIATE.

47. I understand the Plan includes certain third-party releases, exculpations, and injunctions, and as noted above, I believe these provisions are appropriate under the circumstances.

### A. The Consensual Third-Party Release Is Appropriate.

48. Article VIII.E of the Plan contains Third-Party Releases, whereby each Releasing Party releases any and all claims and Causes of Action such party could assert against the Released Parties.

49. The Third-Party Release is binding on all parties who do not affirmatively opt out of the Third-Party Release. Thus, the Third-Party Release is consensual. The parties that validly and

timely opted out of the Third-Party Release contained in the *Modified First Amended Joint Chapter 11 Plan of Wesco Aircraft Holdings, Inc., et al.*[Dkt. No. 1223] are deemed to opt out of the Third-Party Release contained in the Further Modified Second Amended Plan.

50. Moreover, the Third-Party Release are integral to the Plan and a condition of the Global Settlement. The Plan, including the Third-Party Release, was heavily negotiated by sophisticated parties, each of whom was represented by competent counsel and financial advisors. The consensual Third-Party Release is a key component of the Restructuring and was a critical inducement to bringing stakeholder groups to the bargaining table. Moreover, the Third-Party Release was given for consideration, and each Releasing Party has made a substantial contribution to the Chapter 11 Cases. Thus, I believe the Third-Party Release is justified and complies with controlling law and should therefore be approved.

B.  **The Exculpation Provision is Appropriate**

51. Article VIII.F of the Plan provides exculpation to the Exculpated Parties from claims and Causes of Action arising out of or in connection with the administration of the Chapter 11 Cases and certain related transactions, except for acts or omissions that constitute a criminal act, intentional fraud or willful misconduct as determined by a Final Order (the "***Exculpation Provision***"). The Exculpated Parties include: (a) the Debtors, (b) the Reorganized Debtors, (c) the Committee and its members, and (d) any independent director of a Debtor (including Patrick Bartels as independent director of Wolverine Intermediate Holding). I believe the Exculpation Provision represents an integral piece of the overall settlements embodied by the Plan and is the product of good faith, arm's-length negotiations. As such, I believe the Exculpation Provision should be approved.

C.  **The Plan Injunction is Appropriate.**

52. I understand the injunction provision set forth in Article VIII.G of the Plan (the "***Injunction Provision***") implements the Plan's release and exculpation provisions by permanently enjoining all persons and entities from commencing any actions and seeking any form of relief released or exculpated by the Plan or the Confirmation Order. Additionally, the Injunction

Provision provides that no person or entity shall treat, or cause any other person or entity to treat, any stock (within the meaning of Section 382(g)(4)(D) of the Internal Revenue Code of 1986, as amended) of any Debtor held by any 50-Percent Shareholder as "becoming worthless" (within the meaning of Section 382(g)(4)(D) of the Internal Revenue Code of 1986, as amended), with respect to any taxable year ending prior to the Effective Date. I believe that the Injunction Provision is narrowly tailored to achieve its purpose and therefore should be approved.

*[Remainder of Page Intentionally Left Blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: December 15, 2024

*/s/ Brian Cejka*
Brian Cejka
Managing Director
Alvarez & Marsal North America, LLC

**Exhibit A**

## CERTIFICATE OF SERVICE

I certify that, on December 15, 2024, a true and correct copy of the foregoing document was served through the Electronic Case Filing system of the United States Bankruptcy Court for the Southern District of Texas, and will be served as set forth in the Affidavit of Service to be filed by the Debtors' proposed noticing agent.

Dated: December 15, 2024

/s/ Charles A. Beckham, Jr.

Charles A. Beckham, Jr.