# In the United States Bankruptcy Court
# for the Southern District of Texas
# Houston Division

| | |
|---|---|
| *In re* <br> **Wesco Aircraft Holdings, Inc.**, *et al.*,[1] <br><br> Debtors. | Case No. 23-90611 (MI) <br> Chapter 11 <br> (Jointly Administered) |

# Declaration of Patrick Bartels in Support of Confirmation of the Further Modified Second Amended Joint Chapter 11 Plan of Wesco Aircraft Holdings, Inc., *et al.*

---

[1] The Debtors operate under the trade name Incora and have previously used the trade names Wesco, Pattonair, Haas, and Adams Aviation. A complete list of the Debtors in these chapter 11 cases, with each one's federal tax identification number and the address of its principal office, is available on the website of the Debtors' noticing agent at http://www.kccllc.net/incora/. The service address for each of the Debtors in these cases is 2601 Meacham Blvd., Ste. 400, Fort Worth, TX 76137.

I, Patrick Bartels, declare under penalty of perjury as follows:

1. I submit this declaration (this "**Declaration**") in support of confirmation of the *Further Modified Second Amended Joint Chapter 11 Plan of Wesco Aircraft Holdings, Inc. et al.* [Docket No. 2408] (as may be amended, supplemented, or modified from time to time, the "**Plan**").

2. Except as otherwise indicated, all statements in this Declaration are based on (i) my experience and personal knowledge, (ii) my review of relevant documents, or (iii) information provided to me by, or discussions with, the Debtors' advisors. If called upon to testify, I could and would testify to the statements set forth herein. I am over the age of 18 years and authorized to submit this Declaration.

3. I have served as a director on the Board of Directors of Wolverine Intermediate Holding Corporation (the "**Board**") since February 2022.

4. I received a Bachelor of Science in Accounting with a concentration in Finance from Bucknell University. I am the Managing Member of Redan Advisors LLC, and I have served and currently serve on the boards of directors of other public and private companies.

## THE COMMITTEE SETTLEMENT

5. During the course of the Debtors' chapter 11 Cases (the "**Chapter 11 Cases**"), I reviewed the potential causes of action addressed in the Committee Settlement (as defined in the *Debtors' Memorandum of Law (I) In Support of Confirmation of the Modified First Amended Joint Chapter 11 Plan of Wesco Aircraft Holdings, Inc. et al. and (II) In Response to Objections*). I received significant assistance from the Debtors' advisors in conducting this review. Among other things, I received materials from and discussed with Debtors' counsel claims related to the January 9, 2020 leveraged buyout that combined Wesco and Pattonair into one company; claims related to the 2022 recapitalization transaction; claims related to the services performed by Platinum Equity

for the Debtors pursuant to a Corporate Advisory Services Agreement; and claims related to an amendment made to the Debtors' ABL Credit Agreement (collectively, the "**Potential Claims**").

6. As part of this work, I met with the Debtors' advisors and reviewed materials where appropriate. I had access to and reviewed documents and information subject to the Debtors' attorney-client privilege, including, for example, presentations and other materials prepared by the Debtors' counsel concerning the 2020 leveraged buyout, as well as unredacted versions of board minutes. Further, I was advised by the Debtors' advisors that they discussed pertinent issues with employees and participated in numerous depositions involving questions concerning the Potential Claims. During the course of my work, I asked questions of the Debtors' advisors and requested additional information during the course of these meetings. In addition to scheduled meetings, I communicated with the Debtors' advisors concerning these issues through email and telephone discussions.

7. Based on the advice I received from the Debtors' advisors and my knowledge and experience, I considered whether the Debtors had any claims for, among other claims, fraudulent transfer, breach of fiduciary duty, or preference actions that were colorable—that is, whether such claims had a possibility of success if litigated. I also considered the estimated time and expense of pursuing claims and the potential recoveries.

8. After review of the terms of the proposed Committee Settlement, I concluded that it is reasonable and is in the best interests of the Debtors' estates and all holders of claims and interests. I reached this conclusion for several reasons, including that the Committee Settlement is supported by the Debtors' most critical economic stakeholders and would avoid a contested confirmation among the settling parties and the associated risk and delay. In addition, the Potential

Claims faced legal and factual challenges which significantly reduced the potential value of litigation.

9. The Committee Settlement allows the Debtors to avoid costly litigation over claims that have a low likelihood of success and provides a path forward to a successful emergence from chapter 11. As such, I believe that the Committee Settlement should be approved by the Bankruptcy Court.

## THE RELEASES

10. Article VIII.D of the Plan contains certain releases by the Debtors with respect to the Released Parties (as such term is defined in the Plan) (the "**Debtor Releases**"). I believe that the Debtor Releases are justified.

11. The Plan, including the Debtor Releases, was negotiated by the Debtors and certain of the Released Parties (as defined in the Plan), all of whom were represented by counsel and financial advisors, and I have been advised that the Debtor Releases were a material inducement for parties to provide their support for the Plan. Moreover, I have been advised that the causes of action released by the Debtor Releases do not have a high value to the estate based on their likelihood of success.

12. The Released Parties have provided and continue to provide integral support to the Debtors throughout the Chapter 11 Cases and have meaningfully contributed to the Debtors' proposed reorganization. Certain of the Released Parties agreed to provide the Debtors with much-needed liquidity through the Chapter 11 Cases in the form of DIP Financing. The Released Parties also have agreed to support the Debtors' restructuring and to vote in favor of the Plan, allowing for a consensual plan confirmation.

13. The Debtor Releases are also narrowly tailored. Specifically, the Debtor Releases do not release any of the Released Parties from claims or causes of action unknown to the Debtors as of the Effective Date (as defined in the Plan) that arise out of actual fraud or gross negligence of an entity other than a Debtor. Further, the Debtor Releases do not release any post-Effective Date obligations or claims related to those obligations the Debtors may have.

14. I support the inclusion of the Debtor Releases in the Plan.

## **CONCLUSION**

15. For the reasons set forth herein, I believe that (i) the Committee Settlement should be approved by the Court, and (ii) the Debtor Releases are appropriate.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: December 15, 2024

*/s/ Patrick Bartels*
Patrick Bartels