## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re:<br>**WESCO AIRCRAFT HOLDINGS, INC.**, *et al.*,[1]<br>Debtors. | Chapter 11<br>Case No. 23-90611 (MI)<br>(Jointly Administered) |

**STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN SUPPORT OF THE COMMITTEE SETTLEMENT INCORPORATED INTO THE FURTHER MODIFIED SECOND AMENDED JOINT CHAPTER 11 PLAN OF WESCO AIRCRAFT HOLDINGS, INC., *ET AL*.**

**(Related to Docket Nos. 1025, 1191, 1727, 1728, and 2408)**

**MCDERMOTT WILL & EMERY LLP**

Charles R. Gibbs
Texas State Bar No. 7846300
Jack G. Haake
Texas State Bar No. 24127704
2501 North Harwood Street, Suite 1900
Dallas, TX  75201-1664

– and –

Kristin K. Going (admitted *pro hac vice*)
Darren Azman (admitted *pro hac vice*)
Deanna Boll (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, NY  10017-5404

**MORRISON & FOERSTER LLP**

Lorenzo Marinuzzi (admitted *pro hac vice*)
Theresa A. Foudy (admitted *pro hac vice*)
Michael Birnbaum (admitted *pro hac vice*)
Benjamin Butterfield (admitted *pro hac vice*)
Raff Ferraioli (admitted *pro hac vice*)
250 West 55th Street
New York, NY  10019-9601

*Counsel to the Official Committee of Unsecured Creditors of Wesco Aircraft Holdings, Inc., et al.*

---

[1] The Debtors operate under the trade name Incora and have previously used the trade names Wesco, Pattonair, Haas, and Adams Aviation.  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at http://www.kccllc.net/incora/.  The service address for each of the Debtors in these cases is 2601 Meacham Blvd., Ste. 400, Fort Worth, TX 76137.

ny-2755498

The Official Committee of Unsecured Creditors (the "Committee") of Wesco Aircraft Holdings, Inc. and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors"), respectfully submits this statement (this "Statement") regarding the *Further Modified Second Amended Joint Chapter 11 Plan of Wesco Aircraft Holdings, Inc., et al.* [Docket No. 2408] (as amended, the "Plan").[2] In support of this Statement, the Committee relies upon the *Declaration of Joseph Denham in Support of the Statement of the Official Committee of Unsecured Creditors in Support of the Committee Settlement Incorporated into the Further Modified Second Amended Joint Chapter 11 Plan of Wesco Aircraft Holdings, Inc., et al.* (the "**Denham Declaration**") (attached hereto as **Exhibit A**) and respectfully represents as follows:

## PRELIMINARY STATEMENT

1. Shortly after its appointment on June 16, 2023, the Committee commenced an in-depth, comprehensive, and independent investigation into the Debtors' prepetition activities. The Committee focused its investigation on the leveraged buyout that closed in January 2020 (the "LBO") and the non-contractual claims arising from the 2022 Financing Transactions. The Committee identified numerous colorable claims and filed the Committee Standing Motion.[3] Ultimately, in January 2024, the Committee Standing Motion was resolved, and the terms of the settlement (the "Committee Settlement") were set forth in the Committee Settlement Stipulation.[4]

---

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Plan or the Committee Standing Motion unless otherwise stated.

[3] The "Committee Standing Motion" means the *Corrected Omnibus (I) Motion of the Official Committee of Unsecured Creditors for Exclusive Leave, Standing, and Authority to Prosecute and Settle Certain Claims, Causes of Action, and Claim Objections on Behalf of the Debtors' Estates and (II) Claim Objection* [Docket No. 1025].

