# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| *In re* <br><br> **WESCO AIRCRAFT HOLDINGS, INC.,** ***ET AL.,***[1] <br><br> Debtors. | Case No. 23-90611 (MI) <br><br> Chapter 11 <br><br> (Jointly Administered) |

# NOTICE OF FILING OF
## THIRD AMENDED PLAN SUPPLEMENT

**PLEASE TAKE NOTICE THAT** on January 12, 2024, the United States Bankruptcy Court for the Southern District of Texas (the "***Court***") entered an order [Docket. No. 1228] (the "***Disclosure Statement Order***") that, among other things: (a) approved the *Disclosure Statement for the Modified First Amended Joint Chapter 11 Plan of Wesco Aircraft Holdings, Inc. et al.* [Docket. No. 1224] (the "***Disclosure Statement***") as containing "adequate information" pursuant to section 1125(a) of title 11 of the United States Bankruptcy Code (the "***Bankruptcy Code***"); and (b) authorized the above-captioned debtors and debtors in possession (the "***Debtors***") to solicit acceptances for the *Modified First Amended Joint Chapter 11 Plan of Wesco Aircraft Holdings, Inc. et al.* [Docket. No. 1223] (as may be amended, supplemented, or otherwise modified from time to time, the "***Plan***").[2]

**PLEASE TAKE FURTHER NOTICE THAT** on February 1, 2024, the Debtors filed their *Notice of Filing of Plan Supplement* [Docket No. 1357].

---

[1]   The Debtors operate under the trade name Incora and have previously used the trade names Wesco, Pattonair, Haas, and Adams Aviation. A complete list of the Debtors in these chapter 11 cases, with each one's federal tax identification number and the address of its principal office, is available on the website of the Debtors' noticing agent at http://veritaglobal.net/incora/. The service address for each of the Debtors in these cases is 2601 Meacham Blvd., Ste. 400, Fort Worth, TX 76137.

[2]   Capitalized terms not otherwise defined herein have the meanings set forth in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

**PLEASE TAKE FURTHER NOTICE THAT** on March 20, 2024, the Debtors filed their *Notice of Filing of Amended Plan Supplement* [Docket No. 1564].

**PLEASE TAKE FURTHER NOTICE THAT** on August 12, 2024, the Debtors filed their *Second Amended Joint Chapter 11 Plan* [Docket No. 1980].

**PLEASE TAKE FURTHER NOTICE THAT** on August 23, 2024, the Debtors filed the (a) *Modified Second Amended Joint Chapter 11 Plan* [Docket No. 2027], (b) *Debtors' <u>Emergency Motion for Entry of an Order (i) Approving the Amended Disclosure Statement, (ii) Approving Re-Solicitation of Classes 4 and 6 and Related Voting Procedures, (iii) Approving Forms of Modified Ballots, (iv) Scheduling a Confirmation Hearing, (v) Establishing Notice and Objection Procedures, and (vi) Shortening the Notice and Objection Periods in Connection With the Foregoing* [Docket No. 2030] (the "**Amended Disclosure Statement Motion**")[3]; and (c) *Notice of Filing of Second Amended Plan Supplement* [Docket No. 2031].

**PLEASE TAKE FURTHER NOTICE THAT** on September 5, 2024, the Debtors filed the (a) *Modified Second Amended Joint Chapter 11 Plan* [Docket No. 2082] (as may be further amended, supplemented, or otherwise modified from time to time, the "**Plan**"),[4] and (b) *Disclosure Statement for the Modified Second Amended Joint Chapter 11 Plan of Wesco Aircraft Holdings, Inc. et al.* [Docket. No. 2083] (the "**Disclosure Statement**").

**PLEASE TAKE FURTHER NOTICE THAT** as contemplated by the Plan and the Disclosure Statement Order, the Debtors have filed the following documents (or forms of documents), schedules, and exhibits (the "**Third Amended Plan Supplement**") with the Court on December 16, 2024.

| Exhibit | Document |
|---|---|
| Exhibit A | Amended Schedule of Rejected Executory Contracts and/or Unexpired Leases |
| Exhibit A-1 | Redline of Schedule of Rejected Executory Contracts and/or Unexpired Leases Against Version Filed at Dkt. No. 1564 |
| Exhibit B | Amended Schedule of Assumed Executory Contracts and/or Unexpired Leases |
| Exhibit B-1 | Redline of Schedule of Assumed Executory Contracts and/or Unexpired Leases Against Version Filed at Dkt. No. 1564 |
| Exhibit C | Amended Material Terms of New Exit Notes |
| Exhibit C-1 | Redline of Material Terms of New Exit Notes Against Version Filed at Dkt. No. 1564 |
| Exhibit D | Material Terms of New Convertible Takeback Notes |

---

[3]   The Amended Disclosure Statement Motion was approved at Docket No. 2086.

[4]   Capitalized terms not otherwise defined herein have the meanings set forth in the Plan or the Disclosure Statement, as applicable.

| Exhibit | Document |
|---------|----------|
| Exhibit E | Schedule of Retained Causes of Action |
| Exhibit F | [Reserved] |
| Exhibit G | Directors of Reorganized Incora |
| Exhibit H | Directors of Reorganized Debtors (Subsidiaries of Reorganized Incora) |
| Exhibit I | Description of Restructuring Transactions |

**PLEASE TAKE FURTHER NOTICE THAT** the further filings of the Plan Supplement may include: (a) additional New Organizational Documents; (b) the New Revolver Facility Credit Agreement; (c) a list of the members of the New Board of Reorganized Incora (to the extent known); (d) the schedule of Excluded Parties; (e) certain other documents as are necessary or advisable to implement the Restructuring; and (f) amended versions of previously filed Plan Supplement documents.

**PLEASE TAKE FURTHER NOTICE THAT** the documents, or portions thereof, contained in the Plan Supplement are not final and remain subject to ongoing review by the Debtors and interested parties, including as provided for in the Plan. For the avoidance of doubt, the Debtors (subject to consent provisions set forth in the Plan) shall have the right to amend, supplement, or modify the Plan Supplement through the Effective Date in accordance with this Plan, the Bankruptcy Code, the Bankruptcy Rules, and the Restructuring Support Agreement. If any document in this Plan Supplement is altered, amended, modified, or supplemented in any material respect, the Debtors will file a blackline of such document with the Court.

**PLEASE TAKE FURTHER NOTICE THAT** a hearing to consider confirmation of the Plan (the "***Confirmation Hearing***") is scheduled to commence at 8:00 a.m. (CST) on Monday, December 16, 2024, before the Honorable Marvin Isgur in the United States Bankruptcy Court for the Southern District of Texas, Courtroom 404, 515 Rusk Street, Houston, TX 77002. The Confirmation Hearing may be continued from time to time without further notice other than by an announcement in open court or a notice filed on the Court's docket and served on all parties entitled to the notice.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan was 4:00 p.m. (CST) on Thursday, December 12, 2024, and the deadline for applicable holders to vote on the Plan is 5:00 p.m. (CST) on Friday, December 20, 2024. Any objection to the Plan must: (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) set forth the name and address of the objecting party and the nature and amount of Claims or Interests held or asserted by the objecting party; (d) state, with particularity, the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; and (e) be filed with the Court (contemporaneously with a proof of service) and served upon the required notice parties so as to be actually received on or before the Confirmation Objection Deadline. See the Disclosure Statement Order for further procedures with respect to any such objections.

**PLEASE TAKE FURTHER NOTICE THAT** additional copies of the Disclosure Statement, including the Plan, or any other solicitation materials (except for Ballots) are available free of charge on the Debtors' case information website (https://www.veritaglobal.com/incora) or from Verita Global (the "***Solicitation Agent***") at (888) 251-2937 (U.S./Canada) or +1 (310) 751-2613 (international) or by writing the Solicitation Agent at Incora Ballot Processing Center, c/o Verita Global, 222 N. Pacific Coast Highway, Suite 300, El Segundo, CA 90245. Please be advised that the Solicitation Agent is authorized to answer questions about, and provide additional copies of, solicitation materials, but may not advise you as to whether you should vote to accept or reject the Plan.

**This Notice is being sent to you for informational purposes only. If you have questions with respect to your rights under the Plan or about anything stated herein or you would like to obtain additional information, contact the Solicitation Agent.**

*[Remainder of page intentionally blank]*

Dated: December 16, 2024

Sincerely,

*/s/ Charles A. Beckham, Jr.*

Charles A. Beckham, Jr. (TX Bar No. 02016600)
Patrick L. Hughes (TX Bar No. 10227300)
Martha Wyrick (TX Bar No. 24101606)
Re'Necia Sherald (TX Bar No. 24121543)
HAYNES AND BOONE, LLP
1221 McKinney Street, Suite 4000
Houston, TX  77010
Telephone:1 (713) 547-2000
Email:    Charles.Beckham@HaynesBoone.com
          Patrick.Hughes@HaynesBoone.com
          Martha.Wyrick@HaynesBoone.com
          ReNecia.Sherald@HaynesBoone.com

- and -

Dennis F. Dunne (admitted *pro hac vice*)
Samuel A. Khalil (admitted *pro hac vice*)
Benjamin M. Schak (admitted *pro hac vice*)
MILBANK LLP
55 Hudson Yards
New York, NY  10001
Telephone:1 (212) 530-5000
Email:    DDunne@Milbank.com
          SKhalil@Milbank.com
          BSchak@Milbank.com

*Counsel to the Debtors and*
*Debtors in Possession*

---

**If you have any questions related to this notice, please call (888) 251-2937 (U.S./Canada)
or +1 (310) 751-2613 (International), or visit www.veritaglobal.com/incora.**

## CERTIFICATE OF SERVICE

I certify that, on December 16, 2024, a true and correct copy of the foregoing document was served through the Electronic Case Filing system of the United States Bankruptcy Court for the Southern District of Texas, and will be served as set forth in the Affidavit of Service to be filed by the Debtors' noticing agent.

*/s/ Charles A. Beckham, Jr.*
Charles A. Beckham, Jr.