[4] The "Committee Settlement Stipulation" means the *Stipulation Regarding (A) Corrected Omnibus (I) Motion of the Official Committee of Unsecured Creditors for Exclusive Leave, Standing, and Authority to Prosecute and Settle Certain Claims, Causes of Action, and Claim Objections on Behalf of the Debtors' Estates and (II) Claim Objection and (B) First Amended Joint Chapter 11 Plan of Wesco Aircraft Holdings, Inc. et al.* [Docket No. 1191].

ny-2755498

Pursuant to the terms of the Committee Settlement Stipulation, general unsecured creditors are entitled to, *inter alia*, a *pro rata* distribution of a pool of New Common Equity, the establishment of a convenience class, and the waiver and release of any potential preference claims.

2.    The Committee Settlement satisfies each of the factors under Bankruptcy Rule 9019 and should be approved.  As described below, the Committee Settlement is reasonable, represents a good-faith and arm's-length resolution of the various colorable claims asserted in the Committee Standing Motion, and is in the best interests of creditors.  Accordingly, the Committee Settlement, as appropriately incorporated into the Plan, should be approved pursuant to Bankruptcy Rule 9019.

## BACKGROUND

**A.  General Background**

3.    On June 1, 2023, the Debtors commenced voluntary cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.*, as amended (the "Bankruptcy Code").  The Debtors are authorized to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.    On June 16, 2023, pursuant to section 1102 of the Bankruptcy Code, the Office of the United States Trustee for Region 7 (Southern and Western Districts of Texas) (the "U.S. Trustee") appointed the following entities as members of the Committee:  (a) BOKF, N.A.; (b) Parker Hannifin Corporation; and (c) Insight2Profit [Docket No. 261].

5.    On July 24, 2023, the Committee filed the *Application of the Official Committee of Unsecured Creditors of Wesco Aircraft Holdings, Inc., et al., for Entry of an Order Authorizing the Employment and Retention of Morrison & Foerster LLP as Counsel, Effective as of June 23, 2023* [Docket No. 458] (the "Retention Application").  On September 6, 2023, the Court entered an order approving the Retention Application [Docket No. 722].  The Committee also selected McDermott Will & Emery LLP to serve as co-counsel to the Committee in these cases.

3

ny-2755498

6.  On July 24, 2023, the Committee filed the *Application of the Official Committee of Unsecured Creditors for Entry of an Order Authorizing the Employment and Retention of Piper Sandler & Co. LLP as Investment Banker to the Official Committee of Unsecured Creditors, Effective June 27, 2023* [Docket No. 459] (the "IB Retention Application").  On September 6, 2023, the Court entered an order approving the IB Retention Application [Docket No. 721].

7.  On July 24, 2023, the Committee filed the *Application of the Official Committee of Unsecured Creditors for Entry of an Order Authorizing the Employment and Retention of Province, LLC as Financial Advisor to the Official Committee of Unsecured Creditors, Effective June 27, 2023* [Docket No. 460] (the "FA Retention Application").  On September 6, 2023, the Court entered an order approving the FA Retention Application [Docket No. 715].

8.  Additional information regarding the Debtors' business, their capital structure, and the circumstances leading to the filing of these Chapter 11 Cases is set forth in the *Declaration of Raymond Carney in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 13].

**B.  The Committee's Investigation and Standing Motion**

9.  Shortly after its appointment, the Committee commenced an in-depth, comprehensive, and independent investigation into the Debtors' prepetition activities, including the 2022 Uptier Transaction and the LBO.  *See Denham Declaration* ¶10.  The Committee's advisors reviewed tens of thousands of pages of materials produced in discovery, including board materials, historical and projected financial information about the Debtors, and emails and other communications during the course of the investigation.  *See Denham Declaration* ¶10.

10. Notably, and unlike the parties to the 2022 Financing Adversary Proceeding, the Committee's investigation was not centered on whether the 2022 Uptier Transaction was permitted under the governing contracts.  *See Denham Declaration* ¶10.  Instead, the Committee was focused

4

ny-2755498

on identifying colorable claims worthy of pursuit that the 2022 Uptier Transaction or the LBO gave rise to avoidable transfers, whether the Debtors' board of directors breached their fiduciary duties in approving the 2022 Uptier Transaction or the LBO, and whether the parties involved in those transactions engaged in conduct that could justify equitable subordination of their claims or secondary liability in connection with any fraudulent transfer or breach of fiduciary duty claims. *See id*.