# EXHIBIT A

## AMENDED SCHEDULE OF REJECTED EXECUTORY CONTRACTS AND/OR UNEXPIRED LEASES

**Exhibit A**

## AMENDED SCHEDULE OF REJECTED
## EXECUTORY CONTRACTS AND/OR UNEXPIRED LEASES

| Debtor | Counterparty | Description of Rejected Contract or Lease |
|---|---|---|
| HAAS GROUP INTERNATIONAL, LLC | AMERICAN CHEMISTRY COUNCIL | Agreement dated 7/15/2020 |
| HAAS GROUP INTERNATIONAL, LLC | CANON SOLUTIONS AMERICA, INC. | Office copier lease dated 5/11/2017. |
| HAAS GROUP INTERNATIONAL, LLC | CANON SOLUTIONS AMERICA, INC. | Office copier lease dated 8/12/2018. |
| HAAS GROUP INTERNATIONAL, LLC | CHEMTREAT, INC. | Chemicals supplier contract dated 8/15/2019 |
| HAAS GROUP INTERNATIONAL, LLC | CHEMTREAT, INC. | Chemicals supplier contract, dated 8/15/2019 |
| HAAS GROUP INTERNATIONAL, LLC | CINTAS | Uniform supply contract, dated 10/2/2017 |
| HAAS GROUP INTERNATIONAL, LLC | CINTAS CORPORATION | Uniform supply contract dated 10/2/2017 |
| WESCO AIRCRAFT HARDWARE CORP. | GARY WELLS | Deferred Compensation Program |
| PATTONAIR LIMITED | HEROUX DEVTEK | Supply contract of hardware components for landing gear; dated 3/1/22 |
| HAAS GROUP INTERNATIONAL, LLC | JAN-PRO | Facilities cleaning contract, dated 11/1/2009 |
| HAAS GROUP INTERNATIONAL, LLC | JAN-PRO | Facilities cleaning contract, dated 4/13/2020 |
| HAAS GROUP INTERNATIONAL, LLC | PITNEY BOWES | Digital mailing equipment, scales, etc. – lease dated 3/30/2018 |
| WESCO AIRCRAFT HARDWARE CORP. | PRICE FOR PROFIT LLC D/B/A INSIGHT2PROFIT | Master Subscription Agreement; dated 5/1/18; decision support and analytics modules contract |
| | | SOW for Profit Transformation, Discovery Phase; dated 2/2/20 |
| | | SOW for Profit Transformation, Phase II; dated 4/8/20 |
| | | SOW for Profit Transformation, Phase III; 5/18/20 |

**Exhibit A**

| Debtor | Counterparty | Description of Rejected Contract or Lease |
|---|---|---|
| | | Master Agreement; dated 7/1/20; contract for planning, pricing, and parts |
| | | SOW for Profit Transformation, Phase IV; dated 10/9/20 |
| | | SOW for Demand Planning Initiative, Discovery Phase; dated 9/19/22 |
| | | SOW for Inflation Calibration and Mitigation; dated 7/24/23 |
| | | SOW for Top 2000 Parts Diagnostic; dated 7/25/23 |
| | | SOW for Pricing Excellence; dated 12/7/23 |
| HAAS GROUP INTERNATIONAL, LLC | QUESTEX | Event / trade show planning order form, dated 8/12/2019 |
| WESCO AIRCRAFT HARDWARE CORP. & WESCO AIRCRAFT CANADA INC. | SAFRAN ELECTRICAL COMPONENTS | Supply contract for electrical components; dated 6/18/19 |
| HAAS GROUP INTERNATIONAL, LLC | UNIVERSAL SEPARATORS, INC. | Chemicals supplier contract / rental agreement, dated 5/26/2022 |
| PATTONAIR USA, INC. | WELLS FARGO | Forklift lease; dated 9/20/17 |
| *Profit Sharing Contracts* | | |
| WESCO AIRCRAFT HARDWARE CORP. | 3V FASTENER MANUFACTURING, INC. | All Profit Sharing Contracts, including: |
| | | Excess Inventory Purchase and Sale Agreement: X3F001 |
| | | Excess Inventory Purchase and Sale Agreement: X3F002 |
| | | Excess Inventory Purchase and Sale Agreement: X3F003 |
| WESCO AIRCRAFT HARDWARE CORP. | AEROFIT INC. | All Profit Sharing Contracts, including: |
| | | Excess Inventory Purchase and Sale Agreement: XAF002 |

| Debtor | Counterparty | Description of Rejected Contract or Lease |
|---|---|---|
| WESCO AIRCRAFT HARDWARE CORP. | AEROFIT PRODUCTS, INC. | All Profit Sharing Contracts, including: |
| | | Excess Inventory Purchase and Sale Agreement: XAF001 |
| | | Excess Inventory Purchase and Sale Agreement: XAF003 |
| | | Excess Inventory Purchase and Sale Agreement: XAF005 |
| WESCO AIRCRAFT HARDWARE CORP. | AIR INDUSTRIES | All Profit Sharing Contracts, including: |
| | | Excess Inventory Purchase and Sale Agreement: XXXXXX |
| WESCO AIRCRAFT HARDWARE CORP. | ALCOA FASTENING SYSTEMS, INC. | All Profit Sharing Contracts, including: |
| | | Inventory Purchase and Sale Agreement: XAS001 |
| | | Inventory Purchase and Sale Agreement |
| | | Inventory Purchase and Sale Agreement |
| | | Alcoa (SIMI Valley) - Wesco Aircraft Inventory Purchase and Sale Agreement |
| | | Inventory Purchase and Sale Agreement |
| | | Inventory Purchase and Sale Agreement |
| | | Inventory Purchase and Sale Agreement |
| | | Inventory Purchase and Sale Agreement, Contract - XAS008/Code 682699 |
| | | Inventory Purchase and Sale Agreement |
| | | Inventory Purchase and Sale Agreement |
| | | Inventory Purchase and Sale Agreement |
| | | Inventory Purchase and Sale Agreement - PO#822174 |

| Debtor | Counterparty | Description of Rejected Contract or Lease |
|---|---|---|
| | | Alcoa Fullterton - Excess #XFF 005 PO# 1547456 |
| | | Inventory Purchase and Sale Agreement |
| | | Inventory Purchase and Sale Agreement - PO# 810236 OX |
| | | Inventory Purchase and Sale Agreement - Alcoa COI - Excess #6 PO# 1104069 |
| | | Inventory Purchase and Sale Agreement - Alcoa City of Industry - Excess #XFI 007 PO# 1547453 |
| | | Inventory Purchase and Sale Agreement - Alcoa Van Petty Excess #1 PO# 1238093 |
| | | Excess Inventory and Master Purchase and Sale Agreement |
| WESCO AIRCRAFT HARDWARE CORP. | BOMBARDIER INC. | All Profit Sharing Contracts, including: |
| | | Bombardier Inc. Agreement C6395-LOA |
| WESCO AIRCRAFT HARDWARE CORP. | CRESCENT MANUFACTURING | All Profit Sharing Contracts |
| WESCO AIRCRAFT HARDWARE CORP. | FAIRCHILD FASTENERS | All Profit Sharing Contracts, including: |
| | | Inventory Purchase and Sale Agreement (City of Industry) |
| | | Inventory Purchase and Sale Agreement (Fullerton) |
| | | Inventory Purchase and Sale Agreement (South Bay) |
| WESCO AIRCRAFT HARDWARE CORP. | FATIGUE TECHNOLOGY, INC. | All Profit Sharing Contracts, including: |
| | | Long Term Agreement - FTI/2013/35 |

| Debtor | Counterparty | Description of Rejected Contract or Lease |
|---|---|---|
| WESCO AIRCRAFT HARDWARE CORP. | HEARTLAND PRECISION FASTENERS, INC. | All Profit Sharing Contracts, including: |
| | | Excess Inventory Purchase and Sale Agreement |
| | | Excess Inventory Master Purchase and Sale Agreement |
| WESCO AIRCRAFT HARDWARE CORP. | HI-SHEAR CORPORATION | All Profit Sharing Contracts, including: |
| | | Hi-Shear Profit Sharing Program |
| | | Excess Inventory Purchase and Sale Agreement XHT008 |
| | | Excess Inventory Purchase and Sale Agreement XHT009 |
| | | Excess Inventory Purchase and Sale Agreement XHT010 |
| | | Excess Inventory Purchase and Sale Agreement XHT011 |
| | | Excess Inventory Purchase and Sale Agreement XHT012 |
| WESCO AIRCRAFT HARDWARE CORP. | HONEYWELL INTERNATIONAL, INC. & AFFILIATES | All Profit Sharing Contracts |
| WESCO AIRCRAFT HARDWARE CORP. | HOWMET AEROSPACE, INC. & AFFILIATES | All Profit Sharing Contracts |
| WESCO AIRCRAFT HARDWARE CORP. | JUPITER CORPORATION USA | All Profit Sharing Contracts, including: |
| | | Excess Inventory Master Purchase and Sale Agreement |
| WESCO AIRCRAFT HARDWARE CORP. | KAYNAR | All Profit Sharing Contracts, including: |
| | | Kaynar/Wesco Shared Profit Agreement |
| WESCO AIRCRAFT HARDWARE CORP. | LISI AEROSPACE | All Profit Sharing Contracts, including: |
| | | Excess Inventory Master Purchase and Sale Agreement |

Exhibit A

| Debtor | Counterparty | Description of Rejected Contract or Lease |
|---|---|---|
| WESCO AIRCRAFT HARDWARE CORP. | LISI AEROSPACE - THE MONADNOCK COMPANY | All Profit Sharing Contracts, including: |
| | | Excess Inventory Purchase and Sale Agreement |
| WESCO AIRCRAFT HARDWARE CORP. | MECAIR INC. & AFFILIATES | All Profit Sharing Contracts |
| WESCO AIRCRAFT HARDWARE CORP. | MONOGRAM AEROSPACE FASTENERS | All Profit Sharing Contracts, including: |
| | | Excess Inventory Purchase and Sale Agreement |
| WESCO AIRCRAFT HARDWARE CORP. | PERMASWAGE & AFFILIATES | All Profit Sharing Contracts |
| WESCO AIRCRAFT HARDWARE CORP. | RESISTOFLEX | All Profit Sharing Contracts, including: |
| | | Excess Inventory Purchase and Sale Agreement |
| WESCO AIRCRAFT HARDWARE CORP. | SATURN FASTENERS, INC. | All Profit Sharing Contracts, including: |
| | | Excess Inventory Purchase and Sale Agreement |
| WESCO AIRCRAFT HARDWARE CORP. | SHUR-LOK CORPORATION | Excess Inventory Purchase and Sale Agreement |
| WESCO AIRCRAFT HARDWARE CORP. | SONIC INDUSTRIES, INC. | All Profit Sharing Contracts, including: |
| | | Excess Inventory Purchase and Sale Agreement |
| | | Excess Agreement 588011 (XSI005) |
| | | Excess Inventory Purchase and Sale Agreement XHT008 |
| | | Excess Inventory Purchase and Sale Agreement XHT009 |
| | | Excess Inventory Purchase and Sale Agreement XHT010 |

Exhibit A

| Debtor | Counterparty | Description of Rejected Contract or Lease |
|---|---|---|
| WESCO AIRCRAFT HARDWARE CORP. | SPS TECHNOLOGIES, INC. | All Profit Sharing Contracts, including: |
| | | Excess Inventory Master Purchase and Sale Agreement (Jenkintown) |
| | | Excess Inventory Master Purchase and Sale Agreement (Santa Ana) |
| | | Excess Inventory Sales Agreement |
| | | Excess Inventory Sales Agreement - 02 |
| WESCO AIRCRAFT HARDWARE CORP. | STROCO MANUFACTURING, INC. | All Profit Sharing Contracts, including: |
| | | Excess Inventory Purchase and Sale Agreement 920382 |
| WESCO AIRCRAFT HARDWARE CORP. | THE ADELWIGGINS GROUP | All Profit Sharing Contracts, including: |
| | | Distribution Agreement between The AdelWiggins Group and Wesco Aircraft Hardware Corp. |
| WESCO AIRCRAFT HARDWARE CORP. | THE MONADNOCK COMPANY | All Profit Sharing Contracts, including: |
| | | Excess Inventory Purchase and Sale Agreement |