11. This investigation culminated in the identification of numerous colorable claims. On December 5, 2023, the Committee filed the Committee Standing Motion by which the Committee sought derivative standing to assert and settle, among other things, certain claims and causes of action against various proposed defendants arising from, among other things, the 2022 Uptier Transaction and the LBO, on behalf of the Debtors' estates as set forth in the proposed complaint attached to the Committee Standing Motion as Exhibit B. The Committee's proposed causes of action generally fall into the following five categories: (1) causes of action, including constructive fraudulent transfer, breach of fiduciary duties, and equitable subordination, seeking to avoid certain transfers and to challenge certain decisions relating to the merger of Wesco and Pattonair into one combined company—Incora—pursuant to the LBO; (2) a constructive fraudulent transfer claim seeking to challenge payments of advisory fees to Platinum purportedly made in exchange for advisory services; (3) causes of action, including actual and constructive fraudulent transfer, insider preferential transfer, breach of fiduciary duties, aiding and abetting and knowingly participating in breach of fiduciary duties, and equitable subordination, in connection with the 2022 Uptier Transaction; (4) causes of action, including breach of fiduciary duties and constructive fraudulent transfer, in connection with a 2022 amendment to the Debtors' ABL Facility; and (5) a claim seeking to avoid unperfected security interests in certain of the Debtors'

bank accounts, director and officer insurance policies, and commercial tort claims. The Committee Standing Motion also sought the disallowance of claims for applicable premium or make-whole amounts as unmatured interest and argued that any claims asserted by Carlyle or Platinum should be disallowed unless and until they have returned certain payments received from the Debtors.

### C. The Committee Settlement

12. Notwithstanding the Committee's efforts to identify and seek standing to pursue colorable claims, the Committee and its advisors remained committed to a consensual resolution of the Chapter 11 Cases. To that end, the Committee and its advisors continued to diligently engage with the Debtors and major case stakeholders. During the weeks leading up to the filing of the Committee Standing Motion, the Committee engaged in discussions with the Debtors, the First Lien Noteholder Group, the 2024/2026 Noteholder Group, and Langur Maize concerning a possible resolution of the claims and causes of action identified by the Committee. *See Denham Declaration* ¶13. Prior to filing the Committee Standing Motion, in late October 2023, Debtors' counsel sent Committee counsel a short email that contained the "key economic terms" of a restructuring proposal from the First Lien Noteholder Group. *See id.* That proposal failed to appropriately ascribe value to any claims and causes of action identified by the Committee and was viewed by the Committee as a non-starter. *See id.* Following extensive negotiations over the course of the following weeks, principally among the advisors to the Committee and the First Lien Noteholder Group, the Committee provided a responsive settlement proposal in mid-November 2023. *See id.* This marked the first of multiple rounds of settlement negotiations among the parties, and discussions continued during the period leading up to and after the Committee filed the Committee Standing Motion. *See id.* These discussions culminated in a settlement by which

the Committee agreed to support a chapter 11 plan that is acceptable to the Committee that would resolve the Committee Standing Motion.

13. The terms of this settlement are set forth in the Committee Settlement Stipulation and are incorporated in the Plan. The resolution includes the following terms:

- The pro rata distribution of 3.5% of the New Common Equity (the "Settlement Equity Pool") to holders of general unsecured claims subject to dilution by any New Common Equity issued in respect of the Management Incentive Plan.[5]

- The establishment of a "convenience class" consisting of unsecured claims of up to $1.5 million that will receive 10% recovery from a $7.5 million cash pool (the "Settlement Cash Pool," and together with the Settlement Equity Pool, the "Settlement Distributions"), instead of sharing pro rata in the Settlement Equity Pool. General unsecured creditors had the opportunity to opt into the convenience class by making a ballot election to waive any amount of their claims above the $1.5 million threshold.