EXHIBIT A-1

REDLINE OF SCHEDULE OF REJECTED EXECUTORY CONTRACTS AND/OR
UNEXPIRED LEASES

| Debtor | Counterparty | Description of Rejected Contract or Lease |
|---|---|---|
| HAAS GROUP INTERNATIONAL, LLC | AMERICAN CHEMISTRY COUNCIL | Agreement dated 7/15/2020 |
| HAAS GROUP INTERNATIONAL, LLC | CANON SOLUTIONS AMERICA, INC. | Office copier lease dated 5/11/2017. |
| HAAS GROUP INTERNATIONAL, LLC | CANON SOLUTIONS AMERICA, INC. | Office copier lease dated 8/12/2018. |
| HAAS GROUP INTERNATIONAL, LLC | CHEMTREAT, INC. | Chemicals supplier contract dated 8/15/2019 |
| HAAS GROUP INTERNATIONAL, LLC | CHEMTREAT, INC. | Chemicals supplier contract, dated 8/15/2019 |
| HAAS GROUP INTERNATIONAL, LLC | CINTAS | Uniform supply contract, dated 10/2/2017 |
| HAAS GROUP INTERNATIONAL, LLC | CINTAS CORPORATION | Uniform supply contract dated 10/2/2017 |
| WESCO AIRCRAFT HARDWARE CORP. | GARY WELLS | Deferred Compensation Program |
| **PATTONAIR LIMITED** | **HEROUX DEVTEK** | **Supply contract of hardware components for landing gear; dated 3/1/22** |
| HAAS GROUP INTERNATIONAL, LLC | JAN-PRO | Facilities cleaning contract, dated 11/1/2009 |
| HAAS GROUP INTERNATIONAL, LLC | JAN-PRO | Facilities cleaning contract, dated 4/13/2020 |
| HAAS GROUP INTERNATIONAL, LLC | PITNEY BOWES | Digital mailing equipment, scales, etc. – lease dated 3/30/2018 |
| **WESCO AIRCRAFT HARDWARE CORP.** | **PRICE FOR PROFIT LLC D/B/A INSIGHT2PROFIT** | **Master Subscription Agreement; dated 5/1/18; decision support and analytics modules contract** |
| | | **SOW for Profit Transformation, Discovery Phase; dated 2/2/20** |
| | | **SOW for Profit Transformation, Phase II; dated 4/8/20** |

Exhibit A-1

| Debtor | Counterparty | Description of Rejected Contract or Lease |
|---|---|---|
| | | **SOW for Profit Transformation, Phase III; 5/18/20** |
| | | **Master Agreement; dated 7/1/20; contract for planning, pricing, and parts** |
| | | **SOW for Profit Transformation, Phase IV; dated 10/9/20** |
| | | **SOW for Demand Planning Initiative, Discovery Phase; dated 9/19/22** |
| | | **SOW for Inflation Calibration and Mitigation; dated 7/24/23** |
| | | **SOW for Top 2000 Parts Diagnostic; dated 7/25/23** |
| | | **SOW for Pricing Excellence; dated 12/7/23** |
| HAAS GROUP INTERNATIONAL, LLC | QUESTEX | Event / trade show planning order form, dated 8/12/2019 |
| **WESCO AIRCRAFT HARDWARE CORP. & WESCO AIRCRAFT CANADA INC.** | **SAFRAN ELECTRICAL COMPONENTS** | **Supply contract for electrical components; dated 6/18/19** |
| HAAS GROUP INTERNATIONAL, LLC | UNIVERSAL SEPARATORS, INC. | Chemicals supplier contract / rental agreement, dated 5/26/2022 |
| **PATTONAIR USA, INC.** | **WELLS FARGO** | **Forklift lease; dated 9/20/17** |
| ***Profit Sharing Contracts*** | | |
| **WESCO AIRCRAFT HARDWARE CORP.** | **3V FASTENER MANUFACTURING, INC.** | **All Profit Sharing Contracts, including:** |
| | | **Excess Inventory Purchase and Sale Agreement: X3F001** |
| | | **Excess Inventory Purchase and Sale Agreement: X3F002** |
| | | **Excess Inventory Purchase and Sale Agreement: X3F003** |

Exhibit A-1

| Debtor | Counterparty | Description of Rejected Contract or Lease |
|---|---|---|
| WESCO AIRCRAFT HARDWARE CORP. | AEROFIT INC. | All Profit Sharing Contracts, including: |
| | | Excess Inventory Purchase and Sale Agreement: XAF002 |
| WESCO AIRCRAFT HARDWARE CORP. | AEROFIT PRODUCTS, INC. | All Profit Sharing Contracts, including: |
| | | Excess Inventory Purchase and Sale Agreement: XAF001 |
| | | Excess Inventory Purchase and Sale Agreement: XAF003 |
| | | Excess Inventory Purchase and Sale Agreement: XAF005 |
| WESCO AIRCRAFT HARDWARE CORP. | AIR INDUSTRIES | All Profit Sharing Contracts, including: |
| | | Excess Inventory Purchase and Sale Agreement: XXXXXX |
| WESCO AIRCRAFT HARDWARE CORP. | ALCOA FASTENING SYSTEMS, INC. | All Profit Sharing Contracts, including: |
| | | Inventory Purchase and Sale Agreement: XAS001 |
| | | Inventory Purchase and Sale Agreement |
| | | Inventory Purchase and Sale Agreement |
| | | Alcoa (SIMI Valley) - Wesco Aircraft Inventory Purchase and Sale Agreement |
| | | Inventory Purchase and Sale Agreement |
| | | Inventory Purchase and Sale Agreement |
| | | Inventory Purchase and Sale Agreement |
| | | Inventory Purchase and Sale Agreement, Contract - XAS008/Code 682699 |
| | | Inventory Purchase and Sale Agreement |
| | | Inventory Purchase and Sale Agreement |
| | | Inventory Purchase and Sale Agreement |

| Debtor | Counterparty | Description of Rejected Contract or Lease |
|---|---|---|
| | | **Inventory Purchase and Sale Agreement - PO#822174** |
| | | **Alcoa Fullterton - Excess #XFF 005 PO# 1547456** |
| | | **Inventory Purchase and Sale Agreement** |
| | | **Inventory Purchase and Sale Agreement - PO# 810236 OX** |
| | | **Inventory Purchase and Sale Agreement - Alcoa COI - Excess #6 PO# 1104069** |
| | | **Inventory Purchase and Sale Agreement - Alcoa City of Industry - Excess #XFI 007 PO# 1547453** |
| | | **Inventory Purchase and Sale Agreement - Alcoa Van Petty Excess #1 PO# 1238093** |
| | | **Excess Inventory and Master Purchase and Sale Agreement** |
| **WESCO AIRCRAFT HARDWARE CORP.** | **BOMBARDIER INC.** | **All Profit Sharing Contracts, including:** |
| | | **Bombardier Inc. Agreement C6395-LOA** |
| **WESCO AIRCRAFT HARDWARE CORP.** | **CRESCENT MANUFACTURING** | **All Profit Sharing Contracts** |
| **WESCO AIRCRAFT HARDWARE CORP.** | **FAIRCHILD FASTENERS** | **All Profit Sharing Contracts, including:** |
| | | **Inventory Purchase and Sale Agreement (City of Industry)** |
| | | **Inventory Purchase and Sale Agreement (Fullerton)** |
| | | **Inventory Purchase and Sale Agreement (South Bay)** |
| **WESCO AIRCRAFT HARDWARE CORP.** | **FATIGUE TECHNOLOGY, INC.** | **All Profit Sharing Contracts, including:** |
| | | **Long Term Agreement - FTI/2013/35** |

Exhibit A-1

| Debtor | Counterparty | Description of Rejected Contract or Lease |
|---|---|---|
| WESCO AIRCRAFT HARDWARE CORP. | HEARTLAND PRECISION FASTENERS, INC. | All Profit Sharing Contracts, including: |
| | | Excess Inventory Purchase and Sale Agreement |
| | | Excess Inventory Master Purchase and Sale Agreement |
| WESCO AIRCRAFT HARDWARE CORP. | HI-SHEAR CORPORATION | All Profit Sharing Contracts, including: |
| | | Hi-Shear Profit Sharing Program |
| | | Excess Inventory Purchase and Sale Agreement XHT008 |
| | | Excess Inventory Purchase and Sale Agreement XHT009 |
| | | Excess Inventory Purchase and Sale Agreement XHT010 |
| | | Excess Inventory Purchase and Sale Agreement XHT011 |
| | | Excess Inventory Purchase and Sale Agreement XHT012 |
| WESCO AIRCRAFT HARDWARE CORP. | HONEYWELL INTERNATIONAL, INC. & AFFILIATES | All Profit Sharing Contracts |
| WESCO AIRCRAFT HARDWARE CORP. | HOWMET AEROSPACE, INC. & AFFILIATES | All Profit Sharing Contracts |
| WESCO AIRCRAFT HARDWARE CORP. | JUPITER CORPORATION USA | All Profit Sharing Contracts, including: |
| | | Excess Inventory Master Purchase and Sale Agreement |
| WESCO AIRCRAFT HARDWARE CORP. | KAYNAR | All Profit Sharing Contracts, including: |
| | | Kaynar/Wesco Shared Profit Agreement |

Exhibit A-1

| Debtor | Counterparty | Description of Rejected Contract or Lease |
|---|---|---|
| **WESCO AIRCRAFT HARDWARE CORP.** | **LISI AEROSPACE** | **All Profit Sharing Contracts, including:** |
| | | **Excess Inventory Master Purchase and Sale Agreement** |
| **WESCO AIRCRAFT HARDWARE CORP.** | **LISI AEROSPACE - THE MONADNOCK COMPANY** | **All Profit Sharing Contracts, including:** |
| | | **Excess Inventory Purchase and Sale Agreement** |
| **WESCO AIRCRAFT HARDWARE CORP.** | **MECAIR INC. & AFFILIATES** | **All Profit Sharing Contracts** |
| **WESCO AIRCRAFT HARDWARE CORP.** | **MONOGRAM AEROSPACE FASTENERS** | **All Profit Sharing Contracts, including:** |
| | | **Excess Inventory Purchase and Sale Agreement** |
| **WESCO AIRCRAFT HARDWARE CORP.** | **PERMASWAGE & AFFILIATES** | **All Profit Sharing Contracts** |
| **WESCO AIRCRAFT HARDWARE CORP.** | **RESISTOFLEX** | **All Profit Sharing Contracts, including:** |
| | | **Excess Inventory Purchase and Sale Agreement** |
| **WESCO AIRCRAFT HARDWARE CORP.** | **SATURN FASTENERS, INC.** | **All Profit Sharing Contracts, including:** |
| | | **Excess Inventory Purchase and Sale Agreement** |
| **WESCO AIRCRAFT HARDWARE CORP.** | **SHUR-LOK CORPORATION** | **Excess Inventory Purchase and Sale Agreement** |
| **WESCO AIRCRAFT HARDWARE CORP.** | **SONIC INDUSTRIES, INC.** | **All Profit Sharing Contracts, including:** |
| | | **Excess Inventory Purchase and Sale Agreement** |
| | | **Excess Agreement 588011 (XSI005)** |
| | | **Excess Inventory Purchase and Sale Agreement XHT008** |
| | | **Excess Inventory Purchase and Sale Agreement XHT009** |