- The holders of 1L Notes Claims shall not receive any distributions from the Settlement Distributions on account of any deficiency claim in respect of such 1L Notes Claims.

- The holders of 1.25L Notes Claims shall not, without consent of the Committee, receive any distributions on account of such 1.25L Notes Claims, and each 1.25L Notes Claim shall be released and cancelled on the Effective Date.

- The Debtors shall waive all "preference claims" arising under section 547 of the Bankruptcy Code, section 548 of the Bankruptcy Code to the extent arising under the same facts as section 547 of the Bankruptcy Code, or any state law equivalent thereof, in each case, whether asserted offensively or defensively (including in response to any Claim filed against the Debtors' Estates) against any party that does business with the Debtors or has been identified as an eligible critical vendor, in each case, as of the date of the Committee Settlement Stipulation.

- The appointment of a general unsecured claims observer to monitor the post-effective date claims reconciliation process.

- The Committee Settlement Stipulation includes a "fiduciary out" for the Committee. In other words, the Committee's agreement to support the Plan cannot force the Committee to take any action, or to refrain from taking any action, that

---

[5] The Settlement Equity Pool has been reduced in the Plan to reflect the import of the Bankruptcy Court's oral rulings made on the record on July 10, 2024, and clarified on August 13, 2024, in the 2022 Financing Adversary Proceeding, which rendered the previously unsecured 2026 Notes secured, thus reducing the general unsecured claims pool.

7

ny-2755498

the Committee determines would constitute a breach of its fiduciary obligations to maximize value for, and take action in the best interests of, unsecured creditors.

14. The Committee agreed to hold the Committee Standing Motion in abeyance in connection with the Committee's agreement to support a "Committee Acceptable Plan."[6]

## THE COMMITTEE SETTLEMENT SHOULD BE APPROVED

15. Bankruptcy Rule 9019(a) provides, in relevant part, that a bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interest of the estate. *See* Fed. R. Bankr. P. 9019(a). Compromises and settlements are considered a "a normal part of the process of reorganization" and a "desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated, and costly." *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

16. Ultimately, approval of a compromise is within the sound discretion of the bankruptcy court. *See United States v. AWECO, Inc.* (*In re AWECO, Inc.*), 725 F.2d 293, 297 (5th Cir. 1984). Section 105(a) of the Bankruptcy Code, in pertinent part, empowers the Court to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. 11 U.S.C. §105(a).

17. The Fifth Circuit sets forth a three-factor balancing test under which bankruptcy courts are to analyze proposed settlements. *See In re Jackson Brewing Co.*, 624 F.2d at 602. The factors the court considers are: (1) the probability of success in litigating the claim subject to

---

[6] On January 17, 2024, the Court entered the *Order Regarding Abatement of Corrected Omnibus (I) Motion of the Official Committee of Unsecured Creditors for Exclusive Leave, Standing, and Authority to Prosecute and Settle Certain Claims, Causes of Action, and Claim Objections on Behalf of the Debtors' Estates and (II) Claim Objection* [Docket No. 1266].

settlement, with due consideration for the uncertainty in fact and law, (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) all other factors bearing on the wisdom of the compromise. *See id*.

18. These "other" factors—the so-called *Foster Mortgage* factors under the third factor referenced above—include: (i) "the best interests of the creditors, 'with proper deference to their reasonable views;'" and (ii) "'the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion.'" *In re Cajun Elec. Power Coop., Inc.*, 119 F.3d 349, 356 (5th Cir. 1997) (quoting *In re Foster Mortg. Corp.*, 68 F.3d 914, 917–18 (5th Cir. 1995))).