Exhibit A-1

| Debtor | Counterparty | Description of Rejected Contract or Lease |
|---|---|---|
| | | Excess Inventory Purchase and Sale Agreement XHT010 |
| WESCO AIRCRAFT HARDWARE CORP. | SPS TECHNOLOGIES, INC. | All Profit Sharing Contracts, including: |
| | | Excess Inventory Master Purchase and Sale Agreement (Jenkintown) |
| | | Excess Inventory Master Purchase and Sale Agreement (Santa Ana) |
| | | Excess Inventory Sales Agreement |
| | | Excess Inventory Sales Agreement - 02 |
| WESCO AIRCRAFT HARDWARE CORP. | STROCO MANUFACTURING, INC. | All Profit Sharing Contracts, including: |
| | | Excess Inventory Purchase and Sale Agreement 920382 |
| WESCO AIRCRAFT HARDWARE CORP. | THE ADELWIGGINS GROUP | All Profit Sharing Contracts, including: |
| | | Distribution Agreement between The AdelWiggins Group and Wesco Aircraft Hardware Corp. |
| WESCO AIRCRAFT HARDWARE CORP. | THE MONADNOCK COMPANY | All Profit Sharing Contracts, including: |
| | | Excess Inventory Purchase and Sale Agreement |

# EXHIBIT B

## AMENDED SCHEDULE OF ASSUMED EXECUTORY CONTRACTS AND/OR UNEXPIRED LEASES

**Exhibit B**

## AMENDED SCHEDULE OF ASSUMED
## EXECUTORY CONTRACTS AND/OR UNEXPIRED LEASES

Article V.A of the Plan provides, in relevant part, as follows:

> Except as otherwise provided in this Plan, each Executory Contract and/or Unexpired Lease shall be deemed assumed, without the need for any further notice to or action, order, or approval of the Bankruptcy Court, as of the Effective Date, pursuant to section 365 of the Bankruptcy Code, unless such Executory Contract and/or Unexpired Lease (a) was previously assumed or rejected; (b) previously expired or was terminated pursuant to its own terms; (c) is the subject of a motion to reject, assume, or assume and assign filed on or before the Effective Date; or (d) is designated specifically as an Executory Contract or Unexpired Lease on the Schedule of Rejected Executory Contracts and Unexpired Leases; provided the Debtors or the Reorganized Debtors, as applicable, retain the right to alter, amend, modify or supplement the Schedule of Rejected Executory Contracts and Unexpired Leases, including by way of adding or removing a particular Executory Contract or Unexpired Lease from the Schedule of Rejected Executory Contracts and Unexpired Leases at any time through and including the Effective Date.

In addition, Article V.B.1 of the Plan provides, in relevant part, as follows:

> The Allowed Cure Claim for each Executory Contract and/or Unexpired Lease shall be $0.00, unless (a) the Debtors (with the consent of the Required Consenting 1L Noteholders) affirmatively propose to Allow a Cure Claim for an Executory Contract and/or Unexpired Lease in a different amount by listing it on the Schedule of Assumed Executory Contracts and Unexpired Leases, (b) a Final Order is entered Allowing a Cure Claim in a different amount, or (c) the Debtors (with the consent of the Required Consenting 1L Noteholders) or Reorganized Debtors, as applicable, otherwise agree with the applicable party or parties to an Executory Contract and/or Unexpired Lease to Allow a Cure Claim in a different amount.

Without limiting the generality of the foregoing, this Exhibit B sets forth the Executory Contracts and Unexpired Leases that the Debtors propose to assume under the Plan for which the Debtors propose a Cure Claim greater than $0.00.

**Exhibit B**

| Debtor | Counterparty | Description of Assumed Contract or Lease | Cure Amount |
|---|---|---|---|
| PATTONAIR USA, INC. | UNITED PRECISION PRODUCTS CO. INC. | Aircraft engine parts; dated 11/15/21 | $288,640.56 |
| WESCO AIRCRAFT HARDWARE CORP. | DATA FOUNDRY | IT hardware and data center support | $14,337.10 |
| HAAS GROUP INTERNATIONAL, LLC | JOHNSON CONTROLS | Facility system security; dated 9/25/20 | $2,968.91 |
| HAAS GROUP INTERNATIONAL, LLC | LAIRD R AND F PRODUCTS, INC. | Supply contract for various materials and products; dated 10/12/22 | $5,556.51 |
| WESCO AIRCRAFT HARDWARE CORP. | MASERGY CLOUD COMMUNICATIONS, INC. | Master Services Agreement; communication services; dated 6/30/20 | $100,572.84 |
| WESCO AIRCRAFT HARDWARE CORP. | DCSOFTWARE, INC. DBA ARCTOOLS | Master Services Agreement; software services for database; dated 9/9/22 | $26,175.00 |
| WESCO AIRCRAFT EMEA, LTD. | GKN AEROSPACE SWEDEN AB | Services for management, planning, and procurement of chemicals. Supply Agreements dated 6/1/19 and 5/15/23 and SOW dated 6/1/19 | No cure payment.<br><br>In connection with assumption of the specified contract(s), the applicable Debtor(s) and counterparty(ies) have agreed that proof of claim #1814 will be allowed in the amount of $846,510 as a nonpriority unsecured claim. |
| WESCO AIRCRAFT HARDWARE CORP. | GKN AEROSPACE ST. LOUIS LLC | Services for management, planning, and procurement of chemicals. Supply Agreements dated 6/1/19 and 5/15/23 and SOW dated 6/1/19 | No cure payment.<br><br>In connection with assumption of the specified contract(s), the applicable Debtor(s) and counterparty(ies) have agreed that proof of claim #1781 will be allowed in the amount of $100,000 as a nonpriority unsecured claim. |

**Exhibit B**

| Debtor | Counterparty | Description of Assumed Contract or Lease | Cure Amount |
|---|---|---|---|
| WESCO AIRCRAFT EMEA, LTD. | GKN AEROSPACE SERVICES LTD. | Direct and indirect supply of chemicals. Supply Agreements dated 6/1/19 and 5/15/23 and SOW dated 10/14/21. | No cure payment.<br><br>In connection with assumption of the specified contract(s), the applicable Debtor(s) and counterparty(ies) have agreed that proof of claim #1786 will be allowed, if at all, as a nonpriority unsecured claim. All rights are reserved as to the allowance and amount of such claim. |
| WESCO AIRCRAFT HARDWARE CORP. | MICROSOFT CORPORATION | Business and Services Agreement U9715822 | $1,188,311.60 |
| | | Business and Services Agreement U4392110 | |
| | | Master Agreement E0528880 | |
| | | Master Agreement E8119367 | |
| | | Enrollment 90650389 | |
| | | Enrollment 82680301 | |
| WESCO AIRCRAFT HARDWARE CORP. | SHI INTERNATIONAL CORP. | Design, implementation, and troubleshooting services | $134,543.13 |
| WESCO AIRCRAFT HARDWARE CORP. | P1 SERVICE, LLC | Comprehensive Facilities Services – Assured Maintenance Agreement | $9,320.87 |

# EXHIBIT B-1

## REDLINE OF SCHEDULE OF ASSUMED EXECUTORY CONTRACTS AND/OR UNEXPIRED LEASES

| Debtor | Counterparty | Description of Assumed Contract or Lease | Cure Amount |
|---|---|---|---|
| WESCO AIRCRAFT HARDWARE CORP. | SAP AMERICA, INC. | Cloud storage services | $60,021.54 |
| PATTONAIR USA, INC. | UNITED PRECISION PRODUCTS CO. INC. | Aircraft engine parts; dated 11/15/21 | $288,640.56 |
| WESCO AIRCRAFT HARDWARE CORP. | DATA FOUNDRY | IT hardware and data center support | $14,337.10 |
| HAAS GROUP INTERNATIONAL, LLC | JOHNSON CONTROLS | Facility system security; dated 9/25/20 | $2,968.91 |
| HAAS GROUP INTERNATIONAL, LLC | LAIRD R AND F PRODUCTS, INC. | Supply contract for various materials and products; dated 10/12/22 | $5,556.51 |
| WESCO AIRCRAFT HARDWARE CORP. | MASERGY CLOUD COMMUNICATIONS, INC. | Master Services Agreement; communication services; dated 6/30/20 | $100,572.84 |
| WESCO AIRCRAFT HARDWARE CORP. | DCSOFTWARE, INC. DBA ARCTOOLS | Master Services Agreement; software services for database; dated 9/9/22 | $26,175.00 |
| WESCO AIRCRAFT EMEA, LTD. | GKN AEROSPACE SWEDEN AB | Services for management, planning, and procurement of chemicals. Supply Agreements dated 6/1/19 and 5/15/23 and SOW dated 6/1/19 | No cure payment. In connection with assumption of the specified contract(s), the applicable Debtor(s) and counterparty(ies) have agreed that proof of claim #1814 will be allowed in the amount of $846,510 as a nonpriority unsecured claim. |

Exhibit B-1

| Debtor | Counterparty | Description of Assumed Contract or Lease | Cure Amount |
|---|---|---|---|
| **WESCO AIRCRAFT HARDWARE CORP.** | **GKN AEROSPACE ST. LOUIS LLC** | **Services for management, planning, and procurement of chemicals. Supply Agreements dated 6/1/19 and 5/15/23 and SOW dated 6/1/19** | **No cure payment.** **In connection with assumption of the specified contract(s), the applicable Debtor(s) and counterparty(ies) have agreed that proof of claim #1781 will be allowed in the amount of $100,000 as a nonpriority unsecured claim.** |
| **WESCO AIRCRAFT EMEA, LTD.** | **GKN AEROSPACE SERVICES LTD.** | **Direct and indirect supply of chemicals. Supply Agreements dated 6/1/19 and 5/15/23 and SOW dated 10/14/21.** | **No cure payment.** **In connection with assumption of the specified contract(s), the applicable Debtor(s) and counterparty(ies) have agreed that proof of claim #1786 will be allowed, if at all, as a nonpriority unsecured claim. All rights are reserved as to the allowance and amount of such claim.** |
| **WESCO AIRCRAFT HARDWARE CORP.** | **MICROSOFT CORPORATION** | **Business and Services Agreement U9715822** | **$1,188,311.60** |
| | | **Business and Services Agreement U4392110** | |
| | | **Master Agreement E0528880** | |
| | | **Master Agreement E8119367** | |
| | | **Enrollment 90650389** | |
| | | **Enrollment 82680301** | |
| **WESCO AIRCRAFT HARDWARE CORP.** | **SHI INTERNATIONAL CORP.** | **Design, implementation, and troubleshooting services** | **$134,543.13** |
| **WESCO AIRCRAFT HARDWARE CORP.** | **P1 SERVICE, LLC** | **Comprehensive Facilities Services – Assured Maintenance Agreement** | **$9,320.87** |

# EXHIBIT C

## AMENDED MATERIAL TERMS OF NEW EXIT NOTES

Exhibit C

## AMENDED MATERIAL TERMS OF NEW EXIT NOTES

Set forth below is a summary of certain key terms for the New Exit Notes to be issued under the Plan. This summary of proposed terms does not purport to describe all the terms, conditions, representations, and other provisions with respect to the New Exit Notes, which will be set forth in the New Exit Notes Documents.