19. It is well-established that to be approved by a court, a proponent of a settlement only needs to demonstrate that the settlement falls "within the reasonable range of litigation possibilities somewhere above the lowest point in the range of reasonableness." *In re Nutritional Sourcing Corp.*, 398 B.R. 816, 833 (Bankr. D. Del. 2008). The role of the bmankruptcy court is generally not to decide the issues in dispute when evaluating a settlement, but should instead focus on "whether the settlement is fair and equitable as a whole." *Watts v. Williams*, 154 B.R. 56, 59 (Bankr. S.D. Tex. 1993).

20. Here, a weighing of the factors demonstrates that the Committee Settlement is in the best interest of creditors and other stakeholders, and should be approved.

21. *First*, although the Committee is confident in the strength of the claims it sought standing to bring, litigation is inherently uncertain, and the Committee would need to overcome a number of hurdles before ultimately prevailing on any given claim. *See Denham Declaration* ¶16. For instance, on its LBO-related clams, the Committee needed to establish that the Debtors were insolvent upon formation in January 2020 and overcome the defendant's safe harbor defense under section 546(e) of the Bankruptcy Code. As one other example, in respect of its claims for breach

ny-2755498

of fiduciary duty, the Committee would have to establish not just that a breach occurred, but that the breach was the proximate cause of damages to the Debtors.

22. Most crucial to the Committee, however, was that the claims only provided a speculative chance of increasing recoveries for unsecured creditors. Based upon the Debtors' valuation of the Debtors' Estates, even were the Committee to prevail on its claims, general unsecured claims would remain "out of the money" under a majority of litigation outcomes. *See Denham Declaration* ¶16. Thus, the Committee viewed as beneficial a settlement that guaranteed recoveries to General Unsecured Creditors in the form of the Class 7a Settlement Equity Pool and the Settlement Cash Pool, as applicable, as well as benefited general unsecured creditors by releasing any preference exposure.[7] *See id.*

23. *Second*, the Committee Settlement will (and has) saved the Debtors' estates significant expenses (*i.e.*, the expense of funding litigation of the claims asserted in the Committee Standing Motion, and the expense of remaining in bankruptcy until that litigation concludes). Although the facts surrounding the Uptier Transaction were extensively litigated in the 2022 Financial Adversary Proceeding, the LBO-related claims were not, and would involve significant additional litigation and expense. Moreover, the Debtors' capital structure would have been subject to even further potential adjustments in the event the Committee prevailed on its LBO-related claims. The Committee Settlement alleviates the uncertainty surrounding the impact of such claims, and permitted the Debtors to focus on resolving the 2022 Financing Litigation and formulating a chapter 11 plan. *See Denham Declaration* ¶17.

---

[7] Based upon the Debtors' *Schedules of Assets and Liabilities* and the *Statements of Financial Affairs*, not including transfers to Katsumi Servicing, LLC, the Debtors made over $400 million in payments to vendors in the 90 days prior to the Petition Date. [Docket Nos. 512 – 556]. The release of potential preference exposure and costs of defense against preference lawsuits was thus a source of considerable value for a class of creditors who was otherwise recovering a fraction of what they were owed.

24.     *Third*, the Committee Settlement is in the best interests of creditors. It is the product of extensive good-faith, arm's-length negotiations spanning over the course of months among the Committee, the Debtors, and the First Lien Noteholder Group, each of which was represented by sophisticated counsel and financial advisors. *See Denham Declaration* ¶17. Moreover, the Committee Settlement has the support of the vast majority of unsecured creditors. Holders of General Unsecured Convenience Claims in Class 7b voted to accept the Modified First Amended Plan, which incorporated the Committee Settlement.[8] Although Class 7a General Unsecured Claims voted as a class to reject the Modified First Amended Plan, the largest holders of 2027 Unsecured Notes Claims (which are classified in Class 7a) support the Committee Settlement, as evidenced by the Restructuring Support Agreement (the Consenting 2027 Unsecured Noteholders, as defined therein).[9] Further, Class 7a at the time of initial solicitation included "2026 Unsecured Notes Claims," which were subsequently removed from the class after the Court's determination that they were in fact secured obligations.