| | |
|---|---|
| **Description of the New Exit Notes** | To be issued pursuant to a Senior Secured Notes Indenture and issued by Wesco Aircraft Holdings, Inc., or an entity created to receive substantially all assets of Wesco Aircraft Holdings, Inc. (the "***Issuer***") and guaranteed by the Guarantors |
| **Guarantors** | The New Exit Notes will be guaranteed by (i) the immediate parent entity of the Issuer ("***Holdings***") and (ii) all direct and indirect wholly owned material subsidiaries of the Issuer organized in the United States, England and Wales and Canada, subject to customary exclusions (collectively, together with Holdings, the "***Guarantors***" and, the Guarantors together with the Issuer, the "***Note Parties***") |
| **Security and Priority** | The obligations of the Note Parties with respect to the New Exit Notes (including the guarantee obligations of the Guarantors) will be secured by a perfected security interest in all or substantially all of the assets of the Note Parties, subject to (i) an intercreditor agreement with the New Revolver Facility and (ii) customary exclusions to collateral to be set forth in the New Exit Notes Indenture and related collateral documents. |
| **Principal Amount** | $424,450,000 (plus upfront premium) consisting of:<br>• $324,450,000 (plus upfront premium) on account of DIP Financing Claims<br>• $100,000,000 (plus upfront premium) on account of New Investment |
| **Fees** | 3.0% upfront premium, paid in kind;<br>1.0% exit premium, paid in cash |
| **Interest Rate** | SOFR + 800 basis points<br><br>At the Issuer's option, paid in kind at rate of SOFR + 850 basis points for first 24 months following the Effective Date; cash pay at SOFR + 800 basis points thereafter |
| **Term** | 5 years following the Effective Date |
| **Call Protection** | No call during first 3 years;<br>callable at 107 during 4th year;<br>callable at par thereafter |

**Exhibit C**

Additionally, the New Exit Notes issued pursuant to section 4(a)(2) of the Securities Act and/or the safe harbor of Regulation D promulgated thereunder, and certificates, if any, evidencing such New Exit Notes will bear (or each book-entry position will be deemed to bear) a legend substantially in the following form:[1]

> THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR APPLICABLE STATE SECURITIES LAWS, AND ACCORDINGLY THE SECURITIES REPRESENTED BY THIS CERTIFICATE MAY NOT BE OFFERED, SOLD OR OTHERWISE TRANSFERRED IN THE ABSENCE OF SUCH REGISTRATION OR AN APPLICABLE EXEMPTION THEREFROM.

---

[1] A similar legend with respect to registration, qualification and restrictions on transfer involving the New Common Equity will be included in certain New Organizational Documents evidencing the New Common Equity issued pursuant to section 1145 of the Bankruptcy Code.

# EXHIBIT C-1

# REDLINE OF MATERIAL TERMS OF NEW EXIT NOTES

Exhibit C-1

# REDLINE OF MATERIAL TERMS OF NEW EXIT NOTES

Set forth below is a summary of certain key terms for the New Exit Notes to be issued under the Plan. This summary of proposed terms does not purport to describe all the terms, conditions, representations, and other provisions with respect to the New Exit Notes, which will be set forth in the New Exit Notes Documents.

| | |
|---|---|
| **Description of the New Exit Notes** | To be issued pursuant to a Senior Secured Notes Indenture and issued by Wesco Aircraft Holdings, Inc., or an entity created to receive substantially all assets of Wesco Aircraft Holdings, Inc. (the "***Issuer***") and guaranteed by the Guarantors |
| **Guarantors** | The New Exit Notes will be guaranteed by (i) the immediate parent entity of the Issuer ("***Holdings***"), ~~which may be Wolverine Intermediate Holding II Corporation,~~ and (ii) all direct and indirect wholly owned material subsidiaries of the Issuer organized in the United States, England and Wales and Canada, subject to customary exclusions (collectively, together with Holdings, the "***Guarantors***" and, the Guarantors together with the Issuer, the "***Note Parties***") |
| **Security and Priority** | The obligations of the Note Parties with respect to the New Exit Notes (including the guarantee obligations of the Guarantors) will be secured by a perfected security interest in all or substantially all of the assets of the Note Parties, subject to (i) an intercreditor agreement with the New Revolver Facility and (ii) customary exclusions to collateral to be set forth in the New Exit Notes Indenture and related collateral documents. |
| **Principal Amount** | **$424,450,000 (plus upfront premium) consisting of:** <ul><li>**$324,450,000 (plus upfront premium) on account of DIP Financing Claims**</li><li>~~$324,000,000~~**$100,000,000 (plus upfront premium) on account of New Investment**</li></ul> |
| **Fees** | 3.0% upfront premium, paid in kind; <br> 1.0% exit premium, paid in cash |
| **Interest Rate** | SOFR + 800 basis points <br><br> At the Issuer's option, paid in kind at rate of SOFR + 850 basis points for first 24 months following the Effective Date; cash pay at SOFR + 800 basis points thereafter |
| **Term** | 5 years following the Effective Date |
| **Call Protection** | No call during first 3 years; <br> callable at 107 during 4th year; <br> callable at par thereafter |

**Exhibit C-1**

Additionally, the New Exit Notes issued pursuant to section 4(a)(2) of the Securities Act and/or the safe harbor of Regulation D promulgated thereunder, and certificates, if any, evidencing such New Exit Notes will bear (or each book-entry position will be deemed to bear) a legend substantially in the following form:[1]

THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR APPLICABLE STATE SECURITIES LAWS, AND ACCORDINGLY THE SECURITIES REPRESENTED BY THIS CERTIFICATE MAY NOT BE OFFERED, SOLD OR OTHERWISE TRANSFERRED IN THE ABSENCE OF SUCH REGISTRATION OR AN APPLICABLE EXEMPTION THEREFROM.

---

[1]   A similar legend with respect to registration, qualification and restrictions on transfer involving the New Common Equity will be included in certain New Organizational Documents evidencing the New Common Equity issued pursuant to section 1145 of the Bankruptcy Code.

# Exhibit D

# Material Terms of New Convertible Takeback Notes

**Exhibit D**

## MATERIAL TERMS OF NEW CONVERTIBLE TAKEBACK NOTES

Set forth below is a summary of certain key terms for the New Convertible Takeback Notes to be issued under the Plan. This summary of proposed terms does not purport to describe all the terms, conditions, representations and other provisions with respect to the New Convertible Takeback Notes, which will be set forth in the New Convertible Takeback Notes Documents.

| | |
|---|---|
| **Description of the New Convertible Takeback Notes** | To be issued pursuant to an unsecured mandatorily convertible note indenture issued by Reorganized Incora. |
| **Guarantors** | None |
| **Security** | None |
| **Principal Amount** | $420,000,000 |
| **Interest Rate** | 6.0%, paid in kind |
| **Term** | 8 years following Effective Date |
| **Conversion Rate** | Conversion rate (at which the New Convertible Takeback Notes are convertible into New Common Equity) to be initially set at the equity value of Reorganized Incora on the Effective Date, calculated based on the midpoint of the enterprise valuation set forth in Exhibit D to the Disclosure Statement. |
| **Other** | Upon a bankruptcy filing or similar action (other than a non-bankruptcy liquidation of Reorganized Incora), the principal amount and accrued interest will become due and payable and the New Convertible Takeback Notes will no longer be subject to mandatory conversion.<br><br>Upon all other exit scenarios (including a non-bankruptcy liquidation of Reorganized Incora or a sale of the Company), each holder of New Convertible Takeback Notes will be entitled to receive proceeds alongside the holders of New Common Equity as though the New Convertible Takeback Notes were converted to New Common Equity. |

Additionally, the New Convertible Takeback Notes issued pursuant to section 4(a)(2) of the Securities Act and/or the safe harbor of Regulation D promulgated thereunder, and certificates, if any, evidencing such New Convertible Takeback Notes will bear (or each book-entry position will be deemed to bear) a legend substantially in the following form:

THE SECURITIES REPRESENTED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES

ACT OF 1933, AS AMENDED, OR APPLICABLE STATE SECURITIES LAWS, AND ACCORDINGLY THE SECURITIES REPRESENTED BY THIS CERTIFICATE MAY NOT BE OFFERED, SOLD OR OTHERWISE TRANSFERRED IN THE ABSENCE OF SUCH REGISTRATION OR AN APPLICABLE EXEMPTION THEREFROM.

In addition, any New Convertible Takeback Notes, and certificates, as applicable, evidencing such securities, issued on account of 2026 Notes Claims will bear a legend substantially in the form below:

POTENTIAL REMEDIES ORDER

THESE SECURITIES WERE DISTRIBUTED UNDER THE FURTHER MODIFIED SECOND AMENDED JOINT CHAPTER 11 PLAN OF WESCO AIRCRAFT HOLDINGS, INC., ET AL. ("*THE CHAPTER 11 PLAN*") IN THE CHAPTER 11 CASES FOR WESCO AIRCRAFT HOLDINGS, INC. AND ITS AFFILIATED DEBTORS IN THE U.S. BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS (CASE NO. 23-90611 (MI)) ON ACCOUNT OF 2026 NOTES CLAIMS (AS DEFINED IN THE CHAPTER 11 PLAN). THESE SECURITIES ARE SUBJECT TO THE TERMS OF THE CHAPTER 11 PLAN AND ANY APPELLATE LITIGATION, INCLUDING THE SUBJECT STANDING MOTION CLAIMS (AS DEFINED IN THE CHAPTER 11 PLAN), AND POTENTIAL REMEDIES ORDER (AS DEFINED IN THE CHAPTER 11 PLAN). UPON THE ISSUANCE OF A POTENTIAL REMEDIES ORDER, THESE SECURITIES MAY, TO THE EXTENT REQUIRED BY SUCH ORDER, BE SUBJECT TO TURNOVER, RESCISSION, CANCELLATION OR ANY OTHER REMEDY, AND ANY SUCH REMEDY MAY ALTER THE ENTITLEMENT TO, OR THE VALUE OF THE INVESTMENT IN, THESE SECURITIES. A POTENTIAL REMEDIES ORDER, AND ANY REMEDY ORDERED IN CONNECTION THEREWITH, MAY BE EFFECTUATED WITHOUT ANY FURTHER ACTION BY THE HOLDER.

In addition, any New Convertible Takeback Notes, and certificates, as applicable, evidencing such securities, issued on account of 1L Notes Claims will bear a legend substantially in the form below:

POTENTIAL REMEDIES ORDER

THESE SECURITIES WERE DISTRIBUTED UNDER THE FURTHER MODIFIED SECOND AMENDED JOINT CHAPTER 11 PLAN OF WESCO AIRCRAFT HOLDINGS, INC., ET AL.

("***THE CHAPTER 11 PLAN***") IN THE CHAPTER 11 CASES FOR WESCO AIRCRAFT HOLDINGS, INC. AND ITS AFFILIATED DEBTORS IN THE U.S. BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS (CASE NO. 23-90611 (MI)) ON ACCOUNT OF 1L NOTES CLAIMS (AS DEFINED IN THE CHAPTER 11 PLAN). THESE SECURITIES ARE SUBJECT TO THE TERMS OF THE CHAPTER 11 PLAN AND ANY APPELLATE LITIGATION, INCLUDING THE SUBJECT STANDING MOTION CLAIMS (AS DEFINED IN THE CHAPTER 11 PLAN), AND POTENTIAL REMEDIES ORDER (AS DEFINED IN THE CHAPTER 11 PLAN). UPON THE ISSUANCE OF A POTENTIAL REMEDIES ORDER, THESE SECURITIES MAY, TO THE EXTENT REQUIRED BY SUCH ORDER, BE SUBJECT TO TURNOVER, RESCISSION, CANCELLATION OR ANY OTHER REMEDY, AND ANY SUCH REMEDY MAY ALTER THE ENTITLEMENT TO, OR THE VALUE OF THE INVESTMENT IN, THESE SECURITIES. A POTENTIAL REMEDIES ORDER, AND ANY REMEDY ORDERED IN CONNECTION THEREWITH, MAY BE EFFECTUATED WITHOUT ANY FURTHER ACTION BY THE HOLDER.