25.     The Committee submits that the Committee Settlement satisfies each of the factors under Bankruptcy Rule 9019 and should be approved. The Committee Settlement is reasonable, represents a good-faith and arm's-length resolution of the various colorable claims asserted in the Committee Standing Motion, and is in the best interests of creditors. Accordingly, the Committee Settlement, as appropriately incorporated into the Plan, should be approved pursuant to Bankruptcy Rule 9019.

## RESERVATION OF RIGHTS

---

[8] *See Disclosure Statement for the Modified Second Amended Joint Chapter 11 Plan of Wesco Aircraft Holdings, Inc.* et al., § IV.B.2 [Docket No. 2083].

[9] *See* Exhibit F to *Disclosure Statement for the Modified First Amended Joint Chapter 11 Plan of Wesco Aircraft Holdings, Inc.* et al., § IV.B.2 [Docket No. 1208].

26. This Statement is submitted without prejudice to, and with a full reservation of, the Committee's rights, including to raise additional arguments and supplement this Statement as necessary to appropriately address any further issues presented by parties in interest. The Committee raised its concerns with certain specific provisions of the Plan in that *Limited Objection of the Official Committee of Unsecured Creditors to the Modified Second Amended Joint Chapter 11 Plan of Wesco Aircraft Holdings, Inc., et al.* [Docket No. 2446], and the Committee continues to reserve all rights to object to confirmation of any chapter 11 plan that is not a Committee Acceptable Plan or in furtherance of the Committee's fiduciary duties.

[*Remainder of this page intentionally left blank*]

Dated: December 16, 2024

Respectfully submitted,

| | |
|---|---|
| **MCDERMOTT WILL & EMERY LLP** | **MORRISON & FOERSTER LLP** |
| */s/ Charles R. Gibbs* | */s/ Lorenzo Marinuzzi* |
| Charles R. Gibbs<br>Texas State Bar No. 7846300<br>Jack G. Haake<br>Texas State Bar No. 24127704<br>2501 North Harwood Street, Suite 1900<br>Dallas, TX  75201-1664<br>Telephone: (214) 295-8000<br>Facsimile: (972) 232-3098<br>Email: crgibbs@mwe.com<br>          jhaake@mwe.com<br><br>– and –<br><br>Kristin K. Going (admitted *pro hac vice*)<br>Darren Azman (admitted *pro hac vice*)<br>Deanna Boll (admitted *pro hac vice*)<br>One Vanderbilt Avenue<br>New York, NY  10017-5404<br>Telephone: (212) 547-5400<br>Facsimile: (212) 547-5444<br>Email: kgoing@mwe.com<br>          dazman@mwe.com<br>          dboll@mwe.com | Lorenzo Marinuzzi (admitted *pro hac vice*)<br>Theresa A. Foudy (admitted *pro hac vice*)<br>Michael Birnbaum (admitted *pro hac vice*)<br>Benjamin Butterfield (admitted *pro hac vice*)<br>Raff Ferraioli (admitted *pro hac vice*)<br>250 West 55th Street<br>New York, NY  10019-9601<br>Telephone: (212) 468-8000<br>Facsimile: (212) 468-7900<br>Email: lmarinuzzi@mofo.com<br>          tfoudy@mofo.com<br>          mbirnbaum@mofo.com<br>          bbutterfield@mofo.com<br>          rferraioli@mofo.com |

*Counsel to the Official Committee of Unsecured Creditors of Wesco Aircraft Holdings, Inc., et al.*

ny-2755498

**CERTIFICATE OF SERVICE**

I certify that on December 16, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

<i>/s/ Charles R. Gibbs</i><br>
Charles R. Gibbs