# EXHIBIT E

# SCHEDULE OF RETAINED CAUSES OF ACTION

Exhibit E

## SCHEDULE OF RETAINED CAUSES OF ACTION

Article IV.G of the Plan provides as follows:

In accordance with section 1123(b) of the Bankruptcy Code, but subject in all respects to Article VIII.D, the Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Retained Causes of Action (and all Privilege Rights with respect thereto), whether arising before or after the Petition Date, in any court or other tribunal including, in an adversary proceeding filed in the Chapter 11 Cases, and including any actions specifically enumerated in the Schedule of Retained Causes of Action; *provided*, that, notwithstanding anything in the Plan to the contrary, the Reorganized Debtors waive their rights to assert, and release, any Released Preference Action; *provided further*, that, to the extent that any Subject Standing Motion Claim would otherwise constitute a Released Preference Action, then any such Subject Standing Motion Claim will not be released pursuant to this paragraph in the event the 2024/2026 Appellate Litigation Parties are granted derivative standing to pursue such Subject Standing Motion Claim in accordance with Article IV.A.2..

The Reorganized Debtors may pursue such Retained Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors in their discretion.

**No Person or Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Retained Cause of Action against them as any indication that the Debtors or the Reorganized Debtors will not pursue any and all available Retained Causes of Action against them.** Unless any Cause of Action that any Debtor may have or be entitled to assert on behalf of its Estate or itself is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order of the Bankruptcy Court, the Reorganized Debtors expressly reserve all such Causes of Action as Retained Causes of Action, for later adjudication, and, therefore no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of Confirmation or Consummation of the Plan.

The Reorganized Debtors, through their authorized agents or representatives, shall retain and shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate

to judgment any such Retained Causes of Action, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

Notwithstanding and without limiting the generality of Article IV.G of the Plan, the following **Schedule E-1** through **Schedule E-7** include specific types of Causes of Actions expressly preserved by the Debtors and the Reorganized Debtors, as applicable, including without limitation (1) claims related to contracts and leases; (2) claims related to insurance policies; (3) claims related to deposits, adequate assurance payments, prepayments, and other collateral postings; (4) causes of action related to liens; (5) defenses, cross-claims, and counter-claims related to litigation and possible litigation; (6) claims related to accounts receivable and accounts payable; and (7) claims related to tax refunds; which are attached hereto as **Schedule E-1**, **Schedule E-2**, **Schedule E-3**, **Schedule E-4**, **Schedule E-5**, **Schedule E-6**, and **Schedule E-7**, respectively.

**Exhibit E**

**SCHEDULE E-1**

**CLAIMS RELATED TO CONTRACTS AND LEASES**

Each Schedule G of the Schedules filed by each of the Debtors in these Chapter 11 Cases, as the same may be amended from time to time, is hereby incorporated by reference in this **Schedule E-1** as if fully set forth herein.[1]  The Debtors further incorporate by reference the Schedule of Rejected Executory Contracts and/or Unexpired Leases and the Schedule of Assumed Executory Contracts and/or Unexpired Leases filed as part of the Plan Supplement, as the same may be amended from time to time.

Unless otherwise specifically released by the Plan, the Debtors expressly reserve and the Reorganized Debtors shall retain all Causes of Action, based in whole or in part upon any and all contracts and leases to which any Debtor or Reorganized Debtor is or was a party or pursuant to which any Debtor or Reorganized Debtor has any rights or obligations whatsoever (regardless of whether such contract or lease is specifically identified herein or in the Schedules, the Plan, this Plan Supplement, or any amendments thereto), including without limitation all Executory Contracts and Unexpired Leases that are assumed or rejected pursuant to the Plan or an order of the Bankruptcy Court. The claims and Causes of Action reserved include, without limitation, Causes of Action against vendors, lessors, suppliers of goods or services, customers, or any other parties:

    (a)    for overpayments, back charges, duplicate payments, improper holdbacks, deductions owing or improper deductions taken, deposits, warranties, guarantees, indemnities, recoupment, or setoff;

    (b)    for wrongful or improper termination, suspension of services or supply of goods, or failure to meet other contractual or regulatory obligations;

    (c)    for underperformance or failure to fully perform or to condition performance on additional requirements under contracts with any one or more of the Debtors before the assumption or rejection, if applicable, of such contracts;

    (d)    for payments, deposits, holdbacks, reserves, or other amounts owed by any creditor, utility, supplier, vendor, insurer, surety, factor, lender, bondholder, lessor, or other party;

    (e)    for any liens, including mechanic's, artisan's, materialmen's, possessory, or statutory liens held by any one or more of the Debtors;

---

[1]    *See* Docket Nos. 512, 513, 514, 515, 516, 517, 518, 519, 520, 521, 522, 523, 524, 525, 526, 527, 528, 529, 530, 531, 533, 534, 535, 536, 537, 538, 539, 540, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 554, 555, 556, 557.

(f)      for environmental or contaminant exposure matters against lessors, environmental consultants, environmental agencies, or suppliers of environmental services or goods;

(g)      for counter-claims and defenses related to any contractual obligations;

(h)      for any turnover actions arising under section 542 or 543 of the Bankruptcy Code; and

(i)      for unfair competition, interference with contract or potential business advantage, breach of contract, infringement of intellectual property, or any business tort claims.

**Exhibit E**

### SCHEDULE E-2

### CLAIMS RELATED TO INSURANCE POLICIES

Schedule 1 to the *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to Maintain Their Insurance Policies and Programs and Honor Related Obligations, (II) Authorizing the Debtors to Renew, Supplement, Modify, Extend, Reduce or Purchase Insurance Policies, and (III) Modify the Automatic Stay with Respect to Workers' Compensation* [Docket No. 8] (the "***Insurance Motion***") is hereby incorporated by reference in this **Schedule E-2** as if fully set forth herein.  Unless otherwise released by the Plan, the Debtors expressly reserve and the Reorganized Debtors shall retain all Causes of Action based in whole or in part upon any and all insurance contracts and insurance policies, including D&O Policies, to which any Debtor or Reorganized Debtor is or was a party or pursuant to which any Debtor or Reorganized Debtor has any rights whatsoever, regardless of whether such contract or policy is specifically identified herein or in the Insurance Motion, the Plan, this Plan Supplement, or any amendments thereto, including all such claims concerning which the Debtors have notified such insurers as of the Effective Date and Causes of Action against insurance carriers, reinsurance carriers, insurance brokers, underwriters, occurrence carriers, surety bond issuers or other Insurers relating to coverage, indemnity, contribution, reimbursement, or any other matters. For the avoidance of doubt, the Reorganized Debtors expressly reserve and retain all Causes of Action arising in connection with any previously asserted, pending, or future claims under the insurance contracts and insurance policies. Without limiting the generality of the foregoing, the Reorganized Debtors expressly reserve all Causes of Action against the Entities identified in the Insurance Motion.

<strong>Exhibit E</strong>

### SCHEDULE E-3

### CLAIMS RELATED TO DEPOSITS, ADEQUATE ASSURANCE PAYMENTS, PREPAYMENTS, AND OTHER COLLATERAL POSTINGS

Each Part 2 of Schedule A/B of the Schedules filed by each of the Debtors in these Chapter 11 Cases, as may be amended from time to time, is hereby incorporated by reference in this **Schedule E-3** as if fully set forth herein. [2]  Unless otherwise released by the Plan, the Debtors expressly reserve and the Reorganized Debtors shall retain all Causes of Action based in whole or in part upon any and all postings of security deposits, adequate assurance payment, or any other type of deposit, prepayment or collateral, regardless of whether such posting of security deposit, adequate assurance payment, or any other type of deposit, prepayment or collateral is specifically identified herein or in the Schedules, the Plan, the Plan Supplement or any amendments thereto.

---

[2]  *See* Docket Nos. 512, 513, 514, 515, 516, 517, 518, 519, 520, 521, 522, 523, 524, 525, 526, 527, 528, 529, 530, 531, 533, 534, 535, 536, 537, 538, 539, 540, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 554, 555, 556, 557.

**Exhibit E**

## SCHEDULE E-4

### CAUSES OF ACTION RELATED TO LIENS

Each Schedule E of the Schedules filed by each of the Debtors in these Chapter 11 Cases, as may be amended from time to time, is hereby incorporated by reference in this **<u>Schedule E-4</u>** as if fully set forth herein.[3] Unless otherwise released by the Plan or the DIP Orders, the Debtors expressly reserve and the Reorganized Debtors shall retain all Causes of Action based in whole or in part upon any and all liens regardless of whether such lien is included herein or in the Schedules, the Plan, the Plan Supplement or any amendments thereto.

---

[3] *See* Docket Nos. 512, 513, 514, 515, 516, 517, 518, 519, 520, 521, 522, 523, 524, 525, 526, 527, 528, 529, 530, 531, 533, 534, 535, 536, 537, 538, 539, 540, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 554, 555, 556, 557.

**Exhibit E**

### SCHEDULE E-5

### DEFENSES, CROSS-CLAIMS AND COUNTERCLAIMS RELATED TO LITIGATION AND POTENTIAL LITIGATION

As provided in Article VIII of the Plan, to the extent that any Causes of Action against the Debtors are not released or discharged pursuant to the Plan, the Debtors reserve and the Reorganized Debtors shall retain any rights of the Debtors to assert any and all counterclaims, crossclaims, offsets, indemnities, claims for contribution, defenses, and similar claims in response to such Causes of Action. Unless otherwise specifically released by the Plan, the Debtors expressly reserve and the Reorganized Debtors shall retain all Causes of Action against or related to all Entities that are party to or that may in the future become party to litigation, arbitration, or any other type of adversarial proceeding or dispute resolution proceeding, whether formal or informal or judicial or non-judicial, including an adversary proceeding before the Bankruptcy Court, between the Debtors and such Entity, regardless of whether such Entity is included herein or in the Schedules, the Plan, the Plan Supplement or any amendments thereto, and including all counterclaims that have been presented or threatened and all claims and counterclaims with respect to workers' compensation. Notwithstanding anything to the contrary in the foregoing, the Debtors shall not retain any Cause of Action against the 2024/2026 Noteholder Group (or any of its members or affiliates, or any of their successors, transferees and assigns, in each case, that are Releasing Parties) other than those Causes of Action that have been asserted, raised or litigated in the Financing Litigation Proceedings, and no release of, or failure to retain, any Cause of Action shall in any way prejudice, waive, limit, or impair any argument, position or defense in the Appellate Litigation. Each of the following is hereby incorporated by reference in this **Schedule E-5** as if fully set forth herein: (a) each Part 11 of Schedule A/B of the Schedules filed by each of the Debtors in these Chapter 11 Cases, as may be amended from time to time[4] and (b) each Part 3 of the Statement of Financial Affairs filed by each of the Debtors in these Chapter 11 Cases, as may be amended from time to time.[5]

---

[4]   *See* Docket Nos. 512, 513, 514, 515, 516, 517, 518, 519, 520, 521, 522, 523, 524, 525, 526, 527, 528, 529, 530, 531, 533, 534, 535, 536, 537, 538, 539, 540, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 554, 555, 556, 557.

[5]   *See* Docket Nos. 558, 559, 560, 561, 562, 563, 564, 565, 566, 567, 568, 569, 570, 571, 572, 573, 574, 575, 576, 577, 578, 579, 580, 581, 582, 583, 584, 585, 586, 587, 588, 589, 590, 591, 592, 593, 594, 595, 596, 597, 598, 599, 600, 601.

**Exhibit E**

## SCHEDULE E-6

## CAUSES OF ACTION RELATED TO ACCOUNTS RECEIVABLE AND ACCOUNTS PAYABLE

Unless otherwise released by the Plan, the Debtors expressly reserve and the Reorganized Debtors shall retain all Causes of Action against or related to any and all Entities that (i) owe or may in the future owe money to the Debtors or Reorganized Debtors, or (ii) assert or may assert that the Debtors or Reorganized Debtors, as applicable, owe money to them, in each case in the foregoing clauses (i) and (ii), regardless of whether any such Entity is expressly identified herein or in the Schedules, the Plan, the Plan Supplement or any amendments thereto, and including, without limitation, any and all Entities listed on Part 3 of Schedule A/B, Schedule E or Schedule E/F of the Schedules filed by each of the Debtors in these Chapter 11 Cases, as may be amended from time to time, which are hereby incorporated by reference to this **Schedule E-6** as if fully set forth herein.[6]

---

[6]  *See* Docket Nos. 512, 513, 514, 515, 516, 517, 518, 519, 520, 521, 522, 523, 524, 525, 526, 527, 528, 529, 530, 531, 533, 534, 535, 536, 537, 538, 539, 540, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 554, 555, 556, 557.

**Exhibit E**

### SCHEDULE E-7

### CAUSES OF ACTION RELATED TO TAX REFUNDS

Each Part 11 of Schedule A/B of the Schedules filed by each of the Debtors in these Chapter 11 Cases, as may be amended from time to time, is hereby incorporated by reference in this **Schedule E-7** as if fully set forth herein.[7]  Unless otherwise released by the Plan, the Debtors expressly reserve and the Reorganized Debtors shall retain all Causes of Action against or related to any and all Entities that (i) owe or may in the future owe money related to tax refunds, credits, overpayments, recoupments or offsets to the Debtors or Reorganized Debtors, or (ii) assert or may assert that the Debtors or Reorganized Debtors owe taxes to them, in each case in the foregoing clauses (i) and (ii), regardless of whether any such Entity is included herein or in the Schedules, the Plan, the Plan Supplement or any amendments thereto.

---

[7]   *See* Docket Nos. 512, 513, 514, 515, 516, 517, 518, 519, 520, 521, 522, 523, 524, 525, 526, 527, 528, 529, 530, 531, 533, 534, 535, 536, 537, 538, 539, 540, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 554, 555, 556, 557.

# EXHIBIT G

## DIRECTORS OF REORGANIZED INCORA

**Exhibit G**

## DIRECTORS OF REORGANIZED INCORA

| Title | Name |
|---|---|
| DIRECTOR | DAVID COLEAL |

In addition to the member of the Reorganized Incora Board disclosed above, additional directors will be appointed to the Reorganized Incora Board from time to time pursuant to the Plan and New Organizational Documents whose identities shall, once available, be disclosed in a supplemental filing.

# EXHIBIT H

## DIRECTORS OF REORGANIZED DEBTORS
## (SUBSIDIARIES OF REORGANIZED INCORA)

**Exhibit H**

## DIRECTORS OF REORGANIZED DEBTORS
## (SUBSIDIARIES OF REORGANIZED INCORA)

| Title | Name |
|---|---|
| *Adams Aviation Supply Company Limited* | |
| DIRECTOR | WAYNE RICHARD HOLLINSHEAD |
| DIRECTOR | DAWN LANDRY |
| DIRECTOR | MARK WHATLING |
| *Flintbrook Limited* | |
| DIRECTOR | LEE BURKE |
| MANAGING DIRECTOR | WAYNE RICHARD HOLLINSHEAD |
| DIRECTOR | DAWN LANDRY |
| DIRECTOR | MARK WHATLING |
| *Haas Chemical Management of Mexico, Inc.* | |
| DIRECTOR | DAVID COLEAL |
| DIRECTOR | DAWN LANDRY |
| *Haas Corporation of Canada* | |
| DIRECTOR | DAVID COLEAL |
| DIRECTOR | DAWN LANDRY |
| *Haas Corporation of China* | |
| DIRECTOR | DAVID COLEAL |
| DIRECTOR | DAWN LANDRY |
| *Haas Group Canada Inc.* | |
| DIRECTOR | PASCALE BOUCHARD |
| DIRECTOR | DAWN LANDRY |
| *Haas Group International SCM Limited* | |
| DIRECTOR | WAYNE RICHARD HOLLINSHEAD |
| DIRECTOR | DAWN LANDRY |
| DIRECTOR | MARK WHATLING |
| *Haas Group International, LLC* | |
| DIRECTOR | DAWN LANDRY |
| CHAIRMAN OF THE BOARD | DAVID COLEAL |
| *Haas Group, LLC* | |
| MANAGER | DAWN LANDRY |
| *Haas Holdings, LLC* | |
| MANAGER | DAWN LANDRY |
| *Haas International Corporation* | |
| DIRECTOR | DAVID COLEAL |
| DIRECTOR | DAWN LANDRY |
| *Haas of Delaware LLC* | |
| MANAGER | DAWN LANDRY |
| *Haas TCM de Mexico, S. de R.L. de C.V.* | |
| SOLE MANAGER | DAWN LANDRY |

**Exhibit H**

| Title | Name |
|---|---|
| **Haas TCM Group of the UK Limited** | |
| DIRECTOR | WAYNE RICHARD HOLLINSHEAD |
| DIRECTOR | DAWN LANDRY |
| DIRECTOR | MARK WHATLING |
| **Haas TCM Industries LLC** | |
| MANAGER | DAWN LANDRY |
| **Haas TCM of Israel Inc.** | |
| DIRECTOR | DAVID COLEAL |
| DIRECTOR | DAWN LANDRY |
| **Interfast USA Holdings Incorporated** | |
| DIRECTOR | DAVID COLEAL |
| DIRECTOR | DAWN LANDRY |
| **NetMRO, LLC** | |
| MANAGER | DAWN LANDRY |
| **Pattonair (Derby) Limited** | |
| DIRECTOR | WAYNE RICHARD HOLLINSHEAD |
| DIRECTOR | DAWN LANDRY |
| DIRECTOR | MARK WHATLING |
| **Pattonair Europe Limited** | |
| DIRECTOR | WAYNE RICHARD HOLLINSHEAD |
| DIRECTOR | DAWN LANDRY |
| DIRECTOR | MARK WHATLING |
| **Pattonair Group Limited** | |
| DIRECTOR | WAYNE RICHARD HOLLINSHEAD |
| DIRECTOR | DAWN LANDRY |
| DIRECTOR | MARK WHATLING |
| **Pattonair Holding, Inc.** | |
| DIRECTOR | DAVID COLEAL |
| DIRECTOR | DAWN LANDRY |
| **Pattonair Holdings Limited** | |
| DIRECTOR | WAYNE RICHARD HOLLINSHEAD |
| DIRECTOR | DAWN LANDRY |
| DIRECTOR | MARK WHATLING |
| **Pattonair Limited** | |
| DIRECTOR | WAYNE RICHARD HOLLINSHEAD |
| DIRECTOR | DAWN LANDRY |
| DIRECTOR | MARK WHATLING |
| **Pattonair USA, Inc.** | |
| DIRECTOR | DAVID COLEAL |
| DIRECTOR | DAWN LANDRY |
| **Pioneer Finance Corporation** | |
| DIRECTOR | DAVID COLEAL |
| DIRECTOR | DAWN LANDRY |
| **Pioneer Holding Corporation** | |
| DIRECTOR | DAVID COLEAL |
| DIRECTOR | DAWN LANDRY |

**Exhibit H**

| Title | Name |
|---|---|
| *Quicksilver Midco Limited* | |
| DIRECTOR | WAYNE RICHARD HOLLINSHEAD |
| DIRECTOR | DAWN LANDRY |
| DIRECTOR | MARK WHATLING |
| *UNISEAL, INC.* | |
| DIRECTOR | DAVID COLEAL |
| DIRECTOR | DAWN LANDRY |
| *Wesco Aircraft Canada Inc.* | |
| DIRECTOR | PASCALE BOUCHARD |
| TAX DIRECTOR | AVISHA MCQUOWN |
| DIRECTOR | DAVID COLEAL |
| *Wesco Aircraft Canada, LLC* | |
| MANAGER | DAWN LANDRY |
| *Wesco Aircraft EMEA, Ltd.* | |
| DIRECTOR | LEE BURKE |
| DIRECTOR | WAYNE RICHARD HOLLINSHEAD |
| DIRECTOR | DAWN LANDRY |
| DIRECTOR | MARK WHATLING |
| *Wesco Aircraft Europe Limited* | |
| FINANCE DIRECTOR | LEE BURKE |
| DIRECTOR | WAYNE RICHARD HOLLINSHEAD |
| DIRECTOR | DAWN LANDRY |
| DIRECTOR | MARK WHATLING |
| *Wesco Aircraft Hardware Corp.* | |
| CHAIRMAN OF THE BOARD | DAVID COLEAL |
| TAX DIRECTOR | AVISHA MCQUOWN |
| DIRECTOR | DAWN LANDRY |
| *Wesco Aircraft Holdings, Inc.* | |
| DIRECTOR | DAVID COLEAL |
| DIRECTOR | DAWN LANDRY |
| *Wesco Aircraft International Holdings Limited* | |
| DIRECTOR | LEE BURKE |
| DIRECTOR | WAYNE RICHARD HOLLINSHEAD |
| DIRECTOR | DAWN LANDRY |
| DIRECTOR | MARK WHATLING |
| *Wesco Aircraft SF, LLC* | |
| MANAGER | DAWN LANDRY |
| *Wesco LLC 1* | |
| MANAGER | DAWN LANDRY |
| *Wesco LLC 2* | |
| MANAGER | DAWN LANDRY |
| *Wolverine Intermediate Holding II Corporation* | |
| DIRECTOR | DAVID COLEAL |
| *Wolverine UK Holdco Limited* | |
| DIRECTOR | WAYNE RICHARD HOLLINSHEAD |
| DIRECTOR | DAWN LANDRY |

# EXHIBIT I

## DESCRIPTION OF RESTRUCTURING TRANSACTIONS

**Exhibit I**

### DESCRIPTION OF RESTRUCTURING TRANSACTIONS

**Restructuring Transactions Overview**:

This Description of Restructuring Transactions ("**Description**") sets forth a summary of certain of the proposed Restructuring Transactions[14] to be effectuated prior to, on, or following the Effective Date in connection with the *Further Modified Second Amended Joint Chapter 11 Plan of Reorganization of Wesco Aircraft Holdings, Inc.* Case No. 23-90611 (MI) [Dkt. No. 2408] (as amended, supplemented or modified from time to time in accordance with its terms, the "**Plan**"). The Restructuring Transactions remain under discussion among the Debtors, the Required 1L Noteholders and the Required 2026 Noteholders, and the Debtors (with the consent of the Required 1L Noteholders and the Required 2026 Noteholders) reserve all rights to modify, amend, supplement, or restate any part of this Description as necessary or appropriate.

The Plan provides that, in consummating the Plan, the Debtors and the Reorganized Debtors shall be authorized, to the extent consistent with the Plan, to enter into the Restructuring Transactions, including the various actions and transactions summarized in this Description (as well as any modifications or deviations from this Description, subject to the consent of the Required 1L Noteholders and the Required 2026 Noteholders), and to take any and all actions as may be necessary or appropriate to implement the Restructuring Transactions.

Specifically, pursuant to the Plan, and without limiting the terms thereof, the Debtors intend to implement the below Restructuring Transactions after the Confirmation Date but prior to, on, or following the Effective Date. The Restructuring Transactions for the Taxable Transaction (as more fully discussed in the Disclosure Statement in Section VII. Federal Income Tax Considerations) shall occur in the order set forth below, unless otherwise specified. The definitive documentation necessary or appropriate to implement the Restructuring Transactions may include, among other things, merger, purchase, assignment, conversion, formation, and/or contribution agreements, certificates, or other documentation, as applicable.

*On or before the Effective Date,*

**Step 1**: One or more representatives for holders of 1L Notes Claims forms a Delaware limited liability company that elects, effective as of its formation, to be treated as a corporation for U.S. federal income tax purposes ("**Topco**"). Immediately upon formation each such representative shall own a nominal membership interest in Topco (the "**Nominal Shares**").

- Intended U.S. Federal Income Tax Treatment: No material U.S. federal income tax consequences are expected as a result of this Step 1.

**Step 2**: Topco forms a Delaware limited liability company that elects, effective as of its formation, to be treated as a corporation for U.S. federal income tax purposes ("**Midco**").

---

[14] Capitalized terms used but not defined herein shall have the definitions set forth in the Plan or, if not defined in the Plan, the Disclosure Statement.

Exhibit I

- <u>Intended U.S. Federal Income Tax Treatment</u>: No material U.S. federal income tax consequences are expected as a result of this Step 2.

**Step 3**: Midco forms a Delaware limited liability company that elects, effective as of its formation, to be treated as a corporation for U.S. federal income tax purposes ("**Buyer**").

- <u>Intended U.S. Federal Income Tax Treatment</u>: No material U.S. federal income tax consequences are expected as a result of this Step 3.

### On the Effective Date, pursuant to the Plan

*Upon the Effective Date, Topco will be "Reorganized Incora" pursuant to the Plan and the issuer of the New Common Equity and the New Convertible Takeback Notes, and Buyer will be the issuer of the New Exit Notes (consisting of the New DIP Exit Notes and the New Investment Exit Notes).*

**Step 4**: Pursuant to a contribution agreement among Topco, Midco and Buyer (the "**Contribution Agreement**"), Topco issues and contributes to Midco (i) 100% of the New Common Equity and (ii) 100% of the New Convertible Takeback Notes.[15]

- <u>Intended U.S. Federal Income Tax Treatment</u>:
  - Each of the New Common Equity and the New Convertible Takeback Notes is intended to be treated as equity of Topco for U.S. federal income tax purposes.
  - The issuance of the New Common Equity and the New Convertible Takeback Notes in this Step 4 is not expected to result in any material U.S. federal income tax consequences.
  - The contribution of the New Common Equity and New Convertible Takeback Notes is intended to be treated as (i) an exchange described in section 351 of the Tax Code and (ii) in contemplation of Midco immediately contributing the New Common Equity and New Convertible Takeback Notes to Buyer in Step 5 and Buyer immediately thereafter transferring the Purchase Consideration (as defined below) to Wesco Holdings in Step 7 for purposes of section 1.1032-3(c)(2) of the Treasury Regulations.

**Step 5**: Pursuant to the Contribution Agreement, Midco immediately contributes to Buyer the New Common Equity and New Convertible Takeback Notes contributed to Midco in Step 4.[16] Accordingly, immediately after Step 5, Buyer owns 100% of the New Common Equity and New Convertible Takeback Notes.

- <u>Intended U.S. Federal Income Tax Treatment</u>:
  - The contribution of the New Common Equity and New Convertible Takeback Notes is intended to be treated as (i) an exchange described in section 351 of the Tax Code and (ii) in contemplation of Buyer immediately transferring the Purchase

---

[15] For administrative convenience only, New Common Equity and New Convertible Takeback Notes will travel via letter of direction – see Step 8.

[16] For administrative convenience only, New Common Equity and New Convertible Takeback Notes will travel via letter of direction – see Step 8.

Consideration (as defined below) to Wesco Holdings in Step 7 for purposes of section 1.1032-3(c)(2) of the Treasury Regulations.

**Step 6**: Buyer issues the New Investment Exit Notes to investors in exchange for the New Investment.

- <u>Intended U.S. Federal Income Tax Treatment</u>: No material U.S. federal income tax consequences are expected as a result of this Step 6.

**Step 7**: Pursuant to a merger and asset purchase agreement between Buyer, Wesco Aircraft Holdings, Inc. ("**Wesco Holdings**"), Wolverine Intermediate Holding II Corporation ("**Wolverine II**") and Wolverine Intermediate Holding Corporation ("**Wolverine Intermediate**"), (the "**Agreement**"), Wesco Holdings merges with and into Buyer and Buyer immediately acquires (a) 100% of the assets of Wolverine II (other than its stock in Wesco Holdings) and (b) 100% of the assets of Wolverine Intermediate (other than its stock in Wolverine II) in exchange for (x) the transfers pursuant to the Plan of the New Common Equity, New Convertible Takeback Notes, newly issued New DIP Exit Notes, and the portion of the proceeds from the New Investment needed to satisfy Debtor expenses not assumed by Buyer that are required to be paid pursuant to the Plan and (y) the assumption by Buyer of (1) any post-Effective Date obligations of Wesco Holdings under the Plan, including tax obligations required to be paid pursuant to the Plan or that certain agreement between Reorganized Incora, Wolverine Intermediate, Wolverine II and Wolverine Top Holding Corporation ("**Wolverine Topco**") relating to, among other matters, tax liabilities and tax returns of the Debtors (the "**Tax Separation Agreement**"), Statutory Fees and reasonable and necessary costs incurred in connection with the dissolution of Wesco Holdings in accordance herewith; and (2) certain post-Effective Date obligations of Wolverine II and Wolverine Intermediate under the Plan, which obligations shall be limited to tax related obligations required to be paid pursuant to the Plan or the Tax Separation Agreement, Statutory Fees and reasonable and necessary costs incurred in connection with the dissolution of Wolverine II and Wolverine Intermediate in accordance herewith (which shall not include the assumption of any contractual obligations of Wolverine II or Wolverine Intermediate); *provided, however,* that, for the avoidance of doubt, Buyer shall not (nor shall any other Reorganized Debtor) assume any obligations or liabilities of Wolverine II or Wolverine Intermediate under the Plan or otherwise other than the obligations specifically listed in this paragraph (collectively, the "**Purchase Consideration**").[17]

- <u>Intended U.S. Federal Income Tax Treatment</u>:
  - Step 7 and Step 8 are intended to be treated as a single, integrated transaction that is (i) a taxable disposition of the assets of Wesco Holdings, Wolverine II and Wolverine Intermediate for the Purchase Consideration under section 1001 of the Tax Code, with Wesco Holdings, Wolverine II and Wolverine Intermediate recognizing taxable gain or loss on the disposition and (ii) the payments in full and final satisfaction of the applicable Allowed Claims and a taxable exchange of Allowed Claims under sections 1271(a) and 1001(a) of the Tax Code.

---

[17] For administrative convenience only, New Common Equity, New Convertible Takeback Notes and New DIP Exit Notes will travel via letter of direction – see Step 8.

> o   Pursuant to section 1.1032-3(b) of the Treasury Regulations, it is intended that Buyer not recognize any gain with respect to the disposition of New Common Equity and New Convertible Takeback Notes.

**Step 8**: The Purchase Consideration (other than proceeds from the New Investment) and any applicable Cash is distributed, pursuant to the Plan in satisfaction of Allowed Claims.[18]

- _Intended U.S. Federal Income Tax Treatment_: Step 8 is intended to be treated as a single, integrated transaction with Step 7 as described above.

**Step 9**: Each Nominal Share is cancelled for no consideration.

### _On or After the Effective Date:_

**Step 10**: As soon as reasonably practicable following the Merger (but in no event later than forty-five (45) days following the Effective Date), Wolverine II shall adopt a plan of liquidation pursuant to section 331 of the Tax Code and convert to a limited liability company and shall be treated as, and shall make no election contrary to being treated as, a disregarded entity for U.S. federal income tax purposes.

**Step 11**: As soon as reasonably practicable following Step 10 (but in no event later than forty-five (45) days following the Effective Date), Wolverine Intermediate shall adopt a plan of liquidation pursuant to section 331 of the Tax Code and convert to a limited liability company and shall be treated as, and shall make no election contrary to being treated as, a disregarded entity for U.S. federal income tax purposes.

**Step 12**: As soon as reasonably practicable following Step 11 (but in no event later than forty-five (45) days following the Effective Date), Wolverine Topco shall to the extent required by the Tax Separation Agreement convert to a limited liability company, and shall be treated as, and shall make no election contrary to being treated as disregarded as, an entity separate from its owner or as a partnership, as applicable, for U.S. federal income tax purposes. Reorganized Incora, Wolverine Intermediate, Wolverine II and Wolverine Topco shall each take any such other actions as required by the Tax Separation Agreement.

### _General Authority With Respect to Intercompany Claims and Other Restructuring Transactions Steps_:

At any point following the entry of the Confirmation Order, the Debtors (with the consent of the Required 1L Noteholders and the Required 2026 Noteholders) or the Reorganized Debtors, as applicable, may, but will not be required to (i) convert any of Wesco Holdings' subsidiaries to limited liability companies under applicable state law (or otherwise liquidate or merge such entities into limited liability companies under applicable state law and/or make any tax elections with

---

[18]   A letter of direction will be entered into between Wesco Holdings, Wolverine II, Wolverine Intermediate, Topco, Midco and Buyer, pursuant to which, for administrative convenience only, the parties will direct (i) Topco to issue the New Common Equity, (ii) Topco to issue the New Convertible Takeback Notes and (iii) Buyer to issue the New DIP Exit Notes, in each case, directly to those holders of the Allowed Claims entitled to receive such instruments pursuant to the Plan.

**Exhibit I**

respect to such entities); (ii) modify, set off, distribute, contribute, eliminate, cancel, or otherwise modify or address Intercompany Claims; and (iii) transfer assets, rights, obligations, personnel, and similar items among the Debtors or Reorganized Debtors, as applicable; in each case, in furtherance of the transactions contemplated by the Plan.